# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN COUNCIL OF LEARNED
SOCIETIES, et al.,

        *Plaintiffs*,
         v.

MICHAEL MCDONALD, in his official
capacity as Acting Chairman of the National
Endowment of the Humanities, et al.,

        *Defendants*.

Case No. 1:25-cv-03657

## PLAINTIFFS' COMBINED REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

   I. The Court Has Jurisdiction.................................................................................................. 4

      A. The Tucker Act Does Not Strip Jurisdiction Over ACLS Plaintiffs' Claims................ 4

      B. ACLS Plaintiffs' Institutional APA Claims Are Reviewable......................................... 8

         1. ACLS Plaintiffs Challenge Discrete Agency Actions.................................................. 8

         2. The Challenged Actions Are Not Committed to Agency Discretion ...................... 10

      C. ACLS Plaintiffs Have Standing to Assert All of Their Claims .................................... 12

      D. ACLS Plaintiffs' Claims Are Ripe .............................................................................. 15

      E. The CSRA Does Not Strip Jurisdiction Over the RIF Claim ....................................... 15

      F. Plaintiffs May Bring APA Claims for Impoundment Control Act Violations.............. 16

   II. The Court Should Grant Plaintiffs' Motion for a Preliminary Injunction ......................... 17

      A. Plaintiffs Are Likely to Succeed on Their Claims........................................................ 17

         1. Defendants' Institutional Actions Are Arbitrary and Capricious............................ 17

         2. DOGE's Termination of Grants Was Ultra Vires .................................................. 18

         3. Defendants' Actions Violate the Separation-of-Powers.......................................... 19

         4. Defendants' Actions Violate the Impoundment Control Act .................................. 20

         5. Defendants' Funding of the Garden of Heroes Violates the APA ......................... 20

      B. ACLS' Plaintiffs and Their Members Will Suffer Irreparable Harm ........................... 21

      C. The Balance of Equities and Public Interest Merit a Preliminary Injunction.............. 23

      D. The Proposed Injunction Is Appropriately Tailored..................................................... 24

      E. The Court Should Deny Defendants' Request for a Stay and a Bond .......................... 24

   III. The Court Should Deny Plaintiffs' Motion to Dismiss .................................................... 25

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

CASES

*Aids Vaccine Advoc. Coal. v. Dep't of State*,
  2025 WL 752378 (D.D.C. Mar. 10, 2025) ........................................................... 17, 19, 24

*ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ............................................................ 16

*AGMA Sec. Serv., Inc. v. United States*, 152 Fed. Cl. 706 (2021) ................................. 22

*Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484 (5th Cir. 2014) ......... 9

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 2025 WL 1358477 (N.D. Cal. May 9, 2025) .... 15

*Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) .................. 22

*Department of Education v. California*, 145 S. Ct. 966 (2025) ....................................... 5

*CC Distribs., Inc. v. United States*, 883 F.2d 146 (D.C. Cir. 1989) ............................ 12

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) .......................... 6, 19

*Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004 (D.C. Cir. 2022) ...... 12

*Colorado v. HHS*, 2025 WL 1426226 (D.R.I. May 16, 2025) ...................................... 11

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099 (D.C. Cir. 2022)) ...... 5

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421 (S.D.N.Y. 2022) ... 17

*Dalton v. Specter*, 511 U.S. 462 (1994) ....................................................................... 19

*Dep't of Com. v. New York*, 588 U.S. 752 (2019). ................................................... 10, 11

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ................. 11

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996) ....................................... 24

*Elsevier Inc. v. www.Sci-Hub.org*,
  2015 WL 6657363 (S.D.N.Y. Oct. 30, 2015) ............................................................. 22

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ........................................... 20

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) .............................................. 6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ..................... 18

*Hatzlachh Supply Co. v. United States*, 444 U.S. 46 (1980) ........................................ 4

*Heckler v. Chaney*, 470 U.S. 821 (1985) ..................................................................... 11

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) .............................. 24

*IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224 (E.D.N.Y. 2024) ...................... 24

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ..................... 23

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995) ............................................. 6

*Liffiton v. Keuker*, 850 F.2d 73 (2d Cir. 1988) ............................................................ 5

*Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015) ..................................................... 12

*Maryland v. Corp. for Nat'l and Cmty. Serv.*, 2025 WL 1585051 (D. Md. June 5, 2025) ............9

*Massachusetts v. Kennedy*, 2025 WL 1371785 (D. Mass. May 12, 2025) ...................................11

*Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219 (S.D.N.Y. 2019) ..........................12

*Nat'l Ass'n of Neighborhood Health Ctrs. v. Mathews*, 551 F.2d 321 (D.C. Cir. 1976) .............14

*Nat'l Assoc'n of Immigration Judges v. Owen*,
    -- F.4th -- , 2025 WL 1560373 (4th Cir. June 3, 2025) .......................................................16

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 567 (1998)......................................................25

*New York v. McMahon*, 2025 WL 1463009 (D. Mass. May 22, 2025)...................................15, 23

*New York v. Trump*, 2025 WL 715621 (D.R.I. Mar. 6, 2025)......................................................20

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004)..................................................................9

*P.C.R. v. Fla. Union Free Sch. Dist.*, 2022 WL 337072 (S.D.N.Y. Feb. 4, 2022) ......................17

*Planned Parenthood of N.Y.C., Inc. v. HHS*, 337 F. Supp. 3d 308 (S.D.N.Y. 2018)...................12

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ....................................................22

*Rhode Island Latino Arts v. Nat'l Endowment for the Arts*,
    2025 WL 1009026 (D.R.I. Apr. 3, 2025) ..........................................................................25

*Salazar v. King*, 822 F.3d 61 (2d Cir. 2016) ...............................................................................8

*Sols. in Hometown Connections v. Noem*, 2025 WL 1103253 (D. Md. Apr. 14, 2025) ................7

*Somerville Pub. Sch. v. McMahon*, 2025 WL 1576570 (1st Cir. June 4, 2025)...........................15

*Strickland v. United States*, 32 F.4d 311 (4th Cir. 2022) ..............................................................6

*Summerwind W. Condo. Owners Ass'n Inc. v. Mt. Hawley Ins. Co.*,
    2025 WL 691663 (S.D.N.Y. Mar. 3, 2025)........................................................................17

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ..............................................................16

*Train v. City of New York*, 420 U.S. 35 (1975) ...........................................................................11

*Webster v. Doe*, 486 U.S. 592 (1988)...............................................................................2, 6, 7

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9 (2018) ...........................................10

*Widakuswara v. Lake*, 2025 WL 1288817 (D.C. Cir. May 3, 2025).............................................7

*Widakuswara v. Lake*, 2025 WL 1521355 (D.C. Cir. May 28, 2025)...........................................7

*Woonasquatucket River Watershed Council v. USDA*,
    2025 WL 1116157 (D.R.I. Apr. 15, 2025) ........................................................................11

*Yale New Haven Hosp. v. Becerra*, 56 F.4th 9 (2d Cir. 2022) ....................................................18

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)..................................................19

**STATUTES**

2 U.S.C. § 682(1)....................................................................................................................20

5 U.S.C. § 701(a)(1) ...................................................................................................16

5 U.S.C. § 701(a)(2) ...................................................................................................10

5 U.S.C. § 702 ..............................................................................................................5

5 U.S.C. § 706(1) ..........................................................................................................8

5 U.S.C. § 706(2) ..........................................................................................................8

20 U.S.C. § 951 ..........................................................................................................19

20 U.S.C. § 952 ............................................................................................................3

20 U.S.C. § 952(a) ......................................................................................................21

20 U.S.C. § 952(b) ......................................................................................................21

20 U.S.C. § 952(d) ......................................................................................................20

20 U.S.C. § 954(c) ......................................................................................................21

20 U.S.C. § 956 ......................................................................................................3, 19

20 U.S.C. § 956(c) ..........................................................................................11, 20, 21

20 U.S.C. §§ 953-55 ...................................................................................................21

28 U.S.C. § 1491(a)(1) ..............................................................................................4, 6

**OTHER AUTHORITIES**

William Baude et al.,
   Hart and Wechsler's The Federal Courts and the Federal System (8th ed. 2025) ...................6

**INTRODUCTION**

Faced with allegations that their conduct violates multiple constitutional, statutory, and administrative law requirements, Defendants offer remarkable silence on the lawfulness of their conduct. They offer no merits defense to ACLS Plaintiffs' Institutional Claims that the National Endowment for the Humanities (NEH) engaged in arbitrary-and-capricious agency actions—by not explaining the bases for their actions, relying on improper factors, and failing to consider reliance interests—in eliminating 22 discrete programs, six discrete divisions, and 65-70% of staff. Defendants also offer no merits defense to ACLS Plaintiffs' claims that NEH is engaged in an unlawful deferral of spending appropriations. Defendants' silence is equally glaring with respect to DOGE. They make no mention of DOGE in their arguments at all, let alone deny that two DOGE operatives chose the grants to terminate and executed the terminations, without any authority to do so. DOGE drove all of the actions to prevent NEH from carrying out its statutory duties and spending its appropriations, and yet Defendants now sweep DOGE under the rug.

Rather than address the lawfulness of their actions, Defendants throw jurisdictional spaghetti against the wall. They rely extensively on the Tucker Act, but concede that the Tucker Act does not preclude ACLS Plaintiffs' Institutional Claims because those claims do not challenge the termination of any grant, do not seek to restore any grant, and do not involve any actual grant. For ACLS Plaintiffs' Grant Terminations claims, Defendants' arguments center on the Administrative Procedure Act (APA), and in particular precedent on whether the Tucker Act "impliedly forbids" the APA's sovereign immunity waiver from applying. But ACLS Plaintiffs bring only *constitutional* challenges to their grant terminations, not APA claims. Defendants' Tucker Act arguments simply do not apply to constitutional claims seeking to enjoin federal officials, because there is no sovereign immunity waiver needed for such claims, and Supreme

Court precedent requires Congress to expressly—not impliedly—strip jurisdiction for constitutional claims where plaintiffs would have no other forum to bring the claims. *Webster v. Doe*, 486 U.S. 592 (1988). The Supreme Court has *never* read a federal statute to strip a plaintiff of any forum to challenge the constitutionality of a government action.

Defendants erroneously argue that ACLS Plaintiffs' Institutional Claims under the APA are not reviewable. The "dismantling" of NEH is not the relevant agency action for purposes of these APA claims. ACLS Plaintiffs' APA claims challenge NEH's discrete actions in eliminating 22 specific programs and 6 specific divisions, in carrying out one Reduction-in-Force of staff, and in deciding in April 2025 to delay spending appropriations. None of the claims involve broad programmatic requests to "improve" or "fix" NEH, and none would require the Court to oversee NEH's day-to-day operations. The remedy for all these APA claims would be to enjoin and set aside these specific, discrete decisions. Defendants are likewise wrong that these decisions are committed to agency discretion by law. The Supreme Court has read this exception extremely narrowly, and none of the actions challenged resemble the rare decisions that have been found unreviewable because there are no standards at all to apply, such as prosecutorial discretion.

ACLS Plaintiffs have standing to bring all their claims. Defendants do not question standing to bring the Grant Terminations Claims, and ACLS Plaintiffs have standing to pursue the Institutional Claims based on lost opportunities to *compete* for grants, and other harms suffered from the elimination of programs, divisions, and staff. A lost opportunity to compete for funds is a well-established basis for Article III standing, and ACLS Plaintiffs and their members have attested that they would compete for 18 of the 22 eliminated programs, and for opportunities from all the eliminated divisions. Finally, the Civil Service Reform Act (CSRA) does not strip jurisdiction over claims against the RIF brought by plaintiffs that are not federal

employees or unions, and there could be no channeling based on the CSRA in any event because the relevant administrative bodies no longer exist as Congress intended.

Given the many claims and defenses involving the two sets of plaintiffs, the below chart summarizes the claims pursued by each plaintiff group in seeking a preliminary injunction (the chart does not include claims in the complaint for which plaintiffs are not seeking an injunction).

| Category of Claim | Alleged Violation | Conduct Challenged | Government Defenses Raised |
|---|---|---|---|
| Institutional (ACLS) | APA: arbitrary and capricious | Elimination of 22 programs | Standing, Unreviewable under APA<br><br>No Tucker Act or merits defense |
| | APA: arbitrary and capricious | Elimination of 6 divisions | Standing, Unreviewable under APA<br><br>No Tucker Act or merits defense |
| | APA: arbitrary and capricious | Firing 65-70% of employees via RIF | CSRA, Standing, Unreviewable under APA<br><br>No Tucker Act or merits defense |
| | APA: arbitrary and capricious and contrary to Impoundment Control Act | Not spending appropriations | Standing, Ripeness, Unreviewable under APA, Merits |
| | APA: arbitrary and capricious and contrary to 20 U.S.C. §§ 952, 956 | Funding Garden of Heroes | Standing, Unreviewable under APA, Merits<br><br>No Tucker Act |
| | Constitutional: separation of powers | Elimination of programs and divisions, mass firing of staff, not spending appropriations | Standing, Ripeness, Merits<br>No Tucker Act |

| Category of Claim | Alleged Violation | Conduct Challenged | Government Defenses Raised |
|---|---|---|---|
| Grant Terminations (ACLS) | Constitutional: DOGE's lack of authority | Grant terminations | Tucker Act, Merits |
| Grant Terminations (Authors Guild) | APA: arbitrary and capricious | Grant terminations | Tucker Act, Unreviewable under APA |
| | First Amendment | Grant terminations | Tucker Act, Unreviewable under APA, Merits |
| | Constitutional: DOGE's lack of authority | Grant terminations | Tucker Act, Unreviewable under APA, Merits |

**ARGUMENT**

## I.    The Court Has Jurisdiction

### A.  The Tucker Act Does Not Strip Jurisdiction Over ACLS Plaintiffs' Claims

Defendants appear to concede that the Tucker Act does not preclude jurisdiction over

ACLS Plaintiffs' Institutional Claims. Defendants specify that their Tucker Act arguments apply

only to the subset "of Plaintiffs' claims [that] focus on the termination of grants and seek the

reinstatement of those grants and continued payment thereunder," MTD 6, which do not include

the Institutional Claims, *see* ACLS PI 10. Defendants make this concession for good reason.

Because the Tucker Act provides jurisdiction only over claims founded upon an "express or

implied contract with the United States," 28 U.S.C. § 1491(a)(1), the Supreme Court has held

that the Tucker Act can apply only where there is an "actual contract" at issue. *Hatzlachh Supply

Co. v. United States*, 444 U.S. 460, 465 n.5 (1980). The Institutional Claims do not involve any

"actual contract"; with the Institutional Claims, ACLS Plaintiffs seek the opportunity *to compete

for new awards* under the eliminated programs or from the eliminated divisions, or using the

appropriations that NEH must spend. Thus, even if Defendants were correct that the Tucker Act

applies whenever there is "mutual intent to contract including an offer and acceptance," MTD 8 (quotations omitted), none of those things exist for grants not yet awarded.

As for ACLS Plaintiffs' Grant Termination Claims, Defendants' Tucker Act arguments all center on issues specific to *APA claims*, but ACLS Plaintiffs bring only *constitutional* Grant Termination Claims. Defendants' arguments do not apply to such claims. The linchpin of Defendants' Tucker Act defense is sovereign immunity: they claim that "no waiver of sovereign immunity authorizes Plaintiffs to enforce contracts with the federal government in federal district court." MTD 6. Defendants cite cases that address the APA's waiver of sovereign immunity under 5 U.S.C. § 702, and specifically whether the Tucker Act "impliedly forbids" bringing certain APA claims for purposes of § 702's sovereign immunity waiver. Defendants cite D.C. Circuit precedent that applies a two-part test for assessing whether the Tucker Act "impliedly forbids" a particular APA claim, which focuses on the "source of the rights" for a claim and the "type of relief sought." MTD 7 (citing *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin*., 38 F.4th 1099, 1106 (D.C. Cir. 2022)). Defendants also rely extensively on the Supreme Court's order in *Department of Education v. California*,145 S. Ct. 966 (2025), but that case involved only an APA arbitrary-and-capricious claim, and the Supreme Court's order was strictly cabined to "the APA's limited waiver of immunity." *Id.* at 968.

None of these cases have any applicability to constitutional claims like those here, because sovereign immunity is not an issue for such constitutional claims. "[S]overeign immunity does not bar a suit which seeks to prevent an official of the United States from acting in excess of his statutory authority [or] from exercising his statutory authority in an unconstitutional manner." *Liffiton v. Keuker*, 850 F.2d 73, 78 (2d Cir. 1988) (quotations omitted). With such claims, the official's actions "are considered individual and not sovereign

actions." *Strickland v. United States,* 32 F.4th 311, 363 (4th Cir. 2022). "So, there is no sovereign immunity to waive—it never attached in the first place." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996). The entire predicate for Defendants' Tucker Act defense therefore does not apply to ACLS Plaintiffs' constitutional claims.

Even more fundamentally, this Court *must* have jurisdiction over ACLS Plaintiffs' constitutional claims because these claims could not be brought in the Court of Federal Claims. Under the relevant Tucker Act provision, 28 U.S.C. § 1491(a)(1), federal contractors may bring constitutional claims in the Court of Federal Claims only if the relevant constitutional provision is "money-mandating," meaning it entitles a particular individual to a particular sum of money. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005). The Federal Circuit has held that plaintiffs may not assert separation-of-powers or First Amendment claims under § 1491(a)(1), because the relevant constitutional provisions are not money-mandating. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Thus, if this Court lacks jurisdiction over ACLS Plaintiffs' constitutional claims, they would have *no judicial forum* to assert these claims.

*Webster v. Doe*, 486 U.S. 592 (1988), prohibits such an outcome. *Webster* held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Id.* at 603. The Court "require[s] this heightened showing in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quotations omitted). To the knowledge of undersigned counsel, the Supreme Court has *never* read a statute to preclude all judicial review of a constitutional claim, to "avoid squarely facing" the "serious constitutional question" that such a statute would present. William Baude et al., Hart and Wechsler's The Federal Courts and the Federal System 462 (8th ed. 2025).

6

There is no basis for the Tucker Act to be the first ever federal statute that denies parties any forum to challenge the constitutionality of government action. The Tucker Act has no "clear" statement that Congress intended to provide no judicial forum to assert constitutional claims relating to contracts. *Webster*, 486 U.S. at 603. The government does not contend otherwise. The Court thus need not apply the "source of the rights" and "relief sought" test that the government invokes for APA claims. Under *Webster*, the analysis begins and ends with the fact that the Tucker Act does not expressly strip this Court of jurisdiction to hear constitutional claims.

Defendants do not address *Webster* at all in their brief, and they cite no authority for why *Webster* would not apply here. Defendants cite a divided stay panel opinion in *Widakuswara v. Lake*, 2025 WL 1288817 (D.C. Cir. May 3, 2025), but the en banc D.C. Circuit *reversed* the Tucker Act portion of the stay panel opinion, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc). The en banc court adopted "substantially . . . the reasons explained by Judge Pillard" in dissent from the initial stay order, *id.*, in which she explained that the district court had jurisdiction over the constitutional claims because "the Court of Claims could not adjudicate plaintiffs' constitutional claims," and because "[c]onstitutional claims for injunctive or declaratory relief face no sovereign immunity bar," *Widakuswara*, 2025 WL 1288817, at *12 (Pillard, J., dissenting). The only other case Defendants cite that has addressed the Tucker Act's application to constitutional claims, *Solutions in Hometown Connections v. Noem*, 2025 WL 1103253, at *10 (D. Md. Apr. 14, 2025), focuses predominantly on the APA and contains no analysis of the distinct issues with constitutional claims, including *Webster*'s clear statement rule. The precedent of the Supreme Court, not an out-of-circuit district court opinion, controls here.

### B.   ACLS Plaintiffs' Institutional APA Claims Are Reviewable

#### 1.   ACLS Plaintiffs Challenge Discrete Agency Actions

Defendants erroneously assert that ACLS Plaintiffs' Institutional Claims under the APA are not cognizable because they do not challenge discrete agency actions. Defendants' argument fails as a threshold matter because the Second Circuit has held that "[t]he requirement that the challenged agency action is 'discrete' is limited to claims under 5 U.S.C. § 706(1)," and not claims under § 706(2). *Salazar v. King*, 822 F.3d 61, 82 n.13 (2d Cir. 2016). ACLS Plaintiffs bring APA claims under only § 706(2). In any event, ACLS Plaintiffs' APA claims challenge discrete agency actions. The "dismantling" of NEH is not the relevant agency action for these purposes. MTD 17. Rather, the APA claims challenge the following discrete agency actions:

*Program Eliminations*: NEH has eliminated 22 different grant programs (19 at the time the preliminary injunction was filed and 3 since then).[1] Robinson Decl. Ex. 14, ECF No. 26-14; Jane Doe Decl. ¶ 10, ECF No.32. NEH effectuated each program elimination by closing the Notice of Funding Opportunity (NOFO) that had been posted online for the program and stating that the program was "cancelled" or would not be "reoffered." *See* ECF 26-15. Defendants do not deny they have made final decisions to shut down each such program, and each program elimination is a discrete agency action subject to APA review.

*Division Eliminations*: NEH has eliminated the following six divisions: Office of Data and Evaluation, Office of Digital Humanities, the Office of Challenge Programs, Office of Partnerships and Strategic Initiatives, Outreach, and Congressional Affairs. Compl. ¶ 79; John Doe Decl. ¶ 14, ECF No. 31; Jane Doe Decl. ¶ 10, ECF No. 32. NEH has eliminated these

---

[1] Since the preliminary injunction motion was filed, NEH has terminated the Fellowship Programs at Independent Research Institutions, Institutes for K-12 Educators, and Institutes for Higher Education Faculty programs. *See* Robinson Suppl. Decl. Ex. 1.

divisions by firing all or nearly all staff, and for the first three divisions by ending all their grant programs. *Id.* Defendants do not deny they made a final decision to eliminate these six divisions, and the elimination of each division is its own discrete agency action subject to APA review.

*Mass Firing of Staff*: NEH fired 65-70% of its staff via a single Reduction-in-Force (RIF) that took effect on June 10, 2025. Jane Doe Decl. ¶ 19, ECF No. 32, John Doe Decl. ¶ 4, ECF No. 31, Richard Roe Decl. ¶ 3, ECF No. 30. That RIF is a discrete agency action under the APA.

*Deferrals and Rescissions of Appropriations:* ACLS Plaintiffs challenge Defendants' decisions to "defer" spending NEH's appropriations, and to outright refuse to spend those funds. Those decisions were effectuated via discrete actions: the mass grant terminations that occurred all at once, the near-simultaneous elimination of the 22 programs, and the RIF. With respect to the unlawful deferral in particular, Defendants clearly made a concrete decision in April 2025 to delay spending NEH's appropriations, and that decision is subject to APA review.

*Garden of Heroes*: NEH's decision to award funds for the Garden of Heroes, effectuated through a single and discrete NOFO, is a discrete agency action.

None of these claims are like those in *Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) ("*SUWA*"), or the other cases Defendants cite. MTD 16-18. ACLS Plaintiffs do not "seek 'wholesale improvement' of an agency's programs by court decree." MTD 17 (quoting *Alabama- Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014)). Nor do ACLS Plaintiffs seek to "inject[] the judge into day-to-day agency management," *SUWA*, 542 U.S. at 67. The APA claims here challenge discrete actions that either meet the APA's requirements for reasoned decisionmaking or do not, and that the Court will either enjoin or will not.

These claims are far more like those in *Maryland v. Corp. for National and Community.*
*Service*, 2025 WL 1585051, at *1 (D. Md. June 5, 2025). The court there held that, although the
broad "dismantling" of AmeriCorps was not a discrete agency action under the APA, the
plaintiffs did challenge "two discrete agency actions that are ripe for judicial review: (a) the mass
closure of 1,031 AmeriCorps programs and (b) the removal of all NCCC members from service."
*Id.* at *13. Here, ACLS Plaintiffs challenge Defendants' discrete decisions to close 22 programs,
to eliminate six divisions, to issue a single RIF, and to stop spending appropriations.

## 2. The Challenged Actions Are Not Committed to Agency Discretion

Defendants contend that APA review is unavailable because the challenged actions are
"committed to agency discretion by law." MTD 18-20 (quoting 5 U.S.C. § 701(a)(2)).
Defendants suggest that unless a statute "require[s]" an agency to maintain a certain program,
department, or staff level, a decision to eliminate that program, department, or staff is committed
to agency discretion and not subject to APA review. That is not what § 701(a)(2) means.

The Supreme Court has read § 701(a)(2) "quite narrowly," in order to "give effect to the
command that courts set aside agency action that is an abuse of discretion." *Dep't of Com. v.*
*New York*, 588 U.S. 752, 772 (2019). The exception applies only in "rare circumstances" where a
court would have "no meaningful standard against which to" review an agency's discretionary
action. *Id.* The Court has "generally limited the exception to certain categories of administrative
decisions that courts traditionally have regarded as 'committed to agency discretion,' such as a
decision not to institute enforcement proceedings, or a decision by an intelligence agency to
terminate an employee in the interest of national security." *Id.* (cleaned up). The Court has
rejected the argument Defendants advance here: that "all matters" for which agencies retain

"discretion" are unreviewable. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018).

The decisions to eliminate programs and divisions that implement NEH's statutory duties, to execute a RIF, and to not spend funds are not decisions "traditionally committed to agency discretion." Unlike prosecutorial discretion, *Heckler v. Chaney*, 470 U.S. 821 (1985), there is no "tradition" of courts declining to review such decisions. For example, the Supreme Court held that the rescission of DACA was arbitrary and capricious. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020). Even though the government was not required to create the program, the decision to end the program was subject to the APA's reasoned decisionmaking standards. *Id.* at 18-19. "The creation of that program—and its rescission—is an action that provides a focus for judicial review." *Id.* at 19 (quotation omitted); *see also Train v. City of New York*, 420 U.S. 35, 42-49 (1975) (reviewing decision not to spend funds).

And there are "meaningful standard[s] by which to judge the [agency's] action." *New York*, 588 U.S. at 772. The relevant grant programs and divisions carried out specific statutory requirements of NEH, *see* 20 U.S.C. 956(c), and those requirements inform whether the decisions to end the programs and divisions are arbitrary and capricious. ACLS PI 11-13. The Impoundment Control Act (ICA) and appropriations statutes have clear standards—the agency cannot internationally delay spending appropriations or refuse to spend them. *Id.* at 16-17. Whether NEH may fund art for the Garden of Heroes is a straightforward question of statutory interpretation of the permissible purposes for NEH grants. *See id.* at 17-18. Courts have recently rejected similar government arguments about decisions committed to agency discretion by law. *See Colorado v. HHS*, 2025 WL 1426226, at *11 (D.R.I. May 16, 2025); *Massachusetts v.*

11

*Kennedy*, 2025 WL 1371785, at *11 (D. Mass. May 12, 2025); *Woonasquatucket River Watershed Council v. USDA*, 2025 WL 1116157, at *16 (D.R.I. Apr. 15, 2025).

### C.   ACLS Plaintiffs Have Standing to Assert All of Their Claims

Defendants concede that ACLS Plaintiffs have standing to bring their Termination Claims, but erroneously argue that Plaintiffs lack standing for their Institutional Claims. *See* MTD 11-14; PI Opp. 7. Defendants contend that Plaintiffs cannot challenge NEH's institutional actions to eliminate grant programs, or divisions that run grant programs, because whether Plaintiffs would have received grants from such programs and divisions is "speculative." MTD 21. Defendants misunderstand the harms underlying the program and division elimination claims. It is the "loss of an opportunity to *compete*" for grants, PI 22 (emphasis added), not the loss of any particular grant itself, that is part of the injuries for these claims.

Courts have long recognized that a lost opportunity "is itself a concrete injury." *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015); *see also Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 232–33 (S.D.N.Y. 2019); *Planned Parenthood of N.Y.C., Inc. v. HHS*, 337 F. Supp. 3d 308, 320 (S.D.N.Y. 2018). As the D.C. Circuit has explained, "a plaintiff suffers a constitutionally cognizable injury by the loss of an opportunity to pursue a benefit . . . even though the plaintiff may not be able to show that it was certain to receive that benefit had it been accorded the lost opportunity." *CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989). Regardless of whether a plaintiff "point[s] to one specific project it has been deprived of the opportunity to" obtain, a plaintiff suffers harm where "it has been walled off from an entire category of projects for which it is qualified, prepared, and eager to compete." *Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1016 (D.C. Cir. 2022). To establish standing based on a lost opportunity to compete, a plaintiff need only show that: "(1) it was ready, willing

and able to perform the [award] for which it wished to compete, and (2) the challenged action deprived the company of the opportunity to compete for the work." *Id.* (quotations omitted).

ACLS Plaintiffs and their members readily meet these criteria. They have attested that they applied, or were preparing to apply, for specific grant programs that have been eliminated, and they indisputably were able to perform those awards. *See, e.g.*, Grossman Decl. ¶ 26, ECF No. 28; Connolly Decl. ¶¶ 25-28, ECF No. 27; Grossman Suppl. Decl. ¶ 3; Connolly Suppl. Decl. ¶ 3; Rhody Decls.[2] For example, Plaintiff AHA had an active application to the Institutes for Advanced Topics in the Digital Humanities program before it was terminated. *See* Grossman Decl. ¶ 26. It is not "speculative" that AHA lost an opportunity to compete for this program.

Perhaps recognizing that lost opportunity to compete is cognizable injury, Defendants contend that such lost opportunity can "at most give Plaintiffs standing to challenge the termination of the specific grant opportunities for which they were allegedly planning to apply." MTD 13. But ACLS Plaintiffs and their members have submitted declarations demonstrating that they would have applied to 18 of the 22 programs Defendants have eliminated.[3] And given that ACLS Plaintiffs represent thousands of members who apply for NEH grants, it is virtually certain that some members would apply for each of the remaining four eliminated programs.

ACLS Plaintiffs and their members have also shown injury from the elimination of NEH divisions, and in particular the Offices of Digital Humanities, Data and Evaluation, and

---

[2] The Court may consider declarations attached to an opposition to a motion to dismiss. *Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *1 n.1 (S.D.N.Y. Aug. 28, 2019).

[3] *See* ECF No. 28 (Grossman Decl.) ¶ 26; ECF No. 27 (Connolly Decl.) ¶¶ 25-28; ECF No. 29 (Krebs Decl.) ¶ 23; Grossman Suppl. Decl. ¶ 3; Connolly Suppl. Decl. ¶ 3; Rhody Decls.; Kotz Decl. ¶¶ 6-8; Urbach Decl. ¶ 5; Norris Decl. ¶ 4; Ferrer Decl. ¶ 3; Hsia Decl. ¶¶ 4-5; Miller Decl. ¶ 3; Zecher Decl. ¶¶ 4-5; Wesleyan Decl. ¶ 6; Caballero Decl. ¶ 4; Georgetown Decl. ¶ 5; Wulf Decl. ¶ 4; Bunker Decl. ¶ 3.

Challenge Programs. ACLS Plaintiffs and their members have received and would continue to apply for grants from these divisions, Grossman Decl. ¶¶ 27-28; Connolly Decl. ¶¶ 11, 21-24, 27. And outside of grants, ACLS Plaintiffs and their members rely on and work collaboratively with these offices to grow relevant disciplines, Krebs Decl. ¶ 8; Grossman Decl. ¶¶ 27-28; Connolly Decl. ¶ 23, and for Data and Evaluation, to address the crisis of falling enrollments in humanities majors, which is critical to ACLS Plaintiffs' missions. Connolly Decl. ¶ 24.

Similarly, ACLS Plaintiffs and their members are injured by the firing of 65-70% of NEH staff. *See* ACLS PI 21-23. Plaintiffs have explained their concrete harms from the loss of established relationships with NEH staff, the loss of NEH as a convener for and promoter of the humanities, and the loss of NEH in supporting and legitimizing humanities research through a rigorous peer-review process. *Id.* at 22-24. Defendants assert that it is speculative that NEH will no longer host meetings or seminars, and that ACLS Plaintiffs will be harmed if that happens. MTD 12-13. But it is hardly speculative that an agency that just lost upward of 70% of its staff will no longer be able to put together events, collaborate on projects, and foster the humanities in the way it did for decades. And for standing purposes, it is of no moment whether "the governing statute . . . requires NEH to host such meetings." MTD 14. All that matters is that ACLS Plaintiffs' challenge discrete agency actions from which they are harmed.

Plaintiffs also have standing to challenge the lost opportunity to compete for the up to $17 million in funds that NEH has devoted to the "Garden of Heroes." *See* MTD 14. Money is zero-sum, and Defendants' unlawful use of these funds to commission art for the Garden of Heroes means that the money will not be available for programs on which ACLS Plaintiffs and their members would have had competed. Courts have long upheld standing on this basis. *See, e.g.*, *Nat'l Ass'n of Neighborhood Health Ctrs. v. Mathews*, 551 F.2d 321 (D.C. Cir. 1976).

### D.  ACLS Plaintiffs' Claims Are Ripe

Although Defendants assert that "many of plaintiffs' claims are unripe," Defendants identify just one type of claim that is purportedly unripe: "Plaintiffs' claims that NEH will not spend the funds appropriated to it." MTD 14. With respect to Defendants' unlawful deferral of funds—where Defendants are delaying spending appropriations for reasons not permitted by the ICA—that unlawful deferral is happening *right now*, with each day that NEH delays spending its appropriations for impermissible policy reasons. ACLS PI 17. ACLS Plaintiffs' claims that NEH will never spend its appropriations is also ripe for review given the virtual impossibility that NEH in its decimated state will spend the hundreds of millions of dollars appropriated every year. The fact that NEH recently awarded $9.55 million in grants in connection with one of the three annual meetings of its advisory council, representing a mere 4.6% of its annual appropriations, is a fact that helps Plaintiffs, not Defendants. *Cf.* MTD 5.

### E.  The CSRA Does Not Strip Jurisdiction Over the RIF Claim

Defendants are wrong that this Court lacks jurisdiction over the Institutional Claim on the mass firing of NEH staff via a "Reduction-in-Force" (RIF). Defendants themselves explain that the CSRA "provide[s] the exclusive procedures by which *federal employees* may pursue employment-related claims." MTD 10 (emphasis added). The CSRA is inapplicable where, as here, ACLS Plaintiffs are not federal employees or their unions. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 2025 WL 1358477, at *15 (N.D. Cal. May 9, 2025) ("[T]he [CSRA] says nothing at all about non-federal employee unions, non-profit organizations, or local governments"); *New York v. McMahon*, 2025 WL 1463009, at *20 (D. Mass. May 22, 2025).

Moreover, Plaintiffs' injuries are not the kinds that can be addressed by the Merit System Protection Board ("MSPB") or Office of Special Counsel ("OSC") or that Congress intended to

remove from district court jurisdiction. As the First Circuit recently held, the CSRA does not preclude non-employees/unions from bringing claims against a "large-scale RIF" that has "the effect . . . of eliminating entire offices and programs" upon which the plaintiffs rely. *Somerville Pub. Sch. v. McMahon*, 2025 WL 1576570, at *3 (1st Cir. June 4, 2025).

Even if the CSRA could be read to preclude claims like those here, that would no longer accord with Congress' intent given recent events. As the Fourth Circuit recently held, "Congress enacted the CSRA on the bedrock principle that the members of the MSPB and the Special Counsel would be protected from removal on political grounds, providing them independence from the President." *Nat'l Ass'n of Immigration Judges v. Owen*, -- F.4th -- , 2025 WL 1560373, at *8 (4th Cir. June 3, 2025). "Congress left little doubt about the importance of an independent MSPB and Special Counsel free from '*any control or direction by the President*.'" *Id.* at *7 (quoting S. Rep. No. 95-969 at 24). This premise was key to why Congress channeled certain claims to the MSPB and OSC, but that premise no longer holds. Despite the statutory prohibition on taking such action, the President has fired the Special Counsel and an MSPB board member (leaving the MSPB without a quorum), and the Supreme Court has allowed those firings to take effect. *Trump v. Wilcox*, 145 S. Ct. 1415 (2025). The question of channeling hinges on Congress' intent, *see Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994), and there is zero chance that Congress intended to channel claims related to federal employee terminations to the MSPB and OSC if the President could fire the leaders of those bodies at will.

### F.    Plaintiffs May Bring APA Claims for Impoundment Control Act Violations

Defendants argue that because the ICA authorizes some enforcement by the Comptroller General, it precludes any enforcement through the APA. MTD 15-16. But the mere possibility of Comptroller General enforcement does not "preclude judicial review." 5 U.S.C. § 701(a)(1).

16

There is a "strong presumption that Congress intends judicial review of administrative action" that can only be rebutted with a "showing of clear and convincing evidence of a contrary legislative intent." *ACLU v. Clapper*, 785 F.3d 787, 803 (2d Cir. 2015) (quotations omitted).

Nothing in the ICA says the statute is to be enforced "exclusively" by the Comptroller. MTD 16. Although the statute *allows* the Comptroller to enforce it in some circumstances, it does not state that such enforcement is exclusive or displaces the APA's strong presumption of judicial review. For this reason, courts have held that the ICA is privately enforceable through the APA. *See Aids Vaccine Advoc. Coal. v. Dep't of State*, 2025 WL 752378, at *17 n.17 (D.D.C. Mar. 10, 2025); *New York v. Trump*, 2025 WL 715621, at *9 n.13 (D.R.I. Mar. 6, 2025).

## II.    The Court Should Grant Plaintiffs' Motion for a Preliminary Injunction

### A.  Plaintiffs Are Likely to Succeed on Their Claims

#### 1.   Defendants' Institutional Actions Are Arbitrary and Capricious

Defendants remarkably offer no merits defense to ACLS Plaintiffs' arbitrary and capricious Institutional Claims. Defendants do not deny NEH has provided no explanation at all for its decisions to end grant programs, eliminate entire divisions, mass fire staff, or refuse to spend appropriations. ACLS PI 12-13. They do not dispute that NEH failed to consider the factors that Congress required them to consider, *id.* at 13, provided no good reasons for their change in policies, *id.*, or failed to consider the serious reliance interests at stake, *id.* at 13-14.

Defendants have accordingly forfeited any argument on the merits of ACLS Plaintiffs' arbitrary and capricious APA claims. *See Summerwind W. Condo. Owners Ass'n Inc. v. Mt. Hawley Ins. Co.*, 2025 WL 691663, at *10 (S.D.N.Y. Mar. 3, 2025) (failure to adequately address issue in opposition brief results in forfeiture); *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) (similar); *P.C.R. v. Fla. Union Free Sch.*

*Dist.*, 2022 WL 337072, at *22 (S.D.N.Y. Feb. 4, 2022) (similar). Defendants present no substantive defense on the arbitrary-and-capricious claims because their actions are indefensible.

### 2.  DOGE's Termination of Grants Was *Ultra Vires*

Defendants also have no merits defense to ACLS Plaintiffs' claim that DOGE's termination of grants was constitutionally *ultra vires*. Defendants do not even address DOGE anywhere in the argument sections of their briefs. They do not dispute that: (1) DOGE officials Nate Cavanaugh and Justin Fox arrived at NEH to "claw back" $170 million in grants; (2) Cavanaugh and/Fox personally chose which grants to terminate; and (3) Fox himself carried out the terminations by emailing termination notices to 1,500 grantees. ACLS PI 7, 19 (citing declarations). Defendants do not dispute the accuracy of any of the declarations of current and former NEH employees, or the authenticity of a recording in which Defendant McDonald conceded that DOGE carried out the terminations. *Id.* at 19. If any of this were untrue, Defendants could have said so in McDonald's declaration or in declarations from Cavanaugh or Fox. Defendants' failure to do so—and their utter silence on DOGE—speaks volumes.

Nor do Defendants contest the legal proposition that Cavanaugh and Fox, and DOGE more broadly, had no legal authority to terminate NEH's grants. While McDonald states in his declaration that he terminated the grants "in consultation with DOGE," he never explains what this means or denies any of the facts set forth above. *See* McDonald Decl. ¶ 13, ECF No. 80. He does not state that he reviewed the grants before they were terminated, selected which grants to terminate, or even signed the termination notices himself. And, critically, Defendants' briefs do not argue that McDonald—rather than DOGE—exercised his authority as Acting Chairman to terminate the grants. *See* PI Opp. 7; MTD 24-25. Defendants have again forfeited any argument to the contrary. *See supra* Section V.A.I (citing forfeiture cases).

Without mentioning DOGE by name, Defendants argue that ACLS Plaintiffs cannot meet the "demanding" standard for an *ultra vires* claim. MTD 27. But the cases Defendants cite are about ultra vires claims based on *statutory* violations. *Id.* at 27-28 (citing, *inter alia*, *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 26-27 (2d Cir. 2022)). ACLS Plaintiffs' *ultra vires* claim regarding DOGE is constitutional in nature—that DOGE lacks any constitutional authority imbued by Congress to terminate the grants of another federal agency. ACLS PI 18-20. There is no heightened standard when seeking to enjoin a separation-of-powers violation. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). And even if ACLS Plaintiffs did have to show that an officer acted "without any authority whatsoever," MTD 24-25 (quotations omitted), that is what Plaintiffs have shown here with Cavanaugh and Fox.

### 3.  Defendants' Actions Violate the Separation-of-Powers

ACLS Plaintiffs are likely to succeed on their separation of powers Institutional Claims. These claims are not "barred because their essence is statutory." MTD 20. Defendants cite *Dalton v. Specter*, 511 U.S. 462 (1994), but "*Dalton* 's holding merely stands for the proposition that when a statute entrusts a discrete specific decision to the President and contains no limitations on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available." *Reich*, 74 F.3d at 1331. The relevant statutes here—the National Foundation on the Arts and Humanities Act, the appropriations statutes, and the ICA—do not contain "no limitations" on the Executive Branch's execution of its authority. They require NEH to carry out specific duties, 20 U.S.C. §§ 951, 956, principally through grantmaking, *id.* § 956(c), and to spend specific amounts of money through that grantmaking without delay.

Critically, these statutes reflect Congress' exercise of its core constitutional powers to prescribe the mission and duties of federal agencies and to dictate agency spending. ACLS PI 14.

The relevant statutes are highly *relevant* to the constitutional analysis because they embody the "express[] . . . will of Congress" as to NEH's duties and spending. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 (1952) (Jackson. J., concurring). But the ultimate question is whether the Executive has abdicated its constitutional duty to carry out Congress' will and has invaded Congress's spheres of authority. *See, e.g.*, *Aids Vaccine*, 2025 WL 752378, at \*14. They have. The elimination of dozens of NEH programs, shutting down of six entire divisions, termination of 65-70% of NEH's staff, and impoundment of the vast majority of Congress' appropriations have rendered it impossible for NEH to carry out Congress' directives regarding the duties that NEH must perform and how much it must spend in performing them.

### 4. Defendants' Actions Violate the Impoundment Control Act

Regarding the ICA claims, Defendants ignore the ICA's deferral component. They do not dispute that their actions meet the definition of a deferral because they are "delaying the obligation or expenditure" of NEH's appropriated funds. 2 U.S.C. § 682(1). Nor do they dispute that they have delayed these expenditures because of policy reasons, which are not a lawful basis for deferrals. GAO, B-331564, at 6 (Jan. 16, 2020). Defendants' only response is that the statutes do not mandate that *Plaintiffs* receive funding. MTD 22. But ACLS Plaintiffs have not sought restoration of their grants under their Institutional ICA claims.  *See* ACLS PI 10. Rather, they seek a preliminary injunction based on the ICA to have an opportunity to compete for funds.

### 5. Defendants' Funding of the Garden of Heroes Violates the APA

Defendants' decision to use NEH funds to construct a Garden of Heroes also violates the APA. Defendants do not address Plaintiffs' argument that the agency failed to explain why NEH was changing its longstanding position not to fund art creation. *Id.* at 18. The APA requires that an agency acknowledge and explain why it is changing prior positions, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016), and NEH undisputedly did not do so here.

Regarding ACLS Plaintiffs' separate argument that NEH's funding of sculptures is contrary to law, Defendants note that 20 U.S.C. § 952(d) defines "project" to include "programs to foster American artistic creativity" and to "commission works of art." MTD 21. But those provisions describe potential projects for NEH or NEA, and NEH's statute limits its funding of "projects" to those for "the humanities." 20 U.S.C. § 956(c)(10). And § 952(a)-(b) specifically define the "humanities" and "the arts" separately. Only NEH's companion agency, the NEA, may fund projects "concerned with the arts," which includes "sculpture," *id.* §§ 952(b), 954(c).

Defendants' contrary reading—that NEH may fund any projects that "foster American artistic creativity" or "commission works of art"—ignores the statute's careful distinctions between "the humanities" and "the arts." *See* 20 U.S.C. § 952(a)-(b). It also ignores the structure of the statute, which sets forth the respective purviews of NEA and NEH in separate sections. *See* 20 U.S.C. §§ 953-55 (NEA provisions); *id.* §§ 956-57 (NEH provisions). Finally, it is entirely inconsistent with NEH's longstanding position that NEH funds cannot be used for projects "outside the humanities," including the "creation . . of art." ACLS PI 17-18 (citing past NEH statements on this issue). Plaintiffs are likely to succeed on their claim that NEH is unlawfully diverting millions of dollars to a purpose not authorized by statute.

### B. ACLS' Plaintiffs and Their Members Will Suffer Irreparable Harm

As explained *supra* Section I.C, ACLS Plaintiffs' and their members are suffering cognizable harms from each of the challenged actions. These harms are irreparable. With respect to the Grant Termination Claims, Defendants argue that ACLS Plaintiffs and their members "can seek to recover damages arising from the termination of their grants, as well as other contract remedies," "in the Court of Federal Claims." PI Opp. 11. But as explained, ACLS Plaintiffs do not allege breach of contract for which they could seek damages in the Court of Federal Claims.

ACLS Plaintiffs bring only constitutional challenges to the grant terminations, and those constitutional claims could not be brought in the Court of Federal Claims. *Supra*, at 6.

Moreover, Defendants are wrong that the harm from the terminations is only economic. Plaintiffs have shown significant non-economic harms, including years of work that will not be completed, *see* Morreale Dec. ¶¶ 2, 3, 11; Wenc Decl. ¶¶ 4, 12, and lost educational and career opportunities for members' students, *see* Druschke Decl. ¶ 11; Mocarski Decl. ¶ 10; Burkert Decl. ¶ 215; Urbach Decl. ¶ 12; Kuo Decl. ¶ 12; Newman Decl. ¶ 17.

For the Institutional Claims, Defendants again incorrectly focus on whether ACLS Plaintiffs are *certain* to receive grants if the eliminated programs and divisions are restored. PI Opp. 9. The lost opportunity to compete for funds is the injury underlying these claims, and courts regularly conclude that such lost opportunity to compete is irreparable injury. *AGMA Sec. Serv., Inc. v. United States*, 152 Fed. Cl. 706, 740 (2021) (citing cases). Without a preliminary injunction, funding opportunities for the remainder of 2025 will likely be forever lost, especially given the extended time it takes NEH to award grants that must be approved by the National Council on the Humanities (which next meets in July and November to approve awards). The harms from these lost funding opportunities would mainly be *non*-economic—these are *grants* from which grantees do not profit. Rather, grantees use the funds on research, projects, and convenings for which the lost opportunities cannot be compensated. *See, e.g.*, Connolly Decl. ¶¶ 11-16, 25-28; Grossman Decl. ¶¶ 4-9, 20-25, 28; Krebs Decl. ¶¶ 26-31.

Moreover, "[i]rreparable harm is present 'where . . . there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" *Elsevier Inc. v. www.Sci-Hub.org*, 2015 WL 6657363, at *3 (S.D.N.Y. Oct. 30, 2015) (quoting *Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999)).

The longer the eliminated programs and divisions are gone, the harder it would be to ever bring them back. These divisions and programs relied upon investments and networks that will fade. ACLS Plaintiffs could not obtain money damages for the demise of these programs and divisions, but even if they could, "injunctive relief is appropriate where it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (quotations omitted).

Defendants also misconstrue ACLS Plaintiffs' harms from the firing of NEH staff. PI. Opp. 10. As discussed, the harms relate to NEH's inability to perform its statutory duties "irrespective of those harms' connection with the agency-employee relationship." *New York*, 2025 WL 1463009, at *20 (citations omitted). Courts have recognized that mass terminations of agency staff irreparably harm those who rely on the agency. *See id.* at *38.

Finally, with respect to ACLS Plaintiffs' separation of powers claims, Defendants' refusal to carry out the NEH's statutory purposes, and to spend Congress' appropriations, immeasurably harms ACLS Plaintiffs, which are three national humanities organizations that depend on NEH operating as Congress directed and intended. ACLS Plaintiffs and their members "have no entity to replace the essential functions of the NEH." Grossman Decl. ¶ 7; *see also* Krebs Decl. ¶ 31 (describing harm to MLA resulting from loss of institutional knowledge).

### C. The Balance of Equities and Public Interest Merit a Preliminary Injunction

ACLS Plaintiffs have identified numerous ways in which the equities and public interest support a preliminary injunction. ACLS PI 24-25. In contending otherwise, Defendants principally rely on their flawed arguments above on the merits and on irreparable harm. *See* PI Opp. 13-14. They also deny the public interest in the important work that NEH does, claiming

that the public also has an interest in NEH implementing the President's directives to cut spending, no matter whether it contravenes Congress' directives. PI Opp. 14. There is "no public interest" in unlawful Executive action. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.*

### D. The Proposed Injunction Is Appropriately Tailored

Contrary to Defendants' assertions, PI Opp. 16, the proposed injunction is appropriately tailored. ACLS Plaintiffs seek relief only for themselves and their members. Defendants do not challenge ACLS Plaintiffs' associational standing to seek injunctive relief on behalf of their members. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). ACLS Plaintiffs do not seek class relief.

### E. The Court Should Deny Defendants' Request for a Stay and a Bond

Defendants' request that the Court stay any injunction it issues pending appeal is premature. The Court has not yet issued any injunction to be stayed, and Defendants have not filed a motion to stay the (non-existent) injunction. *See* Fed. R. App. P. 8(a); *see AIDS Vaccine*, 2025 WL 752378, at *23 n.21 (denying preemptive request for stay as premature).

The Court should also reject Defendants' request to impose a substantial bond under Rule 65(c). "District Court is vested with wide discretion in the matter of security." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). "[A] district court in its discretion may deny a bond altogether if there is no proof of likelihood of harm to the non-movant." *IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224, 243 (E.D.N.Y. 2024). Plaintiffs are nonprofits already facing financial injury from Defendants' unlawful actions. It would be inequitable to require Plaintiffs to bear the weight of the government's actions to remedy the harms the government has caused. Plaintiffs respectfully request waiver or implementation of a nominal bond.

**III.    The Court Should Deny Plaintiffs' Motion to Dismiss**

For the same reasons that Plaintiffs are likely to succeed on the merits, Plaintiffs have stated claims on all the counts for which they have moved for a preliminary injunction.

Plaintiffs have similarly stated a First Amendment claim. Defendants correctly note that the Supreme Court has held that the Government has discretion to "selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program," MTD 23 (citations omitted). But the Supreme Court has also "made clear that the permissibility of such activity-based restrictions does not mean the government can use subsidies to suppress 'dangerous ideas.'" *Rhode Island Latino Arts v. Nat'l Endowment for the Arts*, 2025 WL 1009026, at *13 (D.R.I. Apr. 3, 2025) (quotations omitted). Indeed, even with discretionary grant-making, the government may not reject "a whole class of projects" based on "viewpoint alone," or use Federal funding to "impose a disproportionate burden calculated to drive certain ideas or viewpoints from the marketplace." *Id.* at *12 (D.R.I. Apr. 3, 2025) (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998)).

ACLS Plaintiffs have plausibly alleged that NEH did just that, because in selecting grants for termination, Defendants allegedly targeted grants from the Biden Administration based on a presumption that they embodied disfavored viewpoints, while only awarding future grants that align with particular political and ideological viewpoints. Compl.¶ 176. Those allegations, if proven true, constitute viewpoint discrimination.

## CONCLUSION

For the above reasons, the Court should issue a preliminary injunction and deny Defendants' motion to dismiss.

June 13, 2025                              Respectfully submitted,

                                          _/s/ John Robinson_____
                                          Daniel F. Jacobson[+]
                                          Lynn D. Eisenberg*
                                          John Robinson
                                          JACOBSON LAWYERS GROUP PLLC
                                          *1629 K Street NW, Suite 300*
                                          *Washington DC, 20006*
                                          *(301) 823-1148*
                                          *dan@jacobsonlawyersgroup.com*
                                          *lynn@jacobsonlawyersgroup.com*
                                          *john@jacobsonlawyersgroup.com*

                                          [+] *Pro hac vice motion forthcoming*
                                          * *Of Counsel, admitted pro hac vice*

                                          *Counsel for Plaintiffs*