IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN COUNCIL OF LEARNED SOCIETIES, et al., <br><br> *Plaintiffs*, <br> v. <br><br> MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National Endowment of the Humanities, et al., <br><br> *Defendants*. | Case No. 1:25-cv-03657 |
| THE AUTHORS GUILD, et al., <br><br> *Plaintiffs*, <br> v. <br><br> NATIONAL ENDOWMENT FOR THE HUMANITIES, et al., <br><br> *Defendants*. | Case No. 1:25-cv-cv-3923 |

**ACLS PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING**
*TRUMP V. CASA*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................3

ARGUMENT ................................................................................................................................5

    I.    *CASA* Does Not Affect Plaintiffs' Institutional Claims .......................................5

        A. The Requested Relief Is Necessary to Provide Complete Relief ...................5

        B. The APA Authorizes Full Vacatur and Stays of Agency Actions .................8

    II.   *CASA* Does Not Affect Plaintiffs' Grant Termination Claims ..........................10

CONCLUSION ...........................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004 (D.C. Cir. 2022) ...................... 6

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024) ............................. 9

*Diamond Alternative Energy, LLC v. EPA*, 2025 WL 1716141 (U.S. June 20, 2025) ................... 4

*Guertin v. United States*, 743 F.3d 382 (2d Cir. 2014) ............................................................... 2, 9

*Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232 (S.D.N.Y. 2020) ................................. 10

*N.Y. Legal Assistance Grp. v. Cardona*, No. 20 CIV. 1414 (LGS),
    2025 WL 871371 (S.D.N.Y. Mar. 20, 2025) ............................................................................. 9

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ...................... 9

*Rural & Migrant Ministry v. EPA*, 565 F. Supp. 3d 578 (S.D.N.Y. 2020) ................................... 10

*Shaw v. Hunt*, 517 U.S. 899 (1996) ................................................................................................ 4

*Trump v. CASA*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ............................. *passim*

**Statutes**

5 U.S.C. § 705 .......................................................................................................................... 2, 8, 10
5 U.S.C. § 706(2) ................................................................................................................... 2, 4, 8, 10

**Rules**

Fed. R. Civ. P. 71 ............................................................................................................................. 8

**INTRODUCTION**

The Court has asked whether the Supreme Court's recent decision in *Trump v. CASA*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025), affects the "ability of this court to issue relief with respect to any specific discrete aspects of the complaints." Order, ECF No. 105. For ACLS Plaintiffs, it does not.

*CASA* addressed whether Congress has afforded federal courts authority to issue "universal injunctions"—*i.e.*, injunctions that "prohibit enforcement of a law or policy against *anyone*, anywhere." 2025 WL 1773631, at *4 n.1. The Court granted the government's application to partially stay the relevant district court injunctions, "but only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at *15. The Court reaffirmed that district courts may issue injunctions as necessary to afford "complete relief" to a plaintiff, including where there is only "one feasible option" to redress the plaintiff's injury. 2025 WL 1773631, at *11. The majority and Justice Kavanaugh in concurrence also made clear that the Court did not address the unique authorities that Congress has granted courts under the Administrative Procedure Act to preliminarily and permanently set aside final agency actions.

*CASA* does not affect ACLS Plaintiffs' requested relief as to either their "Institutional Claims" or their "Grant Termination Claims." For both types of claims, ACLS Plaintiffs seek only that which is necessary to provide "complete relief" to them and their members. For none of the claims do ACLS Plaintiffs seek an injunction that would "prohibit enforcement of a law or policy against" non-plaintiffs, 2025 WL 1773631, at *4 n.1, or that would provide any other relief to non-plaintiffs that would not benefit ACLS Plaintiffs and their members.

With respect to the Institutional Claims, ACLS Plaintiffs challenge discrete agency actions to eliminate NEH divisions and programs, mass fire staff, fund the Garden of Heroes, and delay spending or outright refuse to spend the funds Congress appropriated to NEH. *See* ACLS PI Br. 10, ECF No. 25. The injuries to ACLS Plaintiffs and their members from these actions are the lost opportunities to compete for funds and the loss of other tangible benefits that the eliminated divisions and staff provided to these organizations. The only way to provide complete relief on these claims is to enjoin the challenged actions. There is no way, for example, to remedy ACLS Plaintiffs' lost opportunity to compete for grant funds under a particular program without enjoining the elimination of the program. Whether such an injunction has "the practical effect" of benefitting nonparties does not affect ACLS Plaintiffs' right to the relief they seek. *CASA*, 2025 WL 1773631, at *11.

Independently for the Institutional Claims, this Court has authority under the APA to "set aside" the unlawful agency actions. 5 U.S.C. § 706(2). The Second Circuit and other courts have held that this relief means vacating the action in full. *See, e.g.*, *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014). And as preliminary relief to that final relief, this Court may either "preliminarily set aside" the agency actions, *CASA*, 2025 WL 1773631, at *19 (Kavanaugh, J., concurring), or stay the agency actions under 5 U.S.C. § 705.

As for the Grant Terminations Claims, *CASA* has no bearing at all on ACLS Plaintiffs' requested relief. ACLS Plaintiffs seek to enjoin only the termination of their grants and the grants of their members. They do not seek any relief as to the terminated grants of nonparties to this action.

## BACKGROUND

*CASA* concerned the enforcement of an Executive Order denying birthright citizenship to the children of certain non-citizens. 2025 WL 1773631, at *4. The Court reviewed three different injunctions entered by three different district courts; one of the three cases was brought by States, another by individuals, and the third by immigrant-rights associations who brought claims on behalf of their members. The plaintiffs sought, and obtained, preliminary injunctions enjoining enforcement of the Executive Order against plaintiffs *and* against nonparties who were neither named as plaintiffs in the complaint nor members of the plaintiff associations. *Id.* at *5. The government then sought to partially stay those injunctions in the Supreme Court insofar as they barred enforcement against nonparties. *Id.*

The Court granted partial stays of the injunctions—"but only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at *15. The Court held that federal courts generally lack equitable authority to issue "universal injunctions" that directly protect nonparties not before the Court, where such an injunction is not needed to provide relief to plaintiffs. *Id.* at *10. The Court repeatedly made clear, however, that district courts may award "complete relief" to the parties before it, a principle that has "deep roots" in equity jurisprudence. *Id.*

The Court also recognized that there may be cases in which the Court has "only one feasible option" to redress the plaintiff's injury completely, and that remedy might benefit nonparties. For instance, "[t]here may be . . . injuries for which it is all but impossible for courts to craft relief that is complete *and* benefits only the named plaintiffs. *Id.* at 11 n.12. As an example of such a case, the Court cited racial gerrymandering claims, where the only way to remedy the injury to a plaintiff living in a racially gerrymandered district is to redraw the district

3

so as to benefit all persons who live in that district. *See id.* (citing *Shaw v. Hunt*, 517 U.S. 899 (1996)).

The Court held that a universal injunction was unnecessary to afford complete relief to the individual and association plaintiffs in *CASA*. "[P]rohibiting enforcement of the Executive Order against the child of an individual pregnant plaintiff would give that plaintiff complete relief: Her child will not be denied citizenship." *Id.* And "[e]xtending the injunction to cover similarly situated individuals would not render *her* relief any more complete." *Id.* The Court did not question, however, the ability of the associational plaintiffs to obtain relief for their members.

The Court explained that the complete-relief inquiry was "more complicated" as to the State plaintiffs, because the relevant injunction "d[id] not purport to directly benefit nonparties." *Id.* Rather, the district court had concluded that a universal injunction was necessary "to provide the States *themselves* with complete relief." *Id.* The Court accordingly remanded to the district court to determine in the first instance whether a narrower injunction may be appropriate, while recognizing that the court may conclude that a narrower injunction would be infeasible under the circumstances. *Id.* at *12.

The Court also expressly did not address the "distinct question" whether the APA authorizes federal courts to vacate federal agency action. *Id.* at *8 n.10. In a concurrence, Justice Kavanaugh noted that "under the Administrative Procedure Act, plaintiffs may ask a court to preliminarily 'set aside' a new agency rule. *Id.* at *19 (Kavanaugh, J., concurring) (citing 5 U.S.C. § 706(2)).[1]

---

[1] The Supreme Court issued another decision a week before *CASA* that has relevance here. In *Diamond Alternative Energy, LLC v. EPA*, 2025 WL 1716141 (U.S. June 20, 2025), fuel producers alleged that certain California regulations "pose a legal barrier to the fuel producers'

# ARGUMENT

*CASA* does not affect ACLS Plaintiffs' requested relief as to either their Institutional Claims or their Grant Termination Claims. For both sets of claims, ACLS Plaintiffs seek only preliminary relief that would directly benefit ACLS Plaintiffs, and the full scope of requested relief is necessary to provide "complete relief" to ACLS Plaintiffs. On the Institutional Claims, preliminarily enjoining the elimination of discrete programs, divisions, and staffs is necessary to provide relief for the injuries of ACLS Plaintiffs and their members—the loss of opportunities to compete for grant funds and to obtain the other concrete benefits to ACLS Plaintiffs that the eliminated offices and staff provided. Moreover, the APA independently authorizes the court to grant such relief on the Institutional Claims. The Second Circuit has held that the default remedy for APA claims is to vacate and set aside an unlawful agency action, and this Court may provide that relief on an interim basis either by preliminarily setting aside the challenge actions or by staying them.

As for ACLS Plaintiffs' Grant Terminations Claims, ACLS Plaintiffs seek only to enjoin the termination of the grants that they and their members held. ACLS Plaintiffs seek no relief on these claims for non-parties.

## I.     *CASA* Does Not Affect Plaintiffs' Institutional Claims

### A.     The Requested Relief Is Necessary to Provide Complete Relief

ACLS Plaintiffs do not seek a universal injunction as to their Institutional Claims that would provide relief beyond that which would benefit ACLS Plaintiffs and their members.

---

sale of their products and *deny them the opportunity to compete* in the marketplace." *Id.* at *9 (emphasis added). The Court held that the producers had Article III standing, agreeing with the producers' claim that enjoining the regulations "would allow them to compete more fully in the marketplace and thus provide redress for purposes of Article III." *Id.* The Court thus recognized that lost opportunity to compete is redressable harm, as ACLS Plaintiffs have asserted here.

As explained in prior briefs, ACLS Plaintiffs challenge discrete actions through their Program Claims: the elimination of 22 NEH programs, six NEH divisions, and 65-70% of staff through a Reduction-in-Force; the funding of the Garden of Heroes; and the deferral of spending appropriations. ACLS Reply, ECF No. 86 at 7-8.

For the program eliminations and deferral of appropriations, the injury to ACLS Plaintiffs and their members is the lost opportunity to compete for the funds. *Id.* The Supreme Court just confirmed in *Diamond* that "lost opportunity to compete" is cognizable and remediable harm, 2025 WL 1716141, at *9, and ACLS Plaintiffs and their members have established that they are "ready, willing, and able to perform the [awards] for which [they] wished to compete," *Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1016 (D.C. Cir. 2022). ACLS Plaintiffs and their members have submitted unrebutted declarations that they would compete for at least the following 18 of the 22 eliminated programs:

1. Humanities Initiatives at Hispanic-Serving Institutions (ECF No. 102)
2. Humanities Connections (ECF Nos. 95, 102)
3. Spotlight on Humanities in Higher Education (ECF Nos. 92, 93)
4. State and Impact of the Humanities (ECF Nos. 89, 91, 97)
5. Digital Humanities Advancement Grants (ECF Nos. 88, 95, 96, 98, 101 102, 103)
6. Dangers and Opportunities of Technology (ECF Nos. 90, 95, 97, 98)
7. Institute for Advanced Topics in the Digital Humanities (ECF No. 28)
8. Cultural and Community Resilience (Kingstone Decl. ¶ 4)[2]

---

[2]* In preparing this supplemental memorandum, Plaintiffs realized that they had not filed the declaration of Peter Kingstone from Montclair State University, which Mr. Kingston signed on June 5, 2025, prior to Plaintiffs' filing of their combined opposition to the motion to dismiss and reply in support of their motion for a preliminary injunction. The declaration is attached.

9. Research and Development (ECF Nos. 95, 96)

10. Humanities Collections and Reference Resources (ECF Nos. 95, 96)

11. Dynamic Language Infrastructure (Kingstone Decl. ¶ 4)*

12. Digital Projects for the Public (ECF Nos. 96, 98, 100)

13. Summer Stipends (ECF No. 96, 97, 98, 103)

14. Archaeological and Ethnographic Research (Kingstone Decl. ¶ 4)*

15. Fellowship Programs at Independent Research Institutions (ECF Nos. 88, 96 100)

16. Institutes for K-12 Educators (ECF Nos. 89, 94)

17. Institutes for Higher Education Faculty (ECF Nos. 88, 89, 95, 97)

18. Fellowships Open Book Programs (ECF No. 99)

There is no practical way to provide ACLS Plaintiffs and their members an opportunity to compete for funds under these programs other than enjoining the elimination of the programs.

The same is true for Defendants' elimination of six NEH divisions. ACLS Plaintiffs and their members are suffering harm from the lost opportunity to compete for grants that these divisions have offered and would continue to offer. ACLS PI Reply 13-14. In addition, ACLS Plaintiffs and their members are suffering other harms from these division eliminations, in entirely losing the ability to work closely with these offices to grow relevant disciplines and address challenges that are central to ACLS Plaintiffs' missions. *Id.* at 14. Similar harms inure to ACLS Plaintiffs and their members from the firing of 65-70% of NEH staff, whom ACLS Plaintiffs and their members have depended upon in numerous ways in carrying out their organizations' work and core missions. *Id.* ACLS Plaintiffs and their members also all suffer from the illegal funding of the Garden of Heroes, because it deprives each of them an opportunity to compete for those diverted funds.

For all of the challenged actions underlying the Institutional Claims, it is simply not possible to craft a remedy that is "complete *and* benefits only the named plaintiffs. *CASA*, 2025 WL 1773631, at *11 n.12. Unlike the individual and associational plaintiffs in *CASA*, Plaintiffs are not seeking to enjoin the enforcement of a federal policy against nonparties. Rather, like a voter in a gerrymandered district, the court "has only one feasible option" to afford Plaintiffs complete relief: enjoin Defendants' unlawful discrete actions eliminating programs, divisions, and staff, delaying the spending of appropriations, and funding the Garden of Heroes. 2025 WL 1773631, at *11. While such an injunction may have "the practical effect" of benefitting other nonparties, that does not make it the kind of "universal injunction" that protects nonparties that was at issue in *CASA*. *Id.* "As a matter of law, the injunction's protection" would extend only to ACLS Plaintiffs—as evidenced by the fact that only ACLS Plaintiffs could enforce the injunction against the government. *Id.*; *see also* Fed. R. Civ. P. 71 (allowing nonparties to enforce court orders only where the order "grants relief for [the] nonparty").

### B.    The APA Authorizes Full Vacatur and Stays of Agency Actions

The Court independently has authority to provide the relief requested on the Institutional Claims because Congress has specifically authorized such relief in 5 U.S.C. §§ 705 and 706. *CASA* emphasized that its holding was purely statutory—that "under the Judiciary Act of 1789," Congress did not provide federal district courts "equitable authority to issue universal injunctions." 2025 WL 1773631, at *5. The Court emphasized that its holding did not address the authority Congress has granted courts under authority statutes, including under the Administrative Procedure Act for challenges to final agency actions. *Id.* at *8 n.10; *see also id.* 19 (Kavanaugh, J., concurring).

It is well-established that the default remedy Congress has provided under 5 U.S.C. § 706(2) is the precise relief that ACLS Plaintiffs seek on their APA claims: vacating and setting

8

aside the challenged agency actions in full. Compl., Prayer for Relief ¶ A. "The APA empowers federal courts to 'hold unlawful and set aside agency action' that, as relevant here, is arbitrary and capricious or is contrary to law." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826 (2024) (Kavanaugh, J., concurring). "[T]he text and history of the APA, [and] the longstanding and settled precedent adhering to that text and history," makes clear that to "set aside" an unlawful agency action means to vacate that action—"in much the same way that an appellate court vacates the judgment of a trial court." *Id.* at 830. Thus, even if "equitable relief is ordinarily limited to the parties in a specific case," as the Court has now held in *CASA*, "in the APA, Congress did in fact depart from that baseline and authorize vacatur." *Id.* at 838.

The Second Circuit and other Courts of Appeals have long held that vacatur is the default remedy in APA challenges to administrative action. The Second Circuit has held that, "[i]n the usual case, when an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings." *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014); *N.Y. Legal Assistance Grp. v. Cardona*, No. 20 CIV. 1414 (LGS), 2025 WL 871371, at *3 (S.D.N.Y. Mar. 20, 2025) ("By the APA's plain terms[,] the normal remedy in a successful APA challenge is to set aside—that is, vacate—the final agency action at issue." (quotation omitted)); *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (when agency action is found unlawful under the APA, "the ordinary result is that the rules are vacated—not that their application to the individual petitions is proscribed"). *CASA* does nothing to overrule this precedent, which remains binding in this Circuit.

In addition to authorizing courts to vacate agency actions as *final* relief on an APA claim, Congress has authorized courts to enter *preliminary* relief that has the same effect on an interim basis. There are two statutory paths to such preliminary relief. First, as Justice Kavanaugh

9

suggested in *CASA*, "in cases under the Administrative Procedure Act, plaintiffs may ask a court to preliminarily 'set aside' a new agency rule." 2025 WL 1773631, at *19 (citing 5 U.S.C. § 706(2)). Here, the Court may "preliminarily set aside" the challenged agency actions underlying the Institutional Claims.

Second, the APA authorizes district courts to "stay" unlawful agency action preliminarily, pending final adjudication on the merits, to "prevent irreparable injury." *See* 5 U.S.C. § 705. This provision "is a corollary to that in [5 U.S.C. § 706,] which provides that when agency action is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' the appropriate remedy is for the court to hold the agency action unlawful and to set it aside." *Rural & Migrant Ministry v. EPA*, 565 F. Supp. 3d 578, 605 (S.D.N.Y. 2020). "The standard for a stay of agency action under 5 U.S.C. § 705 is the same as the standard for a preliminary injunction." *Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232, 267 (S.D.N.Y. 2020). Accordingly, if this Court were to find that Plaintiffs satisfy the preliminary injunction factors, § 705 authorizes the Court to stay the challenged agency actions. Again, such statutorily authorized relief is distinct from the "universal injunction" at issue in *CASA*, and nothing in *CASA* calls into question the Court's ability to issue such a stay under § 705.

### C. *CASA* Does Not Affect Plaintiffs' Grant Termination Claims

CASA clearly has no effect on ACLS Plaintiffs' Grant Termination Claims. ACLS Plaintiffs have not sought a universal injunction ordering Defendants to restore the grants of nonparties. They have sought an injunction only as to the termination of the grants of ACLS Plaintiffs and their members. *See* Proposed Order, ECF No. 24-1 (proposing that the Court order that Defendants "are preliminarily enjoined from enforcing or giving effect to the termination notices [for] *Plaintiffs'* grants and the grants of *Plaintiffs' members* (emphasis added)); see also

10

Compl, Request for Relief ¶¶ B, D. The Court unquestionably has authority to award this plaintiff-specific relief.

## CONCLUSION

*CASA* does not affect the Court's ability to award ACLS Plaintiffs' requested relief.

July 2, 2025                                    Respectfully submitted,

/s/ John Robinson
Daniel F. Jacobson[+]
Lynn D. Eisenberg[*]
John Robinson
JACOBSON LAWYERS GROUP PLLC
*1629 K Street NW, Suite 300*
*Washington DC, 20006*
*(301) 823-1148*
*dan@jacobsonlawyersgroup.com*
*lynn@jacobsonlawyersgroup.com*
*john@jacobsonlawyersgroup.com*

[+] *Pro hac vice motion forthcoming*
[*] *Of Counsel, admitted pro hac vice*

*Counsel for Plaintiffs*

11