**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AMERICAN COUNCIL OF LEARNED SOCIETIES,
      633 Third Avenue, 8th Floor New York, NY 10017,

AMERICAN HISTORICAL ASSOCIATION,
      400 A Street SE Washington, DC 20003,

MODERN LANGUAGE ASSOCIATION,
      85 Broad Street, New York, NY 10004,

          *Plaintiffs,*

      v.

MICHAEL MCDONALD, in his official capacity as Acting
Chairman of the National Endowment for the Humanities,
      400 7th St SW, Washington, DC 20506,

NATIONAL ENDOWMENT FOR THE HUMANITIES,
      400 7th St SW, Washington, DC 20506,

UNITED STATES DOGE SERVICE,
      736 Jackson Pl NW Washington, DC 20503,

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service,
      736 Jackson Pl NW Washington, DC 20503,

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration,
      1800 F St NW Washington, DC 20006,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,
      1800 F St NW Washington, DC 20006,

          *Defendants*.

No. 25 Civ. 3657 (CM)

THE AUTHORS GUILD, WILLIAM GOLDSTEIN,
ELIZABETH KADETSKY, VALERIE ORLANDO,
KATALIN BALOG, BENJAMIN HOLTZMAN,
LEE JASPERSE, and NICOLE JENKINS,
on behalf of themselves and all others similarly situated,

*Plaintiffs,*

v.

NATIONAL ENDOWMENT FOR THE HUMANITIES;                No. 25 Civ. 3923 (CM)

MICHAEL MCDONALD, in his official capacity as Acting
Chairman of the National Endowment for the Humanities;

UNITED STATES DOGE SERVICE;

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service;

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration; and,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,

*Defendants.*

**SUPPLEMENTAL MEMORANDUM OF LAW ADDRESSING THE IMPACT OF THE
SUPREME COURT'S DECISION IN *TRUMP V. CASA***

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2699 / 2652
Email: rachael.doud@usdoj.gov

MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
– Of Counsel –

## TABLE OF CONTENTS

**PAGE**

I. ANY DECLARATORY OR INJUNCTIVE RELIEF SHOULD BE CAREFULLY TAILORED TO ADDRESS THE ALLEGED HARMS TO THE NAMED PLAINTIFFS ................................................................................................1

II. THE PRINCIPLE LAID OUT IN *CASA* APPLIES TO ANY EQUITABLE RELIEF PLAINTIFFS SEEK UNDER THE APA.................................................................5

CONCLUSION.................................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almakalini v. McAleenan,*
  527 F. Supp. 3d 205 (E.D.N.Y. 2021) ...................................................................... 7

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
  603 U.S. 799 (2024) ................................................................................................... 7, 8

*Doran v. Salem Inn, Inc.,*
  422 U.S. 922 (1975) ...................................................................................................... 1

*East Bay Sanctuary Covenant v. Garland,*
  994 F.3d 962 (9th Cir. 2021) ....................................................................................... 7

*Greater Chautauqua Fed. Credit Union v. Quattrone,* Case,
  No. 1:22-cv-2753 (MKV), 2023 WL 6037949 (S.D.N.Y. Sept. 15, 2023) ................ 4

*Harmon v. Thornburgh,*
  878 F.2d 484 (D.C. Cir. 1989) ..................................................................................... 7

*Hecht Co. v. Bowles,*
  321 U.S. 321 (1944) ...................................................................................................... 8

*Kane v. DeBlasio,*
  19 F.4th 152 (2d Cir. 2021) .......................................................................................... 5

*New York v. U.S. Dep't of Health & Human Servs.,*
  414 F. Supp. 3d 475 (S.D.N.Y. 2019) ......................................................................... 7

*NRDC v. NHTSA,*
  894 F.3d 95 (2d Cir. 2018) ........................................................................................... 7

*Pennsylvania v. President of the United States,*
  930 F.3d 543 (3d Cir. 2019) ......................................................................................... 7

*Time Warner Cable v. FCC,*
  729 F.3d 137 (2d Cir. 2013) ......................................................................................... 7

*Trump v. CASA, Inc.,*
  606 U.S. ___ (2025) .............................................................................................. *passim*

*United States v. Texas,*
  599 U.S. 670 (2023) .............................................................................................. *passim*

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ............................................................................................................ 8

**Statutes**

5 U.S.C. § 703 ................................................................................................................... 6, 7, 8

5 U.S.C. § 706 ................................................................................................................. 5, 6, 8

Defendants respectfully submit this memorandum of law in response to the Court's June 27, 2025 order, directing the parties to "provide the court with their views about how the Supreme Court's June 27, 2025 opinion in *Trump v. CASA* impacts the requests for relief in these cases and the ability of this court to issue relief with respect to any specific discrete aspect of the complaints." Dkt. No. 105.[1]

## I.    ANY DECLARATORY OR INJUNCTIVE RELIEF SHOULD BE CAREFULLY TAILORED TO ADDRESS THE ALLEGED HARMS TO THE NAMED PLAINTIFFS

In *CASA*, the Supreme Court addressed "universal injunctions," which it defined as injunctions that "prohibit enforcement of a law or policy against *anyone*," as opposed to injunctions "prohibiting executive officials from enforcing a challenged law or policy only against the plaintiffs in the lawsuit." *Trump v. CASA, Inc.*, 606 U.S. ___ (2025), slip op. ("Op.") 1. The Supreme Court explained that universal injunctions "likely exceed the equitable authority that Congress has granted federal courts," as universal injunctions have no historical analogue in equity practice. Op. 1-2, 5-11. The Court reiterated its prior pronouncement that "'[n]either declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs.'" Op. 8 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).

The declaratory and injunctive relief Plaintiffs seek in this case is impermissibly broad because it violates the principle, reinforced in *CASA*, that injunctive and other equitable relief can only be accorded to the "plaintiffs in the lawsuit." Op. 1-2 5-11. As discussed in Defendants' motion to dismiss and in Defendants' opposition to Plaintiffs' motions for preliminary injunctions, Plaintiffs seek injunctive relief well beyond the reinstatement of their own grants and the grants of

---

[1] Unless otherwise indicated, docket numbers cited are those in Case No. 25-cv-03657 (CM).

their members.  In particular, Plaintiffs in *American Council of Learned Societies v. McDonald* (the "ACLS Plaintiffs") ask this Court to enjoin Defendants from "enforcing and giving effect to their decisions to eliminate or nearly eliminate entire divisions, to shut down entire programs, to mass fire staff, and to delay spending or outright refuse to spend the funds appropriated to NEH by Congress," and to enjoin Defendants to "obligate and spend the full amount of funds that Congress has appropriated to NEH, including for NEH grants, without intentional delay." *American Council of Learned Societies v. McDonald*, No. 25-cv-3657 (CM), Complaint, Dkt. No. 1 ("ACLS Compl.") Request for Relief ¶¶ C, E.  They also ask the Court to "[d]eclare as unlawful and set aside" Defendants' "termination of grants" generally, as well as the decisions to eliminate divisions and programs, terminate employees, and "delay spending or outright refuse to spend the funds appropriated to NEH by Congress." *Id.* Request for Relief ¶¶ A, B.  Plaintiffs in *The Authors Guild v. National Endowment for the Humanities* (the "Authors Guild Plaintiffs") ask the Court to enjoin Defendants "from giving effect to the Mass Termination and accompanying Termination Notices or any similar future action effectively terminating, contrary to statute and the Constitution, duly awarded NEH grants."  *The Authors Guild v. National Endowment for the Humanities*, No. 25-cv-3923 (CM), Amended Complaint, Dkt. No. 22 ("Authors Guild Compl.") Prayer for Relief ¶ C.  The Authors Guild Complaint defines "Mass Termination" as "a blanket campaign to cancel most or all NEH grants, in which Defendants "sent at least 1,400 grantees the same Termination Notice between April 1 and April 3, 2025," without limiting that term to the grants of the Authors Guild Plaintiffs and members of The Authors Guild.  *Id.* ¶ 6.  The Authors Guild Plaintiffs also seek declaratory relief "declar[ing] as unlawful and set[ting] aside Defendants' Mass Termination and accompanying Termination Notices" with respect to Plaintiffs, members of The Authors Guild, and members of the proposed classes.  *Id.*, Prayer for Relief ¶¶ A,

B.  Plaintiffs also have moved for broad preliminary injunctions that are the same or nearly the same as the permanent injunctions they seek in the Complaints.  *See* Dkt. Nos. 52, 65.  The Court's analysis in *CASA*, and the arguments advanced by Defendants here, apply to both the preliminary and permanent injunctions that Plaintiffs seek.[2]

Pursuant to the Court's opinion in *CASA*, if Plaintiffs demonstrate an entitlement to any injunctive or declaratory relief, that relief should be tailored to address the alleged harms to Plaintiffs—in particular, the termination of grants previously awarded to Plaintiffs and Plaintiffs' members.[3]  Op. 1-2, 5-11, 16 (explaining that the "equitable tradition has long embraced the rule that courts general may administer complete relief *between the parties*") (quotations omitted) (emphasis added).  An injunction or declaration invalidating the agency's decisions to terminate staff, *see* ACLS Compl. Request for Relief ¶¶ A, C, to eliminate programs and divisions, *see id.*, or to terminate grants other than the grants previously awarded to Plaintiffs or their members, *see* ACLS Compl. Request for Relief ¶ B; Authors Guild Compl. Prayer for Relief ¶¶ A, B, C, as well as an injunction requiring the agency to spend funds by a date certain or on certain projects, *see* ACLS Compl. Request for Relief ¶ E, would exceed the Court's power to grant equitable relief, as the Supreme Court explained in *CASA*.  Op. 1-2, 5-11, 26.  While the Court in *CASA* acknowledged that a "court of equity may fashion a remedy that awards complete relief," *id.* at 15, Plaintiffs here may obtain complete relief by having their terminated grants restored without a broader injunction. *Id.* at 17 (explaining that relief in birthright citizenship case had been provided to the named

---

[2] *CASA* addressed preliminary injunctions entered by district courts, *see* Op. 2, but the Court did not limit its analysis, nor its conclusion that universal injunctions likely exceed the equitable authority of federal courts, to that context, *see generally* Op.

[3] For the reasons discussed in Defendants' previously submitted briefs, this Court lacks subject matter jurisdiction over the termination of Plaintiffs' grants.  Defs' MSJ Br. 6-9; Defs' MSJ Reply Br. 1-4, Dkt. No. 104; Defs' PI Opp. Br. 7.

plaintiff whose child would not be denied citizenship, but finding that "[e]xtending the injunction to cover all similarly situated individuals would not render *her* relief any more complete").

Plaintiffs may claim incorrectly that they cannot obtain complete relief without injunctions requiring NEH to restore terminated programs, divisions, and staff and preventing NEH from terminating grants in the future because such actions will impact them down the road. *See, e.g.*, ACLS Compl. ¶¶ 94, 99, 104, 111-24. Such claims, however, are remote and speculative, *see* Defs' MSJ Br. 13-14, Dkt. No. 77; Defs' PI Opp. Br. 8-10, Dkt. No. 81, and a sweeping injunction on that basis is unnecessary to restore Plaintiffs' terminated grants. As the Supreme Court emphasized in *CASA*, "federal courts do not exercise general oversight of the Executive Branch; they resolve cases and controversies consistent with the authority Congress has given them." Op. 26.

Moreover, the Supreme Court observed in *CASA* that "complete relief is not a guarantee—it is the maximum a court can provide." Op. 18. Accordingly, even if the Court were to agree that Plaintiffs could only obtain complete relief through sweeping injunctions or declarations that reach beyond redressing Plaintiffs' individual, concrete grant terminations, *CASA* makes clear that the Court retains the authority, considering the equities, to fashion narrower relief. Op. 18-19.

Finally, notwithstanding the Authors' Guild's styling of its Complaint as a proposed class action, the principle stated by the Supreme Court in *CASA* requires that any preliminary injunction be carefully tailored to apply only to the named Authors Guild Plaintiffs and their members, and not to all members of the classes proposed by those Plaintiffs, because no class has been certified to date. *See Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22-cv-2753 (MKV), 2023 WL 6037949, at *6 (S.D.N.Y. Sept. 15, 2023) (discussing "the Second Circuit's warning that 'the rule that injunctive relief should be narrowly tailored to prevent harm to the *parties before the*

*court* 'applies with special force where,' as here, 'there is no class certification'") (emphasis in original) (quoting *Kane v. DeBlasio*, 19 F.4th 152, 174 (2d Cir. 2021)).

## II.    THE PRINCIPLE LAID OUT IN *CASA* APPLIES TO ANY EQUITABLE RELIEF PLAINTIFFS SEEK UNDER THE APA

If Plaintiffs argue that the principle reaffirmed in *CASA* does not apply to the relief they seek pursuant to the Administrative Procedure Act ("APA"), such an argument is misguided. The Supreme Court in *CASA* noted that the decision did not resolve "the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." Op. 11 n.10 (citing 5 U.S.C. § 706(2), which authorizes courts to "hold unlawful and set aside agency action"). As discussed below, however, nothing in the APA authorizes a court to vacate an agency rule, and relief in APA cases is limited to the traditional scope of equitable relief. Accordingly, the scope of relief available under the APA here must be consistent with the principle articulated in *CASA*. Even if the Court were to find that the APA "allows federal courts to vacate federal agency action," Op. 11 n.10, the Court still should afford only party-specific declaratory or injunctive relief.

While the APA authorizes courts to "hold unlawful and set aside agency action," 5 U.S.C. § 706(2) of the APA; *see* ACLS Compl. ¶ 129; ACLS Compl. Request for Relief ¶ A; Authors Guild Compl. ¶ 145; Authors Guild Compl. Prayer for Relief ¶ A, that language may not be equated with the wholesale vacatur of agency action. There is nothing in the APA that permits vacatur of agency action, much less the expansive unwinding of NEH's overall grant termination decisions, employment actions, and program restructuring that Plaintiffs seek here. *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring) (in a case in which states sought vacatur of executive actions based on alleged APA violations, writing that the APA "does not say anything about 'vacating' agency action ('wholesale' or otherwise)"); *see also* Defs' MSJ Br. 16-18. The

history and structure of the APA support that the better reading of "set aside" is that in reaching a decision, a court should "disregard" the action taken by the agency in determining the outcome of a case. *Texas*, 599 U.S. at 695 (Gorsuch, J., concurring) ("Routinely, a court will disregard offensive provisions like these and proceed to decide the parties' dispute without respect to them."). Here, for example, assuming *arguendo* that the Court had jurisdiction over Plaintiffs' grant termination claims, that might mean that the Court would "disregard" Executive Order 14222 in determining whether to enjoin the termination of Plaintiffs' individual grants.[4]

The structure of the APA likewise suggests that the "set aside" language in Section 706 does not permit a remedy of vacating agency action. Section 706 is the "Scope of review" section of the APA, not the remedies section. "And ordinarily, when we think about the scope of a court's review, we do not think about the remedies that the court may authorize after reaching its judgment on the merits. Instead, we think about the court's decisional process leading up to that judgment." *Id.* at 696. From that perspective, reading "set aside" to mean "disregard" rather than "vacate" fits squarely within how a Court goes about reviewing the questions at issue. *See id.* ("Understanding 'set aside' as a command to disregard an unlawful rule in the decisional process fits perfectly within this design. Understanding the phrase as authorizing a remedy does not.").

Indeed, the "set aside" language does not appear in Section 703 of the APA, which addresses the remedies available under the APA. Section 703 permits "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction." 5 U.S.C. § 703. "Conspicuously

---

[4] The grant terminations at issue here were carried out in compliance with Executive Order 14222, which required that agency heads "terminate or modify" existing contracts and grants to reduce overall federal spending. *See* Declaration of Michael McDonald ¶ 13, dated June 5, 2025, Dkt. No. 80.

missing from the list is vacatur." *Texas*, 599 U.S at 698 (Gorsuch, J., concurring).  It would not make sense for Congress to have listed most remedies in Section 703 "only to bury another (and arguably the most powerful one) in a later section addressed to scope of review." *Id.*

Defendants acknowledge that the Second Circuit, district courts in this circuit, and several courts of appeal have on occasion permitted the vacatur of agency regulations under the APA.  *See, e.g., East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2021); *NRDC v. NHTSA*, 894 F.3d 95, 115–16 (2d Cir. 2018); *Time Warner Cable v. FCC*, 729 F.3d 137, 171 (2d Cir. 2013); *Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C. Cir. 1989); *Pennsylvania v. President of the United States*, 930 F.3d 543, 575–76 (3d Cir. 2019), *rev'd on other grounds*, 140 S. Ct. 2367 (2020); *Almakalini v. McAleenan*, 527 F. Supp. 3d 205, 221 (E.D.N.Y. 2021); *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 575–76 (S.D.N.Y. 2019).  However, all of these decisions postdate the APA by more than four decades and are not probative of the Act's original meaning and legislative intent.  In addition, these decisions did not confront or reconcile universal vacatur of an agency's action with the APA's text, structure and history.  These decisions therefore do not bind this Court or preclude this Court from reaching a different conclusion.  *See Texas*, 599 U.S. at 701 (Gorsuch, J., concurring) ("At the end of the day, the States fall back on lower court decisions.  'For more than 30 years,' they say, 'vacatur has been the ordinary result when the D.C. Circuit determines that agency regulations are unlawful.' . . . Doubtless, to the extent those decisions are carefully reasoned, they merit respectful consideration.  But, equally, they do not bind us.").

Moreover, to the extent Plaintiffs may rely on Justice Kavanaugh's concurring opinion in *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024), which would permit vacatur as relief in an APA action, that decision necessarily did not take into account the

Court's later ruling in *CASA*. With respect to statutory interpretation on the meaning of "set aside," Defendants respectfully submit that the concurring opinion by Justice Gorsuch in *Texas* is more persuasive than Justice Kavanaugh's concurring opinion in *Corner Post*.

If the Court agrees that the APA does not authorize vacatur and that the remedies available under the APA are limited to traditional equitable remedies, pursuant to Section 703 of the APA, *CASA* then limits the relief available under the APA to "the party-specific principles that permeate our understanding of equity." Op. 8. Thus, to the extent Plaintiffs' requests for declarations and injunctions are premised on the APA, they should still be carefully tailored to addressing the termination of grants previously awarded to Plaintiffs or their members.

But even if the Court reads Section 706 to authorize equitable power to vacate agency action, it still should not grant the sweeping relief sought by Plaintiffs under the APA. Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht*, 321 U.S. at 3299. Again, as reflected in *CASA*, there is no basis in equity for a universal injunction that goes beyond remedying the harms incurred by the plaintiffs who have brought the lawsuit. Op. 5-11. In *Texas*, Justice Gorsuch employed a similar analysis as that articulated in *CASA*, that "[t]raditionally, when a federal court finds a remedy merited, it provides party-specific relief, directing the defendant to take or not take some action relative to the plaintiff" and that "[i]f the court's remedial order affects non-parties, it does so only incidentally." *See Texas*, 599 U.S. at 693 (Gorsuch, J., concurring); *accord* Op. 10

("The bottom line?  The universal injunction was conspicuously nonexistent for most of our Nation's history.  Its absence from 18th and 19th-century equity practice settles the question of judicial authority."); Op. 16 ("While party-specific injunctions sometimes advantage nonparties, they do so only incidentally.") (citation, quotations, and alterations omitted).  To grant universal relief under the auspices of vacatur would be inconsistent with the tenets on which the Supreme Court's *CASA* analysis is founded.  *Compare Texas*, 599 U.S. at 703 (Gorsuch, J., concurring) ("[U]niversal relief, whether by way of injunction or vacatur, strains our separation of powers. It exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide.") *with* Op. 26 ("[F]ederal courts do not exercise general oversight of the Executive Branch; they resolve cases and controversies consistent with the authority Congress has given them.").  Accordingly, even if this Court recognizes vacatur as a potential remedy under the APA, the Court should consider it in the context of the equitable analysis reiterated in *CASA*.  Consistent with traditional principles of equity, any equitable remedy the Court grants here—even vacatur—should apply only to the named parties.  *See* Op. 5-11.

## CONCLUSION

As discussed in Defendants' previously submitted briefs, the Court should grant Defendants' motion to dismiss and deny Plaintiffs' motions for preliminary injunctions.  If the Court does grant Plaintiffs relief, *CASA* makes clear that the Court should tailor any injunctive or declaratory relief to the termination of the grants previously awarded to Plaintiffs.

Dated: New York, New York
July 2, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for
the Southern District of New York
Attorney for Defendants

By:  /s/  Mary Ellen Brennan
MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
86 Chambers Street, 3rd floor
New York, New York 10007
Telephone: (212) 637-2652
MaryEllen.Brennan@usdoj.gov