# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN COUNCIL OF LEARNED SOCIETIES, et al., <br><br> *Plaintiffs*, <br> v. <br><br> MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National Endowment of the Humanities, et al., <br><br> *Defendants*. | Case No. 1:25-cv-03657 |
| THE AUTHORS GUILD, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL ENDOWMENT FOR THE HUMANITIES, <br> et al., <br><br> *Defendants*. | Case No. 1:25-cv-cv-3923 |

## ACLS PLAINTIFFS' RESPONSE TO COURT'S ORDER REGARDING *THAKUR V. TRUMP*

ACLS Plaintiffs do not oppose the Court considering evidence relating to NEH in *Thakur v. Trump*, No. 25-CV-04737-RFL (N.D. Cal.), including the June 17, 2025 declaration of Michael McDonald ("*Thakur* Declaration") and the exhibits attached thereto, provided that ACLS Plaintiffs are permitted to submit this brief filing and supplemental declaration providing important information and context regarding the contents of the declaration. With this necessary context and information, the *Thakur* Declaration not only supports ACLS Plaintiffs' claim that NEH violated the First Amendment, *see Thakur*, 2025 WL 1734471, at *9-10 (N.D. Cal. June

23, 2025), but also confirms that it was DOGE and not McDonald or anyone else at NEH that chose the grants to terminate.

In ACLS Plaintiffs' preliminary injunction briefs and supporting declarations, ACLS Plaintiffs established that DOGE officials Nate Cavanaugh and Justin Fox arrived at NEH to claw back $170 million in grants, that Cavanaugh and/or Fox personally chose which grants to terminate, that they wrote the termination letters, that Fox himself carried out the terminations by emailing termination notices to 1,500 grantees from a non-NEH email address, that NEH staff emailed grant recipients on April 4 that "DOGE . . . made the decision to terminate NEH awards," and that McDonald did not even know how many NEH grants were terminated, saying that his guess as to the total number would be "conjecture." *See* ACLS PI Br. 7-8, 19, ECF No. 25; ACLS Reply 18, ECF No. 86; *see also* John Doe Decl., ECF No. 31; Jane Doe Decl., ECF No. 32; Roe Decl., ECF No. 30; Moe Decl., ECF No. 50.

In Defendants' opposition to ACLS Plaintiffs' motion and the declaration that McDonald submitted for that opposition, Defendants did not dispute any of these factual assertions, making them uncontested for purposes of this case.

The *Thakur* Declaration does not directly dispute any of these assertions either, but the timeline it presents of how awards were chosen for termination is incomplete and potentially misleading. McDonald provides a timeline in which he and NEH staff identified open grants that potentially were inconsistent with certain Executive Orders the President had issued. As Richard Roe previously explained in his declaration in this case, through that process NEH staff identified about 25% of active NEH grants that could be subject to termination based on inconsistency with the Executive Orders. Roe Decl. ¶ 1, ECF No. 30. McDonald omits in his account, however, that the list of grants that NEH generated through the EO review process,

which NEH compiled and sent to OMB as McDonald describes, was *not* the operative list that was used for terminating grants in the following days. Suppl. Decl. of John Doe ¶ 4 (attached).

Rather, the final email appended to the *Thakur* declaration shows that, at 11:53 PM on March 31, Fox asked NEH employees to create a spreadsheet with all active NEH grants, with Fox requesting columns showing details for each grant such as the award date, the amount of funds outstanding, and so on. *Thakur*, ECF No. 48-3 at 9. As explained in the supplemental declaration of John Doe, attached to this filing, that spreadsheet requested by Fox became the operative list of NEH grants to terminate, and Fox used that list to email grant termination notices to grantees through a newly created non-government Microsoft account. Doe Suppl. Decl. ¶¶ 5-6. Fox also maintained his own separate spreadsheet for grants he was terminating, which included a category for grants in which he had received a bounceback message from the termination emails he had sent. *Id.* ¶ 7. And in a subsequent meeting with staff, McDonald confirmed that it was DOGE, not him, that chose the grants to terminate. *Id.*; *see also* Richard Roe Decl. ¶ 2, ECF N. 30 (noting that McDonald told staff that Cavanaugh and Fox had chosen the grants to be terminated and sent the termination notices themselves); Mark Moe Decl. ¶ 1, ECF No. 50 ("I have personally seen direct evidence that Justin Fox personally issued termination grant notices to NEH grantees.").

In short, the evidence in this case—which Defendants did not contest—is that DOGE chose the grants to terminate and sent the terminations to recipients, and McDonald did not even know which grants and how many were terminated at the time. The 11:53 PM email from Fox on March 31, attached to the *Thakur* declaration, confirms these facts.

July 8, 2025                        Respectfully submitted,

                                   */s/ John Robinson*
                                   Daniel F. Jacobson[+]
                                   Lynn D. Eisenberg
                                   John Robinson
                                   JACOBSON LAWYERS GROUP PLLC
                                   *1629 K Street NW, Suite 300*
                                   *Washington DC, 20006*
                                   *(301) 823-1148*
                                   *dan@jacobsonlawyersgroup.com*
                                   *lynn@jacobsonlawyersgroup.com*
                                   *john@jacobsonlawyersgroup.com*

                                   [+] *Pro hac vice motion forthcoming*

                                   *Counsel for Plaintiffs*