

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

September 23, 2025

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

        Re:    *American Council of Learned Societies v. National Endowment for the Humanities*, No. 25 Civ. 3657 (CM) and *The Authors Guild v. National Endowment for the Humanities*, No. 25 Civ. 3923 (CM)

Dear Judge McMahon:

      This Office represents the government in the above-referenced cases. We write respectfully, in advance of the case management conference currently scheduled for September 25, 2025, at 10:00 a.m., to provide the Court with the government's position regarding the necessity and appropriateness of extra-record discovery. *See* ECF No. 128. The government provided Plaintiffs with a copy of the certified administrative record earlier today and is prepared to file the record when directed by the Court.[1]

      The government is mindful that, in response to submissions from Plaintiffs, the Court advised that "this is [not] a case in which we are limited to the administrative record" and the case "is primarily (though not exclusively) a First Amendment lawsuit, as to which discovery is entirely appropriate." ECF No. 131. The government writes to clarify its views concerning the role of the administrative record and scope of the additional discovery that may be appropriate. The government respectfully submits that, contrary to Plaintiffs' contention, *see* ECF Nos. 123 & 124, broad ranging, traditional discovery under Rule 26 of the Federal Rules of Civil Procedure, without limitation or consideration of the contents of the administrative record, is not appropriate in this case.

      As an initial matter, Plaintiffs' surviving claims—including those claims brought under the First Amendment—challenge government agency decisions. As the Supreme Court has explained, it is "fundamental" that the "focal point for judicial review" of agency action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (quotation marks omitted); *see also National Audubon Soc. v. Hoffman*, 132 F.3d 7, 10, 14 (2d Cir. 1997); *Bellion Spirits,*

---

[1] Some of the documents in the record are native Excel spreadsheets that cannot be filed on ECF and would need to be provided to the Court by email.

The Honorable Colleen McMahon
Page 2

*LLC v. United States*, 335 F. Supp. 3d 32, 37-38 (D.D.C. 2018) (explaining that in "reviewing agency action," it is "black-letter administrative law" that "a reviewing court should have before it neither more nor less information than did the agency when it made its decision" and that a court may permit a party to supplement the administrative records only in "limited, and highly exceptional, circumstances") (quotation marks omitted), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021).

Although some courts have permitted extra-record discovery in cases in which plaintiffs have brought constitutional challenges to agency action, the existence of constitutional claims does not necessarily entitle a party to discovery, let alone to the wide-ranging, unfettered discovery that Plaintiffs appear to seek here. *See Bellion*, 335 F. Supp. 3d at 43 ("[D]istrict courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the [Administrative Procedure Act ('APA')]'s bar on extra-record evidence."). The law is unsettled regarding whether "the assertion of constitutional claims takes a case outside the procedural strictures of the APA, including the record review rule." *Hadwan v. United States Dep't of State*, No. 17 Civ. 578 (VEC), 2021 WL 4037714, at *6 n.9 (S.D.N.Y. Sept. 3, 2021) (reviewing case law) (quotation marks omitted); *see also Chang v. United States Citizenship & Immigration Services*, 254 F. Supp. 3d 160, 161-63 (D.D.C. 2017) (discussing different approaches taken by courts where a plaintiff asserts constitutional claims in addition to APA claims, explaining that "[s]ome courts have held that such claims are still subject to the [APA's record review] rule," since the APA itself allows plaintiffs to raise constitutional claims, while other courts "have merely found that, where a plaintiff's constitutional claims fundamentally overlap with their other APA claims, discovery is neither needed nor appropriate"). But even courts opining that extra-record discovery may be permissible have observed that "'broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record.'" *Hadwan*, 2021 WL 4037714, at *6 n.9 (quoting *Almaklani v. Trump*, 444 F. Supp. 3d 425, 434 (E.D.N.Y. 2020)); *see also J.L. v. Cissna*, No. 18 Civ. 4914 (NC), 2019 WL 2224851, at *1 (N.D. Cal. Mar. 8, 2019) ("[E]ven where plaintiffs have asserted constitutional claims, wide-ranging discovery is not blindly authorized at a stage in which . . . an administrative record is being reviewed.") (quotation marks omitted). Indeed, even where extra-record discovery is permitted, courts "can and should still exercise . . . discretion under the Federal Rules of Civil Procedure to limit the scope of discovery to avoid undue intrusion on the governmental decisionmaking process." *New York v. United States Dep't of Com.*, 345 F. Supp. 3d 444, 452 n.9 (S.D.N.Y. 2018). Such limitations on discovery are especially meaningful in cases where discovery could implicate "high-ranking executive officials." *See Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 144 (D. Md. 2019).

Accordingly, and consistent with other cases in which courts permitted extra-record discovery, the parties should not move forward with such discovery until Plaintiffs review the administrative record, identify what, if any, extra-record discovery they need, and explain why such discovery is warranted. *See, e.g.*, *Audubon*, 132 F.3d at 14-16 ("[T]he record compiled by the agency will often contain sufficient information to permit the court to [decide the case under the relevant standard], thereby obviating the need for considering extra-record evidence."); *Baltimore*, 429 F. Supp. 3d at 136-45 (vacating discovery scheduling order and staying discovery until "after plaintiff reviews the administrative record").

  While Plaintiffs claim that the Federal Rules of Civil Procedure govern and the APA imposes no limitation on the discovery they can obtain in this case, the cases they cite do not support that proposition. *See* ECF Nos. 78, 123, 124 (all citing *Baltimore*, 429 F. Supp. 3d 128, and *Vidal v. Duke*, Nos. 16 Civ. 4756, 17 Civ. 5228, 2017 WL 8773110 (E.D.N.Y. Oct. 17, 2017)). In *Baltimore*, the court acknowledged that extra-record discovery was permissible in certain limited circumstances and that, based on the "particulars" of that case, the APA did not "preclude discovery" with respect to the plaintiff's constitutional claims. 429 F. Supp. 3d at 139-40. The court ordered, however, that discovery "begin with the government's production of the administrative record" and that "after plaintiff reviews the administrative record, plaintiff may seek leave of Court to pursue extra-record discovery if it has a good faith basis for making such a request." *Id.* at 139-45. The court commented that "staying discovery until after plaintiff has had the opportunity to review the administrative record comports with the Supreme Court's instruction to 'explore other avenues' before wading into constitutionally fraught discovery disputes," particularly where discovery may "implicate[] executive privilege." *Baltimore*, 429 F. Supp. 3d at 145 (quoting *Karnoski v. Trump*, 926 F.3d 1180, 1203-07 (9th Cir. 2019)). In *Vidal*, after the magistrate judge authorized discovery in an action challenging the government's decision to end the Deferred Action for Childhood Arrivals ("DACA") Program under the APA and the Fifth Amendment, the government defendants objected, arguing that the court's review should be limited to the administrative record. 2017 WL 8773110, at *2. The district judge stated that "the general rule that review of agency action is limited to the administrative record . . . is not absolute," but ultimately reserved ruling on whether certain extra-record discovery was appropriate until after the parties resolved "[w]hether the administrative record [wa]s complete." *Id.* at *3.[2]

  Further, while the ACLS Plaintiffs emphasize that they have no remaining APA claims, *see* ECF No. 123, the question is whether they are challenging an agency action—which they undisputably are—not how they have chosen to characterize their claims. *See, e.g.*, *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237-38 (D.N.M. 2014) (explaining that to "allow fresh discovery, submission of new evidence and legal arguments" merely because a plaintiff pled "standalone" constitutional claims challenging an agency action would "incentivize every unsuccessful party to agency action to allege . . . constitutional violations to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure").

  Finally, the government wishes to bring to the Court's attention the Supreme Court's recent decision in *National Institutes of Health ("NIH") v. American Public Health Association*, and the impact it is likely to have on subsequent proceedings in this case. In *NIH*, the Court held that "[t]he Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide

---

[2] The *Vidal* court also found that discovery was warranted with respect to the plaintiffs' constitutional due process claims because those claims "d[id] not challenge the decision to end the DACA program, but instead challenge[d] how Defendants communicated that decision to DACA beneficiaries," and documents concerning the latter issue were not included in the administrative record compiled and produced by the agency. *Vidal*, 2017 WL 8773110, at *2. That analysis is inapposite here, where Plaintiffs' First Amendment claims challenge agency decisions to terminate their grants, and those grant termination decisions are documented in the administrative record the government produced.

The Honorable Colleen McMahon
Page 4

the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." 606 U.S. ----, 145 S. Ct. 2658, 2659 (Mem) (Aug. 21, 2025) (quoting *Dep't of Educ. v. California*, 604 U.S. ----, 145 S. Ct. 966, 968 (2025)). This Court ruled on the government's motion to dismiss and on Plaintiffs' motions for preliminary injunctions before the Supreme Court decided *NIH*, and, referring to the Supreme Court's decision in *Dep't of Education v. California*, correctly refrained from "enter[ing] a preliminary injunction directing that NEH pay Plaintiffs' their grants . . . ." ECF No. 116, at 49-50. The *NIH* decision's scope is broader than *California*'s, however, and it suggests that claims that are "'based on'" the termination of federal government grants implicate the Tucker Act and its limitation on district court jurisdiction regardless of the precise relief the reviewing court orders. Here, all of Plaintiffs' surviving claims are "'based on'" grant terminations. *NIH*, 145 S. Ct. at 2569. Although Plaintiffs, unlike the plaintiffs in *NIH*, challenge their grant terminations on the basis of the First Amendment, the Supreme Court's decision in *NIH* provides no basis to conclude that its jurisdictional holding is limited to claims pled under the APA rather than as constitutional claims. On the contrary, Justice Barrett's concurring opinion in *NIH* describes the Court's order as stating, without qualification, that "the District Court likely lacked jurisdiction to hear challenges to the grant terminations" because such challenges "belong in the Court of Federal Claims (CFC)." *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring); *see also Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the [challenged action] was wrongful."). The strong possibility that this Court lacks subject matter jurisdiction over Plaintiffs' claims weighs against permitting Plaintiffs virtually unfettered discovery.

We thank the Court for its consideration of this submission and look forward to addressing any questions the Court may have at Thursday's conference.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:  s/ *Mary Ellen Brennan*
MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
86 Chambers St., 3rd Floor
New York, New York  10007
(212) 637-2699
(212) 637-2652

cc:    All counsel of record (via ECF)