```
P9PDAmeC1
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AMERICAN COUNCIL OF LEARNED
SOCIETIES, ET AL.,

           Plaintiffs,

    v.                                    25 CV 03657

MICHAEL MCDONALD, in his
official capacity as Acting
Chairman of the National
Endowment for the Humanities,
et al.,

           Defendants.                       Conference
------------------------------x
                                      New York, N.Y.
                                      September 25, 2025
                                      10:00 a.m.

Before:

                  HON. COLLEEN MCMAHON,

                                 District Judge

                      APPEARANCES

JACOBSON LAWYERS GROUP
    Attorney for Plaintiffs American Council of Learned
    Societies.
BY:  JOHN ROBINSON

FAIRMARK PARTNERS, LLP
    Attorneys for Consolidated Plaintiffs The Authors Guild,
    et al.
BY:  JAMIE CROOKS
     AMANDA VAUGHN
     YINKA EZEKIEL ONAYEMI

UNITED STATES ATTORNEY'S OFFICE
    Attorneys for Defendants.
BY:  RACHEL LIGHTFOOT DOUD
     MARY ELLEN BRENNAN

P9PDAmeC1

1          (Case called; appearances noted)

2          THE COURT: I figured there would be a fair number of
3 people. Usually I do this in the robing room, but we have a
4 fair number of people here, so here we are.

5          You all want to talk about discovery I gather. Let me
6 tell you where I am on this. First of all, I undoubtedly have
7 a much broader definition of the administrative record than the
8 government does, because the administrative record that went
9 into making this decision starts in the White House with the
10 directives to DOGE. That's part of the administrative record
11 and includes all the conversations that went on within DOGE and
12 between DOGE and the NEH about how this particular set of
13 decisions was going to be carried out. That's part of the
14 administrative record in this case. Then of course the
15 individual decisions are part of the administrative record in
16 the case.

17          So I'm reasonably certain that the government had a
18 much more limited concept of what constituted the
19 administrative record in this case, but I don't. I'm going to
20 hold the government in turning over an administrative record to
21 a rather broad obligation.

22          The second thing that I have to say is that I do not
23 agree with the government's position that because this case
24 involves an administrative decision with respect to a grant,
25 that there's no discovery outside of the administrative record

allowed on the First Amendment claim.  It's a constitutional claim.  It's a claim that could arguably lead to any one of a number of results, as I intimated in my decision.

It could, when finally adjudicated, perhaps now, cause the government to say, "hmm, okay, we violated the Constitution; I guess we need to do this over again and do it right," which could lead to any number of results with respect to individual grants, or it could lead to an award of damages from a jury for violation of the First Amendment rights of the defendants, which could be equivalent to the grant amounts or could be a lot more than the grant amounts if there are collateral consequences.  I don't know.

The injunction that I entered was entered quite specifically against the possibility that the government would conclude, after reading the preliminary injunction decision, that perhaps it was not on stout constitutional ground and maybe it would want to do this over again and try to do it right.  But people writing me letters saying "they haven't paid me my money; they haven't paid me the money," I'm never going to tell them to pay you the money.  I mean, not never, maybe at the end of the case, but I'm not preliminarily going to tell them to pay you the money.  That was not the purpose of the injunction.

If you want the money now, you go to the Court of Federal Claims.  You can stand in line with 800,000 other

1  people trying to get their money.  You have a great breach of
2  contract claim, a terrific breach of contract claim, but I
3  can't adjudicate that claim.
4       So, let's talk about what we're going to do with
5  respect to discovery.  The government has 30 days to turn over
6  the administrative record.  We'll start with that.  Once you
7  get it -- and I have to tell you, I'm going to guess that these
8  people didn't write a lot of things down.  Just a guess on my
9  part, but I'm going to guess that they didn't write a lot of
10 things down.  They don't strike me as the kind of people who
11 write a lot of things down.
12      We'll see what's in the administrative record.  Then
13 I'm sure you'll be able to make out a case for needing
14 additional -- over and above the administrative record --
15 discovery, both to prove your First Amendment claim, which is a
16 claim I'm really interested in, and to prove any APA claims
17 that are in the case.  I can't make that decision until you've
18 looked at the administrative record.
19      Now, I've told the government what I think the
20 administrative record consists of.  So let's start with you,
21 Mr. Robinson.  After reading all your letters and thinking
22 about this for a while, those are my thoughts.
23      MR. ROBINSON:  On behalf of the ACLS plaintiffs, I
24 think we agree with all of those thoughts.  The only one point
25 I think I would add, your Honor had appropriately focused on

1   the First Amendment claim.  We're obviously pressing that claim
2   as well and believe in that claim and think everything your
3   Honor said about that claim is appropriate.  We do have a
4   separate constitutional claim that these terminations were
5   unconstitutional, because they were carried out by an entity
6   with no constitutional authority to carry them out.  Namely,
7   the Department of Government Efficiency.
8          And we think that everything your Honor said about the
9   propriety of a broad administrative record and extra record
10  discovery with respect to the First Amendment claim is also
11  appropriate as to that constitutional claim that DOGE acted
12  without an order --
13         THE WITNESS:  Okay.  Well, there's an administrative
14  record that they have to turn over, but anybody who suggestions
15  that the administrative record in this case is three pieces of
16  paper on the National Endowment for the Humanities that deal
17  with each of these terminations is smoking something.  That's
18  not the administrative record in this case.
19         Okay.  How about you guys?  Good morning.
20         MR. CROOKS:  Thank you, your Honor.  We, like the ACLS
21  plaintiffs, the Authors Guild plaintiffs very much agree with
22  the broad strokes of how you define the administrative record.
23  I just want to make clear that from the government's point of
24  view, two days ago they turned out over what they say is the
25  administrative record.

1           THE COURT:  Oh, really?  What is in it?

2           MR. CROOKS:  Twenty-three documents, eight of which

3   are spreadsheets, four of which are copies of --

4           THE COURT:  They're wrong.  They're wrong.  If the

5   government wishes to say that that's the administrative record,

6   already you're in default.  Already you're not right.  Okay?

7           You have to go up to the White House, and you have to

8   start there; and you have to go through DOGE, and you have to

9   go there; and you have to turn over everything that has

10  anything to do with the -- directly or indirectly, directly or

11  indirectly with the making of the ultimate making of decisions

12  at the National Endowment for the Humanities, or any other

13  agency, because it was all a seemless web, as we all know.

14          The general directives, all of that kind of stuff

15  which filtered its way down to the NEH where the ultimate

16  decisions were made.  But if that's what they've turned over,

17  you're in a position to ask for extra record discovery, and

18  tell me exactly what you want.  So make your motion.

19          MR. CROOKS:  We appreciate that, your Honor.  And we

20  agree with the letter that the ACLS plaintiffs filed yesterday

21  that --

22          THE COURT:  That I haven't read.  I'm sorry.  I got in

23  late, and I haven't read the latest letter.

24          MR. CROOKS:  No, the short of it is that extra record

25  discovery would at least start with document requests to the

1  named plaintiffs -- I'm sorry, the named defendants, and
2  depositions, particularly in light of the few emails they
3  turned over as part of their --
4      THE COURT:  Yes.  I'm reasonably certain that even if
5  they were to abide by my ruling about the administrative record
6  and the scope of it, that you won't find a lot of paper.  You
7  won't, because that's not how these people work.  That's not
8  how they operate.  I'm sure they operated with a deliberate
9  decision not to create a paper trail.  So, yes, there will be
10 depositions.
11     MR. CROOKS:  We appreciate that, your Honor.
12     I think on the schedule of that both we and the ACLS
13 plaintiffs have laid out, our view is that those depositions
14 should not wait -- I mean, it took two months for the
15 government to produce these 23 documents after your PI opinion
16 said full discovery in this matter is warranted.  They resisted
17 providing or really talking about anything else until they said
18 wait until you see the administrative, and two months later
19 what we've got are 23 documents, 11 of which are emails, eight
20 are spreadsheets, and four are copied and pasted from the
21 termination letter.
22     So, we're a little bit concerned about timing in this
23 case, particularly given your Honor --
24     THE COURT:  Why are you concerned about timing in this
25 case?

1    MR. CROOKS:  Because, as you noted in your PI opinion,
2  our plaintiffs are suffering irreparable harm, not just because
3  --
4    THE COURT:  You all have not pushed this case in the
5  way I would have expected you to push it, and it's not going to
6  get litigated in the next three weeks.  It's just not going to
7  happen, because you haven't done anything to make that happen.
8    MR. CROOKS:  I appreciate that, your Honor.  I mean,
9  when we talked with the government about issuing discovery
10 requests before this conference, they said they will not
11 produce discovery until they compile the administrative record,
12 and it took as long as it did.
13   So, we're happy to hear what you're saying today.  If
14 you're telling us we should issue discovery requests tomorrow
15 --
16   THE COURT:  I am.  I am.  Because apparently they've
17 turned over what they say is the administrative record.  I
18 don't think that's the administrative record, but I'm not sure
19 you're going to get much more.  I'm perfectly happy, perfectly
20 content that you should issue discovery requests.
21   MR. CROOKS:  Okay.  We appreciate that.
22   THE COURT:  Let me hear from the government.
23   MS. BRENNAN:  Thank you, your Honor.
24   Initially, I just want to clarify that the government
25 hasn't taken the position that there shouldn't be any

discovery.

THE COURT: No. Your discovery, you think it should consist of 23 documents.

MS. BRENNAN: No. We've said that, similar to what you suggested, we suggested that we should produce the record, and that the plaintiff should identify specifically what gaps are in the record and what extra record discovery they need. And we --

THE COURT: Well, if you're representing to me, and I will take, as you know, I will take on faith any representations from the United States Attorney's Office in this district as the gospel. So if you're representing to me that you have conducted, over the course of the last two months, a thorough search going all the way up to the White House and down to the NEH and every place in between, including this entity known as DOGE, and you have located all the paper that is relevant to the decisions that were made to terminate the grants, including any general directives that monies were to be terminated on the basis of race, gender, but race ideology, gender ideology, content, the kind of things that appear, from the limited record I have in front of me from the PI motion, to have taken place, and you tell me you've found everything and it is 23 pieces of paper, I will take that as a representation made in good faith by the United States Attorney's Office, and we can very quickly identify the gaps in

the administrative record.  It's almost everything.

But if you're telling me that you haven't done that, I'm not going to make them wait any longer to issue discovery requests while you do what you should have done in the first place.

MS. BRENNAN:  Thank you, your Honor.  We do take a different view than you do of what the scope of the record should be.

THE COURT:  Right, but I win, you lose, okay?  You are the litigant, I'm the judge, so you have to abide by my order.

MS. BRENNAN:  Well, your Honor, I would point out that the principle behind the rule that discovery in a case challenging agency action should be limited to the administrative record is based in part or largely on the recognition that separation of powers --

THE COURT:  Well, we're going to separate powers very clearly here.  I'm the judge.  I make the rulings of law.  The administrative agency and the United States Attorney's Office do not.

Constitutional claims have been asserted here. Violations of the Constitution.  There's an allegation that the executive branch -- and it is not an incredible allegation on the limited record I have before me -- allegations that the executive branch has, in violation of the oath of office taken by every member of the executive branch, failed to preserve and

1  defend the Constitution of the United States in connection with
2  these particular decisions.  Okay?  A lot of other decisions,
3  too, because there's about a thousand of these cases running
4  around all over the country, and I'm going to give them full
5  discovery on that.
6          MS. BRENNAN:  Well, I recognize that, your Honor, but,
7  as you pointed out just now and as you pointed out in your
8  decision, the government has been fairly straight forward about
9  the fact that they chose -- that they identify grants for
10 termination based on particular subjects, like DEI and gender
11 ideology.  And in the record we produced, the record we
12 produced contains spreadsheets that include line-by-line
13 annotations identifying which grants to terminate, which grants
14 to keep, and laying out the bases that the agency considered or
15 relied on in doing that.  And the additional emails, as
16 plaintiffs noted, that are included with the record, also
17 provide a picture of how those spreadsheets were used, and who
18 was involved, and how the grant termination process occurred.
19         THE COURT:  Then they should be able to craft
20 discovery requests that, when somebody gives me the
21 administrative record on the discovery requests, we'll be able
22 to say, here's a gap, here's a gap, here's a gap, here's where
23 you're entitled to more information.
24         MS. BRENNAN:  Okay.  Your Honor, the last thing I'll
25 note is the Supreme Court has counseled against full discovery

```
 1   into executive White House --
 2              THE COURT:  Well, I really can't -- I mean, the
 3   Supreme Court counsels against a lot of things, but the Supreme
 4   Court has not counseled against full discovery in
 5   constitutional cases.  If you're talking about the recent NIH
 6   non-decision, fine.  Let me know when they make up their minds.
 7              MS. BRENNAN:  Your Honor, one question we had is
 8   whether we should file the administrative record that we have
 9   produced to the plaintiffs at this stage.
10              THE COURT:  Whether you should file it publicly?
11              MS. BRENNAN:  Yes.
12              THE COURT:  Of course you should.  Was there some
13   reason why you shouldn't?
14              MS. BRENNAN:  We just didn't know if you wanted us to
15   file it right away or wait.
16              THE COURT:  Why would I want you to wait?
17              MS. BRENNAN:  Okay.  Thank you, your Honor.
18              THE COURT:  Do any of you folks want them to wait to
19   file what they call the administrative record?
20              MR. ROBINSON:  No.
21              MR. CROOKS:  No, your Honor.
22              THE COURT:  Okay.
23              MS. DOUD:  Your Honor, can we have permission to
24   submit the large spreadsheets by email?  They're too large to
25   file on the docket.
```

P9PDAmeC1

1           THE COURT:  Oh, sure.  Of course.

2           MS. DOUD:  Thank you.

3           THE COURT:  All right.  Well, I think I know where

4   we're headed.  Ordinarily in my cases the magistrate judge

5   supervises discovery.  Judge Moses is the magistrate judge in

6   this case.

7           Am I right?

8           MR. CROOKS:  Yes.

9           THE COURT:  She and I will have a conversation.  If

10  she's super backed up, I'll probably take it over from her,

11  because she actually may be more backed up than I am.  She's

12  pretty busy.

13          Anything else?

14          MR. ROBINSON:  Just one issue for the ACLS plaintiffs,

15  your Honor.  The administrative record did contain at least one

16  document with substantial redactions.  The government asserted

17  that they redacted that information on the grounds of

18  deliberative process privilege.  I think at a minimum, the

19  government should have to produce a privilege log indicating

20  any information that was redacted, why it was redacted, as well

21  as any other material that they are withholding on privilege

22  grounds, as would be the case in normal discovery.

23          THE COURT:  As would be the case in any case, yes.

24  Absolutely.

25          MR. CROOKS:  Your Honor, one issue that I think is

unique to the Authors Guild plaintiffs, we take to heart your admonition that we could be pursuing this case faster, and I will say that among the spreadsheets they produced two days ago as part of the administrative record, the grants -- approximately 1,300 grants that were canceled were very much along the lines that your opinion noted would violate the First Amendment, which is any affiliation with what they considered DEI and affiliation with the past Presidential administration.

So, for instance, one grant about J.P. Morgan's first librarian was canceled as DEI, because the biography "noted her roots in the black community."

THE COURT:  Belle?  Really?

MR. CROOKS:  Yes.  They cancelled it --

THE COURT:  That fascinating, fabulous woman?

MR. CROOKS:  Yes, your Honor.  She was from Georgetown, which at the time was a black community, and the DEI -- labeled it in their spreadsheet, that somebody wrote, said that it was canceled -- the reason I bring that up is because my understanding of your view of the remedies you can grant was at least based in part on the preliminary nature of the relief you granted in the preliminary injunction, and so --

THE COURT:  It was a preliminary injunction motion on a very preliminary record.

MR. CROOKS:  Exactly.

THE COURT:  Nobody asked for expedited discovery.  You

1    just plowed in.  So I took what you guys gave me.
2             MR. CROOKS:  I appreciate that, your Honor, and I
3    guess my point is, if we feel that even on the limited
4    discovery we've received there are --
5             THE COURT:  That you want to make a motion for summary
6    judgment?  Is that what you're saying?
7             MR. CROOKS:  I think it depends in part, your Honor,
8    on what you view the remedies you could give as a final order
9    would be, and so, yes --
10            THE COURT:  One of the things I've said in my decision
11   is nobody's briefed final remedies yet, right?
12            MR. CROOKS:  That's right, you did note that.
13            THE COURT:  I did note that.  I spent a lot of time
14   thinking about what I could do in that injunction and why, and
15   one of the problems I had was we hadn't had briefing on final
16   remedies as yet, which probably explains a lot of the kind of
17   odd way that I dealt with the money part of it.  So --
18            MR. CROOKS:  I appreciate that, your Honor.  And if
19   you're saying that with such briefing and an early motion for
20   summary judgment, at least on the DEI claims and the Biden
21   Administration claims, which I think is the vast majority of
22   our classes' grants that were canceled --
23            THE COURT:  That's your case.
24            MR. CROOKS:  Yes.  If you're saying we can move before
25   the discovery you just laid out took place, I think --

THE COURT: Look, I'm not going to tell you how to litigate the case. All right? You can do anything you want. If you want to move on the record you've got now, go right ahead. If you want to wait a little and see what shows up to accrete that record, go ahead. I'm not going to tell you how to litigate your case. You are all upstanding lawyers, both tables. You know what you're doing. So, I'm going to take what you give me.

MR. CROOKS: Okay.

THE COURT: You make your own litigation decisions.

MR. CROOKS: We appreciate that. Thank you, your Honor.

THE COURT: Government, anything else?

MS. DOUD: Your Honor, we understand that your Honor is allowing them to proceed with discovery. I just want to note that we have not agreed to the case management plan that they submitted.

THE COURT: That case management plan is not authored --

MS. DOUD: Okay. Your Honor will enter --

THE COURT: When they give you -- here's how far we're going to go, when they give you their discovery requests, which I imagine will be sooner rather than later.

(Continued on next page)

```
 1              THE COURT:  You have 14 business days to respond or
 2    object, and the objections will be adjudicated promptly.
 3    That's as much case management as I'm going to do today.
 4              MS. CROOKS:  Understood, your Honor.
 5              THE COURT:  Anything else?  Okay.  It's nice to meet
 6    you all.
 7              (Adjourned)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```