# Exhibit 12

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD, WILLIAM GOLDSTEIN, ELIZABETH KADETSKY, VALERIE ORLANDO, KATALIN BALOG, BENJAMIN HOLTZMAN, LEE JASPERSE, and NICOLE JENKINS, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>NATIONAL ENDOWMENT FOR THE HUMANITIES, et al.,<br><br>     Defendants. | Case No. 1:25-cv-03923<br><br>Consolidated with No. 1:25-cv-03657 |

**PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs The Authors Guild, et al., by and through their undersigned counsel, request that Defendants separately respond to the following requests for production of documents ("Requests"), and produce the documents specified herein at a location agreed upon by counsel within fourteen (14) days.

**DEFINITIONS**

1. "Agency" means any department, office, bureau, division, commission, board, or other component or subdivision of the United States Government, whether permanent or temporary, formal or informal.

2. "Algorithm" means any set of coded or non-coded instructions, rules, or computational procedures used to process data, generate outputs, make recommendations, or otherwise guide decision-making, including but not limited to those used in Artificial Intelligence, machine learning, or automated text tools.

3. "Artificial Intelligence" means any software, program, system, or tool, whether commercial, open-source, or proprietary, that uses Algorithms, machine learning, neural networks, language learning models, or other computational methods to generate, analyze, predict, classify, summarize, or otherwise process text, images, data, or decisions.

4. "Communication" means any transmission of information by any means, including but not limited to written correspondence, electronic mail, text message, Signal, WhatsApp, other encrypted messaging applications, instant message, social media message, telephone call, voicemail, in-person conversation, teleconference, videoconference, or meeting, and includes but is not limited to drafts, notes, transcripts, minutes, and recordings of same.

5. "Criteria" means any standards, benchmarks, metrics, guidelines, rules, requirements, factors, or considerations used to evaluate, analyze, review, or decide upon any action, policy, program, or determination, whether written or unwritten.

6. "Data" means any information, numbers, text, statistics, figures, files, documents, code, or other recorded material, whether raw, processed, structured, or unstructured, recorded in any medium including physical or digital.

7. "Disciplined" means subjected to any form of reprimand, sanction, corrective action, adverse employment consequence, or penalty, formal or informal, oral or written.

8. "Document(s)" means the broadest possible sense of the term under Federal Rule of Civil Procedure 34(a), and includes, without limitation, the original (or identical duplicate when the original is not available) and all non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notation, or highlighting of any kind) and drafts of all writings, whether handwritten, typed, printed or otherwise produced, and includes, without limitation, letters, correspondence, memoranda, legal pleadings, notes, reports, agreements, calendars, contracts, diaries, travel or expense records, summaries, records, messages or logs of telephone calls, conversations or interviews, telegrams, instant messages, text messages (SMS or other), mailgrams, facsimile transmissions (including cover sheets and confirmations), electronic mail, minutes or records of meeting, compilations, notebooks, work papers, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, graphs, charts, blue prints, drawings, sketches, photographs, film and sound reproductions, tape recordings, or any other tangible materials on which there is any recording or writing of any sort. The term also includes the file, folder tabs, and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy of all documents requested herein.

9. "DOGE" means the United States DOGE Service and all DOGE Teams established pursuant to Executive Order 14158, including their leadership, staff, contractors, consultants, special government employees, detailees, task forces, or any other affiliated persons or entities acting or purporting to act on their behalf.

10. "Draft" means any preliminary, incomplete, or non-final version of a document, including any mark-up, edited, annotated, or redlined version.

11. "Executive Office of the President" means all components of the Executive Office of the President, including, but not limited to, the White House Office, the Office of Management and Budget, and the United States DOGE Service.

12. "Implementation" means the carrying out, execution, application, enforcement, or practice of any policy, program, interpretation, decision, or procedure.

13. "In Connection With" means relating to, concerning, regarding, reflecting, constituting, referring to, arising from, connected to, embodying, or having any logical, factual, or causal relationship with.

14. "Involved" means engaged in, consulted on, participating in, contributing to, informed of, or otherwise connected with an action, decision, program, or event.

15. "Interpretation" means any construction, understanding, explanation or application of a rule, statute, policy, criterion, guideline, or instruction, whether formal or informal.

16. "Invoke" means to cite, reference, apply, or rely upon any legal authority, including statutes, regulations, policies, executive orders, or other directives, as justification or support for an action, decision, or program.

17. "Keyword" means any term, phrase, symbol, number, or character string used in searching, analyzing, filtering, classifying, or otherwise processing documents, communications, or data, whether manually or through automated tools.

18. "Legal Authority" means any statute, regulation, executive order, policy, guideline, court decision, or other source of law.

19. "Mass Termination" means the termination, cancellation, pause, or rescission of NEH grants and awards in or around April 2025.

20. "Memorandum" means any written document, whether formal or informal, summarizing, analyzing, or communicating facts, opinions, or recommendations.

21. "NEH" means the National Endowment for the Humanities, including its leadership, staff, contractors, consultants, advisory bodies, and any persons or entities acting or purporting to act on its behalf.

22. "OMB" means the Office of Management and Budget, including its leadership, staff, contractors, consultants, and any persons or entities acting or purporting to act on its behalf.

23. "Output" means any result, product, text, data, image, classification, score, rationale, or recommendation generated by an Algorithm, Artificial Intelligence Tool, or program.

24. "Participant" means any person who attended, joined, or otherwise took part in a meeting, communication, or event, whether actively or passively.

25. "Personnel" means all employees, staff, and volunteers of the relevant organization, including, but not limited to, full-time employees, special government employees, and detailees.

26. "Program" means any software, application, or coded system, whether proprietary or open-source, that performs functions, executes Algorithms, or processes data.

27. "Redline" means any document marked with tracked changes, comments, annotations, or other indicators of edits or revisions.

28. "Relating To" means concerning, reflecting, regarding, constituting, describing, evidencing, embodying, arising from, connected to, or having any logical or factual association with.

29. "Report" means any written, electronic, or oral account, statement, assessment, analysis, or summary, whether formal or informal.

30. "Spreadsheet(s)" means any document organized in tabular form, including, but not limited to, documents created with Microsoft Excel or Google Sheets.

31. "Tool" means any instrument, device, application or system, including but not limited to Artificial Intelligence, machine learning, Algorithms, or automated text analysis systems, whether commercial, proprietary, or open-source.

32. "You" or "Your" means NEH and its departments, divisions, affiliates, and/or agents, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of NEH.

## **INSTRUCTIONS**

1. In producing Documents, You are to furnish all Documents or things in Your possession, custody or control, regardless of whether such Documents are possessed directly by You or Your employees, agents, departments, branches, or offices, or by Your attorneys or their employees, agents, or investigators.

2. All Documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business. All Documents, other than electronically stored information, shall be produced in the file folder, envelope, or other container in which the Documents are kept or maintained. If for any reason the container cannot be produced, You should produce copies of all labels or other identifying marks which may be present on the container.

3. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, handwritten notations on the front or back of the Document, all such nonidentical copies shall be produced.

4. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the Person in whose possession they were found.

5. If a Document once existed and subsequently has been lost, destroyed or is otherwise missing, You should provide sufficient information to identify the Document and state, in writing, the details, including whether the Document:

    a. is lost or missing;
    b. has been destroyed and, if so, by whom and at whose request;
    c. has been transferred or delivered, voluntarily or involuntarily, to another person or entity and at whose request; or
    d. has been otherwise disposed of.

6. In each instance in which a Document once existed and subsequently is lost, missing, destroyed, or otherwise disposed of, explain the circumstances surrounding the disposition of the Document, including, but not limited to:

    a. the identity of the person or entity who last possessed the Document;
    b. the date or approximate date of the Document's disposition; and
    c. the identity of all persons who have or had knowledge of the Document's contents.

7. If any Document responsive to any of these Requests is privileged, and the Document or any portion of the Document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the following information:

    a. the reason for withholding the Document;
    b. the date of such Communication;
    c. the medium of such Communication;
    d. the general subject matter of such Communication (such description shall not be considered a waiver of Your claimed privilege);
    e. the identity of any Document that was the subject of such Communication and the present location of any such Document;
    f. the identity of the Persons involved in such Communication;
    g. the identity of any Document which records, refers, or relates to such Communication and present location of any such Document; and
    h. the number or numbers of these Requests for Production of Documents to which such information is responsive.

8. Documents attached to one another should not be separated.  Each Document requested should be produced in its entirety and without deletion, redaction or excisions, except as qualified by Instruction 6 above, regardless of whether You consider the entire Document or only part of it to be relevant or responsive to these Document Requests.  If You have redacted any portion of a Document, stamp the word "REDACTED" beside the redacted information on each page of the Document which You have redacted.

9. All Documents produced in paper form should be numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the Document.

10. All Documents should be produced with any and all accompanying metadata.

## **RELEVANT TIME PERIOD**

Unless otherwise noted in the body of a Request, the Relevant Time Period for these Requests is January 20, 2025, through the present (the "Relevant Time Period" or "Relevant Period"). These Requests seek all responsive Documents created or generated during the Relevant Time Period, as well as responsive Documents created or generated outside the Relevant Time Period, but which contain information concerning the Relevant Time Period.

## **REQUESTS FOR PRODUCTION**

1. An unredacted copy of the email from Defendant McDonald to Defendant Fox on April 1, 2025, at 10:07 a.m. in the document You produced, stamped NEH_AR_000021-23 at *23.

2. All Documents and Communications of Defendants U.S. DOGE Service, Fox, Cavanaugh, and Gleason Relating To NEH, from January 20, 2025, to April 30, 2025, including but not limited to Documents and Communications Relating To
   a. NEH grants, awards, or funding;
   b. the deployment of Fox and Cavanaugh to NEH;
   c. the work of Fox and Cavanaugh while at NEH; and
   d. the relationship and interactions of DOGE, Fox, and Cavanaugh with Defendants NEH and McDonald.

3. All Documents and Communications Relating To the Mass Termination, including, but not limited to, Documents and Communications Relating To
   a. the scope, motivations, rationale, Criteria, and/or bases for terminating NEH grants or awards;
   b. any NEH grants considered for termination but not terminated;
   c. NEH grants;
   d. the application of any policies Relating To "Diversity, Equity, and Inclusion," "gender ideology," and "environmental justice" to Agency-issued grants;
   e. Defendants' definitions of "Diversity, Equity, and Inclusion," "gender ideology," and "environmental justice";
   f. the application of Executive Orders 14151, 14168, 14190, or 14222 to Agency-issued grants;
   g. inter-Agency Communications, including those with any component or Personnel of the Executive Office of the President, or any individuals unaffiliated with an Agency Relating To the Mass Termination; and
   h. the Involvement in the Mass Termination of any individuals not employed by or affiliated with DOGE or NEH.

4. All Documents and Communications Relating To the interpretation or Implementation of Executive Orders 14151, 14168, 14190, or 14222.

5. All Documents and Communications Relating To Spreadsheets, Keyword lists, Artificial Intelligence, Algorithms, or any other Programs or processes used to flag, review, or evaluate NEH grants or awards for potential termination, including but not limited to, any Criteria.

6

6. All Documents and Communications Relating To anything sent to NEH grantees and awardees notifying them of the Mass Termination, including but not limited to drafts, redlines, cover memoranda, and internal approval correspondence.

7. All Documents and Communications Relating To any participation by or consultation with the National Council on the Humanities or any NEH peer-review or advisory panel Relating To the Mass Termination.

8. All Documents and Communications Relating To the instructions, prompts, Keyword lists, training materials, or configuration settings provided to any Artificial Intelligence, Algorithm, or automated Tool used in relation the Mass Termination.

9. All Outputs, Reports, Spreadsheets, or summaries generated by Artificial Intelligence, Algorithms, or automated Tools Relating To the Mass Termination.

10. Documents sufficient to show the organizational structure of DOGE, including the individuals who have worked for DOGE and their titles, such as an organization chart.

11. All Documents and Communications Relating To the preparation, contents, and execution of any declarations submitted in this lawsuit or other litigation Relating To NEH grants or awards.

12. All Documents Relating To the reassignment, termination, or Discipline of any Agency employees In Connection With the Mass Termination.

13. For the period January 20, 2021, to the present, all Documents prepared for the National Council on the Humanities Relating To grants terminated as part of the Mass Termination, including any committee books or staff write-ups.

Dated: September 29, 2025

By: */s/ Jamie Crooks*
Jamie Crooks (*pro hac vice*)
Michael Lieberman (*pro hac vice*)
Amanda R. Vaughn (*pro hac vice*)
Yinka Onayemi
FAIRMARK PARTNERS, LLP
400 7th Street, NW, Suite 304
Washington, DC 20004
Tel: 619.507.4182
jamie@fairmarklaw.com
michael@fairmarklaw.com
amanda@fairmarklaw.com
yinka@fairmarklaw.com

*Attorneys for Plaintiffs and the Proposed Classes*