# Exhibit 13

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD, WILLIAM GOLDSTEIN, ELIZABETH KADETSKY, VALERIE ORLANDO, KATALIN BALOG, BENJAMIN HOLTZMAN, LEE JASPERSE, and NICOLE JENKINS, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>NATIONAL ENDOWMENT FOR THE HUMANITIES, et al.,<br><br>                  Defendants. | Case No. 1:25-cv-03923<br><br>Consolidated with No. 1:25-cv-03657 |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs The Authors Guild, et al., by and through their undersigned counsel, request that Defendants separately answer each of the following Interrogatories within fourteen (14) days.

## DEFINITIONS

1. "Agency" means any department, office, bureau, division, commission, board, or other component or subdivision of the United States Government, whether permanent or temporary, formal or informal.

2. "Algorithm" means any set of coded or non-coded instructions, rules, or computational procedures used to process data, generate outputs, make recommendations, or otherwise guide decision-making, including but not limited to those used in Artificial Intelligence, machine learning, or automated text tools.

3. "Artificial Intelligence" means any software, program, system, or tool, whether commercial, open-source, or proprietary, that uses Algorithms, machine learning, neural networks, language learning models, or other computational methods to generate, analyze, predict, classify, summarize, or otherwise process text, images, data, or decisions.

4. "Communication" means any transmission of information by any means, including but not limited to written correspondence, electronic mail, text message, instant message, social media message, telephone call, voicemail, in-person conversation, teleconference, videoconference, or meeting, and includes but is not limited to drafts, notes, transcripts, minutes, and recordings of same.

5. "Criteria" means any standards, benchmarks, metrics, guidelines, rules, requirements, factors, or considerations used to evaluate, analyze, review, or decide upon any action, policy, program, or determination, whether written or unwritten.

6. "Data" means any information, numbers, text, statistics, figures, files, documents, code, or other recorded material, whether raw, processed, structured, or unstructured, recorded in any medium including physical or digital.

7. "Disciplined" means subject to any form of reprimand, sanction, corrective action, adverse employment consequence, or penalty, formal or informal, oral or written.

8. "Document(s)" means the broadest possible sense of the term under Federal Rule of Civil Procedure 34(a), and includes, without limitation, the original (or identical duplicate when the original is not available) and all non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notation, or highlighting of any kind) and drafts of all writings, whether handwritten, typed, printed or otherwise produced, and includes, without limitation, letters, correspondence, memoranda, legal pleadings, notes, reports, agreements, calendars, contracts, diaries, travel or expense records, summaries, records, messages or logs of telephone calls, conversations or interviews, telegrams, instant messages, text messages (SMS or other), mailgrams, facsimile transmissions (including cover sheets and confirmations), electronic mail, minutes or records of meeting, compilations, notebooks, work papers, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, graphs, charts, blue prints, drawings, sketches, photographs, film and sound reproductions, tape recordings, or any other tangible materials on which there is any recording or writing of any sort.  The term also includes the file, folder tabs, and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy of all documents requested herein.

9. "DOGE" means the United States DOGE Service and all DOGE Teams established pursuant to Executive Order 14158, including their leadership, staff, contractors, consultants, special government employees, detailees, task forces, or any other affiliated persons or entities acting or purporting to act on their behalf.

10. "Draft" means any preliminary, incomplete, or non-final version of a document, including any mark-up, edited, annotated, or redlined version.

11. "Executive Office of the President" means all components of the Executive Office of the President, including, but not limited to, the White House Office, the Office of Management and Budget, and the United States DOGE Service.

2

12. "Implementation" means the carrying out, execution, application, enforcement, or practice of any policy, program, interpretation, decision, or procedure.

13. "In Connection With" means relating to, concerning, regarding, reflecting, constituting, referring to, arising from, connected to, embodying, or having any logical, factual, or causal relationship with.

14. "Involved" means engaged in, consulted on, participating in, contributing to, informed of, or otherwise connected with an action, decision, program, or event.

15. "Interpretation" means any construction, understanding, explanation or application of a rule, statute, policy, criterion, guideline, or instruction, whether formal or informal.

16. "Invoke" means to cite, reference, apply, or rely upon any legal authority, including statutes, regulations, policies, executive orders, or other directives, as justification or support for an action, decision, or program.

17. "Keyword" means any term, phrase, symbol, number, or character string used in searching, analyzing, filtering, classifying, or otherwise processing documents, communications, or data, whether manually or through automated tools.

18. "Legal Authority" means any statute, regulation, executive order, policy, guideline, court decision, or other source of law.

19. "Mass Termination" means the termination, cancellation, pause, or rescission of NEH grants or awards in or around April 2025.

20. "Memorandum" means any written document, whether formal or informal, summarizing, analyzing, or communicating facts, opinions, or recommendations.

21. "NEH" means the National Endowment for the Humanities, including its leadership, staff, contractors, consultants, advisory bodies, and any persons or entities acting or purporting to act on its behalf.

22. "OMB" means the Office of Management and Budget, including its leadership, staff, contractors, consultants, and any persons or entities acting or purporting to act on its behalf.

23. "Output" means any result, product, text, data, image, classification, score, rationale, or recommendation generated by an Algorithm, Artificial Intelligence Tool, or program.

24. "Participant" means any person who attended, joined, or otherwise took part in a meeting, communication, or event, whether actively or passively.

25. "Personnel" means all employees, staff, and volunteers of the relevant organization, including, but not limited to, full-time employees, special government employees, and detailees.

26. "Program" means any software, application, or coded system, whether proprietary or open-source, that performs functions, executes Algorithms, or processes data.

27. "Redline" means any document marked with tracked changes, comments, annotations, or other indicators of edits or revisions.

28. "Relating To" means concerning, reflecting, regarding, constituting, describing, evidencing, embodying, arising from, connected to, or having any logical or factual association with.

29. "Report" means any written, electronic, or oral account, statement, assessment, analysis, or summary, whether formal or informal.

30. "Spreadsheet(s)" means any document organized in tabular form, including, but not limited to, documents created with Microsoft Excel or Google Sheets.

31. "Tool" means any instrument, device, application or system, including but not limited to Artificial Intelligence, machine learning, Algorithms, or automated text analysis systems, whether commercial, proprietary, or open-source.

32. "You" or "Your" means NEH and its departments, divisions, affiliates, and/or agents, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of NEH.

## INSTRUCTIONS

1. The Definitions above are provided only for purposes of discovery, in conformance with Rule 33 of the Federal Rules of Civil Procedure, and are not intended to be used for any purpose other than discovery. Plaintiffs reserve the right to modify these Definitions or utilize different Definitions for any other purpose.

2. The Definitions above and the individual Interrogatories below are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3. All words not defined in the Definitions shall be construed using their plain and ordinary meaning. If more than one meaning can be ascribed to a word, the meaning that would make a document or information be covered by the Interrogatories should be used, unless You provide written notice of the specific ambiguity.

4. In answering and responding to these Interrogatories, You shall furnish such information and Documents in Your possession, custody or control, including information that is in the possession, custody or control of Your agents, employees, consultants, accountants, investigators, and (subject to any otherwise applicable privileges) attorneys.

5. Each Interrogatory herein shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request. Where the context in an Interrogatory makes it appropriate, each singular word shall include its plural, and each plural word shall include its singular.

6. Your obligation to respond to these Interrogatories is a continuing one. If, after responding to these Interrogatories, You obtain or become aware of any new or additional information pertaining to an Interrogatory contained herein, You must supplement Your answer in accordance with Federal Rules of Civil Procedure 26 and 33.

7. If You answer any Interrogatory by reference to business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure and as the term "business record" is defined under the Federal Rules of Evidence, produce the business records and identify such Documents by bates number, as well as the name of the employee or agent certifying the Documents as business records for purposes of answering the Interrogatory.

8. Each Interrogatory shall be answered separately and fully in writing under oath, unless it is objected to. If You have any good faith objections to any request or any part thereof, the specific nature of the objection and whether it applies to the entire Interrogatory or to a part of the Interrogatory shall be stated in accordance with Rule 33 of the Federal Rules of Civil Procedure. If there is an objection to any part of an Interrogatory, then the part objected to should be identified and information responsive to the remaining unobjectionable part should be timely provided. Further, if You object to part of an Interrogatory, You must state the basis of Your objections in accordance with Rule 33.

9. To the extent that You elect to produce Documents in response to any of the Interrogatories, any such production shall be accompanied by a transmittal letter that includes the case caption; production volume name; encryption method/software used; and passwords for any password protected files.

10. The responses are to be signed by the person making them and the objections signed by the attorney making them.

11. Each Interrogatory, and each subpart thereof, shall be separately set forth verbatim in Your response and accorded a separate answer.

12. No part of an Interrogatory shall be left unanswered merely because an objection was interposed to another part of the Interrogatory.

13. If You object to any Interrogatory or subpart thereof, the objection shall state with specificity all grounds for the objection. Any ground not stated shall be waived.

14. If You are unable to answer any Interrogatory, the reasons for Your inability to answer shall be separately stated in detail for each Interrogatory.

15. Failure to provide information in response to these Interrogatories will be deemed a waiver of Your right to produce such evidence at trial. Plaintiffs reserve the right to move to preclude the introduction of any evidence not produced in response to these Interrogatories.

**RELEVANT TIME PERIOD**

Unless otherwise noted in the body of a Request, the Relevant Time Period for these Requests is January 20, 2025, through the present (the "Relevant Time Period" or "Relevant Period").

# **INTERROGATORIES**

1. Identify by name, title, and office, every individual outside of NEH who participated in the decision to deploy Defendants Fox and Cavanaugh to NEH and in the development and execution of Defendant Fox's and Defendant Cavanaugh's work at NEH.

2. Identify by name, title, and office every individual who participated in any way in the preparation, consideration, decision-making, or execution of the Mass Termination. For each individual, describe that individual's role, and provide the date(s) of their involvement. For the avoidance of doubt, this Interrogatory includes individuals no matter the Agency at which they are or were employed and no matter if they are or were employed by the U.S. Government at all.

3. Identify each and every meeting, phone call, conference call, and videoconference held during the Relevant Time Period relating to the Mass Termination, by identifying the date on which it was held, the participants, and the topics discussed. For the avoidance of doubt, this Interrogatory includes meetings, phone calls, conference calls, and videoconferences in which any individuals participated, no matter the Agency at which they are or were employed and no matter if they are or were employed by the U.S. Government at all.

4. Identify each and every meeting, phone call, conference call, and videoconference during which Defendants Fox and Cavanaugh, or any other Personnel associated with DOGE or the Executive Office of the President, notified Defendant McDonald that it was DOGE's "decision on whether to discontinue funding of any of the projects on this list" as referenced in Defendant McDonald's April 1, 2025, email in the document that You produced, stamped NEH_AR_000021-23 at *23. Identify each meeting, phone call, conference call, and videoconference by identifying the date on which it was held, the participants, and the topics discussed.

5. Identify all individuals who Defendant Fox references as providing "pressure from the top" in his March 31, 2025, email to Defendants McDonald and Cavanaugh in the document that You produced, stamped NEH_AR_000010 at *10. For each individual, state their name, title, and organizational affiliation at the time of Defendant Fox's email.

6. List all words, phrases, subject areas, and viewpoints that were used to designate grants or awards for termination while evaluating NEH grants or awards for the Mass Termination. For each, state who designated it, when it was designated, and the rationale given for its designation.

7. Describe the procedure and process used to determine which NEH grants would be terminated as part of the Mass Termination. As part of Your answer, identify by name, title, and office the individuals with responsibility for developing and Implementation of the procedure or process.

8. Identify the individual(s) who typed Defendant McDonald's electronic signature on the grant termination letters.

9. Identify by name, title, and office, every individual who participated in the preparation or execution of Defendant McDonald's declarations in any litigation Relating To the termination of NEH grants or awards.

10. State whether the National Council on the Humanities or any other NEH advisory body or peer review panel was consulted about, or informed of, the Mass Termination. If so, identify the individual(s) by name, title, and office, and describe the substance of their involvement, including the dates of all meetings and means of any communication.

11. Identify every individual, Program, or Tool that populated every cell with text in column K in the spreadsheet you produced, stamped NEH_AR_000024. If an individual, identify them by name, title, and office. If an individual, Program, or Tool is responsible for more than one row, identify the specific rows each individual, Program, or Tool populated.

|  |  |
|---|---|
| Dated: September 29, 2025 | By: */s/ Jamie Crooks* <br> Jamie Crooks (*pro hac vice*) <br> Michael Lieberman (*pro hac vice*) <br> Amanda R. Vaughn (*pro hac vice*) <br> Yinka Onayemi <br> FAIRMARK PARTNERS, LLP <br> 400 7th Street, NW, Suite 304 <br> Washington, DC 20004 <br> Tel: 619.507.4182 <br> jamie@fairmarklaw.com <br> michael@fairmarklaw.com <br> amanda@fairmarklaw.com <br> yinka@fairmarklaw.com <br><br> *Attorneys for Plaintiffs and the Proposed Classes* |