**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AMERICAN COUNCIL OF LEARNED SOCIETIES,
      633 Third Avenue, 8th Floor New York, NY 10017,

AMERICAN HISTORICAL ASSOCIATION,
      400 A Street SE Washington, DC 20003,

MODERN LANGUAGE ASSOCIATION,
      85 Broad Street, New York, NY 10004,

*Plaintiffs,*

v.

MICHAEL MCDONALD, in his official capacity as Acting
Chairman of the National Endowment for the Humanities,
      400 7th St SW, Washington, DC 20506,

NATIONAL ENDOWMENT FOR THE HUMANITIES,
      400 7th St SW, Washington, DC 20506,

UNITED STATES DOGE SERVICE,
      736 Jackson Pl NW Washington, DC 20503,

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service,
      736 Jackson Pl NW Washington, DC 20503,

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration,
      1800 F St NW Washington, DC 20006,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,
      1800 F St NW Washington, DC 20006,

*Defendants.*

No. 25 Civ. 3657 (CM)

THE AUTHORS GUILD, WILLIAM GOLDSTEIN,
ELIZABETH KADETSKY, VALERIE ORLANDO,
KATALIN BALOG, BENJAMIN HOLTZMAN,
LEE JASPERSE, and NICOLE JENKINS,
on behalf of themselves and all others similarly situated,

*Plaintiffs,*

v.

NATIONAL ENDOWMENT FOR THE HUMANITIES;

No. 25 Civ. 3923 (CM)

MICHAEL MCDONALD, in his official capacity as Acting
Chairman of the National Endowment for the Humanities;

UNITED STATES DOGE SERVICE;

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service;

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration; and,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,

*Defendants.*

# MEMORANDUM OF LAW IN OPPOSITION TO THE AUTHORS GUILD PLAINTIFFS' MOTION TO COMPEL

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2652/2699
Email: MaryEllen.Brennan@usdoj.gov
        Rachael.Doud@usdoj.gov

MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
– Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .......................................................................................................2

    A. Case History .................................................................................................2

    B. The September 25, 2025, Conference .........................................................3

    C. The Administrative Record .........................................................................4

    D. The Authors Guild Plaintiffs' Discovery Requests and the Government's Timely Responses and Objections ......................................................................6

    E. The Parties' Ongoing Meet-and-Confer Discussions and the Authors Guild Plaintiffs' Motion ..........................................................................................9

ARGUMENT ...........................................................................................................11

  I. Standards Applicable to a Motion to Compel ...............................................11

  II. The Government Responded Appropriately to the Authors Guild Plaintiffs' Requests and Their Motion Is Premature and Improper ...............................12

  III. The Authors Guild Plaintiffs' Have Not Shown That the Record Is Incomplete ...........16

      a. Legal Standard .........................................................................................16

      b. The Authors Guild Plaintiffs Have Not Demonstrated That the Administrative Record Is Incomplete ...................................................17

  IV. The Court Should Reject the Authors Guild Plaintiffs' Premature, Categorical Challenges to the Government's Discovery Objections ...................................20

      a. The Government's Objections Pertaining to the Administrative Record Are Valid .................................................................................................20

      b. The Government's Objections Pertaining to Discovery Into the Executive Branch Are Valid .....................................................................24

CONCLUSION ........................................................................................................25

## TABLE OF CASES

Page(s)

**Cases**

*Afianian v. Duke*,
    No. 17 Civ. 7643 (RAO), 2018 WL 9619346 (C.D. Cal. Nov. 30, 2018) ................................. 21

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
    No. 11 Civ. 6746 (RKE) (HBP), 2012 WL 4791804 (S.D.N.Y. Oct. 9, 2012) ............. 11, 12, 14

*Bellion Spirits, LLC v. United States*,
    335 F. Supp. 3d 32 (D.D.C. 2018) .......................................................................... 21

*Berenson v. Biden*,
    791 F. Supp. 3d 398 (S.D.N.Y. 2025) ........................................................................ 3

*Beverly Hills Unified School Dist. v. Fed. Transit Admin.*,
    No. 18 Civ. 716 (GW), 2018 WL 5919218 (C.D. Cal. Sept. 17, 2018) ..................................... 19

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
    No. 95 Civ. 8833(RPP), 2000 WL 520647 (S.D.N.Y. Apr. 28, 2000) ...................................... 11

*Carlsson v. USCIS*,
    No. 12 Civ. 7893 (CAS), 2015 WL 1467174 (March 23, 2015) .............................................. 22

*Casey v. Pallito*,
    No. 12 Civ. 284, 2014 WL 13140438 (D. Vt. Dec. 16, 2014) ................................................. 11

*Cheney v. U.S. Dist. Court for the Dist. of Columbia*,
    542 U.S. 367 (2004) ...................................................................................... 25

*Chiayu Chang v. USCIS*,
    254 F. Supp. 3d 160 (D.D.C. 2017) ........................................................................ 21

*Comprehensive Cmty. Dev. Corp. v. Sebelius*,
    890 F. Supp. 2d 305 (S.D.N.Y. 2012) .............................................................. 5, 16, 17

*Conservation Force v. Ashe*,
    979 F. Supp. 2d 90 (D.D.C. 2013) ......................................................................... 16

*Delgado v. Donald J. Trump for President, Inc.*,
    No. 19 Civ. 11764 (AT) (KHP), 2024 WL 3219809 (S.D.N.Y. June 28, 2024) ........................ 8

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019) .................................................................................. 21, 24

*Estate of Landers v. Leavitt*,
    545 F.3d 98 (2d Cir. 2008) ............................................................................... 11

*Excess Ins. Co. v. Rochdale Ins. Co.*,
    No. 05 Civ. 10174, 2007 WL 2900217 (S.D.N.Y. Oct. 4, 2007).............................. 12

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ................................................................................... 20, 21

*Grill v. Quinn*,
    No. Civ. S-10-757 (GEB) (GGH) (PS), 2012 WL 174873 (E.D. Cal. Jan. 20, 2012).............. 24

*Hadwan v. U.S. Dep't of State*,
    No. 17 Civ. 578 (VEC), 2021 WL 4037714 (S.D.N.Y. Sept. 3, 2021).................... 16, 17, 21, 22

*Hill Dermaceuticals, Inc. v. FDA*,
    709 F.3d 44 (D.C. Cir. 2013)............................................................................. 21

*In re U.S. DOGE Service, et al.*,
    No. 24A1122, June 6, 2025 Dkt. Entry ................................................................ 25

*James Madison Ltd. v. Ludwig*,
    82 F. 3d 1085 (D.C. Cir. 1996)........................................................................... 16

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,
    58 F. Supp. 1191 (D.N.M. 2014)................................................................... 21, 22

*Lucero v. Medical Center Pharmacy Inc.*,
    No. 22 Civ. 8917 (RA) (OTW), 2024 WL 2112207 (S.D.N.Y. May 10, 2024) ............... 12, 14

*Mayor & City Council of Baltimore v. Trump*,
    429 F. Supp. 3d 128 (D. Md. 2019)...................................................................... 23

*Multi-State Partnership for Prevention v. Kennedy*,
    No. 24 Civ. 00013 (JMW), 2024 WL 3758802 (E.D.N.Y. Aug. 12, 2024) ..................... 12, 14

*National Audubon Soc. v. Hoffman*,
    132 F.3d 7 (2d Cir. 1997) ............................................................................ 20, 21

*National Min. Ass'n v. Jackson*,
    Nos. 10-1220, 11-295, 11-446, 11-447 (RBW), 2011 WL 9977235 (D.D.C. 2011) ............... 18

*National TPS Alliance v. Noem*,
    No. 25 Civ. 5687 (SK), 2025 WL 2419266 (N.D. Cal. Aug. 21, 2025) ................................ 23

*National TPS Alliance v. Noem*,
    No. 25 Civ. 1766 (EMC), 2025 WL 1276229 (N.D.Cal. May 2, 2025) ................................ 23

*New York v. U.S. Dep't Commerce*,
  345 F. Supp. 3d 444 (S.D.N.Y. 2018)................................................................... 23, 24

*Pacific Shores Subdivision Cal. Water Dist. v. U.S. Army Corps. of Eng'rs*,
  448 F. Supp. 2d 1 (D.D.C. 2006)......................................................................... 16, 17

*Republic of Turkey v. Christie's, Inc.*,
  326 F.R.D. 394 (S.D.N.Y. 2018) ............................................................................... 8

*Tafas v. Dudas*,
  530 F. Supp. 2d 786 (E.D. Va. 2008)....................................................................... 22

*Vidal v. Duke*,
  Nos. 16 Civ. 4756, 17 Civ. 5228 (NGO) (JO), 2017 WL 8773110 (E.D.N.Y. Oct. 17, 2017).. 24

**Rules**

Fed. R. Civ. P. 25.......................................................................................................... 3

Fed. R. Civ. P. 34......................................................................................................... 11

Fed R. Civ. P. 36.......................................................................................................... 2

Fed R. Civ. P. 37......................................................................................................... 13

The Government submits this memorandum of law in opposition to the motion to compel filed by the plaintiffs in *The Authors Guild v. National Endowment for the Humanities*, No. 25 Civ. 3923 (CM) (the "Authors Guild Plaintiffs") ("Motion" or "Pls.' Mot.").

## PRELIMINARY STATEMENT

The Court should deny the Authors Guild Plaintiffs' Motion. The Government has complied with the Court's directives and has not, as the Authors Guild Plaintiffs claim, refused to engage in discovery. Rather, the Government timely served detailed responses and objections to the Authors Guild Plaintiffs' eighty discovery requests on December 2, 2025, as the Court instructed it to do. The Government provided substantive responses to many of the Authors Guild Plaintiffs' requests and agreed to undertake a search in response to others. The parties met and conferred about the requests and the Government's responses less than a week later, on Monday, December 8, 2025, and the Government informed the Authors Guild Plaintiffs that it would consider the issues raised and provide a response regarding certain issues within three days—by Thursday, December 11, 2025. Rather than waiting for the Government's response and continuing the parties' meet-and-confer process to determine what disputes actually needed to be raised to the Court, the Authors Guild Plaintiffs filed their Motion on December 9. Like the plaintiffs in *American Council of Learned Societies v. National Endowment for the Humanities*, No. 25 Civ. 3657 (CM) (the "ACLS Plaintiffs" and, together with the Authors Guild Plaintiffs, "Plaintiffs"), who filed a letter motion to compel on the same date, the Authors Guild Plaintiffs short-circuited the parties' meet-and-confer process by prematurely filing their Motion. Notably, moreover, the Authors Guild Plaintiffs improperly ask the Court to overrule broad categories of the Government's objections and to order the Government to produce "all relevant documents," Pls.' Mot. at 3, without referring to specific discovery requests or identifying which of the Government's responses are supposedly inadequate.

The Authors Guild Plaintiffs' assertion that the Court should sweepingly order the Government to "complete the administrative record" and simultaneously "produce all relevant documents" in discovery, Pls.' Mot. at 1, 3, is impractical, unwarranted, and legally unsound. As an initial matter, the administrative record is entitled to a presumption of completeness, and the Authors Guild Plaintiffs have not identified evidence that would rebut that presumption. On the contrary, the Authors Guild Plaintiffs insist that the record already "demonstrates, in stark and unmistakable fashion," that the Government carried out grant terminations based on the grants' association with disfavored viewpoints and that DOGE-affiliated personnel were in charge of the grant terminations. *Id.* at 5. Further, the Government's objections that discovery should at least take account of gaps in the record and what, if any, evidence Plaintiffs actually need beyond the record are valid and consistent with this Court's prior statements. The Government appreciates that this Court has ordered the parties to engage in discovery and is doing so, but Plaintiffs' refusal to meaningfully consider the contents of the administrative record and tailor their discovery demands (and the relief they seek through this motion practice) according to any extra-record needs is at odds with longstanding principles underlying the limitations on discovery that apply to claims challenging agency action—including constitutional claims. At bottom, the Authors Guild Plaintiffs' premature, inaccurate, and legally improper motion to compel only serves to waste the Court's and the parties' time and unnecessarily delay a discovery process in which the Government has been engaging in good faith. It should be denied.

## BACKGROUND

### A. Case History

Plaintiffs filed suit in May 2025 and the Court consolidated the two cases. Dkt. Nos. 1, 52, 75. On May 30, 2025, Defendants moved to dismiss both sets of plaintiffs' complaints. Dkt. No.

76.    In its July 25, 2025, Decision and Order, the Court granted in part and denied in part Defendants' motion to dismiss.  Dkt. No. 116.  The Authors Guild Plaintiffs' remaining claims challenge the termination of their National Endowment for the Humanities ("NEH") grants on the grounds that the terminations violated the Administrative Procedure Act ("APA") and the First Amendment and were *ultra vires*.  *See* Dkt. No. 116 at 34-35, 81-82.[1]

### B.  The September 25, 2025, Conference

On September 25, 2025, the Court held an initial pretrial conference.  Sept. 25, 2025, Minute Entry.  In advance of the conference, Plaintiffs submitted letters arguing that, although their cases challenge administrative actions, discovery in the case should not be limited to, or constrained by, the administrative record.  *See* Dkt. Nos. 123, 124, 136, 137, 139.  The Government submitted a letter explaining that Plaintiffs' surviving claims, including those brought under the First Amendment, challenge government agency decisions, that the focus for judicial review should therefore be the administrative record, and that any additional discovery should be limited and require a showing by Plaintiffs that the administrative record is insufficient to decide the claims.  Dkt. No. 138.  The Government served Plaintiffs with the administrative record on September 23, 2025, and, based on the Court's directions at the conference, filed it on the docket on September 29, 2025.  Dkt. No. 140.

At the initial pretrial conference—before the administrative record was filed and available

---

[1] Plaintiffs brought suit against Nate Cavanaugh and Justin Fox in their official capacities as employees "of the U.S. DOGE Service or the General Services Administration."  Both were employed by the General Services Administration and not the U.S. DOGE Service.  Additionally, both are no longer in those positions, and there is no successor to their positions. Accordingly, the United States should be substituted for these officials as a defendant.  *See* Fed. R. Civ. P. 25(d) (when a public officer who is a party in an official capacity ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party);  *Berenson v. Biden*, 791 F. Supp. 3d 398, 405 (S.D.N.Y. 2025) (substituting United States for defendant sued in official capacity who no longer held position for whom no successor was named).

for the Court to review—the Court made certain general observations concerning its proper scope. *See* Dkt. No. 150 ("Tr.") 3:6-16. The Court then stated that it would require the Government to turn over the administrative record, after which Plaintiffs could "make out a case for needing additional–over and above the administrative record–discovery, both to prove [their] First Amendment claim, which is a claim I'm really interested in, and to prove any APA claims that are in the case," noting "I can't make that decision until you've looked at the administrative record." *Id.* 5:13-18. After being told the Government had already produced the administrative record to Plaintiffs, the Court stated Plaintiffs were "in a position to ask for extra record discovery, and tell me exactly what you want. So make your motion." *Id.* 7:16-18. The Court also stated that Plaintiffs "should be able to craft discovery requests that, when somebody gives me the administrative record on the discovery requests, we'll be able to say, here's a gap, here's a gap, here's a gap, here's where you're entitled to more information." *Id.* at 12:19-23. The court ordered that Plaintiffs could serve discovery requests and the Government would then have fourteen business days to object. *Id.* 18:1-2.

### C. The Administrative Record

The administrative record produced by the Government on September 23, 2025, contains emails from the period leading up to the grant terminations and a number of large and detailed spreadsheets reflecting the process by which grants were evaluated and identified for termination. *See* Dkt. No. 152 and spreadsheets emailed to the Court and Plaintiffs on September 29, 2025. These documents reflect the roles that Justin Fox, Nate Cavanaugh, Michael McDonald, and others played in the process of identifying grants for termination and terminating grants, the information considered in selecting grants for termination, and the reasons why particular grants were selected.

To date, the Authors Guild Plaintiffs have not asserted that these documents do not reflect

the reasons the grants were terminated.  To the contrary, both at the initial pretrial conference and in their Motion, the Authors Guild Plaintiffs assert that the administrative record proves their claims that grants were terminated based on "impermissible viewpoint discrimination" and that "the Mass Termination was carried out either by or at the direction of representatives of [the U.S. DOGE Service]."  Pls.' Br. at 3, 4; *see also* Tr. 14:25-16:6 (arguing that the documents included in the administrative record show that "approximately 1,300 grants that were canceled were very much along the lines that your opinion noted would violate the First Amendment," prompting the Court to ask whether the Authors Guild Plaintiffs wanted to move for summary judgment).

On November 13, 2025, the Authors Guild Plaintiffs informed the Government by letter of two purported deficiencies in the administrative record.  *See* Dkt. No. 158-3.  First, they noted certain instances in which attachments to emails included within or linked to in email chains in the administrative record were not included the record.  *Id.* at 3.  Second, they noted that, while the administrative record included a final list of the organizational grants that were terminated, it did not include a final list of the individual grants that were terminated.  *Id.*  On December 2, 2025, the Government supplemented the administrative record with an email attaching the final lists of both individual and organizational grants that were terminated and two of the attachments the Authors Guild Plaintiffs had identified as purportedly missing from the administrative record. Declaration of Mary Ellen Brennan, December 16, 2025 ("Brennan Decl.") ¶ 6.  Two of the other attachments referenced had already been included in the administrative record, while one of the emails referenced did not have an attachment.  *Id.* ¶ 7 & Ex. A.  The Government did not produce the other attachments the Authors Guild Plaintiffs identified as purportedly missing from the administrative record because they are pre-decisional interim lists not reflecting the final termination decisions.  *See id.* & Ex. A; *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp.

2d 305, 312 (S.D.N.Y. 2012) (recognizing that "deliberative materials antecedent to the agency's decision fall outside the administrative record"). The Government will include those attachments in its privilege logs.

In their Motion, the Authors Guild Plaintiffs argue for the first time that the administrative record may be incomplete because it does not include any documents from prior to February 7, 2025, citing a statement in Michael McDonald's declaration from the *Thakur* case that "[b]etween January 20 and February 7, 2025," former NEH Chair Shelly Lowe "directed NEH program staff to review open grants in light of new Executive Orders." Pls.' Mot. at 14-15 (citing Dkt. No. 158-4, Declaration of Michael McDonald, ¶ 7). Plaintiffs did not previously raise this issue with the Government, and the Government is now looking into whether there are earlier documents that should be included in the administrative record. Brennan Decl. ¶ 8. The Government notes, however, that the documents in the administrative record do reflect instructions to review grants in light of the Executive Orders. *See* NEH_AR_000001, NEH_AR_000005, NEH_AR_000007, NEH_AR_000013, NEH_AR_000021.

### D. The Authors Guild Plaintiffs' Discovery Requests and the Government's Timely Responses and Objections

On September 29, 2025, the ACLS Plaintiffs and Authors Guild Plaintiffs each served a set of interrogatories, requests for admission, and document requests. *See* Dkt. Nos. 158-5, 6, 8; Brennan Decl. Exs. B-D. These requests include eleven interrogatories, thirteen requests for production, some with multiple subparts, and fifty-six requests for admission from the Authors Guild Plaintiffs, and a similar number of requests from the ACLS Plaintiffs. The two sets of Plaintiffs' requests largely, but do not entirely, overlap.

In the Government's responses and objections, it did not, as the Authors Guild Plaintiffs claim, "[f]or the most part refuse[] to provide the requested information" or respond to only a

"handful of requests."  Pls.' Br. at 7.  To the contrary, the Government provided detailed and specific responses and objections to each of the requests.  Further, the Government did not object and refuse to respond to any of the Authors Guild Plaintiffs' written discovery requests solely on the basis that they have not made a showing that they are entitled to materials beyond the administrative record.  Where the Government did not provide a substantive response or agree to search for documents in response to a request, the Government asserted other objections.

Specifically, the Government provided substantive responses to three of the Authors Guild Plaintiffs' interrogatories and offered to meet and confer with them about two others.  Four of the other interrogatories sought to impose obligations outside the scope specified in Local Civil Rule 33.3.  And certain of the interrogatories were objectionable for other reasons.  For example, Interrogatory No. 9 asks the Government to identify all of the individuals involved in the preparation and execution of McDonald's declaration in any litigation concerning the termination of NEH grants or awards.  Dkt. No. 158-6 at 14.  Among other issues, it is not clear how the identities of individuals involved in preparing declarations for filing in cases including this one— which process is clearly subject to work product protection—are relevant to the Authors Guild Plaintiffs' claims.  Nonetheless, the Government plans to supplement its response to this Interrogatory now that Plaintiffs have clarified that they do not seek the identities of Department of Justice personnel.  Brennan Decl. ¶ 17.

As for the Authors Guild Plaintiffs' document requests, the Government agreed to undertake a search, or otherwise produce documents, in response to five of the requests, informed Plaintiffs that it was not aware of any documents responsive to an additional four requests, and offered to meet and confer about two other requests.  Other requests are objectionable for various reasons set forth in the Government's responses and objections.  For example, Request for

Production 1 seeks an unredacted copy of an email the Government repeatedly told Plaintiffs was partially withheld based on deliberative process protection and for which the Government has now provided a privilege log.  Dkt. No. 158-5 at 6.

The Government responded to approximately half of the Authors Guild Plaintiffs' fifty-six Requests for Admission by either admitting or denying the request, modifying the request as necessary to make the responses accurate.  The Government objected to and did not admit or deny the remaining requests on a number of bases but offered to meet and confer regarding its responses. These requests were improper for various reasons, including that many of the requests are inconsistent with the purpose of such requests under Federal Rule of Civil Procedure 36.  For example, Requests for Admission No. 17 and 18 ask the Government to admit that "Michael McDonald did not want to terminate" grants or awards that were terminated.  Dkt. No. 158-11 at 20-21.  As the Government explained, Rule 36 "is not a discovery device," but, rather, is intended to "confirm facts such that they do not need to be established at trial."  *Delgado v. Donald J. Trump for President, Inc.*, No. 19 Civ. 11764 (AT) (KHP), 2024 WL 3219809, at *7 (S.D.N.Y. June 28, 2024).  As another example, the Authors Guild Plaintiffs ask the Government to "Admit that grants and awards terminated as part of the Mass Termination were terminated because of the viewpoint of the project for which the grant or award was given."  Request for Admission 51, Dkt. No. 158-11 at 51.  This request effectively demands that the Government ratify a legal conclusion.  *See generally Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) ("[W]here requests for admission are not designed to identify and eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit . . . a court may excuse a party from responding to the requests.").

Finally, the Government objected to the depositions the Authors Guild Plaintiffs seek to

take where they failed to explain what information they believe is needed from those depositions. The Government does not intend to move for relief from Michael McDonald and Adam Wolfson's depositions proceeding. But, as explained more fully below, *see infra* Section IV.a, the Authors Guild Plaintiffs have not demonstrated that the additional depositions they seek are necessary to fill gaps in the administrative record, designed to seek information relevant to their claims or defenses, or proportionate to the needs of the case.

### E.  The Parties' Ongoing Meet-and-Confer Discussions and the Motion to Compel

On December 8, 2025, less than a week after the Government served its responses and objections, the parties engaged in a meet-and-confer concerning the requests and the Government's responses. Brennan Decl. ¶¶ 12-13. Plaintiffs indicated that they were not challenging all of the Government's responses and objections, but wanted to discuss particular requests, which the parties did. *Id.* ¶ 12. Among other issues, Plaintiffs asked whether the Government would agree to search the documents of DOGE-affiliated personnel including Justin Fox and Nate Cavanaugh. The Government said that it would consider doing so but needed time to consult with agency counsel. *Id.* ¶ 13. After the call, the ACLS Plaintiffs emailed to ask the Government to respond on that issue by 2 p.m. the following day, December 9, 2025. *Id.* The Government responded that it needed some additional time but would respond by Thursday, December 11. *Id.* The Authors Guild Plaintiffs nonetheless filed their Motion on December 9. Dkt. No. 158.

On December 11, the Government emailed Plaintiffs with proposed custodians and search terms and informed Plaintiffs that it would search the General Services Administration ("GSA") documents of Nate Cavanaugh and Justin Fox.[2]  Brennan Decl. ¶ 14. The Government also

---

[2] Fox and Cavanaugh were employed by GSA rather than U.S. DOGE Service, as Plaintiffs alternatively allege. *See* Dkt. No. 158-11 at 8 (response to RFA 1).

informed Plaintiffs that, in response to issues raised during the meet-and-confer, it plans to supplement its responses to certain requests. *Id.* On December 12, 2025, the Government sent Plaintiffs a privilege log and declaration supporting invocation of deliberative process protection for the document redacted in the administrative record. *Id.* ¶ 16.

In their Motion, the Authors Guild Plaintiffs purport to paraphrase verbal statements the Government made during the parties' meet-and-confer. Pls.' Br. at 12-13. Their recitation of these purported statements—made without any citation or other support—is inaccurate and incomplete. The Government did not refuse to provide discovery beyond the administrative record—indeed, the Government had already provided substantive responses to many of Plaintiffs' requests and agreed to undertake a search. The Government also agreed at the meet and confer to consider supplementing its responses in various ways. This included whether to search the GSA documents of Justin Fox and Nate Cavanaugh—which the Government agreed to do.

It is also false that the Government supposedly "made no effort to identify individuals outside of NEH involved in the grant terminations." Pls.' Mot. at 12. The Government has never disputed that Fox and Cavanaugh were involved in the grant terminations, and its responses to Plaintiffs' requests reflect that. *See* Response to Interrogatory No. 2, Dkt. No. 158-6 at 7-8. The Government's understanding is that these were the only two DOGE-affiliated individuals who came to NEH and worked with NEH to identify grants for termination.

Further, while the Authors Guild Plaintiffs accuse the Government of "try[ing] to stave off an impasse by insisting" that it would consider various issues, Pls.' Mot. at 13, the Government was attempting to engage in a good faith meet-and-confer process to narrow the disputes that might eventually need to be brought to the Court. The Authors Guild Plaintiffs—and the ACLS Plaintiffs—circumvented that process by moving to compel without even allowing the

Government to respond.[3]

# ARGUMENT

## I.    Standards Applicable to a Motion to Compel

Rule 37 of the Federal Rules of Civil Procedure provides that a party may move to compel a discovery response when an opposing party fails to comply with a discovery request. Fed. R. Civ. P. 34(a)(3)(B).  "Such a motion must identify responses to requests believed to be inadequate, and provide explanation as to why those responses are inadequate."  *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11 Civ. 6746 (RKE) (HBP), 2012 WL 4791804, at *5-6 (S.D.N.Y. Oct. 9, 2012).  Where the moving party fails to comply with these requirements, their motion is properly denied.  *See, e.g.*, *id.* (denying motion to compel discovery where, "though plaintiffs' motion is titled a 'Motion to Compel Discovery,' it makes little attempt to identify specific, allegedly problematic discovery responses by defendant, instead focusing on broader discovery issues" and while "Plaintiffs include their document requests and interrogatories with their motion, along with defendant's responses," they "scarcely reference any specific responses in their memoranda of law"); *Casey v. Pallito*, No. 12 Civ. 284, 2014 WL 13140438, at *3 (D. Vt. Dec. 16, 2014) (citing "lack of specificity" as a "fundamental problem" with motion to compel, where motion "generally seeks production of everything Casey has asked for but has not received"); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 Civ. 8833 (RPP), 2000 WL 520647, at *2 (S.D.N.Y. Apr. 28, 2000) ("A motion to compel . . . citing RPR's questions and citing the

---

[3] The Authors Guild Plaintiffs suggest that the Government had already agreed the parties were at an impasse.  Pls.' Mot. at 12, 13.  The Government indicated that the parties were at an impasse concerning the role of the administrative record in this case.  Despite the parties' disagreement on that issue, however, the Government provided substantive responses to many of Plaintiffs' discovery requests and agreed to produce additional documents.  The parties were not at an "impasse" at the point the Authors Guild Plaintiffs filed their motion, given that the Government had explicitly told them it would respond to them regarding certain issues in the next two days.

language of Bristol's answers which are non-responsive or partially non-responsive would have been the appropriate manner to present this issue for the Court's determination.").

Additionally, the Federal Rules of Civil Procedure and the Local Civil Rules of this Court require that parties meet and confer in a good faith attempt to resolve discovery disputes before formally initiating motion practice or raising disputes with the Court. *See* Fed R. Civ. P. 37(a); Local Civil Rules 26.4, 37.3(a); *see also Auto. Club of N.Y.*, 2012 WL 4791804, at *6. This requires the parties to "make a genuine effort to resolve the dispute." *Excess Ins. Co. v. Rochdale Ins. Co.*, No. 05 Civ. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007). The meet-and-confer requirements are intended to avoid unnecessarily seeking court intervention when the parties may be able to resolve certain disputes. *See id.* Where parties have failed to engage in a good faith meet-and-confer process, courts have denied their requests for discovery relief. *See, e.g.*, *Multi-State Partnership for Prevention v. Kennedy*, No. 24 Civ. 13 (JMW), 2024 WL 3758802, at *8-9 (E.D.N.Y. Aug. 12, 2024) (denying motion for protective order and motion to compel where parties failed to make "a meaningful effort to meet and confer"); *Lucero v. Medical Center Pharmacy Inc.*, 22 Civ. 8917 (RA) (OTW), 2024 WL 2112207, at *1-2 (S.D.N.Y. May 10, 2024) (similar).

## II. The Government Responded Appropriately to the Authors Guild Plaintiffs' Requests and Their Motion Is Premature and Improper

As detailed above, *see supra* Section D, the Government timely and appropriately responded to the Authors Guild Plaintiffs' discovery requests with detailed and specific responses to each request. The Authors Guild Plaintiffs claim that the Government engaged in "procedural obstruction," Pls.' Mot. at 3, and improperly refused to respond to their requests, *id.* at 19, but it is the Authors Guild Plaintiffs who have defied their discovery obligations by failing to engage in a good faith meet-and-confer process and prematurely moving to compel. Furthermore, they have

failed to identify specific responses to specific requests believed to be inadequate and provide an explanation as to why those responses are inadequate.

The Authors Guild Plaintiffs' contention that "[f]rom the beginning of this case, the Government has taken every opportunity to delay and avoid turning over relevant documents," Pls.' Mot. at 8, is at odds with the procedural history of this case. The Government voluntarily produced the administrative record before the initial pretrial conference and before the Court had imposed any deadline to do so. The Government also timely responded and objected to the Authors Guild Plaintiffs' voluminous discovery requests.[4]

Further, the Government's responses and objections to the Authors Guild Plaintiffs' requests were appropriate. The Government provided detailed responses and objections to each of their eighty requests, including substantive responses to many of the requests and agreement to search for responsive documents. *See supra* Section D. While the Government objected to certain of the Authors Guild Plaintiffs' requests, those objections were proper. *See id*. Indeed, the Authors Guild Plaintiffs do not appear to challenge any of the Government's objections other than its objection regarding the administrative record—which, as noted above, is not the basis for the Government declining to respond to any of the Authors Guild Plaintiffs' requests.

Further, in its responses and objections, the Government offered to meet and confer with the Authors Guild Plaintiffs about various requests. During the meet-and-confer, the Government repeatedly stated that it would consider the issues the Authors Guild Plaintiffs raised and respond

---

[4] The Authors Guild Plaintiffs refer to correspondence between the parties concerning a motion for a protective order the Government was considering filing. Pls' Mot. at 11. The Government never stated that it did not intend to comply with the Court's order to respond and object to Plaintiffs' requests by the deadline. The Authors Guild Plaintiffs also misstate the contents of the Government's emails, which speak for themselves, but are in any event irrelevant to the sufficiency of the Government's responses to Plaintiffs' discovery requests.

to them.  Brennan Decl. ¶ 12.  In particular, the Government agreed that it would consider expanding its search of NEH records to include DOGE-affiliated personnel and told the Authors Guild Plaintiffs that it would provide a response by Thursday—*i.e.*, three days later.  *Id.* ¶ 13.  The Government did so and agreed that it would search the GSA documents of Nate Cavanaugh and Justin Fox.  *Id.* ¶ 14.  The Government also, as agreed, provided proposed custodians and search terms as well as a proposed completion date for the productions.  *Id.*

The Authors Guild Plaintiffs' Motion is premature and improper.  First, by not waiting for a response they knew was forthcoming within a matter of days, the Authors Guild Plaintiffs failed to engage in a good faith meet-and-confer process.  *See Auto. Club*, 2012 WL 4791804, at *6; *Multi-State Partnership*, 2024 WL 3758802, at *8-9; *Lucero*, 2024 WL 2112207, at *1-2.

Second, the Authors Guild Plaintiffs' Motion fails to "identify responses to requests believed to be inadequate, and provide explanation as to why those responses are inadequate." *Auto. Club*, 2012 WL 4791804, at *5-6.  Like the motion the court found insufficient in *Auto. Club,* the Authors Guild Plaintiffs barely mention any of their actual requests or the Government's responses.  Instead, the Authors Guild Plaintiffs falsely suggest that the Government refused to provide any discovery and ask the Court to rule on particular objections in the abstract without reference to specific requests.  The Motion is not a proper motion to compel, and the Court should deny it without prejudice to the Authors Guild Plaintiffs' ability to challenge the Government's responses to particular requests once the parties have completed the meet-and-confer process.

Finally, to the extent the Authors Guild Plaintiffs' motion hinges on their assertion that the Government is "refusing to conduct discovery regarding DOGE" or GSA, Pls.' Mot. at 22, that is not the case.  The Government has agreed to search for and produce relevant, non-privileged documents from the government files of Cavanaugh and Fox—the DOGE-affiliated employees

14

who worked with NEH in connection with the grant termination process.[5]  The Authors Guild Plaintiffs point to an email in which Fox refers to "pressure from the top" and assert that they need to know "who at DOGE or elsewhere directed Fox and Cavanaugh to inject themselves into NEH operations, what instructions they were following with respect to reviewing and terminating grants, who supervised their work, or any other documents that would shine light on this 'pressure' . . . ." Pls.' Mot. at 16.   However, such information—to the extent not already addressed by the administrative record and the additional searches the Government has agreed to undertake— is not relevant or proportional to the needs of the case.  The Court has stated that to satisfy the "rigorous standard" necessary to establish Plaintiffs' claims that DOGE "acted ultra vires" in terminating NEH grants, Plaintiffs "must prove that Cavanaugh and Fox effectively usurped the legal authority to terminate grants that Congress had expressly conferred on the NEH Chairperson."  ECF No. 116, at 67-68.   While Cavanaugh and Fox's own actions are relevant to this question, the communications of individuals not directly involved in the grant terminations are not.  Similarly, it is not clear how discovery into individuals at U.S. DOGE Service, or DOGE more broadly, who were not directly involved in the grant termination process would advance Plaintiffs' First Amendment claims, particularly when the administrative record already reflects the executive directives that Fox, Cavanaugh, and NEH implemented in seeking to terminate the grants based on perceived connections to DEI, gender ideology, and other such concepts, as well as the assessments by those involved of how individual grants implicated those concepts.  *See supra* Section C and *infra* Section III.b.  At any rate, searching Cavanaugh's and Fox's documents is sufficient to address Plaintiffs' purported need for such information.

---

[5] Fox and Cavanaugh were GSA employees, with GSA email accounts; they were not employed by the U.S. DOGE Service and did not have U.S. DOGE Service email accounts.  *See* Brennan Decl. ¶ 15.

### III.    The Authors Guild Plaintiffs Have Not Shown That the Record Is Incomplete

#### a.  Legal Standard

An administrative record "includes all materials compiled by the agency . . . that were before the agency at the time [a] decision was made." *James Madison Ltd. v. Ludwig*, 82 F. 3d 1085, 1095 (D.C. Cir. 1996).  "[T]he relevant materials 'before the agency' are those that the agency decision-makers directly or indirectly considered." *Sebelius*, 890 F. Supp. 2d at 308.  In compiling the record, an agency "is not obligated to include every potentially relevant document existing within its agency." *Pacific Shores Subdivision Cal. Water Dist. v. U.S. Army Corps. of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006).

There is a "well-established presumption that an agency has properly designated the administrative record." *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 98-99 (D.D.C. 2013). "It is the province of the agency to compile and submit the administrative record for review by the Court, and common sense dictates that the agency determines what constitutes the whole administrative record because it is the agency that did the considering . . . ." *Sebelius*, 890 F. Supp. 2d at 309 (citations and quotation marks omitted).

The "strong presumption" that an agency properly designated the record can only be rebutted by "concrete evidence to show that certain documents were presented to the final agency decisionmaker but were not included in the administrative record." *Hadwan v. U.S. Dep't of State*, No. 17 Civ. 578 (VEC), 2021 WL 4037714, at *4 (S.D.N.Y. Sept. 3, 2021).  Moreover, to "rebut the presumption of administrative regularity," a party "must show that the materials sought to be added [to the record] were before the agency *decision-maker*"—not just "somewhere within the agency." *Sebelius*, 890 F. Supp. 2d at 309 (emphasis in original).  A party "cannot meet its burden simply by asserting that [certain] documents are relevant, were before or in front of the [agency]

at the time it made its decision, and were inadequately considered." *Pac Shores*, 448 F. Supp. 2d at 6. Rather, a party "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Id*.

Alternatively, a party may request that a Court consider evidence outside the record if the party makes "a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers." *Hadwan*, 2021 WL 4037714, at *4. Making a showing of bad faith is "no small hurdle," and courts "will not 'ascribe nefarious motives to agency action as a general matter.'" *Id.* (quoting *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008)).

### b. The Authors Guild Plaintiffs Have Not Demonstrated That the Administrative Record Is Incomplete

The administrative record compiled by the Government comports with the relevant standard. It contains "the relevant materials 'before the agency,'" *i.e.*, the information "the agency decision-makers directly or indirectly considered" in deciding which grants to terminate. *See, e.g.*, *Sebelius*, 890 F. Supp. 2d at 308. As discussed *supra* in Section C, the documents in the administrative record reflect the roles that Justin Fox, Nate Cavanaugh, Michael McDonald, and others played in the process of identifying grants for termination and terminating grants, the information they considered in selecting grants for termination, and the reasons why particular grants were selected for termination. *See* Dkt. No. 152.

The Authors Guild Plaintiffs have not identified evidence sufficient to overcome the strong presumption that the agency properly designated the record. As an initial matter, their continued and near-exclusive focus on the "number of documents" in the administrative record is misleading and legally irrelevant. *See* Pls.' Mot. at 1, 2, 3, 6, 14, 16 (all referring to number of documents in the record); *see also* Tr. 7:2, 8:15, 8:19 (same). Eleven of the documents included in the administrative record are large spreadsheets, many of which are voluminous and detailed, with

17

multiple tabs and hundreds of pages of content.[6]  For example, one spreadsheet contains more than

3,000 rows and 14 columns; each row of that spreadsheet contains a detailed grant description

considered by decisionmakers, and the spreadsheet includes a column titled "DEI Rationale"

reflecting why decisionmakers flagged particular grants for termination.  *See* NEH_AR_000024.

Another spreadsheet contains five tabs of data, labeled "NEH Grant Summary," "To Keep," "To

Cancel (Orgs)," "To Cancel (Indiv)," and "ALL ACTIVE GRANTS."  NEH_AR_000085.  In

blindly focusing on the number of "documents" in the record, Plaintiffs not only neglect to

acknowledge the voluminous and detailed nature of the spreadsheets; they fail to articulate

substantively why the documents presently in the record fall short of the relevant standard.

In any event, "the amount of material in the record is insignificant so long as that material

enables the Court to review the agenc[y's] actions and determine the issues in dispute."  *Nat'l Min.

Ass'n v. Jackson*, Nos. 10-1220, 11-295, 11-446, 11-447 (RBW), 2011 WL 9977235, at *3-4

(D.D.C. Sept. 14, 2011) (rejecting plaintiff's argument that "five documents" could not

"adequately explain" a certain agency decision and stating that "the size of the administrative

record is unimportant" where record answers "key questions facing the Court").  Here, Plaintiffs

assert that the current record already "demonstrates, in stark and unmistakable fashion, that

Defendants carried out the terminations based on the grants' association or perceived association

with disfavored viewpoints and disfavored political parties" and shows that "the Mass Termination

was carried out either by or at the direction of representatives of . . . the U.S. DOGE Service."

Pls.' Mot. at 4-6; *see also* Tr. 15:2-8 (stating that "among the spreadsheets [in the] administrative

_____

[6] Although the Court suggested at the September 25 conference that the record was likely
incomplete based on the Authors Guild Plaintiffs' representation that it included no more than "23
documents," the Court had not been provided with the record at that time and therefore appeared
to be under the impression based on Plaintiffs' focus on the number of "documents" that the record
contained "23 pieces of paper."  Tr. 10: 23.

record, the grants – approximately 1300 grants that were canceled were very much along the lines that your opinion noted would violate the First Amendment"). Such assertions undermine the contention that the record is "meager" and "plainly incomplete." Pls.' Mot. At 4-6, 13-16.

Further, the Authors Guild Plaintiffs' conclusory and speculative suggestions that the administrative record should include communications between the White House and "DOGE," records "from GSA files," and "records from phone apps like Signal," Pls.' Mot. at 15, are insufficient to rebut the presumption that the record is complete. The Authors Guild Plaintiffs have not pointed to any concrete evidence that particular documents from the White House, U.S. DOGE Service, GSA files, or "phone apps like Signal"—the former two of which implicate special considerations, *see* Section IV.B, *infra*—were before the relevant decisionmakers involved in the NEH grant terminations when they occurred. *See, e.g., Beverly Hills Unified School Dist. v. Fed. Transit Admin.*, No. 18 Civ. 716 (GW), 2018 WL 5919218, *3 (C.D. Cal. Sept. 17, 2018) (plaintiff asserting that record is incomplete must "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record"). Plaintiffs make much of an email in the record in which Fox refers to "pressure from the top," repeatedly speculating that Fox and Cavanaugh must have "received directives missing from the Administrative Record," Pls.' Mot. at 15-16—but the record already reflects the directives to identify grants that focus on or promote environmental justice, DEI, DEIA, and gender ideology, pursuant to certain Executive Orders and a January 27, 2025, memorandum by the Office of Management and Budget, *see* NEH_AR_000001, NEH_AR_000005, NEH_AR_000007, NEH_AR_000013, NEH_AR_000021. Further, the record reflects the interplay between Fox, Cavanaugh, and NEH personnel regarding the grant termination decisions. *See* Pls.' Mot. at 4-5.

Nor do the Authors Guild Plaintiffs' identification of a handful of documents that they believe should have been included in the administrative record, or their claim that the record is missing documents reflective of former NEH Chair Lowe's "direct[ion to] NEH program staff to review open grants" prior to February 7, 2025, *see id.* at 6, 14-15, meet the high standard necessary to override the presumption of regularity afforded to the agency's designation of the record.   In any event, the Government already supplemented the administrative record with the non-privileged materials flagged in the Authors Guild Plaintiffs' November 13, 2025, letter, *see supra* pages 5-6, and is investigating whether pre-February 7 documents exist that should be included.

## IV.   The Court Should Reject the Authors Guild Plaintiffs' Premature, Categorical Challenges to the Government's Discovery Objections

### a.   The Government's Objections Pertaining to the Administrative Record Are Valid

As discussed in Sections D, E, & II above, the Government has not refused to engage in discovery beyond the administrative record, issued "blanket objections" to Plaintiffs' requests, or taken the position that no discovery beyond the administrative record is warranted.  *See* Pls.' Mot. at 17-19.  Rather, without refusing to respond to any discovery requests solely on this basis, the Government has maintained that the "focal point for judicial review should be the administrative record already in existence" when the challenged action occurred, and that Plaintiffs' requests for extra-record discovery should take account of the record and be tailored to what Plaintiffs need beyond that record to prove their claims.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also National Audubon Soc. v. Hoffman*, 132 F.3d 7, 10, 14-16 (2d Cir. 1997). This is a valid basis on which to object to Plaintiffs' broad discovery requests, issued without apparent regard to what is already included in the record.

As numerous courts have stated, the existence of standalone constitutional claims does not

automatically obviate the "black-letter administrative law" that in "reviewing agency action," a court "should have before it neither more nor less information than did the agency when it made its decision." *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 37-38 (D.D.C. 2018) (quoting *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)).  The record review rule is founded not merely on the language of the APA, but on a "fundamental" principle, *Fla. Power*, 470 U.S. at 743-44, that review of an "agency decision" is generally "confined to the administrative record compiled by that agency when it made the decision," *Audubon*, 132 F.3d at 14; *see also Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) ("Judicial review of agency action is generally limited to the administrative record.").  This principle is rooted in the longstanding "recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of other branches of Government and should normally be avoided."  *Dep't of Commerce v. New York*, 588 U.S. 752, 780-81 (2019) (quotation marks omitted).

Although some courts have permitted extra-record discovery in cases in which plaintiffs have brought constitutional challenges to agency action,[7] the existence of constitutional claims does not entitle a party to broad ranging discovery under Rule 26, without consideration of the administrative record.  *See Bellion*, 335 F. Supp. 3d at 43 ("[D]istrict courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence."); *Chang*, 254 F. Supp. 3d at 161-62 (discussing different approaches taken

---

[7] Courts also have denied extra-record discovery despite plaintiffs' assertions of constitutional claims, including First Amendment claims. *See, e.g.*, *Bellion*, 335 F. Supp. 3d at 41-45 (First Amendment); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237-38 (D.N.M. 2014) (First Amendment retaliation); *Chang*, 254 F. Supp. 3d at 161-63 (due process and equal protection); *Hadwan*, 2021 WL 4037714, at *6 n.9 (due process); *Afianian v. Duke*, No. 17 Civ. 7643 (RAO), 2018 WL 9619346, at *5-7 (C.D. Cal. Nov. 30, 2018) (due process and equal protection).

by courts); *Hadwan*, 2021 WL 4037714, at *6 n.9 (collecting cases and stating that "'broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate'").  If it did, "almost any APA plaintiff could skirt the record rule" by bringing such a claim.  *Carlsson v. USCIS*, No. 12 Civ. 7893, 2015 WL 1467174, at *13 (C.D. Cal. Mar. 23, 2015); *see also Jarita Mesa*, 58 F. Supp. 3d at 1237-38 (explaining that to "allow fresh discovery, submission of new evidence and legal arguments" because a plaintiff pled "standalone" constitutional claims would "incentivize every unsuccessful party to agency action" to allege constitutional violations).

Here, as this Court appeared to contemplate at the initial pretrial conference, the discovery Plaintiffs seek should account for what is in the record and what discovery Plaintiffs "need[] . . . over and above the administrative record."  Tr. 5:4-22; *see also id.* 12:19-23.  This approach would be consistent with other cases involving challenges to agency action in which courts permitted or considered extra-record discovery, including cases involving constitutional claims.  *See, e.g.*, *Carlsson*, 2015 WL 1467174, at *12 (permitting limited discovery regarding particular claims where plaintiffs "set out with reasonable specificity the facts they hope to obtain through discovery and how those facts would help them advance their claims"); *Vidal v. Duke*, Nos. 16 Civ. 4756, 17 Civ. 5228 (NGO) (JO), 2017 WL 8773110, at *3 (E.D.N.Y. Oct. 17, 2017) (reserving ruling on whether extra-record discovery was appropriate until the parties resolved whether the administrative record was complete); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 802-03 (E.D. Va. 2008) (acknowledging that "limited discovery" may sometimes be available when challenging the constitutionality of agency action, but holding that the record in that case "already contain[ed] all of the documents required" to decide the constitutional claims).

The Authors Guild Plaintiffs' Motion makes clear that they have made no good faith

attempt to account for the contents of the administrative record, and the extent to which it provides them the information they need to advance their claims, before issuing their discovery requests or moving to compel.  Arguing that administrative record review principles should be entirely jettisoned, they state that "the Administrative Record is unlikely to include 'the reasons for the agency's choice' when those reasons were animus or viewpoint discrimination."  Pls.' Mot. at 22. But, in the same brief, the Authors Guild Plaintiffs contend that the administrative record already contains "stark and unmistakable" evidence of viewpoint-based discrimination.  *See id.* at 5-6; *see also* Tr. 15:5-8.  This statement alone undermines any contention that Plaintiffs require extra-record discovery to support their claims.

Moreover, the cases on which the Authors Guild Plaintiffs rely in the Motion support the Government's objections and align with the Government's proposed approach.  In *National TPS Alliance v. Noem*, No. 25 Civ. 5687 (SK), 2025 WL 2419266 (N.D. Cal. Aug. 21, 2025), for instance, the court specified that it was authorizing extra-record discovery in line with its practice in a similar case, *National TPS Alliance v. Noem*, No. 25 Civ. 1766 (EMC), 2025 WL 1276229 (N.D.Cal. May 2, 2025).  2025 WL 2419266, at *3.  In the prior case, the court indicated it would not "permit general civil discovery" and required that documents sought by plaintiffs "be keyed to" the agency's intent in reaching the challenged decisions "beyond that already contained in the administrative record, if any."  2025 WL 1276229, at *4-5.  And in *Mayor & City Council of Baltimore v. Trump*, the court opined that the APA did not preclude discovery with respect to the plaintiff's constitutional claims, but ordered that plaintiff could "seek leave of Court to pursue extra-record discovery if it has a good faith basis for making such a request" after revieing the record.  429 F. Supp. 3d 128, 145 (D. Md. 2019).

The Authors Guild Plaintiffs' reliance on *New York v. U.S. Dep't Commerce*, 345 F. Supp.

3d 444 (S.D.N.Y. 2018), is also misplaced. As the Supreme Court explained in reviewing the district court's order for extra-record discovery in that case, such discovery was appropriate there because a "mismatch" existed "between the decision the Secretary made and the rationale he provided." *Dep't of Commerce v. New York*, 588 U.S. 752, 783 (2019); *see also Dep't Commerce*, 345 F. Supp. 3d at 452 (looking beyond record was necessary where decisionmakers "carefully curated" the record "to exclude evidence of their true 'intent' and 'purpose'"); *see also, e.g.*, *Grill v. Quinn*, No. Civ. S-10-757 (GEB) (GGH) (PS), 2012 WL 174873, at *4 (E.D. Cal. Jan. 20, 2012) (allowing extra-record discovery where court's review of record suggested "evidence of true, but hidden, motivations" supplied "real basis" for agency finding). Here, far from arguing that discovery is needed because the proffered rationale for the grant terminations is not the real one, Plaintiffs have repeatedly asserted that the administrative record reveals a discriminatory motive.

Finally, with respect to the depositions the Authors Guild Plaintiffs seek, as noted above the Government does not intend to seek relief from the depositions of Michael McDonald—the agency decisionmaker—and Adam Wolfson. Further, the Government has agreed search the records of Nate Cavanaugh and Justin Fox, the other two individuals Plaintiffs seek to depose, and produce any responsive and non-privileged documents. The Authors Guild Plaintiffs have not identified any relevant information they hope to gain from Fox's and Cavanaugh's depositions that is not already in the record or available from these other sources. Particularly given that Fox and Cavanaugh are no longer employed by the Government, the Authors Guild Plaintiffs should at least be required to take the other depositions, review the documents the Government produces, and articulate a need for additional depositions before being permitted to proceed with them.

### b.  The Government's Objections Pertaining to Discovery into the Executive Branch Are Valid

The Authors Guild Plaintiffs mischaracterize the Government's objections with respect to

discovery from U.S. DOGE Service, the Executive Office of the President, and the White House. The Government has not refused to conduct discovery outside NEH, *see supra* Sections E & II, nor has it asserted that discovery into the Executive Branch is categorically impermissible. Instead, the Government validly objected to the Authors Guild Plaintiffs' broad discovery requests on the basis that discovery into U.S. DOGE Service, the Executive Office of the President, and the White House should reflect the "special considerations" that control when discovery implicates the Executive Branch.  The Authors Guild Plaintiffs attempt to distinguish *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, but that case, like this one, involved broad sets of interrogatories and requests for production, issued not just to Cheney himself but to members of a presidential advisory body located within the Executive Office of the President.  542 U.S. 367, 2589-91 (2004). Moreover, the Supreme Court recently made clear that discovery into the U.S. DOGE Service implicates *Cheney*.  *In re U.S. DOGE Service, et al.*, No. 24A1122, June 6, 2025 Dkt. Entry (staying district court's discovery order, invoking *Cheney*, and explaining that "separation of powers concerns counsel judicial deference and restraint").  The Authors Guild Plaintiffs' further contention that *Cheney* and *In re DOGE* do not apply because the Authors Guild Plaintiffs seek only "a narrow universe of documents directly related to specific grant terminations," Pls.' Mot. at 25, is belied by their broad discovery demands, the arguments they advance in their motion to compel, and, especially, the sweeping proposed order they ask the Court to enter.[8]

## CONCLUSION

For the forgoing reasons, the Court should deny the Motion.

---

[8] Even if the Authors Guild Plaintiffs were entitled to any relief at this stage—which they are not—they have not justified entry of anything resembling their proposed order.  Dkt. No. 158-16. The proposed order seeks large swaths of materials from various entities and individuals without reference to specific requests by Plaintiffs or, even, the arguments in the Motion.

Dated: New York, New York
December 16, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for
the Southern District of New York
Attorney for Defendants


By:  /s/ Mary Ellen Brennan
MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
86 Chambers Street, 3rd floor
New York, New York 10007
Telephone: (212) 637-2652/2699
MaryEllen.Brennan@usdoj.gov
Rachael.Doud@usdoj.gov