

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

January 7, 2026

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    *American Council of Learned Societies v. Michael McDonald*, No. 25 Civ. 3657 (CM), and *The Authors Guild v. National Endowment for the Humanities*, No. 25 Civ. 3923 (CM)

Dear Judge McMahon:

This Office represents the government in the above-referenced cases.    We write respectfully concerning the Court's December 18, 2025, Opinion, Dkt. No. 168 ("Opinion").    The government is complying with the Court's directives in its Opinion and accompanying Order, Dkt. No. 169, and is in the process of collecting and reviewing the required materials.    However, the government wishes to clarify certain information concerning the contents of the administrative record already produced and the discovery the government had agreed to undertake prior to the Court's Order.

First, to the extent the Court's discussion of the completeness of the administrative record accepts arguments from Plaintiffs suggesting that the government refused to conduct any discovery on the grounds of its objection that the case should be governed by the administrative record rule, *see* Opinion at 10-11, that is not the case.    As the Government explained in its opposition to the Authors Guild Plaintiffs' motion to compel, Dkt. No. 167 ("Motion to Compel Opposition"), the Government did not refuse to respond to any of Plaintiffs' written discovery requests on the grounds of this objection and agreed to undertake a search of the National Endowment for the Humanities ("NEH"), as well as Justin Fox and Nate Cavanaugh's documents, for records concerning the grant terminations that were not already included in the administrative record.    *Id.* at 7.

Second, the Court states in the Opinion that "the administrative record as produced contains no contemporaneous explanation of how grants were selected for termination, who applied any selection criteria, or what information was reviewed in making those determinations" and "[i]nstead, the record largely consists of termination notices and conclusory statements that the grants no longer aligned with agency priorities."  Opinion at 11-12.    In addition to the referenced materials, the administrative record includes large, detailed spreadsheets explaining the reasons specific grants were flagged for termination as well as emails reflecting who was involved in

The Honorable Colleen McMahon
Page 2

making those determinations. *See, e.g.*, NEH_AR_000005 (email explaining that linked spreadsheet was used by the NEH "program directors . . . for their historical review of NEH's grants since January 2021" and "[t]he directors reviewed the grants made through their office and entered comments for the three relevant categories (*i.e.*, DEI/DEIA; gender ideology; and environmental justice) and rated them based on level of involvement with any of the categories (high, medium, low, N/A)"); NEH_AR_000006 (referenced spreadsheet, which includes a detailed list by grant); NEH_AR_000013 (email attaching second list from which NEH "only excluded the [grants] that seem not to conflict with the Administration's priorities – such as the Papers of George Washington"); NEH_AR_000024 (referenced spreadsheet, which includes grant-specific entries in a column titled "DEI Rationale"). Indeed, in their motion to compel, the Authors Guild Plaintiffs argue that "available evidence shows . . . [that] the Mass Termination was carried out either by or at the direction of representatives of a newly-created office now known as the U.S. DOGE Service" and "[t]he available evidence also demonstrates, in stark and unmistakable fashion, that Defendants carried out the terminations based on the grants' association or perceived association with disfavored viewpoints and disfavored political parties." Dkt. No. 158 at 4-6. Accordingly, Plaintiffs themselves recognize that the administrative record does, in fact, contain a contemporaneous explanation of how grants were selected for termination and who was involved.

Third, the Court states that "Defendants have acknowledged that DOGE participated directly in the inter-agency decision-making process that culminated in the Mass Termination, yet have refused to search DOGE's records or include materials generated or reviewed outside NEH." Opinion at 18. Prior to the Court's Opinion, the government had agreed to search the non-NEH documents of Justin Fox and Nate Cavanaugh, the two DOGE-affiliated individuals who worked with NEH to carry out grant terminations. Motion to Compel Opposition at 9. Because Cavanaugh and Fox were employed by the General Services Administration ("GSA") rather than U.S. DOGE Service, *id.* n.2, this meant collecting documents from GSA, as the government had agreed to do.

Fourth, the Court finds that "the completeness of the administrative record . . . [is] in genuine dispute" because the administrative record includes only the final, annotated version of the shared spreadsheet described above into which NEH program directors input their comments and ratings, *see* NEH_AR_000006, and not all of the interim drafts. Opinion at 20-22. Because the shared spreadsheet was being edited in real time by numerous NEH employees, it is not clear what constitute separate "version[s]." The system automatically saved approximately 925 interim, partially completed versions of the spreadsheet. The final version—with NEH staff's comments fully inputted—was included in the administrative record. *See* NEH_AR_000006. The government is planning to produce as many incomplete interim versions of the spreadsheet as can be recovered, which may be all of them, but does not believe that all of these partially completed versions of the spreadsheet should have been included in the administrative record.

Fifth, the Court suggests that the administrative record is incomplete because it omitted certain spreadsheets that were in fact included in the record. The Court states that the record does not include the "two attachments" McDonald said he "looked over" in his April 1, 2025, 8:06:25 p.m. email included in the administrative record at NEH_AR_000021. Opinion 22. The two documents referenced by McDonald in that email are included in the administrative record. *See* NEH_AR_000025-84, NEH_AR_000085. The Court also states that the list McDonald referenced in his April 1, 2025, 10:07 a.m. email included in the administrative record at NEH_AR_000022

The Honorable Colleen McMahon
Page 3

as having been "sent to OMB" was omitted from the administrative record. That list was also included in the administrative record. *See* NEH_AR_000007; NEH_AR_000009.[1]

Finally, the Court notes that, as McDonald stated in the April 1, 2025, 10:07 a.m. email referenced above, he "[u]nfortunately . . . didn't save a copy" of a spreadsheet from the prior day and suggests this is evidence the administrative record is incomplete. As reflected in the administrative record, McDonald had tried to send the earlier copy of the list to Justin Fox on March 31, 2025, but it did not go through due to an IT issue. *See id.*; NEH_AR_000013. The administrative record includes the version that was actually sent to Justin Fox. NEH_AR_000024.[2]

We thank the Court for its consideration of this submission.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:  s/ Rachael Doud
MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
86 Chambers St., 3rd Floor
New York, New York 10007
(212) 637-2699
(212) 637-2652

cc:    All counsel of record (via ECF)

---

[1] The Court suggests that the administrative record should have included attachments to three additional emails included in the chain produced at NEH_AR_000021. *See* Opinion at 22. The final list that replaced the interim lists attached to those emails was included in the administrative record, NEH_AR_000025-84, NEH_AR_000085, but the government now is also producing the interim lists.

[2] The Court also states that the government supplemented the administrative record only after Plaintiffs moved to compel. Opinion at 23. However, the government supplemented the administrative record with additional materials Plaintiffs had identified as missing on December 2, 2025, before Plaintiffs moved to compel. Motion to Compel Opposition at 5.