

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

January 12, 2026

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

>  Re:   *American Council of Learned Societies v. National Endowment for the Humanities*, No. 25 Civ. 3657 (CM), and *The Authors Guild v. National Endowment for the Humanities*, No. 25 Civ. 3923 (CM)

Dear Judge McMahon:

This Office represents the Government in the above-referenced cases.  We write in response to the ACLS Plaintiffs' January 10, 2026, letter motion to compel discovery.  ECF No. 179 (the "Motion" or "Mot.").[1]  The ACLS Plaintiffs have not pointed to any viable basis for moving to compel under Rule 37.  Indeed, they have not identified any discovery deadline that the Government has not met, nor any "discovery obligations" with which the Government has "refused to comply."  *See generally* Mot.  As discussed in more detail below, the Government has been working diligently and in good faith to ensure full compliance with the Court's December 22, 2025, order.  ECF No. 169 (the "Discovery Order"); *see* Gov't's January 2, 2025, Ltr., ECF No. 173 ("Gov't Ltr.").  Pursuant to that Order, the Government must produce responsive documents to Plaintiffs no later than January 16, 2026, *i.e.*, four days from today.  *Id.* ¶ 4.  The Government also intends to provide amended written discovery responses on or before that same date, as it has repeatedly told Plaintiffs.  The ACLS Plaintiffs' decision to file a motion to compel, rather than wait just a few days to receive information the Government has already committed to produce, is exemplary of the unnecessarily adversarial and inefficient manner with which they have been engaging in discovery.  *See* Gov't Ltr.  The Court should deny the Motion.

### Relevant Background

**Discovery Requests and Responses**:  Both the ACLS and Authors Guild Plaintiffs served discovery requests on September 29, 2025, and the Government timely responded and objected to those requests on December 2, 2025.  *See* ECF Nos. 158-5, 6, 8; Brennan Decl. Exs. B-D.[2]  In its

---

[1] The Authors Guild Plaintiffs joined in this Motion.  Mot. at 1.

[2] The requests were served two days before the government shutdown commenced, and this case was stayed for the duration of the shutdown.

The Honorable Colleen McMahon
Page 2

responses, the Government agreed to search the records of the National Endowment for the Humanities ("NEH"). During a subsequent meet-and-confer on December 8, 2025, the Government agreed, among other things, to propose search parameters and a deadline for its NEH review and to consider furnishing additional discovery pertaining to DOGE-affiliated individuals. Without waiting for a response from the Government regarding issues raised at the meet-and-confer, Plaintiffs moved to compel the next day, December 9, 2025. ECF Nos. 156, 157.

**The Court's December 18 Decision and December 22 Discovery Order**: On December 18, 2025, the Court granted Plaintiffs' motions and overruled certain of the Government's objections to written discovery. ECF No. 168 (the "Decision"). The Decision stated that "[t]he scope of Defendants' discovery obligations" would be "set forth in a separate Order entered contemporaneously with [the] Opinion." ECF No. 168. The Discovery Order requires the Government to "conduct a good faith search of the files of any Executive Branch agency that, through its employees and agents or otherwise, played any role in the decision to terminate the grants at issue in these lawsuits—including but not limited to DOGE and GSA as well as NEH—as well as the files of any and all individuals who contributed in any manner, whether by making decisions, advising on the making of decisions, or otherwise, to the making of the decision to terminate the grants at issue in this lawsuit . . . no later than January 16, 2026." Discovery Order ¶ 4.

**NEH Search and Review**: On December 11, a week before the Decision was entered, the Government emailed Plaintiffs with proposed custodians and search terms for its search of NEH and stated that the Government should be able to complete the NEH production by January 30 if the Government promptly proceeded with its search. *See* Ex. A at 1-2. The search yielded over 10,000 documents. The ACLS and Authors Guild Plaintiffs did not respond to the Government's December 11 email proposing NEH search parameters for well over a week—until December 22 and December 23 respectively. Exs. B, C. The ACLS and Authors Guild Plaintiffs each proposed a distinct, broader set of terms than the parameters proposed by the Government. *See* Exs. B, C. By December 22, however, the Government had already proceeded with its previously proposed search parameters and collection of records from NEH to ensure that it would meet its commitment to produce responsive documents by the end of January—a due date that was advanced by the Discovery Order.

The Government informed Plaintiffs on December 29, 2026,[3] that it had already conducted its search and collection. Nevertheless, since then, the Government has engaged repeatedly with Plaintiffs, including by running multiple rounds of searches proposed by Plaintiffs and providing Plaintiffs with hit reports. As the Government informed Plaintiffs, the NEH search parameters that Plaintiffs proposed yielded approximately 125,000 documents prior to de-duplication and did not adequately use connectors to ensure that the identified documents were likely to be relevant to grant terminations. Plaintiffs asked to see a de-duplicated hit report of its proposed searches, and the Government explained that de-duplication of some or all of the searches would be unduly

---

[3] Plaintiffs note in their letter that the Government "did not [send this response] until a week later," Mot. at 7, without acknowledging that the Government responded within two business days. All but one of the days between December 22 and December 29 were either national holidays or weekend days—including Christmas Eve and Christmas.

The Honorable Colleen McMahon
Page 3

burdensome because it would require importing the files from NEH and loading them to this Office's systems (NEH does not have the ability to de-duplicate). The Government proposed a potential alternative search that it believed might resolve the ACLS Plaintiffs' concerns without unreasonably expanding the universe of hits. The parties were in the process of negotiating these issues on January 9 when Plaintiffs moved to compel. *See* Ex. D, at 1-3 (reflecting negotiations between Plaintiffs and the Government regarding NEH search terms). That day, the Government repeatedly asked Plaintiffs to explain why they believed certain searches they continued to insist on—including the searches for which Plaintiffs now seek hit reports—were warranted. *Id.* Plaintiffs did not answer.

**Searches of Other Agencies and Components**: Although the Government's understanding is, and has always been, that Nate Cavanaugh and Justin Fox were the only individuals outside NEH who were directly involved in the grant termination decisions, the Government has worked in good faith to determine the identities of any additional government personnel who may have indirectly "played [a] role in the decision to terminate the grants at issue in this lawsuit" or "contributed in any manner" to the making of the grant termination decisions. Discovery Order ¶ 4. Based on its efforts, the Government learned that Josh Gruenbaum, Stephen Ehikian, and Ryan Leppert from the General Services Administration ("GSA") and Amy Gleason, Steve Davis, Justin Aimonetti, and James Burham from U.S. DOGE Service *might* have played an indirect role in the decisions to terminate the grants at issue. The Government has obtained documents from GSA for Fox, Cavanaugh, Gruenbaum, Ehikian, and Leppert, and from U.S. DOGE Service for Gleason, Davis, Aimonetti, and Burnham, and it intends to produce the non-privileged, responsive documents yielded by its review of those materials by January 16. Based on its inquiries and investigation to date, the Government has not identified personnel at agencies besides NEH, GSA, and U.S. DOGE Service that would fall within the parameters of ¶ 4 of the Discovery Order. For example, the Government does not currently have any reason to believe that individuals from the Office of Management and Budget ("OMB") were involved, directly or indirectly, in the decisions to terminate the relevant NEH grants.

## The Court Should Deny the Motion

The Motion seeks to compel the Government to (1) amend its responses to Nos. 1 and 2 of the ACLS Plaintiffs' Interrogatories; (2) generate a hit report on the number of results found by searching all of U.S. DOGE Service rather than specific U.S. DOGE Service custodians; (3) provide a de-duplicated hit report of "the number of NEH records that would be produced by searching NEH's records that reference" DOGE, Justin Fox, Nate Cavanaugh, or USDS "during the relevant time period"; and (4) provide information regarding "which other federal agencies Defendants will search and the parameters Defendants will use for those searches." None of these requests provide a legitimate basis on which to move to compel.

1. **Responses to Interrogatory Nos. 1 and 2**

The ACLS Plaintiffs' motion to compel amended interrogatory responses is premature, as the Government has not refused to provide amended responses nor missed any deadline to do so. It is axiomatic that "a party may not move for a court order compelling responses to discovery requests before the deadline for responding has expired." *Stokes v. Wayne Cnty.*, No. 21 Civ. 6657

3

The Honorable Colleen McMahon
Page 4

(EAW), 2023 WL 1775637, at *2 (W.D.N.Y. Feb. 6, 2023) (collecting cases in which courts denied motions to compel as "premature" where motions were filed before responses were due).

When this Court overruled certain of the Government's objections to discovery, it set forth in a separate order the "scope of Defendants' discovery obligations," including a deadline of January 16 for the production of responsive materials. *See* Discovery Order. The Order did not specifically mention amended discovery responses. *Id.* As Plaintiffs acknowledge, *see* Mot. 4-5, the Government has repeatedly committed to providing amended responses by the Order's January 16 deadline. Although the ACLS Plaintiffs appear to maintain that the deadline does not apply to the submission of amended discovery responses, Mot. 4, they also have not articulated a basis for their claim that the Government's amended responses are past due, nor pointed to any particular deadline they believe the Government was required to meet, *id*. at 5 (claiming vaguely that Government should have provided amended responses "promptly" after the Court's issued the December 18 Decision).[4]

The Government has been working diligently to amend its discovery responses and has endeavored to cooperate in good faith with Plaintiffs to provide any relevant information in its possession as soon as practicable.[5] As the Government told Plaintiffs, certain issues have impacted its ability to serve amended sworn responses to certain interrogatories, including Nos. 1 and 2. First, Fox and Cavanaugh, the only individuals outside NEH who were directly involved in the grant termination process, are in the best position to provide much of the information sought by the interrogatories with respect to agencies other than NEH. As Fox and Cavanaugh are no longer parties, they cannot provide sworn responses under Rule 33. *See* Fed. R. Civ. P. 33(b)(1). Second, the Government seeks to ensure that its amended responses are accurate, and its investigation is ongoing. The initial response to Interrogatory No. 2 on behalf of NEH identifies, to the best of the Government's knowledge, every person at NEH or otherwise who was directly involved in the relevant grant terminations. Confirming which, if any, individuals were *indirectly* involved, however, has proved more difficult. This is partly due to the fact that some potentially relevant individuals no longer work for the Government. At this time, and in connection with its efforts to comply with ¶ 4 of the Discovery Order, the Government has provided Plaintiffs with lists of custodians at NEH, U.S. DOGE Service, and GSA encompassing every person that the Government has identified to date as having *possibly* played a role, whether direct or indirect, in the grant termination decisions. To the extent the Government identifies additional potential custodians through its current review of documents, the Government will promptly notify Plaintiffs. The Government's candid and forthcoming explanations to Plaintiffs about the various

---

[4] The Government's initial deadline to respond to these interrogatories, December 2, 2026, does not provide a basis for an untimeliness claim. The Government responded and objected to all of Plaintiffs' interrogatories by that due date. While the Court overruled two objections, the Government objected to Interrogatories 1 and 2 on additional grounds that were not overruled. *See* ECF Nos. 158-5, 6, 8; Brennan Decl. Exs. B-D.

[5] For example, the Government provided an amended response to one interrogatory that the ACLS Plaintiffs appeared to prioritize (Interrogatory No. 9) and relayed information informally in response to another (Interrogatory No. 5).

4

The Honorable Colleen McMahon
Page 5

complexities of this process, as well as the ambiguities the Government perceives in the interrogatories, do not equate to "shifting reasons," as Plaintiffs suggest. Mot. 5.

Plaintiffs provide no coherent explanation for their claim that receiving these responses by January 16—rather than a few days earlier—will prejudice them. *See* Mot. 5-6. They assert that they need sworn interrogatory responses to evaluate whether the Government's search protocols are "reasonable," but the Government is already obligated to comply with the scope of the search set out in the Discovery Order, and has repeatedly committed to doing so. If Plaintiffs decide that "additional, tailored discovery requests" and additional depositions are warranted after receiving the Government's amended interrogatory responses, they can seek such discovery, subject to the Government's objections.

**2. Hit Reports**

The Court should also deny Plaintiffs' request to compel the Government to provide certain additional hit reports. As an initial matter, Plaintiffs do not point to any basis under the Federal Rules, nor any court precedent, for moving to compel a party to provide hit reports. *See* Fed. R. Civ. P. 37 (laying out various predicates for motion to compel under Rule 37). Mot. 8-9.

In any event, the ACLS Plaintiffs have not demonstrated entitlement to either hit report. First, their demand that the Government search all U.S. DOGE Service custodians, regardless of whether the documents of such custodians are relevant, is plainly inappropriate and overbroad. *See, e.g.*, *Raine Grp. LLC v. Reign Cap., LLC*, No. 21 Civ. 1898 (JPC) (KHP), 2022 WL 538336, at *2 (S.D.N.Y. Feb. 22, 2022) (rejecting proposal to search "all company files" or "all files from all employees" as "certainly overbroad" and denying defendant's request to add custodians where defendant could not explain why those custodians "would have relevant email or personal files"); *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, No. 14 Civ. 9372 (GBD) (HBP), 2018 WL 2215510, at *7 (S.D.N.Y. May 15, 2018) ("[M]ere membership on a particular committee is not sufficient, by itself, to justify designation as a custodian whose files must be reviewed."). The ACLS Plaintiffs acknowledge that they do not know whether any U.S. DOGE Service personnel beyond the four custodians identified by the Government are relevant. And when the Government repeatedly asked the ACLS Plaintiffs to explain the basis for their position that all of U.S. DOGE Service must be searched, the ACLS Plaintiffs provided no response. Ex. D, at 1-3. Under these circumstances, Plaintiffs have not made a required "*prima facie* showing that the discovery sought is more than merely a fishing expedition." *Oakley v. MSG Networks, Inc.*, No. 17 Civ. 903 (RJS), 2024 WL 4134903, at *4 (S.D.N.Y. Sept. 10, 2024),

Second, the ACLS Plaintiffs have failed to articulate any justification for requiring the Government to import from NEH, load, and de-duplicate more than 6,000 additional documents, simply to provide them with a de-duplicated hit report for the terms Fox, Cavanaugh, DOGE, or USDS. Here also, the ACLS Plaintiffs did not answer the Government's repeated requests to explain why this search is warranted. Ex. D, at 1-3. Courts have required parties seeking to expand search parameters for electronically stored information ("ESI") to "demonstrate that the additional requested [parameters] would provide <u>unique</u> relevant information," *i.e.*, that "unique responsive documents [are] being missed in the current search scheme that would justify the inclusion." *Blackrock*, 2018 WL 2215510, at *7 (emphasis in original); *see also, e.g.*, *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 586-87 (E.D.N.Y. 2024). The ACLS

5

The Honorable Colleen McMahon
Page 6

Plaintiffs do not even attempt to make that showing with respect to the proposed NEH search. Rather, they assert in conclusory fashion that NEH records containing the terms Cavanaugh, Fox, DOGE, or USDS are "plainly relevant." Mot. 9. On the contrary, a search for documents referencing those terms would likely pull in numerous non-responsive hits, including, for instance, automated news blasts about DOGE and documents that relate solely to claims that have been dismissed. The ACLS Plaintiffs are also incorrect that, without their desired NEH search, the Government "would not produce NEH records specifically mentioning Fox and Cavanaugh." Mot. at 9. If records mentioning Fox and Cavanaugh exist and relate to grant terminations, they should be returned by the searches the Government has already performed.[6]

Regardless, courts "have instructed that 'the standard in ESI discovery is not perfection,'" *id.*, and that parties requesting discovery "do not need, and are not entitled under the rules of proportionality, to every single [relevant] document." *In re Morgan Stanley Mortgage Pass-Through Certificates Litig.*, No. 09 Civ. 02137 (LTS) (SN), 2013 WL 5745938 (S.D.N.Y. Oct. 23, 2013); *see also Blackrock*, 2018 WL 2215510, at *7 (same); *GMO Gamecenter USA, Inc. v. Whinstone U.S.*, No. 22 Civ. 5974 (JPC) (KHP), 2025 WL 722853, at *2 (S.D.N.Y. Mar. 5, 2025) (similar); *Exactech*, 347 F.R.D. at 585 ("[T]he requests for all [relevant] documents are burdensome, would impose significant delays, and are not proportional to the needs of this case."). Instead, "courts have urged parties to 'carefully craft' search terms, as 'poorly crafted terms may return thousands of irrelevant documents and increase, rather than minimize, the burden of locating relevant and responsive ESI." *Lam v. State St. Corp.*, No. 24 Civ. 6098 (NRB), 2025 WL 834885, at *2 (S.D.N.Y. Mar. 17, 2025) (quoting *Raine*, 2022 WL 538336, at *3).

While the ACLS Plaintiffs repeatedly claim in the Motion that the Government has not sufficiently established that either of the searches at issue would be burdensome, the Government is not required to do so at this juncture. Rather, "[t]he party *seeking* discovery has the initial burden of demonstrating relevance and proportionality." *GMO Gamecenter*, 2025 WL 722853, at *1 (emphasis added); *see also Lam*, 2025 WL 834885, at *2. And although relevance should be construed broadly, "mere speculation as to the existence of additional documents is insufficient to warrant an order to compel." *Lam*, 2025 WL 834885, at *2. Here, the Motion makes no showing as to the relevance and proportionality of any proposed search parameters. Instead, the ACLS Plaintiffs suggest that the Government is required to run such searches and provide desired hit reports unless it can prove that doing so would be burdensome. *See* Mot. 8 (arguing that the Government should be required to search the records of every employee of U.S. DOGE Service, including custodians that may be irrelevant to Plaintiffs' claims, as long as the burden of such search is "minimal"); *id.* 9 (asserting that the Government must provide a deduplicated hit report for NEH documents that hit on the terms Fox, Cavanaugh, DOGE, or USDS, unless the Government proves that doing so would be burdensome). That is simply not the case.

As discussed above, the Government has been doing its best to engage in good faith discussions with Plaintiffs about search parameters. The ACLS Plaintiffs, to the contrary, have refused to respond to basic questions from the Government regarding why their proposed search parameters are justified or reasonably consider the burdens their proposed measures might

---

[6] The Government is also producing documents from Fox's and Cavanaugh's NEH email accounts.

The Honorable Colleen McMahon
Page 7

impose.[7] *See* Mot. at 8-9. Negotiating search terms and furnishing hit reports may be standard aspects of ESI discovery practice, but that does not entitle the party seeking discovery to micro-manage the process or use it to embark on a fishing expedition. *See Lam*, 2025 WL 834885, at *4 (a "scorched-earth approach to discovery" is "not permitted under Rule 1 or Rule 26").

### 3. Searches of GSA and Other Agencies

Finally, as the Government has explained to Plaintiffs, it has not yet shared proposed search terms for GSA because technical difficulties have prevented it from running searches on the files and documents obtained from GSA. Although the Government initiated the process of obtaining data from GSA on or around December 11, GSA imported the custodians' documents to our Office's systems without first running search terms. Due in part to the large size of the files, our Office has had difficulties loading the files, despite multiple attempts and diligent efforts by IT personnel, including over the holidays. The Government is willing to engage with Plaintiffs regarding search parameters as soon as it is able to conduct the searches and generate hit reports. As explained above, the Government has not identified personnel at agencies besides NEH, GSA, and U.S. DOGE Service that would fall within the parameters of ¶ 4 of the Discovery Order.

We thank the Court for its consideration of this submission.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:  s/ *Mary Ellen Brennan*
MARY ELLEN BRENNAN
RACHAEL DOUD
Assistant United States Attorneys
86 Chambers St., 3rd Floor
New York, New York 10007
(212) 637-2699
(212) 637-2652

cc:    All counsel of record (via ECF)

---

[7] The ACLS Plaintiffs insist in their Motion—without citing any support for this proposition—that "[e]xporting and de-duplicating" more than 6,000 additional emails and other records mere days before the Government's production is due "is a standard incident of discovery that parties, including federal agencies, do all the time." Mot. at 8.