**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AMERICAN COUNCIL OF LEARNED SOCIETIES,
    633 Third Avenue, 8th Floor New York, NY 10017,

AMERICAN HISTORICAL ASSOCIATION,
    400 A Street SE Washington, DC 20003,

MODERN LANGUAGE ASSOCIATION,
    85 Broad Street, New York, NY 10004,

             *Plaintiffs,*

        v.

MICHAEL MCDONALD, in his official capacity as Acting
Chairman of the National Endowment for the Humanities,
    400 7th St SW, Washington, DC 20506,

NATIONAL ENDOWMENT FOR THE HUMANITIES,
    400 7th St SW, Washington, DC 20506,

UNITED STATES DOGE SERVICE,
    736 Jackson Pl NW Washington, DC 20503,

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service,
    736 Jackson Pl NW Washington, DC 20503,

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration,
    1800 F St NW Washington, DC 20006,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,
    1800 F St NW Washington, DC 20006,

             *Defendants*.

No. 25 Civ. 3657 (CM)

THE AUTHORS GUILD, WILLIAM GOLDSTEIN,
ELIZABETH KADETSKY, VALERIE ORLANDO,
KATALIN BALOG, BENJAMIN HOLTZMAN,
LEE JASPERSE, and NICOLE JENKINS,
on behalf of themselves and all others similarly situated,

*Plaintiffs,*

v.

NATIONAL ENDOWMENT FOR THE HUMANITIES;                    No. 25 Civ. 3923 (CM)

MICHAEL MCDONALD, in his official capacity as Acting
Chairman of the National Endowment for the Humanities;

UNITED STATES DOGE SERVICE;

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service;

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration; and,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,

*Defendants.*

## DEFENDANTS' MEMORANDUM IN OF LAW IN SUPPORT OF THEIR APPLICATION TO MAINTAIN THEIR DESIGNATION OF CERTAIN INFORMATION AS CONFIDENTIAL AND SUBJECT TO THE PROTECTIVE ORDER

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2699 / 2652
Email: maryellen.brennan@usdoj.gov

MARY ELLEN BRENNAN
RACHAEL DOUD
JONAKI SINGH
Assistant United States Attorneys
– Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMIMARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

    I.      THE COURT SHOULD UPHOLD THE GOVERNMENT'S CONFIDENTIALITY DESIGNATION OF FOUR SENTENCES IN US-00062916 TO PROTECT THE REASONABLE PRIVACY INTERESTS OF A NONPARTY EMPLOYEE ...................................................... 7

    II.    THE COURT SHOULD UPHOLD THE GOVERNMENT'S CONFIDENTIALITY DESIGNATION OF US-000061504 AND US-000063328 TO PROTECT THE IDENTITIES OF CURRENT AND FORMER GOVERNMENT EMPLOYEES WHO HAD NO INVOLVEMENT IN THE DECISIONS AT ISSUE ............................................ 12

CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(s)**

*Advanced Hair Restoration LLC v. Bosley Inc.*,
   No. C23-1031-KKE, 2024 WL 3833493 (W.D. Wash. Aug. 15, 2024)............................ 8

*Cazorla v. Koch Foods of Miss., L.L.C.*,
   83 F.3d 540 (5th Cir. 2016) ........................................................................................ 8

*Collins and Aikman Corp. v. J.P. Stevens & Co.*,
   Inc. 51 F.R.D. 219 (D.S.C. 1971) ............................................................................... 10

*Common Cause v. Nuclear Regul. Comm'n,*
   674 F.2d 921 (D.C. Cir. 1982).................................................................................... 15

*Cusumano v. Microsoft Corp.*,
   162 F.3d 708 (1st Cir. 1998)...................................................................................... 10

*D.J.C.V. v. United States*,
   2023 WL 3775283 (S.D.N.Y. June 2, 2023) ................................................................ 15

*Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*,
   649 F.2d 646 (9th Cir. 1980) ...................................................................................... 9

*Gardner v. Newsday, Inc.*,
   895 F.2d 74 (2d Cir. 1990)......................................................................................... 9

*In re Candor Diamond Corp.*,
   26 B.R. 847 (S.D.N.Y. Feb. 4, 1983)......................................................................... 9

*In re Savitt/Adler Litigation*,
   No. 95 Civ. 1842 (RSP / DRH), 1997 WL 979511 (N.D.N.Y. 1997) ............................. 15

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
   384 F. Supp. 2d 100 (D.D.C. 2005))........................................................................... 14

*Insider, Inc. v. U.S. Gen. Servs. Admin.*,
   635 F. Supp. 3d 1 (D.D.C. 2022) ............................................................................... 15

*Jack Frost Laboratories Inc. v. Physicians & Nurses Mfg. Corp.*,
   1994 WL 9690 (S.D.N.Y. 1994)................................................................................. 10

*Kelly v. City of New York*,
   No. 01 Civ. 8906 (AGSDF), 2003 WL 548400 ........................................................... 16

*Long v. OPM*,
 692 F.3d 185 (2d Cir. 2012)............................................................................................. 14

*Lugosch v. Pyramid Co. of Onondaga*,
 435 F.3d 110 (2d Cir. 2006)........................................................................................... 5, 6

*Massey v. F.B.I.*,
 3 F.3d 620 (2d Cir. 1993)................................................................................................. 15

*Mirlis v. Greer*,
 952 F.3d 51 (2d Cir. 2020)................................................................................................. 6

*Nixon v. Administrator of General Services*,
 433 U.S. 425 (1977)......................................................................................................... 10

*Nixon v. Warner Communications, Inc.*,
 435 U.S. 589 (1978)......................................................................................................... 11

*Open Soc'y Just. Initiative v. Trump*,
 No. 20 Civ. 8121 (KPF), 2020 WL 6286318 (S.D.N.Y. Oct. 27, 2020) ............... 7, 14, 15

*Pollitt v. Mobay Chemical Corp.*,
 95 F.R.D. 101 (S.D. Ohio 1982) ..................................................................................... 11

*Poulos v. City of Los Angeles*,
 2020 WL 4108433 (C.D. Cal. June 23, 2020) .......................................................... 15, 16

*Under Seal v. Under Seal*,
 273 F. Supp. 3d 460 (S.D.N.Y. 2017)................................................................................ 6

*Stern v. Cosby*,
 529 F. Supp. 2d 417 (S.D.N.Y. 2007)................................................................... 5, 6, 7, 13

*United States v. Amodeo (Amodeo II)*,
 71 F.3d 1044 (2d Cir. 1995)......................................................................... 5, 6, 7, 8, 9, 11

*United States v. Amodeo (Amodeo I)*,
 44 F.3d 141 (2d Cir. 1995)........................................................................................... 6, 13

*United States v. Biaggi*,
 828 F.2d 110 (2d Cir. 1987)............................................................................................... 9

*United States v. Jones*,
 565 U.S. 400 (2012)......................................................................................................... 10

*Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*,
    No. 18 Civ. 2622, 2021 WL 4502106 (D.D.C. Sept. 30, 2021) ...................................... 15

*Zhang Jingrong v. Chinese Anti-Cult World All.,*
    No. 15 Civ. 1046 (SLT) (VMS), 2016 WL 11671639 (E.D.N.Y. June 2, 2016) ..... 6, 8, 14

**RULES**

Fed. R. Civ. P. 5.2 ............................................................................................................. 5

Fed. R. Civ. P. 26 ................................................................................................... 2, 5, 12

The Government respectfully submits this memorandum of law in support of its application to maintain the designation of two documents and four sentences within a third document as confidential and subject to the Stipulation and Protective Order entered in this case for the purpose of protecting the privacy interests of third parties.  ECF No. 186 (the "Protective Order").

## PRELIMINARY STATEMENT

On January 15, 2026, the Government requested that the Court enter the Protective Order. In making that request, the Government argued that good cause existed for the entry of the Order because the Government anticipated that its production would include certain private information about individual third parties, including personal cell phone data of Government employees.  The Court entered the order that same day.

On January 18, 2026, two days after the Government produced thousands of documents to Plaintiffs, Plaintiffs lodged a formal challenge to certain of the Government's confidentiality designations under the Order.  Plaintiffs did not specify why they were challenging the Government's confidentiality designations at that juncture, given that there was no imminent need to attach the documents to a filing or use them in Court.  Pursuant to the terms of the Protective Order, however, the Government must now apply to the Court to maintain the confidentiality of such materials.  Later, on January 26, 2026, the Authors Guild Plaintiffs filed one of the documents at issue on the docket under seal, and, pursuant to the Protective Order, the Government also must now request that the Court keep the material under seal to maintain its confidentiality.

The Government's confidentiality designations of two documents, US-000061504 and US-000063328, and one portion of a third document, US-00062916 (together, the "Confidential Materials" or the "Materials"), are proper, and the Confidential Materials need not and should

not be made available to the public.  The Confidential Materials hold no probative value for

Plaintiffs and have minimal, if any, relevance to this action.  It is impossible to see how the

Confidential Materials will play a substantial role, if any role, in determining Plaintiffs' rights in

this action, and, accordingly, the significant privacy interests of nonparties far outweigh any

presumption of access to the Confidential Materials.  The Government asks the Court to uphold

its designations of the Confidential Materials and keep US-000063328 under seal.

Maintaining the confidentiality of these Materials under the Protective Order will not

prevent Plaintiffs from citing to or relying on the Materials if they choose to do so, and it

properly balances any interest Plaintiffs may have in the information, the public's presumption of

access to judicial documents, and the importance of protecting nonparties from harms caused by

unwanted invasions of privacy.

## BACKGROUND

Pursuant to this Court's December 22, 2025, order, ECF No. 169, the Government

conducted a thorough, good faith search of the files of 22 current and former NEH employees, as

well as the files of employees from the General Services Administration ("GSA") and U.S. DOGE

Service.  This included searching the personal cell phones of employees for any responsive, non-

privileged documents.

On January 15, 2026, the Government asked the Court to enter the Stipulation and

Proposed Protective Order pursuant to Federal Rule of Civil Procedure 26(c).  ECF No. 185.  In

doing so, the Government stated that good cause existed for the entry of the order because the

Government anticipated that its January 16, 2026, production would contain "certain private

information about individual third parties, such as spreadsheets that contain personally identifiable

information about grantees or grantee contact persons and spreadsheets that contain private

2

personal information from employee personnel files." ECF No. 185. The Government further explained that because the Court's December 22, 2025, order required the Government to review and produce personal cell phone data of Government employees, the Government sought to ensure that it would be able to protect the confidentiality of materials that contain private personal information about such individuals. *Id.* The Court entered the Protective Order that same day. *See* Protective Order.

The Protective Order defines "Confidential Information" as information of which public disclosure is restricted by law or "any personal or intimate information in which any individual possesses a reasonable expectation of privacy, including, but not limited to, personal financial, tax, employment, personnel, medical, or other private or personally identifiable information." *Id.* ¶ 5. It permits a producing party to designate as confidential and subject to the Order any discovery material, or portion thereof, that the producing party believes in good faith to contain Confidential Information, as defined in the Order. *Id.* ¶ 7. The Protective Order restricts disclosure of documents or portions of documents designated as confidential. *Id.* ¶ 11. The Order also permits a receiving party to challenge any designation of Confidential Information and provides that if the parties are unable to resolve a dispute concerning the designation of Confidential Information, the producing party must "apply to the Court for a determination as to whether it appropriately designated the Discovery Material at issue as Confidential Information" within 21 days of the challenge. *Id.* ¶ 9.

The Government produced responsive, non-privileged materials to Plaintiffs on January 16, 2026. The production included documents and communications of employees at NEH, GSA, and U.S. DOGE Service. The Government objected to Plaintiffs' Requests for Production No. 10, seeking "Documents sufficient to show the organizational structure of DOGE, including the

individuals who have worked for DOGE and their titles, such as an organization chart," as, *inter alia*, seeking information not relevant to the parties' claims or defenses, but—in the interest of cooperation and minimizing disputes—nonetheless produced two rosters containing the identities and certain personnel information of U.S. DOGE Service employees, detailees, and contractors (US-000061504 and US-000063328). Altogether, the Government produced more than 3,700 documents, consisting of well over 60,000 pages of materials.

In designating documents in its production as confidential and subject to the Protective Order, the Government applied such designations as narrowly as possible. Nearly all of the documents that the Government designated as confidential and subject to the Protective Order are large spreadsheets containing the personally identifiable information of third party grantees or grantee contact persons. And while the Government produced a number of text messages from Government employees' personal cell phones, the Government designated only one portion of a single text message as confidential and subject to the Protective Order.

On January 18, 2026, two days after the Government made its production, Plaintiffs challenged the Government's designation of various documents as subject to the Protective Order, including the following:

- US-00062916. A text message, sent by a nonparty NEH employee on his personal cell phone, produced in response to Plaintiffs' Request No. 3. *See* Exhibit A (provided to the Court separately).[1] The Government has since clarified to Plaintiffs that it only seeks to designate 4 sentences of this text message—which do

---

[1] To maintain the confidentiality of the Confidential Materials, the Government has provided the documents to the Court for review without filing them.

not relate to grant termination decisions—as Confidential.  *See* highlighted portion

of Exhibit A.

- US-000061504; US-000063328. These documents constitute rosters of U.S. DOGE

    Service employees, contractors, and detailees from January 24, 2025, to April 30,

    2025.  *See* Exhibits B and C (provided to the Court separately).

Plaintiffs have indicated that they are not challenging the Government's other confidentiality

designations at this time.

## ARGUMENT

Rule 26(c) provides that a district court "may, for good cause, issue an order to protect a

party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed.

R. Civ. P. 26(c)(1).  The Court entered such an order here, after the Government explained that

good cause warranted such an order for the purpose of protecting the private information of third

parties.  ECF Nos. 185-86.  The Government did not seek to withhold information from Plaintiffs

through that order, but rather to protect certain documents and information from being publicly

disclosed.

While judicial documents are accorded a presumption of public access, *see Lugosch v.

Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006), courts may issue protective

orders permitting the withholding of information from the public for "good cause," Fed. R. Civ.

P. 5.2(e)(2).  Moreover, "[n]ot every document generated in a lawsuit is a 'judicial document.'"

*Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007); *see also United States v. Amodeo*, 71

F.3d 1044, 1048 (2d Cir. 1995) (*Amodeo II*) ("Unlimited access to every item turned up in the

course of litigation would be unthinkable.").

"The Second Circuit has set forth a three-part analysis for determining whether

documents relating to a lawsuit must be made available to the public." *Stern*, 529 F. Supp. 2d at

420. First, the court must determine whether the documents at issue are "judicial documents."

*Id.* (quoting *Lugosch*, 435 F.3d at 119) (quotation marks omitted). A document must be

"relevant to the performance of the judicial function and useful in the judicial process in order

for it to be designated a judicial document." *Stern*, 529 F. Supp. 2d at 420 (quoting *United States*

*v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (*Amodeo I*)) (internal quotation marks omitted).

"[D]ocuments that play no role in the performance of Article III functions, *such as those passed*

*between the parties in discovery*, lie entirely beyond the presumption's reach." *Stern*, 529 F.

Supp. 2d at 421 (quoting *Amodeo II*, 71 F.3d at 1050) (quotation marks omitted) (emphasis in

original).

Second, if the document is a judicial document, the court must determine the "weight of

the presumption" of public access. *Stern*, 529 F. Supp. 2d at 420. "The presumption of access

varies according to the nature of the judicial document to which access is sought" and is

"strongest when the documents play a substantial role in determining litigants' substantial

rights." *Zhang Jingrong v. Chinese Anti-Cult World All.*, No. 15 Civ. 1046 (SLT) (VMS), 2016

WL 11671639, at \*2 (E.D.N.Y. June 2, 2016) (citations omitted); *accord Mirlis v. Greer*, 952

F.3d 51, 60 (2d Cir. 2020).

Third, the Court must weigh countervailing interests against the presumption. *Stern*, 529

F. Supp. 2d at 420. Countervailing factors include "the danger of impairing law enforcement or

judicial efficiency," *Amodeo II*, 71 F.3d at 1050, "public[] safety," *Under Seal v. Under Seal*,

273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017), and the privacy interests of those resisting disclosure,

*Stern*, 529 F. Supp. 2d at 420; *see also Amodeo II*, 71 F.3d at 1050-51.

Here, the Confidential Materials should not even be considered judicial documents

because they are, at best, minimally relevant to Plaintiffs' claims and "'have little or no bearing'"

on the Court's "'exercise of Article III judicial power.'"  *Stern*, 529 F. Supp. 2d at 420 (quoting

*Amodeo II*, 71 F.3d at 1048).  Even if the Court were to consider any of the three documents to

constitute judicial documents, however, the weight of presumption of public access to the

information that the Government seeks to keep confidential is low, as discussed below.  The

Government's designation of the Confidential Materials as confidential is narrowly tailored to

protect legitimate privacy interests of third parties, and the information sought to be protected is

"largely unrelated to the public interest" and not necessary to adjudication of this action.  *See*

*Open Soc'y Just. Initiative v. Trump*, No. 20 Civ. 8121 (KPF), 2020 WL 6286318, at *2

(S.D.N.Y. Oct. 27, 2020).

Of course, if the Court upholds the Government's confidentiality designation, Plaintiffs

may still rely on the Confidential Materials to support their claims, as long as they maintain the

confidentiality of such materials pursuant to the Protective Order.  Upholding the confidentiality

designations over these three documents will properly balance any interest Plaintiffs may have in

using the Confidential Materials in the litigation, the public's interest in access to information

relevant to the litigation, and the privacy interest of nonparties.

## I.  THE COURT SHOULD UPHOLD THE GOVERNMENT'S CONFIDENTIALITY DESIGNATION OF FOUR SENTENCES IN US-00062916 TO PROTECT THE REASONABLE PRIVACY INTERESTS OF A NONPARTY EMPLOYEE

The Court should uphold the confidential designation of four sentences within US-

00062916.  As an initial matter, the Court already found good cause to enter the Protective Order

for the purpose of protecting private information about third parties, and the designation of the

four sentences at issue (1) serve that purpose and (2) fall squarely within the definition of

Confidential Information in the Order.  *See* ECF No. 185; Protective Order ¶ 5.  A nonparty

employee expressed personal views about political subjects on a personal phone, in a text

message sent to one person.  He reasonably expected that those views would not be publicized.
The Government thus properly designated this information as subject to the Protective Order
entered by the Court, as it constitutes "personal . . . information in which" the employee
"possesses a reasonable expectation of privacy."  Protective Order ¶ 5.

       Moreover, the portions of the text message the Government has designated as
confidential do not meet the Second Circuit's test for determining whether documents relating to
a lawsuit must be publicly available.  The four sentences lack probative value and have
extremely minimal, if any, relevance to Plaintiffs' claims.  Thus, even assuming that the
document itself could be considered a judicial document, the weight of the presumption of public
access to the information the Government seeks to redact is quite low.  *See Amodeo II*, 71 F.3d at
1050 ("Where testimony or documents play only a negligible role in the performance of Article
III duties, the weight of the presumption [of public access] is low and amounts to little more than
a prediction of public access absent a countervailing reason."); *see also Cazorla v. Koch Foods
of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (stating, in the context of whether to restrict
discovery, that district courts should "compare hardship to the party against whom discovery is
sought against the probative value of the information to the other party"); *Advanced Hair
Restoration LLC v. Bosley Inc.*, No. C23-1031-KKE, 2024 WL 3833493, at *2 (W.D. Wash.
Aug. 15, 2024); ("Courts find good cause to issue protective orders when the discovery sought is
irrelevant.").  The NEH employee who made the statements was not the final decisionmaker with
respect to the grant terminations at issue, and the statements at issue do not discuss the reasoning
behind the grant terminations.  The employee's personal views about abstract political concepts
cannot possibly play a "substantial role" in determining Plaintiffs' rights.  *See Zhang Jingrong*,
2016 WL 11671639, at *2.  Further, Plaintiffs have argued in this case that it was DOGE, not

NEH personnel, who terminated the grants in question, further undermining any suggestion that the material sought to be protected is probative of Plaintiffs' claims regarding the reasoning behind the grant terminations.  And, to the extent Plaintiffs contend that the statements nonetheless reveal a basis for the termination of the grants at issue, the documents in the administrative record and other documents the Government produced in discovery plainly disclosed the reasons for the decisions at issue in this case.  Any import Plaintiffs seek to assign to the personal views of a nonparty NEH employee would be cumulative at best.

Finally, a significant countervailing interest supports nondisclosure of the four sentences at issue—the privacy interest of a nonparty who did not ask to be drawn into this litigation.  *See Amodeo II*, 71 F.3d at 1050-51.  Indeed, the Government's designation is necessary to prevent harm to a nonparty NEH employee who seeks to maintain his privacy.  The employee in question is a career public servant.  He is concerned that publicizing his privately held—and privately expressed—personal views could impact the public's perception of his ability to serve in a fair and apolitical manner, as he has done for many years and intends to continue to do.  The Second Circuit has repeatedly observed that "'[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.'"  *Amodeo II*, 71 F.3d at 1050-51 (quoting *Gardner v. Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990), and *United States v. Biaggi*, 828 F.2d 110, 116 (2d Cir. 1987), *cert. denied*, 485 U.S. 977 (1988)); *cf. In re Candor Diamond Corp.*, 26 B.R. 847, 849 (S.D.N.Y. Feb. 4, 1983) ("Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information."); *Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("'[T]here appear to be quite strong considerations indicating that discovery would be more limited to protect third

parties from harassment, inconvenience, or disclosure of confidential documents.'") (quoting *Collins and Aikman Corp. v. J.P. Stevens & Co., Inc.* 51 F.R.D. 219, 221 (D.S.C. 1971)); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *Jack Frost Laboratories Inc. v. Physicians & Nurses Mfg. Corp.*, No. 92 Civ. 9264 (MGC), 1994 WL 9690, at *2 (S.D.N.Y. 1994) ("The most obvious burden is borne by the nonparty witness, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others.").

The privacy interest at stake here is particularly compelling. An individual citizen—even one who works for the government—has a reasonable expectation that a private, one-on-one discussion about his personal views concerning politics and similar subjects, on a personal phone, will not be widely disseminated. *See Nixon v. Administrator of General Services*, 433 U.S. 425, 467 (1977) ("compelled disclosure" of political interests or associations "can seriously infringe on privacy of association and belief guaranteed by the First Amendment" and should only be required to be made public in the interest of a "compelling public need that cannot be met in a less restrictive way"); *id.* at 504 (Powell, J., concurring) ("I agree with the Court that even in the councils of Government an individual 'has a legitimate expectation of privacy in his personal communications,' and also that compelled disclosure of an individual's political associations, in and out of Government can be justified only by 'a compelling public need that cannot be met in a less restrictive way.'"); *see also United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring) (GPS tracker attached to person's privately owned car impinged on reasonable expectation of privacy because "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her

familial, *political*, professional, religious, and sexual associates") (emphasis added).  While

Plaintiffs indicated during the meet and confer process that they do not consider such discussions

to be of an "intimate" nature, the Second Circuit has explicitly rejected the notion that

"cognizable privacy rights" are limited strictly to "'intimate relations' such as bedroom or other

intimate conversations," labeling such a proposed restriction as "excessively narrow."  *Amodeo*

*II*, 71 F.3d at 1051 n.1.

   The employee's concerns are not speculative, as this case has already generated press

interest.  *See, e.g.*, *Lawsuit Against Humanities Endowment Offers Details on DOGE*, New York

Times, May 2, 2025, https://www.nytimes.com/2025/05/02/arts/humanities-endowment-doge-

grants.html; *Humanities Endowment Funds Trump's Priorities After Ending Old Grants*, New

York Times, Aug. 5, 2025, https://www.nytimes.com/2025/08/05/arts/national-endowment-for-

the-humanities-trump-grants.html; *Authors Group Calls Grant Withdrawals "Flagrantly*

*Unlawful,"* Law360, May 12, 2025, https://www.law360.com/articles/2338914; *Judge Says*

*"Piddling" Dispute Slowing Arts Grant Cut Cases*, February 2, 2026,

https://www.law360.com/articles/2436993/judge-says-piddling-dispute-slowing-arts-grant-cut-

cases.  Particularly in such circumstances, courts have the power to limit access to certain

information to protect the privacy interests of third parties.  *See Amodeo II*, 71 F.3d at 1050-51

(citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).

   In light of the lack of probative value or even relevance of these four sentences and the

legitimate privacy concerns of an innocent third party, retaining the confidentiality of the

material in question balances Plaintiffs' interests in the information sought to be protected, the

public's interest in disclosure, and the privacy interests of the third party.  *Pollitt v. Mobay*

*Chemical Corp.*, 95 F.R.D. 101, 105 (S.D. Ohio 1982) ("[T]his Court must be sensitive to the

potential burden imposed on a non-party during discovery, by balancing the need for the

materials against the burden (financial or otherwise) to be imposed [and] the possibility of

lightening it through a protective order").

## II. THE COURT SHOULD UPHOLD THE GOVERNMENT'S CONFIDENTIALITY DESIGNATION OF US-000061504 AND US-000063328 TO PROTECT THE IDENTITIES OF CURRENT AND FORMER GOVERNMENT EMPLOYEES WHO HAD NO INVOLVEMENT IN THE DECISIONS AT ISSUE

The Government also asks the Court to uphold the confidentiality designations of US-

000061504 and US-000063328—two rosters of U.S. DOGE Service employees, contractors, and

detailees—and to keep US-000063328, ECF No. 200, under seal.  Maintaining the

confidentiality of these documents is consistent with the purpose and the terms of the Protective

Order, as it will protect the reasonable privacy interests of third parties.  While Plaintiffs have

argued that the documents do not fall within the Protective Order's definition of Confidential

Information, courts have recognized that federal employees, particularly low-level employees,

have privacy interests in their identities, as discussed below.  *See* Protective Order ¶ 5.[2]

However, even if the Court agrees with Plaintiffs that the documents do not squarely fit within

the terms of the Order, the Government submits that good cause exists to keep this information

---

[2] To the extent Plaintiffs point to statements made by the Government via email before the Protective Order was entered that it did not expect to designate government employee names as confidential, *see* ECF Nos. 199, 199-1, such an argument does not cut against the Government's confidentiality designation or its arguments here.  The Government made that statement before it knew precisely what material it would need to designate as confidential and subject to the Protective Order, as it was in the midst of completing its review of more than 10,000 documents from multiple Government agencies.  The Government did not expect to, and did not, designate as confidential the names of any Government employees who participated directly or indirectly in the NEH grant terminations.  As always, at the time the Government responded to Plaintiffs' questions and demands, it did so honestly, based on the information available at the time, and in the spirit of transparency and cooperation.  Moreover, throughout its discussions with Plaintiffs about the contours of the Protective Order, the Government repeatedly stressed that it was still reviewing documents and, accordingly, unable to predict precisely what information might implicate the privacy interests of third parties.  *See* January 15, 2026, at email chain, at 1, 3, 4, attached as Exhibit D.

confidential in light of the risk of harm or harassment to third party individuals who have no relevance to this action. *See* Fed. R. Civ. P. 26.

First, the documents the Government has designated as confidential do not meet the Second Circuit's test for determining that documents relating to a lawsuit must be publicly available. It is difficult to see how rosters of all U.S. DOGE Service employees could possibly be considered judicial documents, *i.e.*, documents relevant or useful to the performance of the judicial function in this action. *See Stern*, 529 F. Supp. 2d at 420. The Government has repeatedly maintained that Nate Cavanaugh and Justin Fox were the only DOGE-affiliated Government employees who were directly involved in the decisionmaking process for NEH grant terminations, and no evidence uncovered in the voluminous discovery taken by Plaintiffs suggests otherwise. At any rate, the Government has not sought to keep confidential the names or identities of any U.S. DOGE Service or DOGE-affiliated individuals who were copied on or who participated in email communications produced in response to Plaintiffs' discovery requests. The Government recognizes that Plaintiffs have already filed US-000063328 on the docket, but "'the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.'" *Stern*, 529 F. Supp. 2d at 420 (quoting *Amodeo I*, 44 F.3d at 145). Indeed, Plaintiffs' purported reason for filing this document was to demonstrate in their reply in support of their motion to compel that Cavanaugh and Fox did *not* work for the U.S. DOGE Service, *see* ECF No. 198, at 3—a fact that the Government had already repeatedly acknowledged, including in the very opposition brief to which Plaintiffs were replying. *See* ECF No. 197, at 6; *see also* Answer to ACLS Compl. ECF No. 132, ¶¶ 19-20; Answer to Authors Guild Am. Compl., ECF No. 133, ¶¶ 29-30.

For similar reasons, the presumption of public access, if any, that attaches to the names of

U.S. DOGE Service employees, contractors, and detailees with no involvement in the events at issue in this case is low, at best. The Government produced these rosters without waiving its objections to the relevance and proportionality of Plaintiffs' requests for documents sufficient to show the organizational structure of "DOGE," in the interest of cooperation and transparency. However, most of the individuals listed on the rosters had no involvement whatsoever in any decisions made at NEH over the past year, and the information on the rosters will play no role, let alone a substantial role, in determining Plaintiffs' rights in this action. *See Zhang Jingrong*, 2016 WL 11671639, at *2. The rosters are unnecessary to adjudicating any dispute between the parties and hold no probative value. Indeed, as another court in this district explained, "information such as the names and other identifying information of low-level employees is largely unrelated to the public interest,' and may properly be withheld." *Open Soc'y Just. Initiative*, 2020 WL 6286318, at *2.

Furthermore, important countervailing interests weigh against disclosure. As discussed above, courts have instructed that the privacy interests of third parties should weigh heavily in balancing the presumption of access against privacy interests. *See supra* pages 9-10. The Government designated these documents as confidential to protect the identities of nonparty federal employees who have no relevance to this action—many of whom no longer work for the Government—in light of threats of harm received by U.S. DOGE Service employees over the past year. Courts have recognized a "privacy interest" by federal employees "in avoiding the unwanted contact or harassment that would result from the release of their names." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 118 (D.D.C. 2005); *Long v. OPM*, 692 F.3d 185, 196 (2d Cir. 2012) (explaining that "[r]edaction of names goes a long way toward protecting against surveillance and publicity of those things that are generally treated as nobody

else's business," and that it also can protect "individuals' physical safety"); *Massey v. F.B.I.*, 3 F.3d 620, 624 (2d Cir. 1993) ("[I]ndividuals, including government employees and officials, have privacy interests in the dissemination of their names."), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011); *Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, No. 18 Civ. 2622 (ABJ), 2021 WL 4502106, at *15 (D.D.C. Sept. 30, 2021) ("[I]t is well established that lower-level government employees in general have a privacy interest in their identities."). Courts have also explained that "low-level government employees . . . have a heightened privacy interest." *Insider, Inc. v. U.S. Gen. Servs. Admin.*, 635 F. Supp. 3d 1, 4 (D.D.C. 2022) (citing *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 938 (D.C. Cir. 1982)).

For these reasons, courts have entered protective orders restricting the public dissemination of government employee names or images, particularly where, as here, the employees' "identities have little or no bearing on the outcome of the litigation." *Open Soc'y Just. Initiative*, 2020 WL 6286318, at *2; *see also, e.g.*, *D.J.C.V. v. United States*, No. 20 Civ. 5747 (PAE), 2023 WL 3775283, at *2-3 (S.D.N.Y. June 2, 2023) (permitting government to redact names of Department of Homeland Security personnel who were not deposed and were not probative to the relevant issues after government pointed to a news report regarding threats to DHS staff and argued that redactions were necessary to "safeguard their privacy, safety, and security"); *Poulos v. City of Los Angeles*, No. 19 Civ. 496 (MWF) (AFM), 2020 WL 4108433, at *1-2 (C.D. Cal. June 23, 2020) (entering an order protecting visual images of third-party district attorneys in light of the "legitimate danger posed by public distribution" of such images); *In re Savitt/Adler Litigation*, No. 95 Civ. 1842 (RSP / DRH), 1997 WL 797511, at *3 (N.D.N.Y. 1997) (concluding that "privacy interests" of non-party Assistant Attorneys General were "strong

15

factor weighing against disclosure of their identities" and ordering that their names be removed from public filings); *Kelly v. City of New York*, No. 01 Civ. 8906 (AGSDF), 2003 WL 548400, at *6 ("[R]edacting the employees' names will have minimal consequence on the public's ability to determine whether the City's stated policies regarding tax submissions were uniformly applied.").  In doing so, one district court noted that individuals do not "forfeit[] all privacy rights by engaging in public service."  *Poulos*, 2020 WL 4108433, at *2.

Because these documents hold no probative value for Plaintiffs and are unrelated to the Court's exercise of its Article III functions, and because disclosure of the documents could potentially harm third parties who were not involved in the events at issue in this litigation, the Court should uphold the Government's confidentiality designations and keep US-000063328, ECF No. 200, under seal.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court uphold its designations of US-000061504, US-000063328, and four sentences within US-00062916 as confidential and subject to the Protective Order, and keep US-000063328, ECF No. 200, under seal.

Dated: February 5, 2026                     Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:  */s/ Mary Ellen Brennan___*
MARY ELLEN BRENNAN
RACHAEL L. DOUD
JONAKI M. SINGH
Assistant United States Attorneys
86 Chambers St., 3rd Floor
New York, New York 10007
(212) 637-2699

16

(212) 637-2652
(212) 637-2785

*Attorneys for Defendants*