```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AMERICAN COUNCIL OF LEARNED
SOCIETIES, et al.,

                Plaintiffs,

            v.                         25 CV 3657 (CM)

MICHAEL McDONALD, in his
official capacity as Acting
Chairman of the National
Endowment for the Humanities,
et al.,

                Defendants.            Conference

------------------------------x

THE AUTHORS GUILD, on behalf
Of themselves and all others
Similarly situated, et al.,

                Plaintiffs,

            v.                         25 CV 3923 (CM)

NATIONAL ENDOWMENT FOR
THE HUMANITIES, et al.,

                Defendants.
------------------------------x

                                       New York, N.Y.
                                       February 2, 2026
                                       11:05 a.m.
Before:

                HON. COLLEEN McMAHON,

                                       District Judge
```

APPEARANCES

JACOBSON LAWYERS GROUP PLLC
    Attorneys for Plaintiff American Council of
    Learned Societies
BY:  DANIEL F. JACOBSON

FAIRMARK PARTNERS, LLP
    Attorneys for Plaintiff The Authors Guild
BY:  JAMIE CROOKS

JAY CLAYTON
    United States Attorney for the
    Southern District of New York
RACHAEL DOUD
MARY ELLEN BRENNAN
JONAKI SINGH
    Assistant United States Attorneys

1              (Case called)
2              MS. DOUD:  Rachael Doud from the U.S. Attorney's
3     Office for the defendants.
4              THE COURT:  Hello, Ms. Doud.
5              MS. BRENNAN:  Mary Ellen Brennan from the U.S.
6     Attorney's Office for the defendants.
7              THE COURT:  Ms. Brennan.
8              MS. SINGH:  Jonaki Singh from the U.S. Attorney's
9     Office for the defendants.
10             THE COURT:  Ms. Singh.
11             MR. JACOBSON:  Daniel Jacobson for the American
12    Council of Learned Societies, plaintiffs.
13             MR. CROOKS:  Jamie Crooks for The Authors Guild
14    plaintiffs.
15             THE COURT:  You can stay seated.  Use the microphone.
16             I was out sick for much of last week.  I apologize.  I
17    didn't get a lot done.  But I think I pretty much understand
18    why you're here.
19             I'll give the floor to the plaintiffs.  Then I'll give
20    the floor to the government.  Then I am going to tell you a few
21    things.
22             MR. JACOBSON:  Thank you, your Honor.
23             From the plaintiff's perspective, and we have
24    conferred with The Authors Guild plaintiff, so this is our
25    joint position, to make it easier for the Court, where things

1   stand as of now is, there are two pending motions to compel
2   relating to discovery.  Our thought is --
3            THE COURT:  We are down to like 96 documents, right?
4            MR. JACOBSON:  That's with respect to one of the two
5   motions that The Authors Guild plaintiffs filed on the
6   privilege.  There is a separate motion that we had filed with
7   respect to defendants not answering certain interrogatories and
8   not running certain searches for records.
9            THE COURT:  I haven't seen that.
10           MR. JACOBSON:  Our thought is to wait until those two
11  pending motions are resolved, and then the parties can confer,
12  and any productions that come out of that, and then the parties
13  can confer --
14           THE COURT:  Can I ask you guys a question.  Are you
15  interested in getting a ruling on the merits in this case?
16           MR. JACOBSON:  Absolutely, your Honor.
17           THE COURT:  Really.  Because you are proceeding very
18  slowly, certainly as compared to other litigants in your
19  position in other courts in other cases.
20           Let me tell you something about the privileged
21  documents.  They are silly, stupid assertions of privilege.  We
22  asked our lawyers for an opinion on X, and we are waiting for a
23  response.  And there are 15 of the 96 documents that that's the
24  alleged privilege.  Boom.  There is nothing in those documents,
25  no matter how I would rule on a privilege application -- I've

1  gone through them this morning -- there is nothing in those
2  documents that will advance the ball one iota on a merits
3  motion.
4        Just so you know, there is no big undisclosed secret
5  that's hiding behind a privilege.  These are silly, piddling
6  technical objections, and they don't do anything to advance the
7  ball on the merits.
8        MR. JACOBSON:  Understood, your Honor.
9        THE COURT:  Really.  OK.  I want to advance the ball
10 on the merits.  We have been waiting.  We have been waiting to
11 see if we can get to a dispositive motion.  I don't have a
12 dispositive motion.
13       I'll look at your interrogatories, but I can't
14 imagine, and certainly in light of decisions in other cases,
15 not all of them involving any age, most of them not involving
16 any age, but that have come out all over the country, that you
17 don't have the ammunition that you need to make the motion that
18 you needed to make in order to get a ruling one way or another
19 in this case.
20       MR. JACOBSON:  Understood, your Honor.
21       THE COURT:  That's what we are about, not prolonging
22 discovery that's not likely to -- if these documents are any
23 indication, that's not likely to get you anything more than you
24 already have.  That's a piece of advice from a former litigator
25 to people who are litigating.

1          MR. JACOBSON:  Understood.  To that point of advancing
2    the ball, we did notify defendants last night that we are
3    withdrawing the one additional deposition request that we had
4    submitted.
5          THE COURT:  Oh, good.
6          MR. JACOBSON:  Obviously, we don't know what's behind
7    the curtain, but we appreciate your Honor telling us --
8          THE COURT:  I'm telling you there is nothing behind
9    the curtain that you need to make the motion.
10         MR. JACOBSON:  Appreciate that.  We do have ways, a
11   potential schedule to advance towards getting to that
12   dispositive motion.
13         THE COURT:  To advance toward.  To me, the potential
14   schedule should be a date by which you will make it.
15         When are you going to be prepared to make your motion?
16         MR. JACOBSON:  Your Honor, I would say once discovery
17   is closed and if your Honor is saying it's closed, we can make
18   our motion within 30 days of that.
19         THE COURT:  Good.  That sounds right to me.
20         MR. JACOBSON:  There is one thing I wanted to flag,
21   your Honor, which our hope is that this does not slow things
22   down at all.  Based on the documents produced in discovery, we
23   do to intend to seek leave to add an equal protection claim
24   because there is smoking gun evidence that was produced of the
25   defendants --

1          THE COURT: Is there some reason why you haven't done
2  that already? You've had the documents. Your smoking gun has
3  been smoking for presumably some weeks or perhaps even months,
4  and this is the first I've heard of it. I don't have a problem
5  with it. I kind of wondered why there was no equal protection
6  claim in the case to begin with, but who am I. I don't write
7  the complaints.
8          MR. JACOBSON: Your Honor, those documents were only
9  produced to us two weeks ago, and it just took us some time to
10 identify them. But there is spreadsheets where you could see
11 that the defendants were searching for terms like black and gay
12 and identifying --
13         THE COURT: Is this like a news flash? We knew that
14 last May, when this started. This is not a news flash. This
15 is what was going on. We have known this all along.
16         MR. JACOBSON: Yes, your Honor. We are prepared
17 within a week, if needed, to move to amend our complaint to add
18 this --
19         THE COURT: Be my guest.
20         MR. JACOBSON: Thank you.
21         THE COURT: I appreciate that the government has been
22 operating under an unusual constraints, given what else has
23 been going on in your office recently.
24         Do you have anything you want to add here?
25         MS. DOUD: Thank you, your Honor.

1    Our hope has certainly been that we could proceed to
2    summary judgment briefing.  If plaintiffs are in fact amending
3    the complaint to add a new claim, that, obviously --
4    THE COURT:  It's an equal protection claim, for
5    heaven's sake.  It's purely legal argument.  You guys know what
6    the law is on that.
7    MS. DOUD:  It's hard to see how that would not delay
8    things at least somewhat.  We have not obviously seen this new
9    claim.  In any event, your Honor, our general position is that
10   there is no factual dispute.  The discovery that has been taken
11   has been quite significant in breadth and the number of
12   documents but has not changed the fundamentals which are
13   essentially undisputed.  So we would really like to proceed to
14   summary judgment briefing and get this resolved.
15   THE COURT:  Me too.
16   Here is what's going to happen.  I will, over the
17   course of the next couple of days -- I do have a couple of
18   truly urgent things to do, but over the course of the next
19   couple of days I will make sure I have disposed of your
20   discovery motions.  You will make your motion for leave to
21   amend.  And I, exercising my prerogatives as the controller of
22   my own calendar, will set a schedule for summary judgment
23   briefing because it's time, folks.  It's time.  It's just time.
24   MR. CROOKS:  Your Honor, one issue that's unique to
25   The Authors Guild case is that ours, as you know, is a proposed

1   class action.  We are fine to brief the class certification
2   motion in tandem with the motion for summary judgment.
3   Normally, that's done a little bit before --
4           THE COURT:  I know, but I'm not waiting on summary
5   judgment in this case.  You can brief them in tandem.  You
6   could have made that motion six months ago.  You filed your
7   complaint nine or 10 months ago.
8           I didn't tell you you couldn't make a motion for class
9   certification.  You didn't make a motion for class
10  certification.  Now I guess you're going to make a motion for
11  class certification.  But it's not going to delay the
12  dispositive issues because we have let them dangle out there
13  long enough.
14          You need a resolution.  Your clients need a
15  resolution.  The government needs a resolution.  Everybody
16  needs a resolution.  And I need this off my docket.  That's my
17  attitude.  If the case gets thrown out because the government
18  is granted summary judgment, you won't need to worry about
19  class certification.  If you are granted summary judgment, we
20  will have ways of dealing with your class motion.  I understand
21  how things usually happen, but since you have not chosen to
22  make that motion over the last six or seven months, they are
23  going to happen my way.  I want a summary judgment.  I want to
24  dispose of the case.
25          MR. CROOKS:  Understood, your Honor.

1       THE COURT:  Is everybody happy?  No.  Of course no one
2  is happy.  I want no one to be happy.
3       MR. JACOBSON:  Can I raise one more matter for your
4  Honor's awareness?
5       THE COURT:  Sure.
6       MR. JACOBSON:  This is not to delay summary judgment
7  at all, just for your Honor's awareness on the scheduling.
8       We do intend to also move for spoliation sanctions
9  based on deposition testimony from the last few days where the
10 heads of the agency testified that they have been deleting text
11 messages about official work and using Signal but setting it to
12 auto deletes.  That's the messaging application.  The DOGE
13 members are doing that too, so I imagine we would be seeking
14 some sort of adverse inferences, so I am just laying that out
15 there.
16      THE COURT:  It doesn't impact the making of a summary
17 judgment motion.
18      MR. JACOBSON:  Understood.
19      THE COURT:  It impacts how I consider the evidence.
20      MS. DOUD:  Your Honor, if I can just briefly respond.
21 That description of what people have supposedly testified --
22      THE COURT:  The transcripts.  Then I'll know exactly
23 what they testified.  I'm not interested in characterizations.
24 I'm interested in the words on the page.
25      MR. JACOBSON:  Yes, your Honor.

1        THE COURT:  Then I can draw my own conclusions.
2        MS. DOUD:  Your Honor, is that motion going to be made
3  on some particular schedule?
4        THE COURT:  I have no idea when they are going to make
5  that motion.
6        MR. JACOBSON:  Your Honor, we could be prepared to
7  make it within two weeks, I would say.
8        THE COURT:  OK.  Fine.  Make all your preliminary
9  motions:  Your spoliation motion, your motion to amend, all of
10 those things.
11       But we are going to have summary judgment motion
12 briefed like in the next 90 days.  It's going to be done.
13 Maybe shorter than that.  It's going to be done.  It's
14 imperative that it be done.
15       Anything else?
16       OK.  Thank you, all, for coming in.
17       (Adjourned)