UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

THE AUTHORS GUILD, et al.,

        Plaintiffs,

  -against-                                                                25-cv-3923 (CM)

NATIONAL ENDOWMENT FOR THE
HUMANITIES, et al.,

        Defendants.

———————————————————————— x

AMERICAN COUNCIL OF LEARNED
SOCIETIES, et al.,

        Plaintiffs,

                           25-cv-3657 (CM)

  -against-

MICHAEL MCDONALD, in his official capacity as
Acting Chairman of the National Endowment for the
Humanities, et al.,

        Defendants.

———————————————————————— x

### OPINION & ORDER DENYING DEFENDANTS' MOTION TO MAINTAIN CONFIDENTIALITY DESIGNATIONS AND TO KEEP CERTAIN MATERIALS UNDER SEAL

McMahon, J.:

Defendants National Endowment for the Humanities ("NEH"); Michael McDonald, in his

official capacity as Acting Chairman of NEH; the United States DOGE Service; Amy Gleason, in

her official capacity as Acting Administrator of the United States DOGE Service; and Nate

Cavanaugh, in his official capacity as an employee of the U.S. DOGE Service or the General

Services Administration (collectively, "Defendants"), move for an order upholding their

designation of certain materials as confidential pursuant to the Stipulation and Protective Order entered in these consolidated actions. Dkt. No. 204, Mot. to Maintain.

Specifically, Defendants seek to maintain as confidential two documents – US-000061504 and US-000063328 – and four sentences within a third document, US-000062916. Defendants further request that US-000063328, which has been filed under seal, remain under seal. US-000061504 and US-000062916 have not been separately filed under seal but are the subject of Defendants' confidentiality designations and this motion to maintain.

## Background

On January 15, 2026, the Government submitted a letter requesting that the Court enter a stipulated protective order pursuant to Federal Rule of Civil Procedure 26(c). In that submission, the Government represented that good cause existed because its forthcoming discovery production would include private information about third parties, including personally identifiable information relating to grantees and employee personnel data, as well as materials drawn from Government employees' personal cell phones.

The Court entered the Stipulation and Protective Order that same day. Dkt. No. 186, Stipulation and Protective Order ("Protective Order"). The Protective Order defines "Confidential Information" to include "information of which public disclosure is restricted by law" and "any personal or intimate information in which any individual possesses a reasonable expectation of privacy, including, but not limited to, personal financial, tax, employment, personnel, medical, or other private or personally identifiable information." Protective Order, ¶ 5.

The Order permits a producing party to designate discovery material as confidential if it believes in good faith that the material contains such information. *Id.*, ¶ 7. It further provides that if a receiving party challenges a confidentiality designation and the parties cannot resolve the

dispute, the producing party must apply to the Court within 21 days to maintain the designation. *Id.*, ¶ 9.

On January 16, 2026, Defendants produced approximately 3,700 documents in response to the Court's December 22, 2025 discovery order. That production included material drawn from NEH, GSA, and U.S. DOGE Service custodians, including certain data from employees' personal devices.

Among the documents produced were: US-000061504 and US-000063328, which Defendants describe as rosters of U.S. DOGE Service employees, contractors, and detailees; and US-000062916, a text message exchange, from which Defendants designated four sentences as confidential. Defendants designated these materials, in whole or in part, as "Subject to Protective Order" pursuant to Paragraph 7 of the Protective Order.

On January 18, 2026, Plaintiffs challenged the confidentiality designations of these materials. Pursuant to Paragraph 9 of the Protective Order, Defendants now move to maintain those designations.

US-000062916 consists of a text message exchange sent from the personal device of NEH Assistant Chair for Programs Adam Wolfson. Defendants seek to maintain as confidential four sentences in that message. They contend that these four sentences reflect "personal views" of Wolfson that are unrelated to the formal decisionmaking at issue in this case. Dkt. No. 205 at 7– 8.

US-000061504 and US-000063328 are spreadsheets listing the names and titles of individuals affiliated with U.S. DOGE Service, including employees, contractors, and detailees (i.e., individuals detailed to work with DOGE who are employed by another Executive Branch agency) during the period relevant to this lawsuit. The spreadsheets identify the individual's name,

position title (e.g., "Digital Services Expert," "Senior Advisor"), pay plan and grade (e.g., GS-15), and date of entry on duty. Defendants contend that the spreadsheets fall within the Protective Order's definition of "Confidential Information" because they include personnel information in which nonparties possess a reasonable expectation of privacy.

For the following reasons, Defendants' motion is DENIED in its entirety.

## DISCUSSION

The public has "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). This is because, as the Supreme Court has recognized, a "citizen's desire to keep a watchful eye on the workings of public agencies" justifies compelling access to judicial documents. *Warner Commc'ns*, 435 U.S. at 597–98; *see also Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) ("Like the First Amendment . . . the right of inspection serves to produce an informed and enlightened public opinion." (citation modified)).

The Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–21 (2d Cir. 2006) instructs courts to determine (1) whether the materials are judicial documents, (2) the weight of the presumption of public access that attaches, and (3) whether countervailing interests overcome that presumption. Where the First Amendment right of access applies, sealing is permissible only upon specific, on-the-record findings demonstrating that it is necessary to preserve "higher values" and is narrowly tailored to serve that interest. *Id.* at 124.

The materials at issue are "judicial documents." They were produced in discovery ordered by the Court and are now before the Court as the subject of a contested application invoking the

Court's authority to determine whether they should remain withheld from public view pursuant to a court-entered Protective Order. *See* Dkt. No. 186, ¶ 9. Defendants have asked the Court to adjudicate the continued confidentiality of particular parts of its production; the Court cannot grant that relief without exercising Article III authority and making the "specific, on-the-record findings" required to justify continued secrecy. *See Lugosch*, 435 F.3d at 124.

When parties present documents to the Court for decision on a sealing/confidentiality dispute, those documents are "presented to the court to invoke its powers or affect its decisions" and therefore constitute judicial documents. *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*"); *see also Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). In other words, the Court's decision is an exercise of Article III power subject to public monitoring, and the presumption of access therefore attaches at filing and does not depend on whether the Court has yet ruled on a dispositive motion.

Because the rosters and the text-message excerpt are judicial documents, the Court turns to the weight of the presumption and the asserted countervailing interests.

### a.  The Rosters (US-000061504 and US-000063328)

Defendants seek to maintain confidentiality over two spreadsheets that list the names, titles, and pay grade of individuals who worked for or with the U.S. DOGE Service – whether as employees, as persons sent from other Executive Branch agencies to assist with DOGE operations, or as contractors – during the relevant period.

### i.  Weight of the Presumption

Plaintiffs challenge the lawfulness and motivations underlying federal grant terminations.

The identities of persons working for the national government – and the official capacities in which they serve – are rarely treated as confidential. There are, of course, contexts in which disclosure of personnel lists would implicate legitimate and weighty concerns: where national

security is at stake, for example, revealing the identities of intelligence personnel can compromise "intelligence sources and methods" and "endanger [their] personal safety." *C.I.A. v. Sims*, 471 U.S. 159, 167–69, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 512 (1980) (per curiam)). But this case does not involve intelligence operations, covert personnel, or any comparable showing of risk. A routine roster identifying employees, detailees, and contractors performing non-classified functions is not presumptively confidential.

Absent some specific and articulable privacy or safety concern, the public is entitled to know who works for its government and in what capacity. Such transparency is "essential" to democratic accountability, *Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir. 2025), and it informs the public's ability to evaluate the exercise of governmental power challenged in federal court.

This conclusion is consistent with analogous privacy determinations in the Freedom of Information Act context. In *Demetracopoulos v. FBI*, 510 F. Supp. 529, 532–33 (D.D.C. 1981), the court rejected the withholding of the names of federal officials under Exemption 7(C), explaining that "Public officials do not have as great a claim to privacy as is normally afforded to purely private citizens," particularly with respect to matters connected to their official duties. Although *Demetracopoulos* arose under FOIA, its reasoning reflects a broader principle that when individuals act in their official governmental capacities, their identities and roles are not ordinarily treated as "intimate" personal information warranting categorical protection.

It is true that the Second Circuit has recognized that government employees retain some cognizable privacy interest in their names. *See Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993). But *Massey* underscores why Defendants' reliance on generalized privacy interests is insufficient here. *Massey* involved law-enforcement records compiled in connection with a criminal investigation. The Second Circuit was concerned that disclosure of the identities of employees in

that context could subject agents and other individuals to harassment or stigma and would reveal little about agency conduct. *Id.* at 624–25. The same is true of cases like *Cizek v. Dep't of Defense*, 2024 WL 4332111, at 9–10 (D.D.C. Sept. 27, 2024), which upheld redactions under FOIA Exemption 7(C) for the names of lower-level military personnel who provided testimony in a whistleblower-reprisal investigation – records compiled for law-enforcement purposes where disclosure would associate specific individuals with investigative allegations and add little to the public's understanding of governmental operations.

Defendants argue that the rosters are mere "personnel information" with no real relationship to the merits. Even if that were so – even if the identities ultimately prove collateral to the dispositive issues – that does not render them confidential. At this stage, the Court is not tasked with deciding exhibit-by-exhibit whether each item will ultimately prove dispositive. The question before the Court is not whether the spreadsheets are central to liability, but whether their contents qualify as "personal or intimate" information warranting protection.

## ii. Countervailing Interests

The Protective Order defines confidential material to include "personal or intimate information" in which an individual has a reasonable expectation of privacy. But the two rosters here at issue contain none of the categories of sensitive information traditionally warranting sealing. They contain no Social Security numbers on the spreadsheets, no home addresses, no personal phone numbers, no financial information, no medical data, and no disciplinary information. They merely identify who worked for DOGE, by name, title, and official role within the entity. In the absence of some showing of how knowing that a particular individual worked for DOGE would pose a risk for that individual, that information does not qualify as "personal or intimate" within the meaning of the Protective Order.

7

And Defendants have made no particularized showing that could justify continued sealing of the entire spreadsheets, assuming *arguendo* that some privacy interest might be implicated. Defendants do not propose targeted redactions limited to particular individuals or discrete fields of information. Instead, they seek to maintain blanket confidentiality over the spreadsheets in their entirety. In effect, Defendants ask the Court to treat the identity of every individual who worked at or with DOGE as a Big Secret. Such a sweeping request is not narrowly tailored to any identified higher value and so cannot satisfy the constitutional standard for sealing.

Most significantly, Defendants identify no concrete, on-the-record risks – such as credible threats, harassment, or personal-safety concerns – tied to any specific individual on the rosters. Instead, they rely on generalized assertions that disclosure of names and titles is itself a privacy invasion. That argument (if argument it be) does nothing to overcome the presumption of access. *See Lugosch*, 435 F.3d at 120–21.

Defendants cite *Poulos v. City of Los Angeles*, 2020 WL 4108433, at *2 (C.D. Cal. June 23, 2020) for the unremarkable proposition that public employees "have not forfeited all privacy rights by engaging in public service." That statement, however, was made in the context of district attorneys who demonstrated documented threats arising from their work in a "hardcore gang unit," which had "put them and their families at risk," and who had taken extraordinary measures to protect their identities, including "purchasing a home in blind title" and "legally changing names." *Id.* On that evidentiary record, the court narrowly restricted dissemination of their images. No comparable safety showing has been made here.

Accordingly, Defendants have demonstrated neither that sealing the rosters is "essential to preserve higher values" nor that confidentiality is narrowly tailored. The confidentiality

designations for US-000061504 and US-000063328 are therefore overruled.  These documents may not be filed under seal; if they have been filed under seal, they must be unsealed.

### b.  The Text Message (US-000062916)

Defendants seek to maintain confidentiality over four sentences in a text message exchange produced from NEH's Assistant Chair for Programs Adam Wolfson's personal device.

### i.  Weight of the Presumption

Plaintiffs allege that the challenged grant terminations were ideologically motivated and reflected impermissible viewpoint-based decision-making rather than neutral fiscal or administrative considerations.  The Government rejects that characterization, but that dispute is the core issue presented in this litigation – the ultimate issue the Court is being asked to resolve.

The sentences in Assistant Chair Wolfson's text message bear on that ultimate issue.  They address the asserted rationale for terminating certain grants.  In a case where Plaintiffs allege viewpoint-based or ideological motivation, Wolfson's language – especially the four sentences the Government seeks to keep under wraps – bears directly on the disputed question of governmental intent.  And he was involved in the decision-making process – or at least so Plaintiffs contend.  The presumption is, therefore, entitled to the greatest possible weight under the *Amodeo* continuum.

It is true that the Court has not yet been asked to rely on this document in deciding a motion – aside, of course, from the very sealing motion the Government itself has filed.  But while summary judgment motions have not yet been filed – Plaintiff's motion is not due until March 6 – the Government's request that the court rule on the confidentiality of this particular document has clearly been timed to keep Assistant Chair Wolfson's opinion about the "progressive" and "woke" aspects of certain grants out of the public view.  The fact that the Plaintiffs will almost certainly rely on this language in their forthcoming motion simply underscores the "judicial" nature of the

document. I can assure the parties that this Court, if it were asked to rule on the confidentiality of this particular document after the summary judgment motions were briefed and decided, would have concluded that the document is not confidential and any request to maintain it under seal would be denied.

But we need not wait months until the summary judgment motions are filed and decided. Having asked the Court to rule on the confidentiality of these few sentences, Defendants themselves have rendered them judicial documents subject to a meaningful presumption of access. Moreover, as the Second Circuit has recently laid bare, documents "do not receive different weights of presumption based on the extent to which they were relied upon in resolving a motion," and a court may not treat the presumption as "barely cognizable" merely because it does not rely on them. *See Giuffre*, 146 F.4th at 178–80. The sole question is whether the material is "relevant to the performance of the judicial function," not whether it proves outcome-determinative. Id. at 178–79. The documents at issue have been placed before the Court to inform its exercise of Article III authority; therefore, the presumption of access attaches with full force.

### ii. Countervailing Interests

Defendants argue that the text message expresses personal views unrelated to official decision making and that disclosure would cause embarrassment. Embarrassment, however, is not the type of privacy interest that overcomes the presumption of access in matters concerning public governance. *Doe v. Combs*, 2024 WL 4635309, at *3 (S.D.N.Y. Oct. 30, 2024), *reconsideration denied*, 2024 WL 4753565 (S.D.N.Y. Nov. 12, 2024).

The Second Circuit has emphasized that constitutionally cognizable privacy interests generally concern "the individual interest in avoiding disclosure of personal matters," particularly intensely personal information such as medical conditions. *Doe v. City of New York*, 15 F.3d 264,

267–68 (2d Cir. 1994) (recognizing a constitutional right to confidentiality in an individual's HIV status). That line of cases protects the "confidentiality branch" of privacy where disclosure would reveal deeply personal information about one's body, health, family life, or similarly intimate matters. *Id.* at 267 (citing *Whalen v. Roe*, 429 U.S. 589 (1977)).

This case does not implicate that category of interests. The text message concerns government policy and whether there was a particular ideological justification for agency action. It does not reveal medical information, financial records, sexual victimization, home addresses, or other intimate personal data. It reflects political or policy speech about governmental conduct.

On the available record, the Court cannot discern a substantial privacy right that is outweighed by "the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (citation omitted). Again, Defendants have not offered any particularized, on-the-record showing of concrete harms – such as credible threats, harassment, or safety risks – tied to disclosure of these four sentences. Absent such a showing, the presumption of access controls.

To the extent Defendants contend that Wolfson's statements are "personal," that characterization does not establish a "higher value" warranting secrecy. The relevant question is whether disclosure would inflict a cognizable and substantial privacy injury of the sort recognized in the sealing cases – not whether knowing that the Assistant Chair of the NEH made the challenged statements might make him uncomfortable, prove controversial, or even harm his reputation. Government employees do not enjoy a presumptive privacy right in shielding from public view their expressed views concerning the policy rationale for official actions – actions in which they themselves are involved – that are the subject of federal litigation.

And in any event, Defendants' request is not narrowly tailored. They seek to withhold only the most ideologically charged portion of a communication that otherwise bears on the rationale for the challenged government action, a form of selective sealing that would impede the public's ability to evaluate the evidentiary record presented for judicial resolution.

Balancing the substantial presumption of access against the minimal and generalized privacy interests, the Court concludes that Defendants have not shown that continued confidentiality is essential to preserve "higher values" or that the requested sealing is narrowly tailored. Embarrassment alone is not a higher value sufficient to justify sealing.

### c. Nothing in the Confidentiality Order Suggests That This Information Should Remain Under Seal

Finally, Defendants cannot rely on the mere existence of a Protective Order or their own confidentiality designation to defeat public access. The Second Circuit has expressly rejected the notion that a confidentiality order, standing alone, justifies continued sealing once documents are presented to the Court. In *Lugosch*, the Second Circuit explained that "the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable." 435 F.3d at 126 (quoting *SEC v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001)).

The Protective Order in this case makes that principle unambiguous. This court requires that the parties agree to an Addendum to any protective order they negotiate. That Addendum provides that the Court's "so ordering" of the stipulation "does not make the Court a party to the stipulation or imply that the Court agrees that documents designated as 'Confidential' by the parties are in fact confidential." Protective Order, at 14. It further states that the Court "operates under a presumption that the entire record should be publicly available," and requires any party seeking redaction to "explain why that material is truly confidential," after which the Court will

determine whether it is "in fact genuinely deserving of confidential treatment." *Id.*  In light of these explicit provisions – without which the Court would not have entered the Protective Order in the first place – Defendants cannot plausibly contend that they produced the text message in reasonable reliance on a guarantee of permanent secrecy.

### Conclusion

For the foregoing reasons, Defendants' application to maintain confidentiality designations is DENIED.  The Court concludes that the materials at issue do not qualify as "personal or intimate information" within the meaning of the Protective Order and that Defendants have not demonstrated that continued sealing is essential to preserve higher values or narrowly tailored to serve a compelling interest.

The confidentiality designations as to US-000061504, US-000063328, and the four-sentence excerpt of US-000062916 are therefore not sustained.  US-000063328 must be unsealed. Defendants shall file on the public docket complete and unredacted versions of US-000061504 and US-000063328, as well as US-000062916, no later than February 17, 2026.

The Clerk of Court is directed to terminate the motions at Docket Numbers 102 and 107 in *The Authors Guild v. National Endowment for the Humanities*, No. 25-cv-3923 (CM), and Docket Numbers 199 and 204 in *American Council of Learned Societies v. McDonald*, No. 25-cv-3657 (CM), and to remove them from the Court's list of open motions.

This constitutes the decision and order of the Court.  It is a written decision.

Dated: February 13, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL