

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*86 Chambers Street
New York, New York 10007*

March 10, 2026

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

        Re:   *American Council of Learned Societies v. National Endowment for the Humanities*, No. 25 Civ. 3657 (CM), and *The Authors Guild v. National Endowment for the Humanities*, No. 25 Civ. 3923 (CM)

Dear Judge McMahon:

      This Office represents the Government in the above-referenced cases. On Friday, March 6, 2026, the ACLS Plaintiffs and Authors Guild Plaintiffs filed a motion for summary judgment (ECF Nos. 246-257). In conjunction therewith or shortly after, the ACLS Plaintiffs appear to have publicly disseminated materials produced in discovery in this case—including materials that they did not rely on in their motion for summary judgment or any other motions.[1] First, the ACLS Plaintiffs published in their entirety the video depositions of the four Government witnesses in this case on YouTube.com ("YouTube"). Second, the ACLS Plaintiffs appear to have shared certain discovery materials with news reporters at the New York Times for an article about this litigation that was published on March 7, 2026.[2] Third, the American Historical Association and the Modern Language Association published "Discovery Documents," including the video depositions and other documents produced in discovery, on their respective websites. We write respectfully to ask the Court to enter a protective order (1) requiring the ACLS Plaintiffs to remove the video depositions from the internet, and (2) restricting Plaintiffs' attorneys and Plaintiffs themselves from further publicizing the video depositions or disseminating discovery materials that have not otherwise been made available on the public docket for this case, absent prior permission from the Court. We also respectfully request a telephone conference to address these issues as soon as possible because the public dissemination of these discovery materials has created a significant risk of harassment of the Government witnesses and their family members. In an effort to avoid

---

[1] The Authors Guild Plaintiffs have represented to the Government that they had no knowledge of or involvement in publicly disseminating any discovery materials aside from the litigation-related docket filings in this case.

[2] Jennifer Schuessler, *When DOGE Unleashed ChatGPT on the Humanities*, THE NEW YORK TIMES (Mar. 7, 2026), https://www.nytimes.com/2026/03/07/arts/humanities-endowment-doge-trump.html.

The Honorable Colleen McMahon
Page 2

involving the Court in this matter, we attempted to resolve this issue by conferring with the ACLS Plaintiffs but have not been able to reach a satisfactory resolution.

A protective order is warranted to prevent the ACLS Plaintiffs from abusing the discovery process and to protect the privacy interests of third parties. The Federal Rules of Civil Procedure "do not allow using discovery for improper purposes, such as to embarrass or harass," *Keuther v. Posley*, 2025 WL 484533, at *6 (E.D. Wisc. Feb. 13, 2025), and courts may issue protective orders permitting the withholding of information from the public for good cause. Fed. R. Civ. P. 26(c)(1)(C). Indeed, a number of courts have issued protective orders requiring parties to remove video depositions from the internet or to refrain from using discovery materials for purposes outside the litigation. *See, e.g.*, *Paisley Park Enterprises, Inc. v. Uptown Productions*, 54 F. Supp. 2d 347, 348–49 (S.D.N.Y. 1999) (imposing protective order on non-litigation use of videotaped deposition to protect plaintiff from potential embarrassment given defendant's history of disseminating litigation documents on its website); *ReachLocal, Inc. v. PPC Claim Ltd.*, No. 16 Civ. 1007 (R), 2018 WL 6265097, at *1 (C.D. Cal. May 29, 2018) (holding defendants in contempt for violating a protective order directing them to take down a video deposition posted on YouTube); *Springs v. Ally Financial, Inc.*, No. 10 Civ. 311 (MOC) (DCK), 2015 WL 1022088, at *2-3 (W.D.N.C. Mar. 9, 2015) (granting defendants' motions for sanctions where plaintiff failed to abide by court's orders to remove deposition videos from YouTube); *Caine v. City of Chicago*, No. 11 Civ. 8996, 2012 WL 13059125, at *2 (N.D. Ill. June 28, 2012) (finding that good cause existed to "justify granting a protective order to prohibit the dissemination of the videotaped depositions of the Defendants," noting that dissemination of the video would invade privacy rights and potentially prejudice a jury pool); *Felling v. Knight*, No. 01 Civ. 0571, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001) (granting motion for protective order to keep deposition videos under seal); *Keuther*, 2025 WL 484533, at *8 (finding good cause existed for prohibiting dissemination of deposition videos because "[p]osting [deposition] videos on the internet . . . offends the defendants' privacy interests and risks prejudicing potential jurors."); *see also Mirlis v. Greer*, 952 F.3d 51, 66 (2d Cir. 2020) (reversing district court's denial of protective order to prevent publication of deposition videos). The Second Circuit has observed that "an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power," and unlimited public access "to every item turned up in the course of litigation would be unthinkable." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (*Amodeo II*). "Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information." *Id.* at 1048-49.

Good cause exists for entry of the protective order because, as discussed below, disseminating the videos of depositions, or other personal information that has no legitimate bearing on the issues at stake in this matter, poses a risk of embarrassment or harassment of the Government witnesses and their family members. Because Plaintiffs have already filed the portions of the deposition *transcripts* on which they seek to rely on the public docket, there is no legitimate, litigation-based rationale to publicize the videos of the depositions, especially since much of the information covered in the depositions is irrelevant to the issues Plaintiffs have asked the Court to adjudicate, and dissemination of the videos invades the privacy interests of third parties.

**Legal Principles**

If the ACLS Plaintiffs argue that the videos of depositions or other irrelevant discovery materials must be made available to the public due to the common law right of access to court documents, they are wrong. The "Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007). First, the court must determine whether the documents at issue are "judicial documents." *Id.* (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)) (quotation marks omitted). A document must be "relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Stern*, 529 F. Supp. 2d at 420 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (*Amodeo I*)) (internal quotation marks omitted). "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on different footing than a motion filed by a party seeking action by the court." *Stern*, 529 F. Supp. 2d at 421 (citation, quotation marks, and alterations omitted); *see also Seattle Times Co. v Rhinehart*, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial.").

Second, if the document is a judicial document, the court must determine the "weight of the presumption" of public access. *Stern*, 529 F. Supp. 2d at 420. "The presumption of access" is "strongest when the documents play a substantial role in determining litigants' substantial rights." *Zhang Jingrong v. Chinese Anti-Cult World All.*, No. 15 Civ. 1046 (SLT) (VMS), 2016 WL 11671639, at *2 (E.D.N.Y. June 2, 2016) (citations omitted); *accord Mirlis*, 952 F.3d at 60. The "weight to be given to the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049; *see also Mirlis*, 952 F.3d at 60-61.

Third, the Court must weigh countervailing interests against the presumption. *Stern*, 529 F. Supp. 2d at 420. Countervailing factors include "the danger of impairing law enforcement or judicial efficiency," *Amodeo II*, 71 F.3d at 1050, "public[] safety," *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017), and the privacy interests of those resisting disclosure, *Stern*, 529 F. Supp. 2d at 420; *see also Amodeo II*, 71 F.3d at 1050-51. The Second Circuit has held that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Amadeo II*, 71 F.2d at 1050-5. It has also instructed that "weighing 'the nature and degree of injury'" posed by the dissemination "requires 'consideration not only of the sensitivity of the information and the subject *but also of how the person seeking access intends to use the information.*'" *Id.* (quoting *Amadeo II*, 71 F.2d at 1051) (emphasis in *Mirlis*).

To the extent the ACLS Plaintiffs contend that the First Amendment gives them the right to disseminate discovery materials of public interest, that also is not the case. *See, e.g., Mirlis*, 952 F.3d at 58 n.5. The "U.S. Constitution has not generally been held to compel public access to deposition transcripts and recordings, at least not as a matter of course." *Id.*; *see also Seattle Times*, 467 U.S. at 32 (although the rules of discovery permit litigants to access information that otherwise would not be available to them, there is "no First Amendment right of access to information made available only for purposes of trying [a] suit"); *Venus Springs v. Ally Financial, Inc.*, No. 10 Civ.

311 (MOC) (DCK), 2015 WL 1893825, at *4 (W.D.N.C. Apr. 27, 2015) (protective order requiring party to remove video depositions from YouTube and refrain from posting them "is not intended to stifle Plaintiff's speech; it is intended to prevent abuses of the discovery process as contemplated by Federal Rule of Civil Procedure 26(c)").

**Analysis**

The Court should restrict the ACLS Plaintiffs from disseminating the video depositions on the internet. The publicized video depositions contain large portions of information that Plaintiffs do not purport to rely on in their summary judgment motions—information that is completely irrelevant to their arguments. And because the portions of the deposition transcripts on which Plaintiffs *do* rely in their summary judgment brief have been filed on the public docket, any public interest in the videos is minimal. Indeed, the Second Circuit has explained that the availability of a transcript of a deposition "tends to . . . cut *against* the public interest in the release of the content in a different form (*i.e.*, video), since the primary public interest—general availability of the relevant information—has already been served." *Mirlis*, 952 F.3d at 63 (emphasis in original); *see also Apple iPod iTunes Antitrust Litigation*, 75 F. Supp. 3d 1271, 1275 (N.D. Cal. 2014) (explaining that "the official . . . transcript" of testimony "is the judicial record of such testimony" and that the video of the deposition is "not a judicial record").

Even if the ACLS Plaintiffs claim that they have provided the videos to the Court as exhibits to their summary judgment motion, that alone does not establish a right of public access to them. The relevant inquiry for determining the weight of public access is the "role of the material at issue in the exercise of Article III judicial power." *Amodeo II*, 71 F.3d at 1049. Here, the Court need not watch the entire video depositions to adjudicate Plaintiffs' motion, because, as noted above, Plaintiffs have provided the relevant portions of the transcripts to the Court. *See United States v. McDougal*, 103 F.3d 651, 656 (8th Cir. 1996) ("[A]s a matter of law . . . the [deposition] videotape itself is not a judicial record to which the common law right of public access attaches [and e]ven if the defendants had moved for the admission of the videotape into evidence, the videotape itself would not necessarily have become a judicial record subject to public review.").

Moreover, assuming there could be minimal public interest in the videos, any such minimal interest must be weighed against the fact that publishing the videos on the internet invades the privacy of third-party Government witnesses. Courts, including the Second Circuit, have recognized that the publication of video depositions can constitute an invasion of a deponent's privacy. *See Mirlis*, 952 F.3d at 66 ("[T]he substantive information conveyed . . . in the video . . . has been made public and has been written about in the local press, to all appearances largely satisfying the legitimate public interest in the trial. What remains private is solely the video recorded images of [the deponent] saying these words—the publication of which, especially on the Internet, would impose a significant burden on the [deponent]."); *Caine*, 2012 WL 13059125, at *2 ("The privacy interests of the Defendants and the potential embarrassment of seeing their video repeatedly throughout the course of this litigation are persuasive in the Court's good cause determination."); *see also id.* (explaining that privacy concerns are "amplified" where a video recording involves not the acts at issue in the litigation, but "testimony regarding those acts").

Federal Rule of Procedure 30(b)(2) "was amended to permit videotaped depositions as a matter of routine in recognition of the fact that videotapes are a means of presenting deposition testimony to juries that is superior to readings form cold, printed records" and "was not intended to be a vehicle for generating content for broadcast and other media." *Paisley Park*, 54 F. Supp. 2d at 348-49. As one court has pointed out, "if releases of video depositions routinely occurred, witnesses might be reticent to submit voluntarily to video depositions in the future, knowing they might one day be publicly broadcast." *Apple*, 75 F. Supp. 3d at 1276. Moreover, courts have "widely recognized the increased capacity for abuse of videotapes, a concern only magnified by recent advancements in digital editing software" and artificial intelligence. *Fox v. Makin*, 2024 WL 5046224, at *6 (D. Maine Dec. 9, 2024) (collecting cases); *Caine*, 2012 WL 13059125, at *2 (recognizing that "videotapes are subject to a higher degree of potential abuse than transcripts due to their ease of distribution in the popular media" and noting that videotape deposition testimony "may reach many viewers—especially in isolated clips—and taint the jury pool by predisposing potential jurors to certain views about the Defendants.").

Here, the deponents are not public figures, and neither are their family members. The dissemination of their video depositions, during which their likenesses appear on screen answering personal questions that do not have relevance to the litigation, constitutes an unwarranted invasion of their privacy—and the privacy of their family members. For example, Plaintiffs asked a deponent questions about his wife's employer. The questions created a false impression of a conflict of interest and, as a result, appeared to impugn the integrity of the employee and his spouse. Plaintiffs have not relied on information relating to the deponent's wife's employment in their summary judgment filing; yet, the ACLS Plaintiffs have disseminated the information to the public by sharing the testimony with the New York Times and posting the video from the depositions on YouTube. This has resulted in subsequent misleading media reports pertaining to the employee and his spouse. As another example, Plaintiffs asked a deponent about circumstances from a quarter century ago under which he left a law firm he started, which have no bearing on the grant terminations at issue in this case. The deponent answered candidly, sharing private information about his interactions with prior colleagues. The Government is not aware of any need for the ACLS Plaintiffs to disseminate such information at the clear risk of embarrassing or harming the reputations of Government employees and their families and others.

The motivation of the party seeking to disseminate the information is relevant to the Court's inquiry, and, here, it is difficult to see what the ACLS Plaintiffs seek to gain in this litigation by disseminating the video depositions. *See, e.g.*, *Mirlis*, 952 F.3d at 61 (quotation marks omitted) ("Our reasoning . . . aligns closely with the Supreme Court's observation . . . that courts may on occasion deny public access to judicial documents to ensure that judicial records do not 'become a vehicle for improper purposes.'") (quoting *Nixon*, 435 U.S. at 598)); *Baker v. Buffenbarger*, No. 3-C-5443, 2004 WL 2124787, at *2 (N.D. Ill. Sept. 22, 2004) ("[B]ecause the evidence indicated that the defendants intended to use the plaintiff's deposition for a purpose unrelated to settlement or trial preparation, but instead to embarrass the plaintiff, the plaintiff's request for a protective order . . . fell squarely within Rule 26(c)."). Indeed, the public dissemination of these materials is unlikely to serve any true litigation purpose. Moreover, Plaintiff Modern Language Association's website contains a webpage dedicated to this litigation with links to Plaintiff's motion papers and various discovery materials—including the video depositions. Directly below these materials is a link soliciting monetary donations to the MLA's

The Honorable Colleen McMahon
Page 6

advocacy initiative "Paving the Way." To the extent the MLA or other ACLS Plaintiffs are publicizing these documents as part of their fundraising efforts, that is improper. *See Paisley Park*, 54 F. Supp. 2d at 348 (imposing protective order restricting defendants' non-litigation use of video deposition when defendants had promoted the litigation on their website and were likely to use that material for financial gain).

Throughout discovery, the ACLS Plaintiffs challenged even the most routine designations of confidential information, and, in doing so, repeatedly failed to disclose any intentions to publicize discovery materials. Had the ACLS Plaintiffs been forthcoming with the Government about their intentions, the Government would have sought to reach an agreement with Plaintiffs or an order from the Court to prevent the publication of the videos before agreeing to the videotaping of the depositions. After the depositions, the ACLS Plaintiffs asked the Government to remove the confidentiality designation of the birthdate of one of the deponents, apparently in preparation for posting the video of his deposition online. Again, had the ACLS Plaintiffs disclosed their intended use of the videos, the Government would have had an opportunity to raise this issue with the Court before the videos were publicly disseminated. Instead, the ACLS Plaintiffs claimed they sought the removal of the confidentiality designation because they intended to submit the transcripts and videos of the depositions to the Court and, for the purpose of that intended court filing, wanted to avoid the burden of removing the portion of the transcript and video that contained the birthdate. Similarly, the Government endeavored to apply only sparing confidentiality designations to the documents produced in discovery, and, after producing multiple personal text messages from current and former Government employees, designated only a three-sentence portion of a single text message as confidential. The ACLS Plaintiffs challenged that confidentiality designation, which required the Government to apply to the Court to maintain it. Before applying to the Court, the Government repeatedly asked the ACLS Plaintiffs to drop their challenge. The ACLS Plaintiffs refused, claiming that they needed to rely on the designated information in support of their summary judgment motion. Now that Plaintiffs have filed that motion, it is clear that they did not rely on the designated information in their motion. The information previously designated confidential, however, featured prominently in the *New York Times* article published on Saturday and cited on page 1 of this letter.

Based on all of the foregoing, we respectfully request that the Court enter an order directing the ACLS Plaintiffs to remove the videos of the depositions from the internet and to refrain from disseminating the videos or any other discovery materials that are not on the public docket. The Government recognizes the public interest in this matter and the Court's inclination to limit what may be treated as confidential, but the ACLS Plaintiffs' actions suggest that they may have been using the discovery process in this case with the improper motivation of exposing Government employees to harassment and reputational harm rather than to advance their claims. That conduct should not be countenanced by the Court.

We thank the Court for its consideration of this submission.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the

                                                          Southern District of New York

By:  s/ *Mary Ellen Brennan*
      MARY ELLEN BRENNAN
      RACHAEL DOUD
      JONAKI SINGH
      Assistant United States Attorneys
      86 Chambers St., 3rd Floor
      New York, New York 10007
      (212) 637-2699
      (212) 637-2652

cc:      All counsel of record (via ECF)