## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMERICAN COUNCIL OF LEARNED SOCIETIES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ADAM WOLFSON, in his official capacity as Acting Chairman of the National Endowment for the Humanities, *et al.*, <br><br> *Defendants*. | Case No. 25-cv-3657 |

|  |  |
|---|---|
| THE AUTHORS GUILD *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL ENDOWMENT FOR THE HUMANITIES, *et al.*, <br><br> *Defendants*. | Case No. 25-cv-3923 |

## ACLS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

    A.   The Parties Agreed Upon and the Court Entered the Protective Order ............................. 3

    B.   Defendants Did Not Designate the Relevant Testimony as Confidential Information ....... 4

    C.   ACLS Plaintiffs Move for Summary Judgment and Disclose the Non-Confidential
        Depositions, and Defendants Demand Removal without Alleging Legal Violations ......... 6

ARGUMENT ....................................................................................................................... 9

    I.   ACLS Plaintiffs Did Not Violate the Protective Order or Any Other Legal Restriction,
       and Did Not Obtain Discovery for Improper Reasons ......................................................... 9

    II.  Defendants Cannot Meet Their Burden To Justify Modifying the Protective Order ........ 11

        A.   Defendants Cannot Justify a Protective Order Even if the Depositions Were Not
           Judicial Documents ...................................................................................................... 12

        B.   The Video Depositions Are Judicial Documents for which There Are First
           Amendment and Common Law Rights of Access ....................................................... 14

    III.  The Court Should Award ACLS Plaintiffs Fees and Expenses ......................................... 17

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Am. News & Info. Servs., Inc. v. Rovella*,
    No. 3:15CV1209 (RNC), 2017 WL 3736700 (D. Conn. Aug. 30, 2017)................................. 13

*Application of CBS, Inc.*,
    828 F.2d 958 (2d Cir. 1987) ......................................................................................... 9

*Burgess v. Town of Wallingford*,
    No. 3:11-CV-1129 CSH, 2012 WL 4344194, (D. Conn. Sept. 21, 2012) ............................... 11

*Condit v. Dunne*,
    225 F.R.D. 113 (S.D.N.Y. 2004)..................................................................................... 13

*Flaherty v. Serousii*,
    209 F.R.D. 295 (N.D.N.Y. 2021)..................................................................................... 13

*Giuffre v. Maxwell*,
    146 F.4th 165 (2d Cir. 2025) ........................................................................................ 16

*Jepson, Inc. v. Makita Electric Works, Ltd.*,
    30 F.3d 854 (7th Cir. 1994) .......................................................................................... 9

*Joy v. North*,
    692 F.2d 880 (2d Cir. 1982) ......................................................................................... 16

*Koster v. Chase Manhattan Bank*,
    93 F.R.D. 471 (S.D.N.Y. 1982) ................................................................................. 9, 17

*Laugier v. City of New York*,
    No. 13-CV-6171 JMF, 2014 WL 6655283 (S.D.N.Y. Nov. 24, 2014) .................................... 13

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006).................................................................................. 2, 15, 16

*Lust v. City of Albany, New York*,
    No. 105CV613GLSRFT, 2007 WL 9771142 (N.D.N.Y. Feb. 13, 2007) ................................. 13

*Mirlis v. Greer*,
    952 F.3d 51 (2d Cir. 2020) ........................................................................................... 14

*Padberg v. McGrath-McKechnie*,
    No. CV-00-3355 RJD SMG, 2005 WL 5190385, (E.D.N.Y. Apr. 27, 2005) .......................... 13

*Pegoraro v. Marrero*,
    No. 10 CIV. 00051 AJN KN, 2012 WL 5964395 (S.D.N.Y. Nov. 28, 2012) .................... 17, 18

*Sanderson v. Leg Apparel LLC*,
    No. 1:19-CV-8423-GHW, 2024 WL 498094 (S.D.N.Y. Feb. 8, 2024) ....................................... 9

*Schiller v. City of New York*,
    No. 04 CIV. 7921 KMK JCF, 2007 WL 136149 (S.D.N.Y. Jan. 19, 2007)............................... 9

*SEC v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001) ................................................................................................. 12

*Skanga Energy & Marine Ltd. v. Arevenca S.A.*,
    No. 11 CIV. 4296 DLC DF, 2014 WL 2624762, at *2 (S.D.N.Y. May 19, 2014).................... 18

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ................................................................................................. 16

*Vazquez v. City of New York*,
    No. 10 CIV. 6277 (JMF), 2014 WL 11510954 (S.D.N.Y. May 2, 2014) ................................ 13

**Rules**

Fed. R. Civ. P. Rule 26 ................................................................................................. 1, 9, 12, 17

Fed. R. Civ. P. Rule 37 ........................................................................................................ 17, 18

Federal Rule of Evidence 408.................................................................................................... 7

**Secondary Authorities**

8B Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and
    Procedure § 2288 (3d ed.2010) ........................................................................................... 18

# INTRODUCTION

Defendants' allegations of impropriety fall apart with a single fact that Defendants did not disclose in their motion: Defendants never designated the relevant portions of the video depositions as Confidential Information under the protective order in this case. It is black-letter law that a party may disseminate materials obtained in discovery absent a protective order. That is the whole reason Rule 26(c) exists; if a party does not want the other side to be able to disclose discovery materials, it must move for a protective order and show good cause for why public dissemination of the materials should be prohibited. Defendants did not do that here.

Defendants' accusations of misconduct also gloss over the fact that ACLS Plaintiffs told Defendants weeks in advance that ACLS Plaintiffs were considering filing the entire, non-confidential portions of the video depositions as unsealed exhibits to ACLS Plaintiffs' summary judgment motion. ACLS Plaintiffs thus explicitly informed Defendants that they might make the video depositions publicly available judicial records, and Defendants did not seek a protective order even then. Defendants instead waited until after the videos were filed as unsealed exhibits and after ACLS Plaintiffs engaged in protected speech in disseminating these materials concerning government conduct on matters of substantial public concern.

Defendants' belated request for a protective order for the depositions should be denied for these reasons alone, and it would be unwarranted regardless. The deposition videos show the testimony of senior government officials regarding their official, allegedly unconstitutional acts in office. Senior government officials do not have cognizable privacy interests in their own testimony regarding their own official acts, and even if they did, those privacy interests would be outweighed by the substantial public interest in the testimony. Numerous district courts in the

Second Circuit have denied protective orders over video depositions involving such testimony from government officials, and Defendants do not cite a single case holding otherwise.

The request for a protective order independently must be denied because the relevant videos are judicial documents subject to the First Amendment and common law right of access. The Second Circuit has expressly held that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). Defendants cannot come close to meeting their burden to show the public should not have a right of access to such judicial documents in the context of this case, and there is no reason why ACLS Plaintiffs should be prohibited from disseminating the videos when any other member of the public could do so.

In nevertheless seeking to prohibit ACLS Plaintiffs from engaging in core First Amendment speech, Defendants lodge evidence-free accusations regarding ACLS Plaintiffs' supposedly malign motivations. ACLS Plaintiffs did not and do not seek to publish the videos to harass the deponents or harm their reputations. Rather, consistent with the core missions of these organizations—the American Historical Association, the American Council of Learned Societies, and the Modern Language Association—once ACLS Plaintiffs realized the discovery they had obtained revealed government conduct of enormous public interest, ACLS Plaintiffs sought to create a historical record for the public's benefit.[1]

---

[1] As noted in Defendants' motion, ECF No. 259 at 1 n.1, the Authors Guild Plaintiffs have stated that they did not disseminate discovery materials aside from the litigation-related docket filings, and so the government's motion and this opposition do not implicate the Authors Guild Plaintiffs.

## BACKGROUND

### A.    The Parties Agreed Upon and the Court Entered the Protective Order

The rules governing the use and disclosure of discovery in this action are governed by the parties' mutually agreed upon Stipulation and Protective Order, which this Court entered on January 15, 2026, ECF No. 186 ("Protective Order").

The Protective Order defines "Confidential Information" as "information of which public disclosure is restricted by law;" or "any personal or intimate information in which any individual possesses a reasonable expectation of privacy, including, but not limited to, personal financial, tax, employment, personnel, medical, or other private or personally identifiable information." Protective Order ¶ 5. The Protective Order also stipulates: "The protections conferred by this Protective Order do not cover information . . . [t]hat becomes part of the public domain after its disclosure in discovery as a result of a publication not involving a violation of this Order (including becoming part of the public record in this action through trial or otherwise)." *Id.* ¶ 6b.

Paragraph 8 of the Protective Order governs the designation of deposition testimony as Confidential Information. That Paragraph provides:

> With respect to depositions, designation of "Confidential Information" shall be made either by (a) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will bind the transcript of the designated testimony (consisting of question and answer) in a separate volume and mark it as "Confidential Information Subject to Protective Order"; or (b) notifying the reporter and all counsel of record, in writing, within 21 days after a deposition has concluded, of the specific pages and lines of the transcript and/or the specific exhibits that are to be designated Confidential Information, in which case all counsel receiving the transcript will be responsible for marking the copies of the designated transcript or exhibit in their possession or under their control. During the 21-day period following the conclusion of a deposition, the entire deposition transcript will be treated as if it had been designated Confidential Information. Those portions of a deposition transcript that are designated as Confidential Information shall be stamped "Subject to Protective Order."

*Id.* ¶ 8.

**B.      Defendants Did Not Designate the Relevant Testimony as Confidential Information**

From January 23 to January 30, 2026, Plaintiffs in the two consolidated cases deposed

four witnesses, all of whom are current or former senior federal government employees:

1.  Nate Cavanaugh: Cavanaugh was a "political appointee at GSA as a Schedule C

     employee," who was a member of the DOGE team and earned a salary of $120,000.

     ECF No. 248-2 at 26:18–19, 48:24–25. Cavanaugh was "the leader of the small

     agencies team" at DOGE, *id.* at 202:24, in which role he went to purportedly

     "useless" small agencies and mass terminated their career employees and grants. *Id.*

     at 61:2–64:15. In this role, Cavanaugh was also appointed the actual, acting head of

     the U.S. Institute of Peace and the Interagency Council on Homelessness.[2]

2.  Justin Fox: Like Cavanaugh, Fox was a political appointee at GSA. He served as a

     member of the DOGE small agencies team with Cavanaugh, ECF No. 248-1 at 68:7–

     10, and was also a "senior advisor to Stephen Ehikan who was the head of GSA."

     ECF No. 248-1 at 23–24. Fox earned a government salary of $150,000 per year. *Id.* at

     62:16–63:8. Fox worked with Cavanaugh to mass terminate career employees and

     grants at various small agencies, ECF No. 248-1 at 74:12–75:6, 88:6–13 , and was the

     point person for terminating grants at NEH. *See* ECF No. 247 (MSJ) at  4.

3.  Michael McDonald: McDonald was the Acting Chairperson of NEH at all relevant

     times to this case, with Defendants asserting (against all evidence) that McDonald

     was the decisionmaker for the grant terminations. The President has now nominated

---

[2] *See* Gary Fields, A DOGE Employee is Put in Charge of the US Institute of Peace, a Court
Filing Says, AP (March 31, 2025), https://apnews.com/article/doge-institute-peace-trump-musk-
executive-order-be36e51ae6a59d08342920bf81f61698; Shannon Bond & Stephen Fowler,
*DOGE Has Tried to Embed Beyond the Executive Branch. Some Targets Have Pushed Back*,
NPR (May 20, 2025), https://www.npr.org/2025/05/17/nx-s1-5401392/doge-federal-agency-
nonprofits-cpb-usip-vera-institute.

McDonald to be the full-time, political Chairperson of NEH, a Senate-confirmed position. *See* PN792 — Michael McDonald — National Endowment for the Humanities, https://www.congress.gov/nomination/119th-congress/792.

4. <u>Adam Wolfson</u>: Wolfson now serves as the Acting Chairperson at NEH and thus has been substituted for McDonald as the lead defendant in this action. At the time of the events in question in this case, Wolfson was McDonald's second-in-command at NEH and worked hand-in-hand with McDonald in all of their interactions with Cavanaugh and Fox regarding the grant terminations. *See* MSJ at 6–7, 12–13, 28–32

Consistent with the Protective Order, "during the 21-day period following the conclusion of [each] deposition," the parties treated "the entire deposition transcript . . . as if it had been designated Confidential Information." Protective Order ¶ 8. Neither ACLS Plaintiffs nor anyone else released any portions of the depositions during this 21-day period.

As further provided in the Protective Order, before the expiration of the 21-day period, Defendants notified the court reporter and all counsel of record "of the specific pages and lines and/or the specific exhibits that are to be designated Confidential Information," if any. *Id.* Defendants did not designate any portions of Mr. Wolfson's deposition as Confidential Information. For the other three deponents, Defendants designated only a small number of lines of each deposition as Confidential Information. *See* Ex. 1 at 4; Ex. 2 at 2.

ACLS Plaintiffs did not dispute any of the designations for Cavanaugh and Fox. For McDonald, on February 22, Defendants designated only his birthdate as confidential, and ACLS Plaintiffs asked if that designation could be lifted, explaining that if his birthdate were designated confidential, then "if [ACLS Plaintiffs] want to submit the video of his deposition to the court as an exhibit, " ACLS Plaintiffs would "either have to submit the entire video under seal and then

move to unseal it, or clip out that piece and submit a slightly cropped version of the video, which is burdensome." Ex. 1 at 2. Defendants did not ask, formally or informally, that ACLS Plaintiffs not submit the "slightly cropped version" of the deposition as an unsealed exhibit to the summary judgment motion. *Id.* Nor did they move for a protective order to limit the public submission or dissemination of that version of the video that ACLS Plaintiffs indicated may be submitted as an unsealed exhibit.

**C.      ACLS Plaintiffs Move for Summary Judgment and Disclose the Non-Confidential Depositions, and Defendants Demand Removal without Alleging Legal Violations**

ACLS Plaintiffs filed their motion for summary judgment two weeks after informing Defendants of their intent to submit the video depositions as exhibits, and ACLS Plaintiffs did include the non-confidential portions of the videos as unsealed exhibits. *See* ECF No. 248 ¶¶ 41–44. ACLS Plaintiffs also made all of the non-confidential portions of the video depositions public on ACLS Plaintiffs' YouTube pages and websites. The videos made public did not include any portions of the depositions that Defendants had designated as Confidential Information.

On March 8, Defendants demanded that ACLS Plaintiffs take down the videos, but did not contend that ACLS Plaintiffs had violated the Protective Order. *See* Ex. 3 at 3. Defendants demanded: "Please remove the deposition videos from YouTube immediately, and please refrain from any further disclosure of non-public information while we seek a protective order." *Id.* Defendants did not cite any legal authority for their demand. *See id.* The three-paragraph email was devoid of any citation to any court order, statute, rule, or other legal prohibition that had been violated. *See id.* Defendants nevertheless accused ACLS Plaintiffs of using "this litigation to subject career federal employees to harassment."

In response, ACLS Plaintiffs asked the government for legal authorities that the government could demand that ACLS Plaintiffs not disseminate materials not subject to the Protective Order or other legal prohibition. *See* Ex. 3 at 2–3. Defendants responded and did not refute that the video depositions were not subject to the Protective Order, but reiterated their demand that ACLS Plaintiffs remove the videos. Although ACLS Plaintiffs were under no obligation to do so, in an effort to avoid unnecessary motion practice, ACLS Plaintiffs offered Defendants an accommodation that sought to address their stated concerns regarding career federal employees.[3]

Defendants instead filed the instant motion the next day. The motion requested an immediate phone conference and a protective order: "(1) requiring the ACLS Plaintiffs to remove the video depositions from the internet, and (2) restricting Plaintiffs' attorneys and Plaintiffs themselves from further publicizing the video depositions or disseminating discovery materials . . . , absent prior permission from the Court." ECF No. 259 at 1.

Defendants' motion did not disclose that they had not designated any of the testimony made public as Confidential Information pursuant to the Protective Order. Nor did the motion disclose that Defendants had designated other small portions of the depositions as Confidential Information pursuant to Paragraph 8 of the Protective Order, and that ACLS Plaintiffs had abided by those designations. Defendants also chose to make the circumstances of a career employee and his family member the centerpiece of the alleged harms to privacy interests, despite knowing ACLS Plaintiffs had offered to fully address those concerns. *See* ECF No. 259 at 5.

---

[3] ACLS Plaintiffs labeled the communication with this offer as a Federal Rule of Evidence 408 communication. Although ACLS Plaintiffs do not believe that Rule 408 would prohibit them from disclosing the content of the offer or Defendants' response in the context of this filing, ACLS Plaintiffs are refraining from doing so in an abundance of caution.

On March 13, Defendants submitted a letter stating that they had learned that Justin Fox was subject to harassment and death threats since the deposition video became public. *See* ECF No. 261. The letter implied that this was ACLS Plaintiffs' intent, stating: "The ACLS Plaintiffs' actions suggest . . . that they may have been using the discovery process with the improper motivation of exposing Government employees to harassment and reputational harm." *Id.* at 2.

This Court issued an Interim Order later on March 13. The Court asserted that "[t]he Government has effectively alleged that dissemination of the deposition videos violates the protective order presently in place," and that "[t]he Court has not yet been informed whether the procedures set out in Paragraph 8 were invoked with respect to the deposition testimony or recordings at issue here." ECF No. 262 at 1–2. On this basis, and "solely to preserve the status quo pending the Court's consideration of the parties' arguments," the Court ordered ACLS Plaintiffs to take any and all possible steps to claw back the videos of the depositions and take no further steps to disseminate any discovery materials in this case.

Immediately after the Court issued the Interim Order, ACLS Plaintiffs contacted Defendants asking them to clarify to the Court that the government did not designate any of the relevant deposition testimony as Confidential Information under the Protective Order, since the Interim Order was based on the lack of clarity as to that fact. Ex. 4. Defendants later responded that "we did not claim to the Court that you violated the protective order currently in place," and "[w]e intend to write to the Court to clarify that fact." Ex. 5. As of this filing, Defendants have not done so.

ACLS Plaintiffs filed an emergency motion for reconsideration, but the Court denied that motion and indicated it would address the issue at the hearing tomorrow.

## ARGUMENT

### I.    ACLS Plaintiffs Did Not Violate the Protective Order or Any Other Legal Restriction, and Did Not Obtain Discovery for Improper Reasons

As described above, and as Defendants have now confirmed in their correspondence with ACLS Plaintiffs (see Ex. 5), it is undisputed that ACLS Plaintiffs did not violate the Protective Order governing this case. Defendants did not designate any of the deposition testimony that ACLS Plaintiffs made public as Confidential Information pursuant to Paragraph 8 of the Protective Order, and ACLS Plaintiffs at all times abided by the small number of confidentiality designations that Defendants did make pursuant to Paragraph 8.

Defendants also have not alleged that ACLS Plaintiffs violated any other legal prohibition in posting the videos, nor could they. It is well-settled that, "[i]n the absence of [] a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit." *Schiller v. City of New York*, No. 04 CIV. 7921 KMK JCF, 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007) (quoting *Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)) (citing additional cases). "Absent a protective order, the discovery rules place no [specific] limitations on what a party may do with materials obtained during discovery." *Sanderson v. Leg Apparel LLC*, No. 1:19-CV-8423-GHW, 2024 WL 498094, at *3 (S.D.N.Y. Feb. 8, 2024) (quotations omitted); *accord Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 476 (S.D.N.Y. 1982). This principle applies to videotaped depositions; the Second Circuit has noted "the conceded permissibility of videotaping a deposition and the lack of a rule prohibiting the copying of such evidence for possible broadcast." *Application of CBS, Inc.*, 828 F.2d 958, 959 (2d Cir. 1987). Were it otherwise and parties could not disseminate discovery even without a protective order, Rule 26(c) would serve no purpose. Parties must seek a Rule 26(c) protective order, and show good cause for it, where they seek to prevent the disclosure of discovery.

Rather than allege that ACLS Plaintiffs violated the Protective Order or any other legal prohibition, Defendants make the baseless suggestion that ACLS Plaintiffs sought discovery for malicious reasons; they suggest that ACLS Plaintiffs sought discovery with "the improper motivation of exposing Government employees to harassment and reputational harm." ECF No. 259 at 6. Such a loaded charge should be supported by facts and evidence, and there is none. This Court found that depositions of all four witnesses were warranted, see ECF No. 169 at 2, and ACLS Plaintiffs relied *extensively* on the deposition testimony in establishing the merits of their claims in the summary judgment motion. *See, e.g.*, MSJ at 4–15, 21–24, 27–32. Defendants do not point to a single question that ACLS Plaintiffs asked during the depositions that was improper or designed to expose the witnesses to harassment.[4] The deposition testimony was obtained for entirely legitimate reasons.

Once the deposition testimony was appropriately obtained, ACLS Plaintiffs did not act with improper motive in making it public. ACLS Plaintiffs realized upon obtaining the testimony that it was of enormous public interest, including in creating a public record and helping the public understand the federal government's unprecedented actions in mass terminating grants on the basis of viewpoint, race, and other protected characteristics. ACLS Plaintiffs—which include the American Historical Association, the American Council of Learned Societies, and the

---

[4]The closest that Defendants come to alleging any of the depositions questions were improper is noting that "Plaintiffs asked a deponent about his wife's employer." ECF No. 259 at 5. But Defendants omit the context showing no impropriety. The deponent was being asked about a $10 million grant—the largest grant in NEH's history—to the Tikvah Center, an organization ideologically aligned with the Administration. *See* Ex. 6 at 268:13–269:12. The grant was for Tikvah's "Jewish Civilization Project," https://www.neh.gov/news/neh-announces-Tikvah-grant, and the deposition revealed that McDonald had Wolfson personally solicit Tikvah to apply for the grant. *See id.* at 269:13–21. That is relevant to ACLS Plaintiffs' viewpoint discrimination claim, given that NEH terminated other awards about Jewish culture expressing different viewpoints. The deponent's wife was mentioned in less than 30 seconds of questions because she was previously affiliated with the organization.

Modern Language Association—are public interest organizations for whom educating the public is at the core of their missions. It can be hardly surprising that, for example, the American Historical Association sought to create a historical record of shocking government conduct.

In this regard, it bears emphasis that ACLS Plaintiffs posted the full deposition videos (except for the portions designated confidential) for the public to watch and make their own judgments. "Defendants have not argued that the transcripts have been edited or misrepresented, i.e., exhibited in a false light, or published in the context of explicit ridicule or censure." *Burgess v. Town of Wallingford*, No. 3:11-CV-1129 CSH, 2012 WL 4344194, at *12 (D. Conn. Sept. 21, 2012) (denying requested protective order to take down depositions already made public). Publicly posting full, unedited videos of senior government officials testifying about their own official acts is not harassment. ACLS Plaintiffs did not and do not intend for anyone to receive threats. The condemnable actions and motivations of any bad actors who did make threats after viewing publicly posted materials cannot be imputed to ACLS Plaintiffs, any more than it could be to a journalist who writes a story on a public official. ACLS Plaintiffs posted the videos solely to serve the public interest, and it is unwarranted for Defendants to suggest otherwise.

## II.    Defendants Cannot Meet Their Burden To Justify Modifying the Protective Order

Defendants implicitly recognize that they cannot designate the video depositions as Confidential Information under the existing Protective Order. Among other reasons, Paragraph 6b provides that "[t]he protections conferred by this Protective Order do not cover information . . . [t]hat becomes part of the public domain after its disclosure in discovery as a result of a publication not involving a violation of this Order." *Id.* ¶ 6b.

Defendants thus are compelled to ask the Court to modify the existing Protective Order to prohibit the disclosure of the videos. Where there is an existing protective order upon which

"there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *SEC v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) (quotations and alteration omitted). Defendants do not come close to meeting this burden here, nor could they show good cause even if there were no existing protective order and the typical Rule 26(c) standard applied.

As explained below, Defendants could not meet their burden to justify a protective order even if the depositions were not judicial records, and they certainly cannot justify a protective order given that the video depositions are in fact judicial documents.

### A.    Defendants Cannot Justify a Protective Order Even if the Depositions Were Not Judicial Documents

Even if the videos were not judicial records, Defendants have not shown good cause for entering a proactive order that shields the testimony of senior government officials regarding their official government acts. That is especially true given that this Court has already found those official acts likely unconstitutional.

Defendants assert that "the deponents are not public figures," ECF No. 259 at 5, but all four witnesses are literally public officials—and very powerful ones at that. Cavanaugh was one of the most senior political appointees at DOGE. He led DOGE's work to dismantle small agencies, including NEH, firing thousands of career government employees and terminating even more grants and contracts upon which the recipients depended. *Supra* at 4. Fox, also a political appointee and a "senior advisor" to the head of GSA, was the point person in choosing the NEH grants to terminate and carrying out the terminations, giving orders to NEH leadership in the process. *See* MSJ 6–9. McDonald was the Acting Chairperson of NEH during the events in question, who Defendants claim bears responsibility for the terminations, and the President has

now nominated him to be the political, Senate-confirmed head of the agency. Wolfson is now the Acting Chairperson of the agency and was also heavily involved in the termination process when he was second-in-command. Public officials such as these do not have cognizable privacy interests in deposition testimony regarding their official public acts, and certainly not interests sufficient to override the tremendous public interest in the testimony here.

Districts courts in this Circuit have overwhelmingly concluded the same and denied government officials' requests for protective orders over videos or transcripts of their depositions. See, e.g., *Laugier v. City of New York*, No. 13-CV-6171 JMF, 2014 WL 6655283, at *2 (S.D.N.Y. Nov. 24, 2014) (denying a protective order to prohibit dissemination of a videotaped deposition of a government official); *Vazquez v. City of New York*, No. 10 CIV. 6277 (JMF), 2014 WL 11510954, at *1 (S.D.N.Y. May 2, 2014) (same); *Flaherty v. Serousii*, 209 F.R.D. 295, 300 (N.D.N.Y. 2021) (same); *Lust v. City of Albany, New York*, No. 105CV613GLSRFT, 2007 WL 9771142 (N.D.N.Y. Feb. 13, 2007) (same); *Am. News & Info. Servs., Inc. v. Rovella*, No. 3:15CV1209 (RNC), 2017 WL 3736700, at *3–4 (D. Conn. Aug. 30, 2017) (same); *Padberg v. McGrath-McKechnie*, No. CV-00-3355 RJD SMG, 2005 WL 5190385, at *2 (E.D.N.Y. Apr. 27, 2005) (same); *see also Condit v. Dunne*, 225 F.R.D. 113, 116–20 (S.D.N.Y. 2004) (denying request for a protective order for a videotaped deposition of non-government official but regarding an official's actions).

As these courts concluded, a deponent's "status as an appointed official, along with the pre-existing public interest in this case, cuts in favor of allowing public access to [deposition] video, not against it." *Laugier*, 2014 WL 6655283, at *2. "There is a . . . strong, legitimate public interest" in access to deposition testimony regarding "the performance of . . . governmental responsibilities." *Flaherty*, 209 F.R.D. at 300. That is the case here with all four depositions.

13

Indeed, the portions of the testimony from Cavanaugh and Fox that went viral exclusively involve testimony regarding their official acts in government.[5]

Tellingly, none of the cases that Defendants cite in their motion involved deposition testimony of government officials. *See* ECF No. 259 at 2–4. Defendants' lead case, *Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020), is patently distinguishable. The deponent there was a former student at a religious school who accused the school's former religious leader of sexually abusing him while he was a student. *Id.* at 54. The Second Circuit held that the video should be restricted from dissemination given "the intense intrusion on Hack's privacy interests that the internet publication of the video excerpts would effect," and that the testimony concerned "conduct that is not of national or statewide importance." *Id.* at 56, 63. The instant case could not be more different on both fronts.

In short, even if the deposition videos were not judicial documents, Defendants have not shown that their testimony regarding official public acts embodies sufficient privacy interests to overcome the enormous public interest in their testimony. The existing Protective Order enables Defendants to keep as confidential any testimony that does truly implicate private information, but that is not the case for any of the testimony that ACLS Plaintiffs made public.

### B.    The Video Depositions Are Judicial Documents for which There Are First Amendment and Common Law Rights of Access

The fact that the deposition videos are judicial documents—for which both the First Amendment and common law right of access applies—further underscores that the videos should not be restricted under a protective order. If any member of the public has a right to access and disseminate the videos, there is no basis for ACLS Plaintiffs to be prohibited from doing so also.

---

[5] The video clips that went viral were prepared by the website 404Media entirely on their own initiative, apparently after viewing the complete videos that ACLS Plaintiffs posted on their YouTube pages.

Indeed, Defendants have waived any argument that the video depositions are not properly available to the public. ACLS Plaintiffs previewed to Defendants nearly a month ago that they may submit the entire, non-confidential portions of the deposition videos as unsealed exhibits to the summary judgment motion. Ex. 1 at 2.[6] Defendants had every opportunity to object and seek either a protective order against such action or the sealing of the exhibits, and they did not. Even today, Defendants have not moved to seal the video exhibits sitting on file with the Court. There is no good reason why ACLS Plaintiffs should be prohibited from engaging in First Amendment speech disseminating the videos, when any other member of the public could do so.

In any event, even if Defendants had sought to seal the videos in conjunction with a protective order, they could not meet their burden to justify such sealing. As this Court previously explained, to assess the propriety of sealing, this Court must assess: (1) whether the materials are judicial documents; (2) the weight of the presumption of public access that attaches; and (3) whether countervailing interests overcome the presumption. ECF No. 120 at 4. "Where the First Amendment right of access applies, sealing is permissible only upon specific, on-the-record findings demonstrating that it is necessary to preserve 'higher values' and is narrowly tailored to serve that interest." *Id.*

With respect to whether the videos are judicial documents, Second Circuit precedent dictates that they are. In *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), the Second Circuit held that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of

---

[6] That ACLS Plaintiffs notified Defendants of this intention refutes Defendants' suggestion that ACLS Plaintiffs somehow deceived Defendants regarding the potential that the videos could become public. *See* ECF No. 259 at 6. If ACLS Plaintiffs sought to hide the fact that they might make the videos public, they would not have candidly told Defendants weeks in advance that they may submit the full, non-confidential portions of the video as unsealed exhibits.

access attaches, under both the common law and the First Amendment." *Id.* at 121. Here, ACLS Plaintiffs submitted the relevant videos as exhibits to their summary judgment motion, and for good reason. The videos contain and convey probative information that the written transcripts cannot, including but not limited to Fox's long pauses in his unsuccessful efforts to avoid admitting that he terminated grants based on race and other protected characteristics, Cavanaugh's demeanor in smiling at the mention of certain "DEI" grants (as relevant to animus), McDonald's and Wolfson's surprised expressions upon learning that Fox used ChatGPT to identify grants for termination, their appalment at some of the bases upon which ChatGPT labeled grants as DEI. The video depositions are judicial documents "as a matter of law." *Lugosch*, 435 F.3d at 121.

Defendants' motion entirely fails to address *Lugosch* and its controlling holding. They rely on *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*"), to argue that the videos are not judicial documents because, in their view, "the Court need not watch the entire video depositions to adjudicate Plaintiffs' motion." ECF No. 259 at 4. But *Lugosch* rejected the relevant portion of *Amodeo II* as erroneous *dicta*. *See Lugosch*, 435 F.3d at 121–22. The Second Circuit held that "the extent to which [a document submitted in support of summary judgment] [is] relied upon in resolving the motion" does not affect the public right of access analysis. *Id.* at 123. The Second Circuit strongly reaffirmed that holding just last year. *Giuffre v. Maxwell*, 146 F.4th 165, 176–80 (2d Cir. 2025).

On the second factor, the weight of the presumption of access, *Lugosch* holds that "the presumption is of the highest" for materials submitted with a summary judgment motion. *Id.* Sealing is not warranted for such documents "*absent the most compelling reasons*." *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

On the third factor, Defendants cannot show "the most compelling reasons" for overcoming the strong presumption the videos should be publicly accessible. As previously explained, Defendants cannot show any compelling reasons for shielding from public view testimony from senior government officials regarding their official—and unconstitutional—actions.

On the other side of the ledger, shielding the videos from public view would disserve the public interest, and it would significantly burden ACLS Plaintiffs' First Amendment rights. "[T]he First Amendment rights of litigants . . . are not checked at the door of the courthouse upon the commencement of litigation," and thus "litigants . . . have a First Amendment interest in disseminating information procured through discovery." *Koster*, 93 F.R.D. at 475. And ACLS Plaintiffs' dissemination of the deposition videos of senior government officials lies at "the heart of the First Amendment"—"expos[ing] the corrupt workings of a government agency." *Id.* at 475–76 (quotations omitted). This Court should not prohibit ACLS Plaintiffs from engaging in such speech, especially where they already began that speech when no legal prohibition was in place.

## III.    The Court Should Award ACLS Plaintiffs Fees and Expenses

The Court should award ACLS Plaintiffs their reasonable fees and expenses in opposing Defendants' motion. Rule 26(c)(3) provides that "Rule 37(a)(5) applies to the award of expenses" in connection with a motion for a protective order. Fed. R. Civ. P. 26(c)(3). As relevant here, "Rule 37(a)(5)(B) governs payment of expenses incurred in relation to a motion for a protective order which is denied by a court." *Pegoraro v. Marrero*, No. 10 CIV. 00051 AJN KN, 2012 WL 5964395, at *4 (S.D.N.Y. Nov. 28, 2012). The rule provides:

> If the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant . . . pay the party or deponent who opposed the motion its

reasonable expenses incurred in opposing the motion, including attorney's fees.
But the court must not order this payment if the motion was substantially justified
or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B).

Thus, an award of fees and expenses "is mandatory unless one of the conditions for not making an award is found to exist." *Pegoraro*, 2012 WL 5964395, at *4. And "the burden of persuasion is on the losing party to avoid assessment of expenses and fees rather than on the winning party to obtain such an award." *Id.* (quoting 8B Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 2288 (3d ed.2010)).

For Defendants to show that their motion was "substantially justified," they must show it "had a reasonable basis in law and fact." *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, No. 11 CIV. 4296 DLC DF, 2014 WL 2624762, at *2 (S.D.N.Y. May 19, 2014) (quotations omitted). Defendants cannot show that here. The motion was without a reasonable basis in law or fact given the most critical fact that the motion did not disclose: that Defendants had not designated the videos as Confidential Information under the Protective Order. Moreover, Defendants sought a protective order over the deposition testimony of senior government officials regarding their official acts, without citing to a single case that has imposed a protective order in such circumstances, and without mentioning the bevy of authority to the contrary, of which ACLS Plaintiffs had alerted Defendants. *See* Ex. 3 at 2–3. Worse yet, Defendants argued that the videos are not judicial documents despite the fact that they had been submitted as exhibits to a summary judgment motion, even though the Second Circuit has squarely held otherwise.

The motion is further without basis in fact because it rests on heated allegations regarding ACLS Plaintiffs' motivations and conduct that have no basis in evidence. Defendants suggest that ACLS Plaintiffs deceived them about the prospect the videos might be made public, even

though ACLS Plaintiffs disclosed weeks in advance that they may file the videos as unsealed exhibits. Most troublingly, Defendants asserted twice—in both their motion and their emergency letter—that ACLS Plaintiffs were "using the discovery process in this case with the improper motivation of exposing Government employees to harassment and reputational harm rather than to advance their claims." ECF No. 259 at 6;  ECF No. 261 at 2. That is baseless. Indeed, Defendants cite as their principal support for that accusation certain testimony by one of the deponents about his wife's employer, despite knowing that ACLS Plaintiffs had offered a resolution that would completely address that stated concern.

Defendants simply ignore the obvious reasons why the American Historical Association, the American Council of Learned Societies, and the Modern Language Association would want there to be a public record and transparency regarding what happened at NEH last year. Defendants may have needed to allege illicit motivations to justify their motion, but that does not make their fact-free allegations substantially justified.

## CONCLUSION

For the reasons stated above, ACLS Plaintiffs respectfully request that the Court deny Defendants' motion.

March 16, 2026                              Respectfully submitted,

                                           */s/ Daniel F. Jacobson*
                                           Daniel F. Jacobson
                                           Lynn D. Eisenberg
                                           John Robinson
                                           Kyla M. Snow
                                           JACOBSON LAWYERS GROUP PLLC
                                           5100 Wisconsin Ave NW, Suite 301
                                           Washington, D.C. 20016
                                           (301) 823-1148
                                           dan@jacobsonlawyersgroup.com

                                           *Counsel for ACLS Plaintiffs*