

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

March 16, 2026

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> Re:   *American Council of Learned Societies v. National Endowment for the Humanities*, No. 25 Civ. 3657 (CM), and *The Authors Guild v. National Endowment for the Humanities*, No. 25 Civ. 3923 (CM)

Dear Judge McMahon:

This Office represents the Government in the above-referenced cases. On March 6, 2026, Plaintiffs filed their summary judgment motion. ECF Nos. 246-58. Over the following weekend, the ACLS Plaintiffs posted on YouTube.com ("YouTube") and one of their websites the video depositions of the four witnesses deposed in this case.[1] As explained in the Government's March 10 and March 13, 2026, submissions, ECF Nos. 259 & 261, as a result of the posting of these videos, clips of which have spread widely over the internet and on social media, Government witnesses have been subject to significant harassment and death threats. The Government requested that the Court enter an order directing the ACLS Plaintiffs to remove the videos due to the risk of harassment and reputational harm created by the publication of the videos.[2] *See* ECF No. 259. In their Opposition, the ACLS Plaintiffs argue that the Court should not limit their ability to use materials obtained in discovery in this case for purposes unrelated to the litigation, including because the Government supposedly waived its right to seek relief by not doing so earlier. The Government did not seek relief earlier, however, because the ACLS Plaintiffs concealed their plans to post the deposition videos on the internet.

---

[1] Also over the weekend, but before the videos were posted, a New York Times article was published that describes testimony from one of the depositions that does not relate to the grant terminations at issue and that Plaintiffs did not cite in their summary judgment papers. *See* https://www.nytimes.com/2026/03/07/arts/humanities-endowment-doge-trump.html. While the ACLS Plaintiffs now argue that this testimony was "relevant to ACLS Plaintiffs' viewpoint discrimination claim," ECF No. 265 ("Opposition") at 10, they apparently did not view it as sufficiently relevant to cite it at all in their voluminous summary judgment briefing.

[2] The Government also asked the Court to direct Plaintiffs not to disseminate discovery materials that have not otherwise been made available on the public docket for this case, absent prior permission from the Court. ECF No. 259.

The Honorable Colleen McMahon
Page 2

To be clear, the Government has not claimed and is not claiming that the ACLS Plaintiffs violated the protective order currently in place by disseminating material that the Government designated "confidential" under that order. Rather, the Government seeks a new protective order to restrict the ACLS Plaintiffs from publicizing and disseminating the videos of the depositions in this case, as well as the portions of the transcripts or other discovery materials that have not been filed publicly, based on a separate ground recognized by the Supreme Court over 30 years ago in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Good cause exists for a new protective order to protect individuals from "annoyance, embarrassment," and "oppression" caused by dissemination of these materials, especially the videos. *See* Fed. R. Civ. P. 26(c); ECF No. 259. As the ACLS Plaintiffs are aware, witnesses have been subjected to significant harassment since the videos were made public, and one of the Assistant United States Attorneys assigned to handle this case has also been subjected to online harassment.

Relying primarily on non-authoritative cases or a misconstruction of the caselaw, the ACLS Plaintiffs assert in their Opposition that the video depositions are judicial documents and the Government has waived any argument that they are not properly available to the public; that any order entered by this Court would infringe the ACLS Plaintiffs' First Amendment rights; and that, as long as the publication and dissemination of the video depositions did not violate an existing protective order, this Court lacks the power to further restrict their dissemination. Each of these arguments fails.

### A. The Deposition Videos Are Not Judicial Documents

As discussed in the Government's initial letter, the video depositions are not judicial documents subject to the presumption of public access. ECF No. 259 at 3. The ACLS Plaintiffs cannot render them so simply by submitting them to the Court, as they claim to have done. As an initial matter, video depositions cannot be filed on the public docket, and, in any event, this Court's Individual Rules do not even permit parties to attach complete deposition *transcripts* as exhibits, and instead require parties to attach "only pages containing relevant testimony (to which citation is made in the briefs or affidavits)." Individual Practices and Procedure Rule V.F.2. Plaintiffs do not cite or discuss the deposition videos at all in their summary judgment briefing, other than a single line in an attorney declaration stating that Plaintiffs would be providing the videos to the Court. ECF No. 248 at 6.[3] The ACLS Plaintiffs' disregard of this Court's rule in an apparent attempt to render the video depositions "judicial documents" only serves to highlight the inappropriateness of their conduct.

Moreover, as the Government explained in its initial submission, a deposition "videotape itself is not a judicial record to which the common law right of public access attaches," as the public is accorded access through the transcript. *United States v. McDougal*, 103 F.3d 651, 656 (8th Cir. 1996); *see also Apple iPod iTunes Antitrust Litigation*, 75 F. Supp. 3d 1271, 1275 (N.D. Cal. 2014) (explaining that "the official . . . transcript" of testimony "is the judicial record of such testimony" and that the video of the deposition is "not a judicial record"); *Mirlis v. Greer*, 952 F.3d 51, 63 (2d Cir. 2020) (explaining that the availability of a transcript of a deposition "tends to

---

[3] The Government does not know if Plaintiffs actually submitted the videos to the Court, as the Government has not been copied on any correspondence transmitting them.

The Honorable Colleen McMahon
Page 3

. . . cut *against* the public interest in the release of the content in a different form (*i.e.*, video), since the primary public interest—general availability of the relevant information—has already been served") (emphasis in original).

**B. The ACLS Plaintiffs Never Informed the Government of Their Intent to Publicize the Videos, and the Government Has Not Waived Any Argument Concerning Publication of the Videos**

The ACLS Plaintiffs also argue that the Government has waived any argument that the video depositions should not be publicly disseminated. Remarkably, in support of this argument, the ACLS Plaintiffs rely on an email chain in which they concealed from the Government that they planned to post to the deposition videos on YouTube. *See* ECF No. 263-1.

As reflected in the correspondence the ACLS Plaintiffs attached to their Opposition, after the Government designated a portion of one of the videos disclosing a witness's birthdate as confidential, the ACLS Plaintiffs asked the Government to withdraw the designation. *Id.* at 3. The Government responded that it has an obligation to maintain the confidentiality of personally identifiable information and did not understand what relevance the witness's birthdate could have to the litigation. *Id.* The ACLS Plaintiffs' counsel responded stating, "[t]he issue is that if we want to submit the video of his deposition to the court as an exhibit, if that part is deemed confidential" then they would have to submit the video under seal or clip that part out. *Id.* at 2. Government counsel responded that we "d[id] not see why it [wa]s necessary to submit the full deposition video as an exhibit in support" of a summary judgment motion instead of submitting relevant portions of the transcript, and noted that videos could not in any event be filed on the public docket. *Id.* The ACLS Plaintiffs then did not respond. This exchange, in which the ACLS Plaintiffs misleadingly suggested that they were concerned about confidentiality if they submitted the videos to the Court, without revealing that they planned to post the videos on YouTube, in no way reflects that the Government acquiesced to the public dissemination of the full videos (with small portions designated as confidential excised). Certainly, there is no basis for the ACLS Plaintiffs' argument that it somehow precludes the Government from seeking relief now that the witnesses are experiencing significant harassment.

**C. The Case Law Supports Entry of a Protective Order, Which Would Not Infringe Plaintiffs' First Amendment Rights**

The ACLS Plaintiffs also argue that any protective order the Court might enter preventing them from freely posting the deposition videos or other materials obtained in discovery would improperly infringe their First Amendment rights. Not so. The Supreme Court's decision and analysis in *Seattle Times* are instructive and demonstrate the fallacy of the ACLS Plaintiffs' arguments. There, the Supreme Court upheld a protective order that "prohibited [defendants] from publishing, disseminating, or using" information obtained in discovery "in any way except where necessary to prepare for and try the case," and, in doing so, rejected the defendants' argument that the order violated their First Amendment rights. 467 U.S. at 27, 30-31.

The circumstances presented to the Supreme Court in *Seattle Times* were similar to those at issue here. The state trial court had entered a protective order after the plaintiffs demonstrated that they had received letters and telephone calls "defaming" them, "including several that

The Honorable Colleen McMahon
Page 4

threatened physical harm," and "averred that public release . . . would subject its members to additional harassment and reprisals." 467 U.S. at 27, 30-31. The defendants—similar to the ACLS Plaintiffs in this case—"assert[ed] the right . . . to disseminate any information gained through discovery" and argued before the Supreme Court "that the First Amendment imposes strict limits on the availability of any judicial order that has the effect of restricting expression." *Id.* at 30-31.

But the Supreme Court held that where "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial discovery, and does not restrict the dissemination of the information if gained from other sources [outside of civil discovery], it does not offend the First Amendment." *Id.* at 37.[4] The Court recognized that rules governing discovery "often allow extensive intrusion into the affairs of both litigants and third parties," and that pretrial discovery practices, including depositions and interrogatories, "are not public components of a civil trial," "were not open to public at common law," and are generally "conducted in private as a matter of modern practice." *Id.* at 30, 33. Moreover, because the rules allow for liberal discovery, "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 33. "Therefore," the Court explained, "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* at 33; *see also Mirlis*, 952 F.3d at 58 n.5 (2d Cir. 2020) (stating that the "U.S. Constitution has not generally been held to compel public access to deposition transcripts and recordings, at least not as a matter of course"); *Venus Springs v. Ally Financial, Inc.*, No. 10 Civ. 311 (MOC) (DCK), 2015 WL 1893825, at *4 (W.D.N.C. Apr. 27, 2015) (protective order requiring party to remove video depositions from YouTube and refrain from posting them "is not intended to stifle Plaintiff's speech; it is intended to prevent abuses of the discovery process as contemplated by Federal Rule of Civil Procedure 26(c)"). This Court should thus reject the ACLS Plaintiffs' assertion that the Court's interim order, ECF No. 262—and the protective order the Government asks the Court to enter—"significantly burden[s] their First Amendment rights." *See* ECF No. 263.

Even to the extent Plaintiffs have relied on portions of the deposition transcripts in support of summary judgment, courts have held that where the public has access to relevant information in a video or audio recording, *i.e.*, through a transcript, depriving the public of access to the recording itself does not offend the First Amendment or the public right of access. *See McDougal*, 103 F.3d at 656, 659; *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 609 (1978) ("[T]here is no constitutional right to have . . . testimony recorded and broadcast."); *cf. Mirlis*, 952 F.3d at 63, 36 ("[T]he substantive information conveyed . . . in the video . . . has been made public and has been written about in the local press, to all appearances largely satisfying the legitimate public interest in the trial. What remains private is solely the video recorded images of [the deponent] saying these words—the publication of which, especially on the Internet, would impose a significant burden on the [deponent].") As discussed in more detail in the Government's March 10, 2026, letter, courts, including the Supreme Court and the Second Circuit, have recognized that audio and video recordings are more likely to be abused or distorted, and more likely to invade the privacy

---

[4] Although the rules at issue in *Seattle Times* were state practice rules, the Supreme Court noted that the discovery provisions at issue were "modeled on Rules 26 through 37 of the Federal Rules of Civil Procedure." 67 U.S. at 29.

The Honorable Colleen McMahon
Page 5

interests of those being recorded. *See, e.g.*, *Mirlis*, 952 F.3d at 66; *Caine*, 2012 WL 13059125, at *2; *Fox v. Makin*, 2024 WL 5046224, at *6 (D. Maine Dec. 9, 2024) (collecting cases).

The Supreme Court in *Seattle Times* also emphasized that Rule 26(c) "furthers a substantial governmental interest unrelated to the suppression of expression"—facilitating "[l]iberal discovery" in litigation by authorizing courts to issue orders to protect parties subject to such discovery. *Id.* at 34; *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) (explaining that encouraging full disclosure of evidence "represents the cornerstone of our administration of civil justice"). The Court observed that rules governing discovery enable parties to obtain information that they otherwise would not be privy to "for the *sole purpose* of assisting in the preparation and trial, or the settlement, of litigated disputes." *Id.* (emphasis added). Accordingly, it is important for "the trial court to have the authority to issue protective orders conferred by Rule 26(c)." *Id.* at 34-35.

### D. The Court Can, and Should, Enter a Protective Order in These Circumstances

The circumstances presented here are precisely those for which Federal Rule of Civil Procedure 26(c) is intended. That rule expressly gives courts authority to issue orders "for good cause" to "protect a party or person from annoyance, embarrassment, oppression." Fed. R. Civ. P. 26(c). It is clear that the ACLS Plaintiffs' publication of, and refusal to take down, the video recordings, despite repeated requests from the Government, has subjected witnesses and a government attorney to harassment. *Id.* And as reported in the New York Times late last Friday, "excerpts from the videos began ricocheting across social media, prompting scathing commentary about what was seen as the DOGE employees' cavalier demeanor and torturous justifications . . . ."[5] Mitigating the effects of the harm that has already occurred as a result of the ACLS Plaintiffs' conduct amply justifies the protective order the Government seeks.

The ACLS Plaintiffs' arguments amount to a suggestion that the Government is without recourse and the Court without discretionary power to grant relief under Rule 26(c) because the Government did not previously designate discovery materials as confidential, and, due to the publication of such materials, Government witnesses and an attorney are now *already* subject to harassment and threats. Such an argument is baseless and perverse. The Government did not foresee that the ACLS Plaintiffs were planning to share discovery materials that are not judicial records with the news media and on their websites. Indeed, such conduct is highly unusual.

Moreover, the ACLS Plaintiffs' actions throughout discovery suggest that they intended all along to publish these materials, but avoided disclosing those intentions to the Government. When the Government asked the ACLS Plaintiffs to stipulate to the Government's standard proposed protective order—a proposed order that essentially tracks the language in model protective orders used by Southern District judges—the ACLS Plaintiffs sought to narrow significantly the definition of "confidential information," including by repeatedly insisting that the

---

[5] Benjamin Weiser and Jennifer Schuessler, *After DOGE Deposition Videos Go Viral, Judge Orders Them Taken Down*, N.Y. Times (Mar. 13, 2026), https://www.nytimes.com/2026/03/13/nyregion/doge-depositions-musk-lawsuit.html?searchResultPosition=1.

The Honorable Colleen McMahon
Page 6

definition should carve out the names of current or former government employees, and *any* information at all related to the work conducted by such employees in their official government capacities. Once the Court entered the order, the Government endeavored to apply confidentiality designations sparingly, in recognition of this Court's rules. But the ACLS Plaintiffs took issue with even the most basic designations of personally identifiable information as confidential. During extensive negotiations regarding both the protective order and the Government's confidentiality designations, the Government noted that the designations did not prevent Plaintiffs from using the materials during depositions and that if the ACLS Plaintiffs determined that they needed to submit any of the confidential materials as exhibits in support of their summary judgment motion, they could challenge the designation at that time. Nonetheless, the ACLS Plaintiffs insisted on challenging nearly all of the Government's confidentiality designations, even where the information was not relevant to their claims, but never informed the Government that they planned to publicize the materials in question. Indeed, as noted above, the ACLS Plaintiffs actively concealed their intent.

As explained above, the Supreme Court and the Second Circuit have recognized that "protective orders issued under Rule 26(c) serve 'the vital function of securing the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant." *TheStreet.Com*, 273 F.3d at 229; *see also Seattle Times*, 467 U.S. at 34-35. Because of the liberality of discovery permitted under the Federal Rules, there is "an opportunity . . . for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy." *Seattle Times*, 467 U.S. at 35. Accordingly, "pretrial discovery by depositions and interrogatories has a significant potential for abuse," including by "seriously implicat[ing] privacy interests of litigants and third parties," and it is important for courts to have discretion to protect parties. *Id.* at 34-35.

As the courts in *Seattle Times* and *TheStreet.Com* appeared to recognize, if the ACLS Plaintiffs' behavior were typical in discovery, it would substantially burden the discovery process and increase preemptive disputes. Parties would be less likely to voluntarily submit to videotaped depositions if they expected that their adversaries would post those depositions on YouTube and make efforts to publicize them. Indeed, had the ACLS Plaintiffs disclosed their intent to the Government, the Government would have objected to the taking of the depositions by video or sought confidentiality protections from the Court before the depositions were taken and the materials could be made public. *See TheStreet.Com*, 273 F.3d at 229 ("[W]e have observed that protective orders can provide a powerful incentive to deponents who would not otherwise testify.").

As addressed in the Government's March 10, 2026, submission, numerous courts have granted protective orders restricting the dissemination of videos of depositions for these very reasons. *See* ECF No. 259 at 2. The ACLS Plaintiffs' cited cases that purportedly allow the dissemination of videos or transcripts of depositions involving government officials (ECF No. 265 at 13) are distinguishable. In each of those cases, the court denied the entry of a protective order after finding that, under the specific circumstances of those cases, the parties seeking the protective orders had not met their burden to show good cause and made only speculative or generalized allegations of embarrassment or harm. See *Laugier v. City of New York*, No. 13 Civ. 6171 (JMF), 2014 WL 6655283, at *2 (S.D.N.Y. Nov. 24, 2014) (denying request to designate entire video

The Honorable Colleen McMahon
Page 7

deposition of defendant police commissioner based on possibility that media would obtain a copy); *Vazquez v. City of New York*, No. 10 Civ. 6277 (JMF), 2014 WL 11510954, at *1 (S.D.N.Y. May 2, 2014) (denying request to designate video deposition as confidential when defendant failed to show particular or significant harm); *Flaherty v. Seroussi*, 209 F.R.D. 295, 297 (N.D.N.Y. 2001) (denying protective order of mayor's video deposition when mayor may suffer "moderate embarrassment" from dissemination);  *Lust v. City of Albany*, No. 05 Civ. 613 (GLS/RFT), 2007 WL 9771142, at *2 (N.D.N.Y. Feb. 13, 2007) (denying protective order prohibiting video deposition dissemination when deponent sought protective order to protect perjurious testimony); *Padberg v. McGrath-McKechnie*, No. 00 Civ. 3355 (RJD)(SMG), 2005 WL 5190385, at *2-3 (E.D.N.Y. Apr. 27, 2005) (denying protective order when former mayor failed to show sufficient invasion of privacy from dissemination of video deposition); *Condit v. Dunne*, 225 F.R.D. 113, 116 (S.D.N.Y. 2004) (denying protective order when no evidence that deponent would be subject to "smear tactics" in the media); *Am. News & Info. Servs., Inc. v. Rovella*, No. 15 Civ. 1209 (RNC), 2017 WL 373670, at *4 (D. Conn. Aug. 30, 2017) (denying protective order when defendants made only "general allegations of harm" that may result from dissemination of discovery materials). Here, by contrast, the Government witness' video depositions have already been publicly disseminated and have resulted in concrete harms to both the individual deponents and their counsel.

Moreover, all but one of the cases the ACLS Plaintiffs cite are at least ten years old, and some are twenty or more years old.  As this case has made clear, the potential harms that can arise from publicizing video content are far more severe now than they were ten to twenty years ago. As the Government explained in its March 10, 2026, letter, many courts, including the Second Circuit as recently as 2020, have explained that videos are more prone to abuse or to invade individuals' privacy.  *See* ECF No. 259 at 4-5.

Finally, even if the Court agrees with the ACLS Plaintiffs that the individuals at issue are "senior government officials," which the Government disputes, the ACLS Plaintiffs have provided no support for the proposition that such individuals have no recourse when subjected to harassment, embarrassment, and even threats of harm because their adversaries published, or seek to publish, information gained by virtue of discovery.  *See, e.g.*, *McDougal*, 103 F.3d at 658–59; *Nixon*, 435 U.S. at 609 (both restricting dissemination of video or audio material pertaining to former presidents); *Poulos v. City of Los Angeles*, No. 19 Civ. 496 (MWF) (AFM), 2020 WL 4108433, at *1-2 (C.D. Cal. June 23, 2020) (noting that individuals do not "forfeit[] all privacy rights by engaging in public service" and entering an order protecting visual images of third-party district attorneys in light of the "legitimate danger posed by public distribution" of such images).

Accordingly, the Government has demonstrated good cause for a protective order prohibiting Plaintiffs from uploading the deposition videos and limiting any public disclosures to documents and deposition excerpts that have been entered in the judicial record in this case.

**E.  The ACLS Plaintiffs' Request for Attorneys' Fees and Expenses Should Be Denied**

Finally, the ACLS Plaintiffs' request for attorneys' fees and expenses should be denied. Contrary to Plaintiffs' assertion (ECF No. 265 at 18), the Government has a reasonable basis in law and fact to seek this protective order.  As discussed above, numerous courts have entered a

The Honorable Colleen McMahon
Page 8

protective order limiting the use of discovery materials – particularly video depositions – for non-litigation purposes where, as here, witnesses may be subjected to harassment, embarrassment, and death threats. *See supra* p. 4-5. That has occurred here. The Government was substantially justified in seeking a protective order pursuant to Rule 26(c) in these circumstances, and an award of attorneys' fees and expenses should be denied. *See Callahan v. HSBC Sec. (USA) Inc.*, No. 22 Civ. 8621 (JPO), 2025 WL 1404492, at *3 (S.D.N.Y. May 15, 2025) (denying request for fees and expenses under Rule 37(a)(5)(B) when motion was made in good faith and "not so lacking in substantial justification as to warrant an award of fees.").

We thank the Court for its consideration of this submission.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:  s/ *Mary Ellen Brennan*
MARY ELLEN BRENNAN
RACHAEL L. DOUD
JONAKI M. SINGH
Assistant United States Attorneys
86 Chambers St., 3rd Floor
New York, New York 10007
(212) 637-2699
(212) 637-2652
(212) 637-2785

cc:   All counsel of record (via ECF)