**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AMERICAN COUNCIL OF LEARNED SOCIETIES,
      633 Third Avenue, 8th Floor New York, NY 10017,

AMERICAN HISTORICAL ASSOCIATION,
      400 A Street SE Washington, DC 20003,

MODERN LANGUAGE ASSOCIATION,
      85 Broad Street, New York, NY 10004,

            *Plaintiffs,*

          v.

ADAM WOLFSON, in his official capacity as Acting
Chairman of the National Endowment for the Humanities,
      400 7th St SW, Washington, DC 20506,

NATIONAL ENDOWMENT FOR THE HUMANITIES,
      400 7th St SW, Washington, DC 20506,

UNITED STATES DOGE SERVICE,
      736 Jackson Pl NW Washington, DC 20503,

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service,
      736 Jackson Pl NW Washington, DC 20503,

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration,
      1800 F St NW Washington, DC 20006,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,
      1800 F St NW Washington, DC 20006,

            *Defendants*.

No. 25 Civ. 3657 (CM)

THE AUTHORS GUILD, WILLIAM GOLDSTEIN,
ELIZABETH KADETSKY, VALERIE ORLANDO,
KATALIN BALOG, BENJAMIN HOLTZMAN,
LEE JASPERSE, and NICOLE JENKINS,
on behalf of themselves and all others similarly situated,

              *Plaintiffs,*

    v.

NATIONAL ENDOWMENT FOR THE HUMANITIES;       No. 25 Civ. 3923 (CM)

ADAM WOLFSON, in his official capacity as Acting
Chairman of the National Endowment for the Humanities;

UNITED STATES DOGE SERVICE;

AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service;

NATE CAVANAUGH, in his official capacity as an employee
of the U.S. DOGE Service or the General Services
Administration; and,

JUSTIN FOX, in his official capacity as an employee of the
U.S. DOGE Service or the General Services Administration,

              *Defendants.*

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:  (212) 637-2652 / 2699 / 2785
Email: maryellen.brennan@usdoj.gov
       rachael.doud@usdoj.gov
       jonaki.singh@usdoj.gov

MARY ELLEN BRENNAN
RACHAEL L. DOUD
JONAKI M. SINGH
Assistant United States Attorneys
– Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................2

LEGAL STANDARDS ...............................................................................................................3

ARGUMENT ...............................................................................................................................5

     I.     The Proposed Class and Subclasses Do Not Meet Rule 23(a)(2)'s
           Commonality Requirement.....................................................................................5

     II.    The Proposed Class and Subclasses Do Not Meet Rule 23(a)(2)'s Typicality
           Requirement .........................................................................................................10

     III.   Certification Is Not Proper Under Rule 23(b)(2) ....................................................11

CONCLUSION.............................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(s)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................. 4

*Berenson v. Biden*,
    791 F. Supp. 3d 398 (S.D.N.Y. 2025) ................................................................... 1

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)................................................................................................. 4

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................................... 3

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)............................................................................................... 10

*In re Tether and Bitfinex Crypto Asset Litig.*,
    No. 19 Civ. 9236 (KPF), 2026 WL 629826 (S.D.N.Y. Mar. 6, 2026)................................. 4

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ........................................................................... 5, 6, 7

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016) ............................................................................10, 11

*Ramirez v. Riverbay Corp.*,
    39 F. Supp. 3d 354 (S.D.N.Y. 2014) ..................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 23(a) ....................................................................................................... 4

Fed. R. Civ. P. 23(b)(2) ..............................................................................................5, 11

Fed. R. Civ. P. 25(d)....................................................................................................... 1

**OTHER AUTHORITIES**

Executive Order 14151 ................................................................................................... 8

Defendants National Endowment for the Humanities ("NEH"); Adam Wolfson, in his Official Capacity as Acting Chairman of the National Endowment for the Humanities; United States DOGE Service; Amy Gleason, in her Official Capacity as Acting Administrator of the United States DOGE Service; Nate Cavanaugh, in his official capacity as an employee of the General Services Administration; and Justin Fox, in his official capacity as an employee of the General Services Administration (the "Government")[1] respectfully submit this memorandum of law in opposition to the Authors Guild Plaintiffs' motion for class certification.  ECF Nos. 242-245.[2]

## PRELIMINARY STATEMENT

Plaintiffs in *The Authors Guild v. National Endowment for the Humanities* (the "Authors Guild Plaintiffs") seek certification of a class consisting of "all NEH grant recipients whose grants were awarded on or after January 20, 2021 and terminated as part of the Mass Termination" (the "Proposed Class").  Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Class Cert. Br."), ECF No. 243 at 2.  Within that class, they seek to certify two subclasses: (1) the "DEI Subclass," comprised of "all Proposed Class members whose grants were marked by Defendants for termination as 'DEI,'" and (2) the "Biden-Era Subclass," comprised of "all Proposed Class members whose grants were terminated without being marked as 'DEI.'"  *Id.*

---

[1] When a public officer who is a party in an official capacity ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party.  Fed. R. Civ. P. 25(d).  Michael McDonald is no longer the Acting Chairman of the National Endowment for the Humanities, and Adam Wolfson, who now holds that position, is automatically substituted as a defendant in his place.  Additionally, Nate Cavanaugh and Justin Fox no longer occupy the positions in which they were sued in their official capacities, and there is no successor to those positions.  Accordingly, the United States should be substituted for these officials as a defendant. *See Berenson v. Biden*, 791 F. Supp. 3d 398, 405 (S.D.N.Y. 2025) (substituting United States for defendant sued in their official capacity who no longer held position but for whom no successor had been named).

[2] Unless otherwise indicated, docket numbers cited are those in Case No. 25 Civ. 3657 (CM).

"Mass Termination," as defined by the Authors Guild Plaintiffs, refers to the termination of "more than 1,400 active NEH grants – spanning all NEH programs – through a single, centralized process" during the first week of April 2025. *Id.* at 1.

Although the Court determined at the preliminary injunction stage that classwide relief was appropriate, the Court should deny formal class certification at this juncture because (1) the Proposed Class and subclasses lack commonality and typicality and (2) the Authors Guild Plaintiffs fail to establish that a Rule 23(b)(2) injunctive action is proper.

## BACKGROUND

The Authors Guild Plaintiffs commenced this action on May 12, 2025. *The Authors Guild, et al. v. National Endowment for the Humanities, et al.*, No. 25 Civ. 3923, ECF No. 1. On May 14, 2025, the Court consolidated the Authors Guild Plaintiffs' action with *American Council of Learned Societies v. McDonald*, No. 25 Civ. 3657, ECF No. 52. On May 23, 2025, the Authors Guild Plaintiffs moved for a preliminary injunction. ECF Nos. 65-74. On May 27, 2025, the Authors Guild Plaintiffs filed an Amended Complaint. ECF No. 75. On May 30, 2025, Defendants moved to dismiss the consolidated actions. ECF No. 76.

On June 27, 2025, the Court ordered the parties to submit supplemental briefing on "how the Supreme Court's June 27, 2025 opinion in *Trump v. CASA* impacts the requests for relief in these cases[.]" ECF No. 105. In their supplemental brief, the Authors Guild Plaintiffs requested "preliminary certification" of two proposed classes: (1) the "Individual Grantee Class," comprised of "[a]ll individual NEH grant recipients whose grants were terminated as part of the Mass Termination"; and (2) the "Subrecipient Class," comprised of "[a]ll NEH grant subrecipients whose sponsors' grants were terminated as part of the Mass Termination." ECF No. 107 at 7-9 (citing Authors Guild Amended Complaint, ECF No. 75 ¶¶ 135–143). In response to the Authors

Guild Plaintiffs' request for preliminary class certification, Defendants argued that the Court should deny the request for preliminary class certification because (1) the proposed classes did not meet Rule 23(a)(2)'s commonality and typicality requirements and (2) certification under Rule 23(b)(2) was improper.  ECF No. 114.

On July 25, 2025, the Court granted in part and denied in part Plaintiffs' motion for a preliminary injunction and granted in part and denied in part Defendants' motion to dismiss.  ECF No. 116.  The Court also extended preliminary relief to the proposed classes, finding that Plaintiffs' argument "appears sufficient, on its own, to provide a common legal question to all purported class-members, on which the named plaintiffs' claims are typical, and in connection with which Defendants acted against all members in the same manner."  *Id.* at 79.

The Authors Guild Plaintiffs filed a Second Amended Complaint on March 4, 2026 (ECF No. 240) and filed a motion for class certification on March 5, 2026 (ECF Nos. 242-245).  The current motion proposes classes different than the classes the Court previously considered in connection with Plaintiffs' motion for a preliminary injunction.  The Authors Guild Plaintiffs previously proposed an Individual Grantee Class and a Subrecipient Class, but now seek to certify a single class consisting of "all NEH grant recipients whose grants were awarded on or after January 20, 2021 and terminated as part of the Mass Termination," with a "DEI" subclass consisting of members whose grants were marked for termination for "DEI", and a "Biden-era" subclass consisting of members whose grants were terminated without being marked as "DEI".  Class Cert. Br. at 2.

## LEGAL STANDARDS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

3

(quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  The party seeking class certification

bears the burden of demonstrating that they have satisfied all four Rule 23(a) prerequisites and that

the proposed class lawsuit falls within one of the three types of actions permitted under Rule 23(b).

*See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading

standard" and thus a plaintiff "must affirmatively demonstrate compliance with the Rule—that is,

he must be prepared to prove that there are in fact sufficiently numerous parties, common questions

of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Consequently, the

Court must conduct a "rigorous" class certification analysis, which may "entail some overlap with

the merits of the plaintiff's underlying claim."  *Id.* at 351.  If the Court is not fully satisfied that all

Rule 23 requirements are met, the Court cannot certify the class.  *Id.*  "The same class certification

requirements apply to the certification of subclasses: a court must assure itself that each subclass

independently meets the requirements of Rule 23."  *In re Tether and Bitfinex Crypto Asset Litig.*,

No. 19 Civ. 9236 (KPF), 2026 WL 629826, at *20 (S.D.N.Y. Mar. 6, 2026) (quoting *Ramirez v.*

*Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014)) (internal quotation marks omitted).

Rule 23(a) requires a party seeking to certify a class first to demonstrate that:

(1) The class is so numerous that joinder of all members is impractical [("numerosity")];
(2) There are questions of law or fact common to the class [("commonality")];
(3) The claims or defenses of the named plaintiffs are typical of claims or defenses of the class [("typicality")]; and
(4) The named plaintiffs will fairly and adequately protect the interest of the class [("adequacy of representation")].

Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in

Rule 23(b)."  *Wal-Mart*, 564 U.S. at 345.  The Authors Guild Plaintiffs seek certification under

4

Rule 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *see* ECF No. 243 at 17-18.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Wal-Mart*, 564 U.S. at 360 (quotation marks omitted).

<strong>ARGUMENT</strong>

**I.     The Proposed Class and Subclasses Do Not Meet Rule 23(a)(2)'s Commonality Requirement**

"A question of law or fact is common to the class, if the question is 'capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 349-50) (cleaned up).  Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," but this "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart*, 564 U.S. at 350.  Indeed, it is not enough for a plaintiff to identify broad questions that are common to the entire class.  *See id.* at 350 ("What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (quotations omitted) (emphasis in original)).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Johnson*, 780 F.3d at 137.

The Authors Guild Plaintiffs have not demonstrated that the Proposed Class and subclasses meet the commonality requirement.  As an initial matter, contrary to the Authors Guild Plaintiffs'

5

assertion, the Proposed Class does not include all grants that were terminated as part of the Mass Termination. Class Cert. Br. at 5-6 (quoting McDonald's statement that "on April 2, we have terminated about roughly 1400 grants to individuals, institutions, and the State Humanities Councils" and noting that "the group of NEH grantees to whom Mr. McDonald referred . . . is the Proposed Class"). In fact, a subset of the terminated grants were awarded prior to January 20, 2021 (during the prior Trump administration), and therefore are not included in the Proposed Class. For example, NEH awarded a grant to the Montpelier Foundation titled "Understanding the Overseer: Using Archaeology to Examine Status and Identity at James Madison's Montpelier" beginning on April 1, 2020. *See* Declaration of Jonaki Singh ("Singh Decl.") Ex. A, NEH_AR_000020 (Open Awards List) at 1 (Award ID RZ26625119). That grant was terminated in April 2025 as part of the Mass Termination. *See* Singh Decl. Ex. B, NEH_AR_000136 (Terminated Awards List) at 16. In total, approximately 46 of the terminated grants were awarded prior to January 20, 2021, and are therefore not included in the Proposed Class. *See e.g.,* Singh Decl. Ex. A, NEH_AR_000020 at 1 ("Humanities Commons" grant awarded to Michigan State University with Award ID CHA26877620, beginning on May 1, 2020) and Singh Decl. Ex. B, NEH_AR_000136 at 15; Singh Decl. Ex. A, NEH_AR_000020 at 1 ("Expanding UCF's Center for Humanities and Digital Research (CHDR) Infrastructure, Research, and Public Programming" grant awarded to University of Central Florida with Award ID CHA26880120) and Singh Decl. Ex. B, NEH_AR_000136 at 23.

Moreover, the Authors Guild Plaintiffs have not shown that the grant terminations they challenge give rise to "the same kind of claims from all class members." *Id.* They broadly assert that the common questions of law and fact in this case are "whether the Mass Termination constituted viewpoint discrimination in violation of the First Amendment; whether the Mass

6

Termination process was infected by discrimination in violation of Equal Protection; and whether DOGE possessed statutory authority to direct termination of NEH grants." Class Cert. Br. at 14. But generalized questions like whether Defendants violated certain laws, *see id.*, are not sufficient to obtain class certification, *see Wal-Mart*, 564 U.S. at 350, 374 (explaining that "[r]eciting . . . questions" including (1) whether all "plaintiffs indeed work for Wal-Mart," (2) whether all plaintiffs' "managers have discretion over pay," (3) whether something is "an unlawful employment practice," and (4) what remedies the plaintiffs should get would not be sufficient to obtain class certification). As the Supreme Court has explained, the commonality requirement "does not mean merely that [the proposed class members] have all suffered a violation of the same provision of law." *Id.*

Here, questions of whether particular grant terminations violated the First Amendment, the Equal Protection Clause, or any other law,[3] and whether particular grants were terminated on the basis of "DEI" affiliation versus any other reason, require analysis of the individual grants, and the determinations made by the government for each such grant. The Authors Guild Plaintiffs' various arguments challenging the grant terminations reflect this necessity for individualized determinations. Although they contend, on one hand, that grant terminations were "terminated through a uniform process" and were "not the product of individualized deliberation about particular grants," they also argue that the terminations violated the First Amendment and Equal

---

[3] Defendants understand that the Court has not dismissed the Authors Guild Plaintiffs' claim asserted under the Administrative Procedure Act (Second Amended Complaint, ECF No. 240 at ¶¶ 156–168). It is unclear whether the Authors Guild Plaintiffs are continuing to pursue this claim, as they have not moved for summary judgment as to that claim and do not articulate how that claim implicates their motion for class certification. But to the extent they do intend to pursue that claim, the commonality and typicality concerns discussed herein would nevertheless apply, because the Court would need to conduct an individualized inquiry to determine whether the termination of a particular grant was arbitrary and capricious.

Protection Clause because "DOGE operatives and NEH officials . . . applied their (and ChatGPT's) subjective impressions to over 1,400 active grants" and "identified the grants they believed promoted disfavored messages or ideas." Class Cert. Br. at 3, 10-11. Indeed, the Authors Guild Plaintiffs acknowledge that the "reason for termination differed" among grants, including promotion of DEI, affiliation with Biden administration priorities, or wastefulness. Class Cert. Br. at 6, 10 (discussing McDonald testimony that Fox and Cavanaugh were "looking at . . . open grants from the Biden administration" and Cavanaugh testimony that Biden-era grants "were treated as presumptively wasteful").

The Authors Guild Plaintiffs' proposed "DEI" and "Biden-era" subclasses do not solve this problem. In the context of the grant termination process, the term "DEI" encompassed three categories of grants identified in Executive Order 14151: (1) "environmental justice," (2) "diversity, equity, and inclusion" or "diversity, equity, inclusion, and accessibility," and (3) "gender ideology." Class Cert Br. at 6; Declaration of Yinka Onayemi ("Onayemi Decl.") (ECF No. 244), Ex. 6. But these categories do not neatly overlap with the Authors Guild Plaintiffs' asserted First Amendment and Equal Protection claims. For example, the Court may determine that a grant concerning environmental justice may implicate First Amendment viewpoint discrimination but not Equal Protection discrimination, as the Authors Guild Plaintiffs have alleged those claims. *See* Second Amended Complaint ¶ 7. Similarly with the Biden-era subclass, the Court may determine that some non-DEI related grants were terminated for their affiliation with the Biden administration, whereas others were terminated because they constituted wasteful government spending. Moreover, certain terminated grants were approved prior to January 20, 2021 (during the first Trump administration) and formally awarded during the Biden administration, but were nevertheless terminated. *See, e.g.,* Singh Decl. Ex. A, NEH_AR_000020

8

at 5 ("Digital Resiliency: Adapting the New York Philharmonic Leon Levy Digital Archives for the Future" grant awarded to Philharmonic Symphony Society of New York, Inc. with Award ID CHA27688321); Singh Decl. Ex. B, NEH_AR_000136 at 3. The Court may reach different conclusions as to why these particular grants were terminated and whether such terminations violated the First Amendment or Equal Protection.

Indeed, if the Court were to decide that any of the Authors Guild Plaintiffs' constitutional claims survive summary judgment, the Court would need to consider whether particular grant termination decisions were made on the basis of "viewpoint discrimination in violation of the First Amendment," "discrimination in violation of Equal Protection," or general efficiency and cost-savings concerns. Class Cert. Br. at 14. The Court may reach different conclusions as to different grants, depending on the subject matter of each grant and the bases for each grant's termination. *See Wal-Mart*, 564 U.S. at 350 ("[T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.").

Similarly, the purported "common" question of whether Plaintiffs and members of the classes are entitled to injunctive relief also requires individualized considerations. The Authors Guild Plaintiffs hinge their contention of commonality on the fact that "[t]he Mass Termination was centrally designed, centrally executed, and uniformly applied." Class Cert. Br. at 14. But as discussed above, the grants were terminated for different reasons. And the Court may determine at summary judgment that some, but not all, of those reasons entitle the grant recipients to relief. The Court would then need to conduct individualized inquiries into the reasons for the termination

9

of each recipient's grant and tailor any injunctive relief accordingly.

In addition, some Proposed Class members are likely members of other classes that have been provisionally certified in other actions challenging grant terminations across the federal government.  *See, e.g., Thakur v. Trump*, No. 25 Civ. 4737 (N.D. Cal. 2025).  Some of these class members have already received other forms of relief, including reinstatement of the terminated grants.  *See Thakur v. Trump*, No. 25 Civ. 4737, ECF No. 55 at 2 (Preliminary Injunction Order requiring defendants, including NEH, to reinstate terminated grants); *see also* ECF No. 134 at 2 (same).  Accordingly, to minimize the risk of inconsistent adjudications, the Court would need to conduct individualized inquiries into whether and what kind of relief particular class members have already received through other actions.

The Authors Guild Plaintiffs thus have not demonstrated that any purported common questions will "generate common answers apt to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at 350 (cleaned up).

## II.    The Proposed Class and Subclasses Do Not Meet Rule 23(a)(2)'s Typicality Requirement

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate by effectively limiting the class claims to those fairly encompassed by the named plaintiff's claims."  *Mazzei v. Money Store*, 829 F.3d 260, 271-72 (2d Cir. 2016) (alterations, citation, and internal quotation marks omitted).  Typicality requires that "the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Id.* at 272 (internal quotation marks and alterations omitted).  The typicality requirement aims "to ensure that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will

be fairly and adequately protected in their absence." *Id.* (internal quotation marks and alterations omitted).

For much of the same reasons discussed in Part I, the Proposed Class and subclasses do not meet the typicality requirement. The Supreme Court has explained that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). Both requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *General Telephone*, 457 U.S. at 157-58 n.13). Here, as discussed in Part I, the particular arguments that might be advanced by the Authors Guild Plaintiffs—with respect to their grants, the reasons for the grant terminations, and the laws purportedly violated by those terminations—are not so interrelated that the interests of the class members will be fairly and adequately protected in each class member's absence. For example, certain First Amendment or Equal Protection arguments may not occupy "essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *See Mazzei*, 829 F.3d at 272.

## III.    Certification Is Not Proper Under Rule 23(b)(2)

Certification also is improper because the Authors Guild Plaintiffs cannot show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(2), the Authors Guild Plaintiffs must show that the challenged conduct is such that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

11

The Authors Guild Plaintiffs cannot show that Defendants have "acted or refused to act on grounds that apply generally to the class," where the Proposed Class and subclasses purportedly cover approximately 1,400 individual grants, and, as Plaintiffs appear to acknowledge, various grants were terminated for different reasons. *See* Class Cert. Br. at 11 (the Mass Termination "was the product of a small group slashing a portfolio of more than 1,400 grants"); *id.* at 6 ("the reasons for termination differed" between subclasses). With the factual and legal variations within the Proposed Class and subclasses, classwide relief would be inappropriate. *Wal-Mart*, 564 U.S. at 360.

## CONCLUSION

For these reasons, the Court should deny the Authors Guild Plaintiffs' motion for class certification.

Dated: New York, New York
        March 19, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney for
the Southern District of New York
Attorney for Defendants


By:  /s/ *Jonaki M. Singh*
     MARY ELLEN BRENNAN
     RACHAEL L. DOUD
     JONAKI M. SINGH
     Assistant United States Attorneys
     86 Chambers Street, 3rd floor
     New York, New York 10007
     Telephone: (212) 637-2785 / 2652 / 2699
     Email: maryellen.brennan@usdoj.gov
            rachael.doud@usdoj.gov
            jonaki.singh@usdoj.gov

12