UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

THE AUTHORS GUILD, et al.,

        Plaintiffs,

  -against-                                      25-cv-3923 (CM)

NATIONAL ENDOWMENT FOR THE
HUMANITIES, et al.,

        Defendants.

————————————————————— x

AMERICAN COUNCIL OF LEARNED
SOCIETIES, et al.,

        Plaintiffs,

                                           25-cv-3657 (CM)

  -against-

NATIONAL ENDOWMENT FOR THE
HUMANITIES, et al.,

        Defendants.

————————————————————— x

## OPINION AND ORDER

McMahon, J.:

Defendants, represented by the United States Attorney for the Southern District of New York (the "Government"), move for entry of a protective order in the aftermath of Plaintiffs' decision to publish on the internet video recordings of four depositions taken during discovery in these consolidated actions. The videos – totaling approximately twenty-five hours of testimony – were posted publicly on YouTube and on the websites of Plaintiffs American Council of Learned Societies and Modern Language Association. The Government objected to their dissemination,

particularly in light of reported harassment, even threats, directed at the witnesses and members of their families after the videos were posted.

On March 13, 2026, the Court issued an interim order directing Plaintiffs to remove the videos and to cease further dissemination pending full briefing, argument, and resolution of the dispute.  The videos have since been taken down.

The Government now seeks a protective order prohibiting Plaintiffs from republishing the recordings and restricting Plaintiffs' dissemination of any discovery materials that are not filed on the public docket.  The Government is correct that the videos are not judicial documents and so carry no presumption of public access.  But they are also not covered by the existing protective order in this case and, absent a court order, could be publicly disseminated by any party in the ordinary course.  The issue is therefore whether the Government has carried its burden under Rule 26(c) to justify restricting that dissemination.  It has not.

The Government's motion for a new protective order is therefore DENIED.

## I.    Background

Discovery in these consolidated cases is governed by a Stipulation and Protective Order entered at Docket Number 186.  The Order defines discovery material broadly to include deposition testimony and video recordings of that testimony.  It establishes a designation-based confidentiality regime.  The Order provides that a producing party "may designate as 'Confidential Information' any Discovery Material, or portion thereof, that the Producing Party believes in good faith to contain Confidential Information."  Dkt. No. 186, ¶ 7.  It further specifies the procedure for designating deposition testimony as confidential:

> Designation of "Confidential Information" shall be made either by (a) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will bind the transcript of the designated testimony (consisting of question and answer) in a separate volume and mark it as "Confidential Information Subject to Protective Order"; or (b) notifying the

2

> reporter and all counsel of record, in writing, within 21 days after a deposition has concluded, of the specific pages and lines of the transcript and/or the specific exhibits that are to be designated Confidential Information, in which case all counsel receiving the transcript will be responsible for marking the copies of the designated transcript or exhibit in their possession or under their control.

*Id.*, ¶ 8. The Order also states that Confidential Information "shall be used solely for the purposes of this action and for no other purpose whatsoever, and shall not be published to the general public in any form." *Id.*, ¶ 10.

At the same time, the Order also recognizes that a producing party's failure to designate may sometimes be inadvertent. Paragraph 20 provides that:

> If a Producing Party inadvertently fails to designate material as Confidential Information at the time of production, this shall not in itself be deemed a waiver of any claim of confidentiality as to that Confidential Information.

*Id.*, ¶ 20. Here, however, the Government does not contend that any failure to designate was inadvertent; to the contrary, it represents that it made deliberate decisions about what material to designate as confidential. *See* Mar. 17, 2026 Hr'g Tr., at 12:13–21.

Between January 23 and January 30, 2026, Plaintiffs deposed four witnesses, all of whom are current or former senior federal officials: Nate Cavanaugh, a political appointee at the General Services Administration and member of the DOGE team; Justin Fox, a political appointee at the General Services Administration and member of the DOGE team; Michael McDonald, the former Acting Chairperson of the National Endowment for the Humanities; and Adam Wolfson, the current Acting Chairperson of the National Endowment for the Humanities. The testimony was recorded on videotape. Written transcripts were also produced.

On March 6, 2026, Plaintiffs moved for summary judgment. In support of that motion, they filed a memorandum of law that relied extensively on the testimony of these witnesses.

The Court's Individual Rules provide as follows: "On motions for summary judgment, do not attach complete deposition transcripts as exhibits. Attach only pages containing relevant

testimony (to which citation is made in the briefs or affidavits)." Individual Rules, § V(E)(2). The purpose of the rule is to ensure that the Court is not required to sift through large volumes of irrelevant material when considering deposition testimony in connection with a motion.

Plaintiffs concede that they were aware of the rule; indeed, they complied with it as to the written transcripts. Plaintiffs submitted as exhibits to their motion only the excerpts from the deposition testimony on which they relied. Nothing in those excerpts had been designated as confidential. They submitted the testimony in the form of written transcript. Their memorandum of law cited only to those written transcript excerpts; it does not contain citations to the corresponding video segments. Aside from identifying the recordings as "exhibits" to their summary judgment motion in an attorney declaration, the moving papers made no reference to the videos at all. *See* Dkt. No. 248, Decl. of Yinka Onayemi, ¶¶ 41–44.

Plaintiffs did not ask the Court whether its Individual Rules would also apply to the submission of testimony on video. Nor did they file the videos on the public docket. They could not have done so without leave of Court; the Southern District's Electronic Case Filing Rules provide that audio and video files cannot be filed using ECF, and that any party who wishes to file a document that cannot or should not be filed electronically must ask the Court for leave to file it in the traditional manner. *See* S.D.N.Y. Electronic Case Filing Rules & Instructions, §§ 6.16, 13.3.

Plaintiffs never asked the Court for permission to file the videos on the public docket. Instead, they simply delivered to Chambers a thumb drive containing virtually complete copies of the video recordings of the four depositions. The videos on the thumb drive had been edited, but not to limit them to portions of the deposition testimony referenced in the moving papers. Plaintiffs removed only the limited portions of the testimony that the Government had designated as confidential.

After transmitting the videos to Chambers, Plaintiffs published the video recordings online, posting the full, non-confidential versions of the four depositions on YouTube and making those same materials available on the websites of the American Council of Learned Societies and the Modern Language Association.

After they were posted, the videos – and excerpts created and circulated by third parties who are not parties to this lawsuit – spread widely across the internet.  The videos were cited in numerous news stories about the role of DOGE in the termination of NEH grants.[1]

The Government sent a letter to the Court, dated March 10, 2026, in which it stated that the dissemination of the videos had resulted in harassment of Justin Fox and Nate Cavanaugh; it asked the Court to enter a protective order to restrict their further dissemination by Plaintiffs.  In a subsequent letter dated March 13, 2026, the Government advised that the risks it had previously identified had, in its view, escalated.  It represented that the videos had circulated widely across social media and news platforms, and that at least one witness had been subjected to significant harassment, including reported death threats.

Plaintiffs oppose the motion.  They argue that the deposition videos are judicial documents, which enjoy a presumption of public access – a presumption that is impossible to overcome given the public interest in this case.  In the alternative, Plaintiffs insist that the Government has not made the particularized showing required to justify a protective order restricting dissemination of materials that were not designated confidential and were lawfully obtained in discovery.

---

[1] *See, e.g.*, Jennifer Schuessler, *When DOGE Unleashed ChatGPT on the Humanities*, N.Y. Times (Mar. 7, 2026), https://www.nytimes.com/2026/03/07/arts/humanities-endowment-doge-trump.html;    Jennifer    Schuessler    & Benjamin Weiser, *After DOGE Deposition Videos Go Viral, Judge Orders Them Taken Down*, N.Y. Times (Mar. 13, 2026), https://www.nytimes.com/2026/03/13/nyregion/doge-depositions-musk-lawsuit.html.

## II.    Discussion

The legal principles governing this dispute arise from two related bodies of law: (1) the doctrine governing public access to judicial documents, and (2) the Court's authority under Federal Rule of Civil Procedure 26(c) to regulate discovery.  Despite Plaintiffs' evident effort to transform the deposition videos into "judicial documents," they are not judicial documents.  As a result, they carry no presumption of public access.

That conclusion, however, does not end the inquiry.  Although the materials at issue fall outside the judicial-document framework, they remain subject to the Court's authority to regulate discovery.  This case is the subject of substantial public interest.  It implicates the public's right to understand the operations of their government, including the actions of DOGE and NEH officials in connection with the allegedly unconstitutional and illegal cancellation of existing NEH grants.  The Court must therefore consider whether, in light of that public interest, the Government has demonstrated "good cause" under Rule 26(c) to restrict dissemination of the videos.

### A.    The Deposition Videos Are Not Judicial Documents Under the Second Circuit's *Amodeo* Framework

The starting point for any discussion of whether the videos qualify as "judicial documents" is the Second Circuit's decision in *United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995) ("*Amodeo I*"), which established the framework for determining whether a presumption of public access attaches to discovery materials produced over the course of litigation.  In *Amodeo I*, the Second Circuit explained that a document becomes a "judicial document" only if it is "relevant to the performance of the judicial function and useful in the judicial process."  44 F.3d at 145.  The court subsequently elaborated, in *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"), that even if a document qualifies as judicial, the public's right to access depends on the strength of the presumption of access.  That, in turn, is a function of "the role of the material at

6

issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049.

Specifically as it relates to this case, the Second Circuit emphasized in *Amodeo II* that the presumption of access does not extend to the vast universe of materials produced and exchanged during discovery. "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach[.]" *Amodeo II*, 71 F.3d at 1050.

Subsequent decisions – most notably in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ("*Maxwell I*") and *Giuffre v. Maxwell*, 146 F.4th 165 (2d Cir. 2025) ("*Maxwell II*") – reaffirm that the dispositive inquiry for whether a document is a "judicial document" remains whether the material is "relevant to the performance of the judicial function." *See Maxwell I*, 929 F.3d at 49 (quoting *Amodeo I*, 44 F.3d at 145). The court further explained that a document satisfies that standard if it has "the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers," regardless of whether the court ultimately relies on it. *Id.* (emphasis in original). That inquiry is conducted "as of the time of the document's filing," and turns on whether the material "could have a *tendency* to influence the court in the exercise of its Article III powers." *Maxwell II*, 146 F.4th at 178.

The video deposition transcripts are not "judicial documents." The videos were never properly placed before the Court for the purpose of obtaining any ruling and they are not part of the record on the motion. Although Plaintiffs mentioned in a declaration filed in support of their summary judgment motion that the video recordings were to be "exhibits," *see* Dkt. No. 248, Onayemi Decl., ¶¶ 41–44, the videos themselves were never filed on the docket. They were never transmitted to the Clerk of Court, and Plaintiffs never obtained a court order granting them leave

to file physical copies of the videos with the Clerk.  They were merely transmitted to Chambers "under separate cover."

That distinction matters.  In *Robinson v. Sanctuary Records Group, Ltd.*, 589 F. Supp. 2d 273, 275–76 (S.D.N.Y. 2008), the court held that documents "submitted to chambers and opposing counsel, but never docketed," were not part of the district court record, and that informal submission to chambers "in no way constitutes an acceptable substitute for filing with the Clerk of Court."  In *Robinson*, the court denied a motion to supplement the record with declarations that had been delivered to chambers but were never filed.  The court explained that Rule 10(e) permits supplementation only with materials that were "before the lower court in the course of its proceedings leading to the judgment under review," and concluded that documents not made part of the official record at the time of decision "may not now become part of the record on appeal." *Id.* at 275–76.

*Robinson* arose in the context of defining the record on appeal under Federal Rule of Appellate Procedure 10(e), not in the context of an *Amodeo* judicial-document inquiry.  But its analysis is instructive insofar as it clarifies what materials are considered to have been "before the court" in the first instance.

Here, the four deposition videos were never filed with the Clerk of Court and Plaintiffs never sought to file them with the Clerk.  Nor is there any citation to identified portions of the video transcripts in the moving papers.  The Court has reviewed Plaintiffs' memorandum of law in support of their motion for summary judgment.  It contains no reference to where in the video recordings of the Fox, Cavanaugh, McDonald, or Wolfson depositions one might find testimony that is relevant to Plaintiffs' arguments.  *See* Dkt. No. 248, Decl. of Yinka Onayemi, ¶¶ 41–44. The citations are exclusively to the written transcript excerpts that were filed on the docket.  As a

result, the videos are not part of the record on the summary judgment motions. They are no different from the many catalogues and law school magazines that the court receives, unsolicited, in the mail every day. Materials that are not formally filed with the Clerk of Court and incorporated into the record are not "before the court" in any legally meaningful sense.

The Southern District's Electronic Case Filing Rules reinforce this conclusion. The Rules provide that "audio and video files may not be filed through the ECF system." However, they further provide that any party who believes a document "cannot or should not be electronically filed" must "move for leave of court to file it in the traditional manner." S.D.N.Y. Electronic Case Filing Rules & Instructions, §§ 13.3, 6.16, *available at* https://nysd.uscourts.gov/electronic-case-filing. There is a procedure for filing video recordings if a party wants the court to consider them.

Plaintiffs did not follow that procedure. They never sought leave to file the deposition videos with the Clerk of Court. Instead, they sent the videos directly to Chambers "under separate cover," bypassing the process the Rules prescribe. Having elected not to avail themselves of any mechanism that would have made the videos part of the formal record, Plaintiffs cannot now treat those materials as if they had been "before the Court" for purposes of the judicial-document inquiry.

Then there are this Court's Individual Rules. Mere submission of deposition materials as "exhibits" on a motion does not mean that the Court will consider them when deciding that motion. The Court's Individual Rules provide in no uncertain terms that it does not want, and the parties should not submit, complete deposition transcripts. Parties are directed to submit only those portions of testimony to which they are calling the Court's attention. While this may impose additional work on counsel, it substantially reduces the burden on the Court. It also reflects

9

standard trial practice, where only relevant portions of deposition testimony – not entire transcripts, whether in written or video format – are presented to the trier of fact in open court.

Of course, the rule refers to "pages" of transcript. Plaintiffs now suggest that this wording created at the very least uncertainty about whether the rule applied to video-recorded deposition testimony. But their argument is too clever by half.

The intent of the rule is perfectly clear. When deciding a motion for summary judgment, the Court wants only those portions of a deposition on which a movant actually relies, and does not want to be burdened with irrelevant testimony merely because counsel chose to, or found it more convenient to, submit it. And because videos cannot be filed on the public docket without leave of court, there was no need for the rule to contain a specific reference to video transcriptions; the only way to get such materials on the docket (and so before the Court) was to make a motion, giving the Court the opportunity to decide whether the videos should be publicly docketed. This Plaintiffs did not do.

But if Plaintiffs wanted to know whether the Court's rule applied to video-recorded depositions, they could easily have sought clarification – just as they could easily have filed a motion seeking leave to have the Clerk of Court accept the videos and place them on the public record. Again, they did not. At the hearing held on March 17, 2026, on Defendants' present motion for a protective order, counsel for ACLS Plaintiffs, Daniel Jacobson, acknowledged the reason, stating "Frankly, your Honor, part of it was just the amount of time that it would have taken" to submit only the portions of the videos on which Plaintiffs intended to rely. Hr'g Tr., 15:6–7. In other words, "It would have been too much work." That is not an acceptable excuse.

No matter what Plaintiffs' counsel now says, the Court is left with the firm impression that at least "part of" the reason counsel did not ask for clarification was because they wished to

10

manufacture a "judicial documents" argument and did not wish to be told they could not do so. The Court declines to indulge that tactic. The wholly gratuitous submission of the videos does not transform them into materials that are to be used in connection with the adjudicative function. As Plaintiffs have provided me with written transcript excerpts of relevant testimony, I do not need to look at the videos to decide the motion. Therefore, they are not judicial documents.

The result in *Maxwell* – cases involving materials arising out of the Jeffrey Epstein litigation – does not compel a different conclusion. In neither *Maxwell I* nor *Maxwell II* was there any attempt to manufacture a "judicial document" by sending material that was dehors the record directly to chambers. Both cases addressed a fundamentally different circumstance: materials that had been filed with the court – albeit under seal – in connection with motions invoking the court's adjudicative or supervisory authority. *See Maxwell I*, 929 F.3d at 47–50; *Maxwell II*, 146 F.4th at 178–82. Nothing of the sort occurred here. The videos were not before the Court in any meaningful sense recognized by *Maxwell I, Maxwell II*, or its progeny.

Consistent with *Robinson*, the distinction between materials formally made part of the record and materials that were simply sent to chambers is highly probative of whether such materials could have a "tendency to influence" the Court's exercise of Article III power. And consistent with this Court's Individual Rules, the materials that "tend[] to influence" the Court's ruling are the specific excerpts the parties choose to cite in their moving papers – not the entirety of the underlying discovery record, and certainly not largely unedited video recordings that were neither narrowed to the portions actually relied upon nor filed (or even sought to be filed) with the Clerk of Court.

The Court concludes that materials merely transmitted to chambers – without any attendant effort to file them with the Clerk of Court – lack the requisite "tendency to influence" the Court's

11

adjudication within the meaning of *Amodeo* and *Maxwell*.  *See Maxwell I*, 929 F.3d at 49 ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." (quoting *Amodeo I*, 44 F.3d at 146)).  The four deposition videos are therefore not "judicial documents."  They are ordinary discovery materials that "lie entirely beyond the presumption's reach."  *Amodeo II*, 71 F.3d at 1050.

### B. Defendants Have Not Shown Good Cause Under Rule 26(c) for Entry of a New Protective Order

Rule 26(c) authorizes a court, "for good cause," to issue an order protecting a party or person from "annoyance, embarrassment, oppression, or undue burden."  Fed. R. Civ. P. 26(c)(1).  That authority may be exercised even where, as here, the material at issue is not covered by any existing protective order.  The burden of demonstrating good cause, however, rests squarely on the movant.  *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).  That burden requires "a particular and specific demonstration of fact," not "stereotyped and conclusory statements." *Ampong v. Costco Wholesale Corp.*, 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021).  Whether to issue a protective order "is singularly within the discretion of the district court."  *Dove*, 963 F.2d at 19.

There is no dispute that this Court has the authority to regulate the dissemination of discovery materials.  Discovery is a creature of rule, not of right.  This reflects what the Supreme Court described as a form of "legislative grace."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984).  The authority to compel disclosure through discovery exists only because procedural rules authorize it.  *See id.* at 32–36.  In federal court, those rules derive their force from the Rules Enabling Act, which empowers the Supreme Court to prescribe rules of procedure for the federal courts subject to congressional review.  *See* 28 U.S.C. §§ 2072–2074.  Because the government confers this extraordinary power of compulsory disclosure, courts bear a corresponding responsibility to ensure that those processes are not abused.  *See Seattle Times*, 467 U.S. at 32–36;

12

*see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (holding that courts may ensure that their records are not used "to gratify private spite or promote public scandal").

But the Court's exercise of its authority under Rule 26(c) still requires a finding of good cause grounded in specific facts. *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007), *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) ("The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.'"). Even when such a showing is made, the Court must still weigh countervailing considerations in deciding whether to exercise its discretion to issue relief. *See Koster*, 93 F.R.D. at 479–80; *Rofail v. United States*, 227 F.R.D. 53, 55 (E.D.N.Y. 2005). Such countervailing interests include "whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public." *Koster* at 479; *see also In re Zyprexa Injunction*, 474 F. Supp. 2d at 415 ("Balancing requires taking into account litigants' privacy rights as well as the general public's interest in the information."). The Government's motion fails at both steps.

The Government's motion fails for three independent reasons. *First,* the materials at issue concern the conduct of public officials acting in their official capacities, which substantially diminishes any cognizable privacy interest and weighs against restriction. *Second,* the Government has not made the particularized showing of a "clearly defined, specific and serious injury" required by Rule 26(c). *Third,* the Government has not demonstrated that the prospective relief it seeks would be effective in preventing the harms it identifies, particularly where those harms arise from the conduct of third-party actors beyond the control of the parties.

In assessing claims of privacy or harm, courts may consider – consistent with the framework articulated in *Amodeo II* – the extent to which the material "is traditionally considered

13

private rather than public." *Id.*  *See Amodeo II*, 71 F.3d at 1051.  Here, the information sought to be removed from Plaintiffs' website is not information that is conventionally subject to protection. This case does not involve "family affairs, illnesses, [or] embarrassing conduct with no public ramifications."  *Id.*  Rather, it concerns the legality of actions taken by government officials in their official capacities.  Whatever privacy interests might otherwise be implicated here are diminished by the public character of the conduct being described.  *See id.* (recognizing that a right of privacy may be diminished if the "conduct affect[s] a substantial portion of the public").

That conclusion is reinforced by a broader principle reflected in First Amendment jurisprudence concerning the treatment of public officials.  In *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), the Supreme Court emphasized that debate on public issues must be "uninhibited, robust, and wide-open," and may include "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."  The Supreme Court reaffirmed and sharpened that principle in *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964), explaining that "any criticism of the manner in which a public official performs his duties will tend to affect his private, as well as his public, reputation," and further observed that where the criticism concerns "public officials and their conduct of public business, the interest in private reputation is overborne by the larger public interest . . . in the dissemination of truth," *id.* at 72–73.

To be sure, *New York Times* and *Garrison* arose in the context of constitutional limits on defamation liability, not the dissemination of discovery under Rule 26(c).  But they are instructive insofar as they reflect a consistent judgment about the nature of the harms Defendants invoke here, which remain subject to Rule 26(c)'s requirement of a particularized showing.  Reputational injury, public criticism, and even harsh commentary are not unexpected consequences of disclosing information about public conduct.  They are foreseeable incidents of public scrutiny concerning

14

government action.  Where, as here, the material sought to be shielded by a protective order is testimony about the actions of government officials acting in their official capacities, embarrassment and reputational harm arising from the public's reaction to official conduct is not the sort of harm against which Rule 26(c) protects.  Public officials "accept certain necessary consequences" of involvement in public affairs, including "closer public scrutiny than might otherwise be the case." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–45 (1974).  The public interest in transparency concerning official governmental conduct remains a relevant consideration in determining whether good cause exists.

*Condit v. Dunne*, 225 F.R.D. 113, 119 (S.D.N.Y. 2004) and *Flaherty v. Seroussi*, 209 F.R.D. 295, 300 (N.D.N.Y. 2001) illustrate the principle.  In *Condit*, the court refused to enter a protective order barring dissemination of a videotaped deposition, despite claims of embarrassment and media misuse.  The court emphasized that the case involved statements concerning a sitting public official and "directly address[ed] a matter of public interest regarding a Congressman's performance of his official duties."  225 F.R.D. at 120.  Similarly, in *Flaherty*, the court refused to restrict dissemination of a mayor's videotaped deposition, even where counsel expressly intended to publicize the testimony, because  the "mere fact that some level of discomfort, or even embarrassment, may result . . . is not in and of itself sufficient to establish good cause," and that any such embarrassment must be "substantial" particularly where the materials concern "elected officials and the performance of their governmental responsibilities." 209 F.R.D. at 298, 299–300.

Here, the testimony in the videos concerns the conduct of public officials acting in their official capacities – a context in which the public interest in transparency and accountability is at its apex.  That interest weighs against the imposition of a broad, *post hoc* restriction on

dissemination.  As the Supreme Court explained in *Garrison v. State of Louisiana*, 379 U.S. 64, 77 (1964), the public's interest necessarily includes "anything which might touch on an official's fitness for office," and "Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or *improper motivation*[.]"  *Garrison*, 379 U.S. at 77 (emphasis added).  The subject matter of this testimony – how government officials carried out their official responsibilities – falls squarely within that core public interest.

*Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020), on which the Government principally relies, does not control the outcome here.  In *Mirlis*, the Second Circuit reversed a district court order that had allowed internet dissemination of portions of a videotaped deposition that had been played to the jury at trial, and directed that public access to the video be denied.  *Mirlis*, 952 F.3d at 56, 67.  But the court's ruling turned on considerations absent here.  *Mirlis* involved video footage that captured a deponent describing, in deeply personal terms, sexual abuse he had suffered as a minor at the hands of his high school principal and rabbi.  *Id.* at 61.  The court emphasized the "intense intrusion" on his privacy that internet publication of the video would inflict; and the requester's avowed purpose was to post the footage online despite the absence of any identified public need for the video itself once the substance of the testimony was already available in transcript form. *Id.* at 56, 63–67.  In short, *Mirlis* concerned "needless emotional harm to minor victims of sexual assault" – circumstances not present here – without any corresponding benefit to the public interest.  This case falls outside that category.

Next, the Government insists that the posting of the videos uniquely exacerbates the risk of harm to the witnesses.  But it offers no evidence tending to show that restricting access to the videos, while allowing the testimony itself to remain on the public record (where it has always been and always will be), would materially reduce the alleged risk of harm or embarrassment.

16

Instead, the Government's submissions rely largely on generalized assertions about the risks of online dissemination – harassment, reputational harm, and the potential for distortion or misuse of video content. The Court is not blind to the realities of the modern digital environment, with its potential for heightened risk of invasion of privacy. As the Second Circuit has recognized, the "ease with which videos may be shared worldwide" and their "eternal digital life" can "multiply and intensify" the consequences of dissemination. *Mirlis*, 952 F.3d at 66. But good cause under Rule 26(c) requires not only a showing of harm, but a showing that the proposed order would meaningfully mitigate that harm.

The Government has not identified particular portions of the testimony that have caused or are likely to cause harm if they are publicly available. Nor does it explain how dissemination of the videos, as distinct from the written transcript portions that are and will remain on the court's public docket, materially increases any such risk. Defendants rely on conclusory and unverified assertions about online harassment, untethered either to specific content or identifiable third-party actors. This does not establish the kind of "clearly defined, specific and serious injury" required for the entry of a protective order under Rule 26(c). *See In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d at 222.

Finally, the Government speculates that individuals inclined to engage in harassment may be more likely to watch videos than to read written transcripts that are equally available on the public docket. That is speculation, and the Court cannot assume it to be true. Nor can the Court assume that a person motivated to express hostility toward the Government's position in this litigation – by engaging in uncivil or offensive conduct toward the officials involved – would be deterred from doing so simply because *Plaintiffs* were prohibited from reposting the videos on websites devoted to discussing this case and informing the public about its progress. The harms

17

the Government identifies arise not from *Plaintiffs'* conduct, but from independent third-party actors who accessed and redistributed the videos. Rule 26(c) relief directed solely at Plaintiffs does not meaningfully address that source of harm.

At bottom, the Government has not shown that the relief it seeks is capable of addressing the harm it identifies. The videos have already been widely disseminated across multiple platforms, including YouTube, X, TikTok, Instagram, and Reddit, where they have been shared, reposted, and viewed by at least hundreds of thousands of users, resulting in near-instantaneous and effectively permanent global distribution. This is a predictable consequence of dissemination in the modern digital environment, where content can be copied, redistributed, and indefinitely preserved beyond the control of any single actor. Given this reality, a protective order directed solely at *Plaintiffs* would not meaningfully limit further dissemination or mitigate the Government's asserted harms.

The Court accepts that witnesses and their families have experienced harassment. That conduct is deeply troubling; it is highly inappropriate and should trouble every good citizen. But Rule 26(c) requires the Government to show that a "clearly defined, specific and serious injury" will occur in the absence of a protective order, *see In re Terrorist Attacks on Sept. 11, 2001,* 454 F. Supp. 2d at 222, and that showing has not been made. There are laws against threats and harassment; the Government and its witnesses have every right to ask law enforcement to take action against those who engage in such conduct, by enforcing federal prohibitions on interstate threats and cyberstalking, *see, e.g.*, 18 U.S.C. §§ 875(c), 2261A, as well as comparable state laws. Rule 26(c) is not a substitute for those remedies.

As evidence that law enforcement takes such threats seriously and prosecutes offenders, the Court calls the parties' attention to a recent case from the Northern District of New York,

18

*United States v. Shane Daley*, 25-mj-225 (N.D.N.Y.), in which a defendant pleaded guilty to cyberstalking charges arising from harassing communications directed at the family of a UnitedHealthcare executive following his killing in midtown Manhattan. *See New York Man Pleads Guilty to Cyberstalking in Threats to Relative of Slain UnitedHealthcare CEO*, Newsday (Mar. 19, 2026), https://www.newsday.com/news/nation/unitedhealthcare-ceo-cyberstalking-family-new-york-pleads-k58024. Reporting such conduct to law enforcement offers a far more effective means of stopping the harassment than any order this Court could enter restricting Plaintiffs' conduct, particularly when restricting Plaintiffs' ability to repost the videos would do nothing to deter or punish those third-party actors.

In sum, because defendants have not demonstrated a particularized harm, have not overcome the strong public interest in dissemination of information concerning official conduct, and have not shown that the requested order would effectively mitigate the asserted injuries, they have failed to establish good cause under Rule 26(c).

## Conclusion

For the reasons set forth above, the Government's motion for a protective order is DENIED, and the temporary restraint imposed by the Court's March 13, 2026 interim order is hereby DISSOLVED.

Plaintiffs' request for attorneys' fees is DENIED. Although the Government's motion was unsuccessful, it was "not so lacking in substantial justification as to warrant an award" under Rule 37(a)(5)(B). *See Callahan v. HSBC Sec. (USA) Inc.*, No. 22 Civ. 8621 (JPO), 2025 WL 1404492, at *3 (S.D.N.Y. May 15, 2025). The Court will not reward Plaintiffs for bypassing its procedures – mine and those of the Clerk of Court – procedures that, if followed, would have allowed us to more effectively address this matter before anything was posted.

19

The Clerk of Court is directed to terminate the motions at Docket Numbers 259 and 263 in *American Council of Learned Societies v. National Endowment for the Humanities*, No. 25-cv-3657 (CM), and Docket Numbers 149 and 152 in *The Authors Guild v. National Endowment for the Humanities*, No. 25-cv-3923 (CM), and to remove them from the Court's list of open motions.

This constitutes the decision and order of the Court.  It is a written decision.

Dated: March 23, 2026

_____
U.S.D.J.